IN THE CIRCUIT COURT OF THE EIGHTH JUDICIAL CIRCUIT

ADADS COUNTY, ILLINOIS

**FILED**

| | | |
|---|---|---|
| JAMES R. TIERNEY, ANN S. TIERNEY and MERYL A. TIERNEY, | ) ) ) | APR 1 6 2003 |
| Plaintiffs, | ) ) | |
| vs. | ) ) | No. 02-L-12 |
| SHERIDAN SWIM CLUB, et al., | ) ) | ILLINOIS, ADAMS CO. |
| Defendants. | ) ) | |

## ORDER

Cause comes on for supplemental hearing on Defendants' Motion to Dismiss the Third Amended Complaint, and Plaintiffs' Motion to Strike the Motion to Dismiss. Plaintiff Robert Tierney appears in person, Ann Tierney and Meryl Tierney do not appear. Jonathan H. Barnard, appears on behalf of all Defendants.

Argument, and certain documentary evidence presented by Plaintiff is considered on the Motion to Dismiss. Oral argument is heard on the Motion to Strike. The Court, having considered the arguments of the parties, pertinent case law and evidence herein, hereby orders, adjudges and decrees as follows:

Plaintiffs' Motion to Strike, as well as the Request to Present Testimony in Support Thereof, is hereby denied. The Court hereby grants the Motion to Dismiss all Counts of the Third Amended Complaint of Plaintiffs, pursuant to Section 2-615 and Section 2-619 of the Illinois Code of Civil Procedure, and accordingly, the same are hereby dismissed with prejudice at Plaintiffs' costs.

It is further ordered that all other Motions pending at the time of this ruling are hereby denied, including Plaintiffs' Motions for Discovery and various Discovery Sanctions; School District No. 172's Motion to Quash and for Sanctions; and Chet and ~~

Dated: _4-11-_, 2003.

Signature redacted pursuant to
USDC-CDIL Adm.Proc. Rule II(I)(1)(f)

The Honorable Joe K. Vespa

pc  Jonathan H. Barnard
    Marec Edgar
    Robert Tierney / Ann Tierney / Meryl Tierney
    Chet W. Vahle / Barb Vahle

The clerk will please send a copy hereof to Judge Vespa in Peoria, the Plaintiff, Mr Tierney and the attorneys. The Parties can make any further challenges to this order by way of Motion if they see fit to do so.

DEFENDANT'S
EXHIBIT
A

In the Circuit Court of the Eighth Judicial Circuit

Adams County, State of Illinois

| | | |
|---|---|---|
| J. ROBERT TIERNEY, | ) | |
| ANN S. TIERNEY, | ) | |
| And MERYL A. TIERNEY | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs | ) | No.   02-L-12 |
| | ) | |
| SHERIDAN SWIM CLUB, INC., an Illinois | ) | |
| Corporation, ANDREW C. SCHNACK, III, | ) | |
| JULIE ANDERSON, BARNEY BIER, | ) | JURY DEMAND |
| RODERICK P. MILLER, DAVID P. DANIELS, | ) | |
| LISA BEARDEN, LORI MILES, PATRICIA CRANE, | ) | |
| DOUG OLSON, BARB SELVY, ROBERT HULTZ, and | ) | |
| TIMOTHI BETH, members of the Sheridan Swim Club | ) | |
| Board in their Official and Individual Capacities, and | ) | |
| ROBERT MEYER, member of the Sheridan Swim | ) | |
| Club Board, and Former President of the Sheridan | ) | |
| Booster Club, in His Official and Individual Capacity | ) | |
| | ) | |
| Defendants. | ) | |

FILED
AUG 30 2002
Clerk Circuit Court 8th Judicial Circuit
ILLINOIS, ADAMS CO.

## THIRD AMENDED COMPLAINT

1

# THIRD AMENDED COMPLAINT – TABLE OF CONTENTS

|  |  | PAGE |
|---|---|---|
| I. | Jurisdiction and Venue | 5 |
| II. | The Parties | 5 |
| | A. The Plaintiffs | 5 |
| | B. The Defendants | 6 |
| III. | Causes of Action Resulting in the Filing of Federal Complaint #99-3149 Which are Pending Trial and Final Adjudication in Federal Court | 9 |
| IV. | Events and Causes of Action which Occurred after the Plaintiffs Filed the Initial Complaint in Federal Court | 26 |
| V. | Conduct And Occurrences Complained Of In This Complaint Involving Defendants Sheridan Swim Club, Sheridan Board, and Robert Meyer | 30 |
| | A. Description of Sheridan Swim Club and the Genesis of the Symbiotic Relationship between Sheridan and the Quincy School District | 30 |
| | B. The Symbiotic Relationship and "Alliance" was Reaffirmed after a Federal Lawsuit was Filed and after the IHSA Suspended Powers | 34 |
| VI. | STATE COUNTS | |
| COUNT I | The Acts and Omissions of Defendants Sheridan, Sheridan Board, and Meyer Constitutes <u>Civil Conspiracy</u> Between One or More Sheridan Board Members. CLUB Members, and Sheridan Employees | 37 |
| | A. Conduct Complained Of From May 1998 to July 1999 | 37 |
| | B. Conduct And Occurrences Complained Of Which Occurred After A Lawsuit Was Filed In Federal Court In June 1999 | 46 |
| | C. Ratification by Sheridan/Sheridan Board of Wrongful Conduct | 58 |
| COUNT II | The Acts and Omissions of Defendants Constitutes <u>Breach of Contract</u> and breach of express duty of operation in good faith | 59 |
| COUNT III | The Acts and Omissions of Defendant Sheridan Board Constitutes <u>Breach of Fiduciary Duties</u> | 59 |
| COUNT IV | The Acts and Omissions of Defendants Sheridan and Sheridan Board Constitute <u>Retaliatory Discharge of Plaintiff Meryl Tierney</u> | 59 |

| | | |
|---|---|---|
| COUNT V | The Acts and Omissions of Defendants Sheridan, Sheridan Board, Robert Meyer, constitutes <u>Tortuous Interference with Business Relations</u> Between Plaintiff Ann Tierney's and her employer, the Quincy School District .................................................................................... | 59 |
| COUNT VI | The Acts and Omissions of Defendants Sheridan, Sheridan Board and Meyer Constitutes <u>Conversion</u>................................................................ | 60 |
| COUNT VII | The Acts and Omissions of Defendants Board and Meyer Constitutes <u>Invasion of Privacy</u>.................................................................... | 60 |
| COUNT VIII | The Acts and Omissions of Defendants Sheridan, Sheridan Board, and Meyer Constitutes <u>False Light</u>.......................................... | 60 |
| COUNT IX | The Acts and Omissions of Defendants were Willful and Wanton, and Constitutes <u>Intentional Infliction of Emotional Distress</u>................ | 60 |
| COUNT X | The Acts and Omissions of Defendants Sheridan, Sheridan Board, and Meyer Constitutes violations of <u>The Illinois School Student Records Act</u> 105 ILCS 10/1-10 et seq...................................................... | 60 |
| COUNT XI | The Acts and Omissions of Defendants Constitutes violations of <u>The Business Corporation Act</u> of 1983 805 ILCS 5/2A et seq............ | 60 |
| COUNT XII | The Acts and Omissions of Defendants constitutes violations of <u>The Illinois Abused and Neglected Child Reporting Act</u>, 325 ILCS 5/1 et seq, (1998) formerly Ill. Rev. Stat..Ch. 23, 2051 et seq. (1975) eff. July 1, 1975...................................................................... | 61 |
| COUNT XIII | The Acts and Omissions of Defendants Constitutes Violations of <u>The Illinois School Code</u> 105 ILCS 5/24-25) et seq........................... | 61 |
| COUNT XIV | The acts and omissions of Defendants Sheridan and Sheridan Board constitutes <u>Constructive Fraud</u>................................................ | 61 |
| COUNT XV | The acts and omissions of Defendants Sheridan and Sheridan Board Constitutes <u>Fraudulent Concealment</u>............................................ | 61 |
| COUNT XVI | The acts and omissions of Defendant Schnack. Bier, and Sheridan Constitutes <u>Intentional Spoliation of Evidence</u>............................ | 61 |
| COUNT XVII | The acts and omissions of Defendants Schnack, Bier, and Sheridan | |

|       |       | Constitutes <u>Negligent Spoliation of Evidence</u>............................... 61 |
|-------|-------|---|
| XVI.  | FEDERAL CLAIMS............................................................................. 61 | |
|       | 1.    | Statutes and Constitutional Provisions Involved............................ 62 |
|       | 2.    | Claims under 42 U.S.C. § 1983.................................................. 62 |
|       |       | Count I — Right of Access to the Courts without Interference or Retaliation...................................................... 63 |
|       |       | Count II — Right to Freedom of Speech and to Petition the Government for Redress of Grievances without Retaliation 63 |
|       |       | Count III — Right of Association without Retaliation..................... 63 |
|       |       | Count IV — Right to Procedural Due Process ............................... 64 |
|       |       | Count V — Ratification by Sheridan/Sheridan Board of Wrongful Conduct alleged in ¶¶ 153-156, and 160-213.................. 65 |
|       | 3..   | Claims under 42 U.S.C. § 1985 (2 & 3) ....................................... 66 |
|       |       | Count VI — 42 USC §1985. Conspiracy to Interfere with Civil Rights (2) Obstructing Justice; Intimidating Party, Witness, or Juror..... 66 |
|       |       | Count VII — 42 USC §1985. Conspiracy to Interfere with Civil Rights (3) Depriving Persons of Rights or Privileges.................. 67 |
| XVII. | Damages and Relief Sought................................................................. 68 | |

C871

## THIRD AMENDED COMPLAINT

Now come the Plaintiffs, J. ROBERT TIERNEY, ANN TIERNEY, and MERYL A. TIERNEY, Pro Se, and complaining of the Defendants, SHERIDAN SWIM CLUB an Illinois Corporation, ANDREW C. SCHNACK III, JULIE ANDERSON, BARNEY BIER, RODERICK P, MILLER, DAVID P. DANIELS, LISA BEARDEN, LORI MILES, PATRICIA CRANE, DOUG OSLON, BARB SELVY, ROBERT HULTZ, and TIMOTHI BETH, members of the Sheridan Swim Club Board in their Individual and Official Capacities, and ROBERT MEYER, member of the Sheridan Swim Club Board, and President of the Sheridan Booster Club, in his Individual and Official Capacities, for a claim for relief hereby states as follows:

### I. JURISDICTION & VENUE

1. This Court has original jurisdiction of this action brought for State Counts per ILCS Statutes, Code of Civil Procedure and Illinois Supreme Court Rules. This court has supplemental jurisdiction of Plaintiff's Federal claims pursuant to ILCS Statutes, Code of Civil Procedure, and Illinois Supreme Court Rules.

2. Venue is proper in this Court in that Adams County is in the 8th Judicial Circuit where all Defendants reside and in which all of the alleged conduct occurred.

### II. THE PARTIES

#### A. The Plaintiffs

3. J. Robert ("Bob") Tierney, Ann S. Tierney, and Meryl A. Tierney, were, at all relevant times, residents of Adams County, Illinois, and residents in the political boundaries of the Quincy School District #172. Meryl Tierney, born May 7, 1982, and (Case Tierney)[1], born September 27, 1990, are two of the four children of Ann and Bob Tierney. Meryl Tierney turned 18 years of age on May 7, 2000.

4. Bob Tierney, Ann Tierney, Meryl Tierney, and Case Tierney at all relevant times, were stockholders and members in "good standing" of the Sheridan Swim Club, Inc., in Quincy, Illinois. As a shareholder in the Sheridan Corporation, the Plaintiff had a vested, financial interest in the operation, assets, and property of the Corporation/CLUB. The Tierneys

---

[1] In the interest of judicial economy, Case Tierney (a minor) will be added as a Plaintiff to this Complaint via a separate Motion, after the Court determines the appropriate "Pro Se" status for Case Tierney. Specifically, the Plaintiffs will ask the Court to determine if Case Tierney can be a Pro Se plaintiff by and through his next best friend, his father, Plaintiff J. Robert Tierney, until such time as the Plaintiffs retain the services of a licensed attorney.

maintained continuous membership in the Sheridan Swim Club from 1986 until their wrongful expulsion on or about April 15, 1999.

5. Ann Tierney was at all relevant times, employed by the Quincy School District as Senior Dean of Students at Quincy Junior High School. Mrs. Tierney was appointed to the position of Asst. Principal/Athletic Director, Pro-Tem, at Quincy Junior High School in December 1999. This appointment occurred six months after Plaintiffs filed their initial complaint in Federal Court, and over one (1) year after Plaintiffs began engaging in free speech with School District Officials over issues of public concern. Ann Tierney subsequently resumed her duties as Senior Dean of Students at Quincy Junior High School in July 2000. At no time did Ann Tierney have any control and direction authority, or supervisory responsibilities for extra-curricular activities at Quincy Senior High School. The only employment related connection Ann Tierney has with Quincy Senior High School is the common employer, Quincy School District No. 172. Ann Tierney was under no Statutory or School District regulation to report any of Powers and Sheridan's misconduct directly to the School District. Her speech with School District officials was entirely discretionary, and occurred in the company of private citizens after school hours, and out of her place of work. Ann Tierney's speech involved matters of public concern regarding employees and programs of Quincy High School. Meryl Tierney was a student at Quincy Senior High School.

6. Meryl Tierney was, at all relevant times, a student at Quincy High School and was a member of the Quincy High School ("QHS") Girls Swim Team during the 1996-98 school years. During the 1998-99 school year she was 16 years of age. During all relevant times she was further enrolled in United States Swimming, Inc., Illinois Swimming Inc., and Sheridan Swim Team, through her membership at the Sheridan Swim Club and membership on the Sheridan Swim Team. The Tierney family has been active participants in Sheridan Swim Team activities and USA Swimming Inc. activities at Sheridan Swim Club since approximately 1986.

**B.   The Defendants**

7. Sheridan Swim Club, Inc. ("Sheridan" or "CLUB") is a closely held, For-profit corporation, located in Adams County, Illinois, organized and obligated to be operated under the laws of the State of Illinois, including but not limited to *The Business Corporation Act of 1983* 805 ILCS 5/2A *et seq.*



7.a    As an agent of a Public School District, Sheridan is obligated to comply with *The Illinois School Code* 105 ILCS 5/24-24) et seq., and *The Illinois School Student Records Act* 105 ILCS 10/1-10 et seq., and 20 U.S.C. Section 1232g. *Family Educational and Privacy Rights Act* (FERPA).

7.b    As a "recreational facility" Sheridan is also obligated to comply with *The Illinois Abused and Neglected Child Reporting Act*, 325 ILCS 5/1 et seq (1998) formerly Ill. Rev. Stat. Ch. 23, 2051 et seq. (1975) eff. July 1, 1975. It is sued in its individual capacity. The conduct of each of the Defendants as described in this Complaint was done under color of State law.

8.    Andrew C. Schnack, III, ("Schnack"), Julie Anderson ("Anderson"), Barney Bier ("Bier"), Roderick P. Miller ("Miller"), David P. Daniels ("Daniels"), Lisa Bearden ("Bearden"), Lori Miles ("Miles"), Patricia Crane ("Crane"), Doug Olson ("Olson"), Barb Selvy ("Selvy'), Robert Hultz ("Hultz"), and Timothi Beth ("Beth") are past or present members of the Board of Directors of the Sheridan Swim Club, Inc. (hereinafter, collectively referred to as "Sheridan Board"). All are residents of Adams County, Illinois. All are sued in their Individual and Official Capacities. Board members Miles and Crane became Board members in March 2000, and are sued for acts of misconduct, which occurred after April 1, 2000. Board members Olson and Meyer became Board members in March 2001, and are sued for acts of misconduct, which occurred after April 1, 2001. Board members Selvy, Hultz, and Beth became Board members in March 2002, and are sued for acts of misconduct, which occurred after March 26, 2002. Although Sheridan Board member, Robert Meyer ("Meyer") became a Board member in March of 2001 and is sued in his individual and official capacity as a Sheridan Board member, he is also individually liable for his other prior wrongful acts while President of the Sheridan Booster Club. Defendants Bearden and Miles are Quincy School District teachers and mandated reporters. The actions of Defendants Bearden and Miles, and Sheridan Board member, Vicki Forbes, were also committed within the course and scope of their employment and under color of state law. Although Forbes is not named as a Defendant in this complaint, her actions were also committed within the course and scope of her employment and under color of state law.

9.    Andrew C. (Drew) Schnack, III ("Schnack"), was also the personal attorney of Richard Powers ("Powers"). Schnack is also a member of the Board of Directors of Illinois Swimming Inc., and a member of the officials committee of Illinois Swimming Inc. At all times relevant herein, Schnack was also a registered and active swimming & diving official with the

7

Illinois High School Association ("IHSA"). Schnack had a duty to comply with, and uphold the Constitution, By-Laws, and Rules of the IHSA. Schnack's actions alleged herein were committed within the course and scope of his office as a Sheridan Board member, and/or as a policy-making agent/member of Sheridan Swim Club, acting at the direction of the Sheridan Board of Directors, and/or in collusion with, or at the direction of an employee of the Quincy School District.

10. Barney Bier ("Bier") is a resident of Adams County, Illinois, and, at all times relevant herein was the Adams County States' Attorney and a member of the Sheridan Swim Club Board of Directors. Bier is a Defendant in his individual and official capacities as a Sheridan Board member, and in his individual capacity for conduct under color of state law while employed as the Adams County States' Attorney. Bier's actions alleged herein were committed under color of state law while aiding and abetting the misconduct of his fellow Defendants Andrew Schnack, Sheridan, and Sheridan Board. The actions of Bier alleged herein were committed while Bier was acting under the authority of his office conferred by state law, but were plainly outside the course and scope of his employment duties and beyond his purview, discretion, and jurisdiction per his acknowledged conflicts-of-interest.

11. Robert Meyer ("Meyer") is a resident of Adams County, Illinois, and, at all times relevant herein was the President of the Sheridan Swim Team Booster Club ("Sheridan Booster Club") or a member of the Sheridan Board. The Sheridan Booster Club is entirely a wholly owned sub-part of Sheridan. Meyer's actions alleged herein were committed within the course and scope of his office, and/or as an agent/member of Sheridan Swim Club acting in collusion with, or at the direction of a member(s) of the Sheridan Board of Directors, and/or in collusion with, or at the direction of an employee of the Quincy School District. Meyer is a Defendant in his individual and official capacities for his actions on behalf of Sheridan.



### III   Causes of Action Resulting in the Filing of Federal Complaint #99-3149 Which is Pending Trial and Final Adjudication in Federal Court [2]

12. In approximately May 1998, the School District entered into a contractual relationship with Richard Powers and Sheridan, pursuant to which the School District would utilize the coaching services of Powers, the swimming pool and facilities of the Sheridan, and the equipment of the Sheridan Swim Team, for the 1998-99 school year. The School District contracted with Powers in May 1998 as coach, and Sheridan hired Powers as a coach also in May 1998 in close proximity to the School District's hiring of Powers. There was a Nexus or linkage between Powers coaching both swim teams. Powers agreed to come to Quincy with the understanding that he coached both the Sheridan and the QHS swim teams. By these joint yet separate financial contracts, the School District agreed to financially subsidize the operating expenses of Sheridan Swim Club and the operating expenses of the Sheridan Swim Team.

13. Since approximately May, 1998, the School District effectively delegated to Sheridan and Powers, operational control of the Quincy High School's Boys and Girls swimming

---

[2] On October 23, 2001, per Court Order in Case #99-3149, the Federal District Court declined to recognize the existence any allegation, fact, or general notice pleading which sufficiently established any genuine issue of material fact that Sheridan was a State Actor based on the causes of actions and events which occurred only between May 1998, and June 1999, which is the time period covered by the pleadings in the Initial Complaint. Pursuant to a Preliminary Injunction Hearing on a State Count issue regarding the Tierney's membership rights at Sheridan, Court somehow surmised that there was no Symbiotic Relationship or Nexus between Sheridan and the School District, despite the absence of any testimony or evidence regarding that issue. As a result, the Court did not conduct any fact-finding inquiry on the State Actor status of Sheridan. The Court also denied the Plaintiffs' TWO Motions to Compel Discovery despite the fact that Sheridan produced only 1 sheet of paper during 2 years of litigation. The Court also refused to allow the Plaintiffs to depose all of the individual Sheridan defendants who had submitted affidavits in support of their Summary Judgment Motion. The Court only allowed the deposition of one Sheridan defendant, who was selected by Sheridan for the deposition. Furthermore, this defendant did not possess knowledge of the subject matters outlined in the Notice of Deposition. The Court also only allowed the deposition of one School District Board member, who was selected by the District. This School Board member also allegedly did not possess knowledge of the subject matters outlined in the Notice of Deposition. In the text of the written order on the Summary Judgment Motion, the Court also referred to non-existant testimony from the transcript of the Preliminary Injunction Hearing. The Court subsequently relinquished jurisdiction over any of the State Counts against Sheridan. Therefore, the Federal Claim(s) that was asserted in Federal Complaint #99-3149 against Sheridan/Sheridan Board and was adjudicated by the District Court Orders, is being preserved for Appellate Review until final judgment is entered in that case. The Plaintiffs **are not** re-alleging the Federal Claim(s) for adjudication in this Complaint, but list the causes of action only to avoid any possibility that the tender of this Complaint in State Court has waived the Federal claim(s), and because the causes of action also support the State Claims asserted in this State Court Complaint. The Federal Claims asserted in this Complaint are for causes of action, which occurred after the Federal Complaint was filed in June 1999. These claims were not asserted in the Federal Court Complaint.



9

programs for coordinated supervision by Powers of the Sheridan and School District programs. The School District delegated limited policy-making authority to Powers per the terms of his contract with the School District Board.

14. The Quincy School District was negligent in the hiring and supervision of Powers. The District delegated limited policy-making authority to a part-time employee/coach (Powers) who had never coached a United States high school swim team, and was not certified per the Illinois High School Association (IHSA) By-laws and regulations to coach any Illinois High School athletic program.

15. During the 1998/99 school year, Sheridan Board members and CLUB members, including non-school district employees, were entwined in the control, direction, and supervision of Powers during the 1998/99 school year regarding Powers' operation of the Quincy High School swim program.

16. During the 1998/99 school year, the Sheridan Board (including a school district teacher) and CLUB members, aided and abetted Powers' misconduct and improper operation of the Quincy High School Swim Program. These actions were in direct conflict with the written policy of the School District, and reflected deliberate indifference to school district policy and the Rules and Regulations of the IHSA, which is the State governing body of Illinois High School Athletics. This improper operation also constituted a breach of contract between Sheridan and the District.

17. During the 1998-99 school year, Powers, acting in his position as the coach for the Quincy High School Girls Swim Team, regularly breached the terms of his contract and Sheridan's contract with the School District. Powers also violated the Illinois High School Association Constitution, Bylaws, or eligibility rules concerning athletic programs. These violations included inappropriately supervised swimming practice, and inappropriately combining swimming practice activities for the Quincy High School Girls & Boys Teams and the private teams of Sheridan, and committed the following acts, which were wrongful.

    a.    Powers utilized his position as the swimming coach for the various swim teams at Quincy High School to require participation in the Sheridan Swim Team as a condition for favorable treatment or participation in swimming competitions for the Quincy High School Swim Teams. This action was taken for the benefit of Sheridan, the Sheridan Swim Team, and the benefit of Powers in improving Powers' position as a coach of the Sheridan Swim Team.

b. During the 1998-99 school year and the Fall 1999 school year, Powers, acting in his position as the coach for the Quincy High School Girls Swim Team further regularly violated the policies of the Quincy School District concerning the rights of students to participate in high school extracurricular activities, including, but not limited to the published School District Code of Conduct.

c. During the 1998-99 school year, Powers repeatedly directed foul, profane, and obscene language toward students and adults.

d. During the 1998-99 school year, Powers kissed one of the High School girl swimmers on the lips at a swimming competition.

e. During the 1998-99 school year, Powers attempted to engage high school girl swimmers in inappropriate conversations regarding sexual topics both during and after school-sponsored activities.

f. On or about November 13, 1998, Powers told the members of the girls swimming team that they should allow him to massage them in order to prepare them for a swimming competition scheduled for the next day.

g. On or about November 13, 1998, Powers appeared at a social gathering of the swim team at the home of Mr. & Mrs. Chet Vahle. Powers required the girls to lay prone on a pool table in the basement of the home in order to receive the so-called "massages" which were in fact a pretext to enable Powers to fondle the girls.

h. On or about November 13, 1998, Powers placed his hands on the legs and thighs of Plaintiff Meryl Tierney, up her buttocks. He further required her to unhook the straps of her bra in order to allow him to place his hands on her bare back.

i. On or about November 13, 1998, Powers also required several other members of the girls swimming team to allow him to touch them in a manner similar to his touching of Meryl Tierney.

j. In November 1998, the time he touched the girls, Powers was a 53-year-old single male.

k. At the time of his touching of the girl swimmers, Powers was the only adult present in the room.

l. At no time prior to his touching of the girl swimmers did Powers make known to the parents of the girls that he was planning to engage in this activity, nor did Powers conduct any such activity with members of the Quincy High School Boys swim team that he also coached. [3]

---

[3] In October 1999, the District Court granted a Motion to Dismiss the federal claims against Powers regarding the "massages" with Meryl Tierney. During a Preliminary Injunction Hearing in July 1999, the Court refused to allow Meryl Tierney to give testimony about the actual nature and extent of the "massages". The Court also relied on, and cited, Illinois State Court cases in dismissing Meryl Tierney's Federal claims, which were asserted under the liberty interest clauses of the First Admendment, and under the due process clauses and of the 14th Amendment. The Court also denied a Motion to Reconsider the ruling. The Plaintiffs **are not** re-alleging those Federal Claims for adjudication in this Complaint, but list the causes of action only to avoid any possibility that the tender of this Complaint in has waived those Federal claims. However, all prior claims against the defendants were dismissed **without** prejudice.

11

18. Beginning in September 1998, the Tierneys and other citizens became aware of Powers misconduct regarding possible violations of School District and Illinois High School Association rules, and violations of student rights per the Code of Conduct for extra-curricular activities. These were issues of public concern. All of the Tierneys became aware of these issues of public concern through their participation as members of the public in a traditional public function.

19. At various times throughout the 1998-99 school year, Bob and Ann Tierney, reported improprieties that they had found concerning the Quincy High School Swim Team and Powers' sexual misconduct, to various officials of the School District, and to School Board Attorney, Dennis Gorman. The Tierney's' free speech concerned possible violations of School District and Illinois High School Association rules, violations of student rights, sexual harassment and inappropriate sexual conduct involving minors, and other matters. These were all matters of public concern. These violations and incidents were reported during what the Tierney's were led to believe were confidential, privileged conversations with senior School District policy-making officials, and Gorman.[4]

20. At various times throughout the 1998-99 school year, the Plaintiffs accompanied several other parents of members of the Quincy High School Swim Teams and the Sheridan Swim Team. Collectively, these citizens also reported improprieties that they had found concerning the Quincy High School Swim Team to various officials of the School District, and to Gorman. The other parents' speech about the possible violations of School District and Illinois High School Association rules, violations of student rights, discrimination, sexual harassment and inappropriate sexual conduct with minors and other incidents, were all matters of public concern. These violations and incidents were reported during what these parents were led to believe were confidential, privileged conversations with senior School District policy-making officials and investigators.

21. At various times throughout the 1998-99 school year, Ann Tierney, acting in her capacity as Dean of Students for Quincy Junior High School, and Meryl Tierney, also reported

---

[4] The Plaintiffs' free speech did not reflect or involve opinions concerning the technical coaching abilities of Powers. In fact, the Plaintiffs considered Powers an "outstanding technical coach". The Plaintiffs' free speech concerned specific incidents and issues of public concern about Powers' misconduct and actions that had nothing to do with Powers' coaching techniques or abilities.

Powers misconduct. These violations and incidents were reported during what the Tierneys were led to believe were confidential conversations with senior School District policy-making officials and School District investigators. [5]

22.     Following these meetings the School District engaged in deliberate indifference and specifically refused to take any action regarding Powers misconduct. The School District turned a "blind eye" to Powers misconduct. The actions of these officials were in direct conflict with the written policy of the School District, and reflected deliberate indifference to school district policy, to the hostile, educational environment at Sheridan, and to the Rules and Regulations of the IHSA, which is the State governing body of Illinois High School Athletics. The District implemented a policy of deliberate indifference to reports of Powers' misconduct and improper operation of the high school swim program.

23.     In December 1998, school superintendent Dr. Anderson, and another school district administrator, met with Plaintiff Bob Tierney and another parent, who also had a daughter on the high school swim team. Both parents engaged in free speech on matters of public concern, and again presented evidence of Powers' improper conduct and actions regarding operation of the Quincy High Swim Team program.

24.     In December 1998, the School District retaliated against the Plaintiffs by immediately divulging the Plaintiffs' reports of Powers' misconduct to officials and members of Sheridan Swim Club including Defendant Schnack.

25.     In December 1998, Defendant Powers, and (Sheridan Board President) Julie Anderson, Schnack, and Meyers conspired to retaliate against the Plaintiff and the Tierney Family and others, and mutually agreed to cover-up Powers' misconduct concerning IHSA

---

[5] In March 2001, the District Court dismissed several of Ann Tierney's Federal Claims of retaliation for free speech brought against the School District. Although Ann Tierney's speech with the District was completely discretionary, and all of Power's misconduct had already been reported by Bob Tierney and other parents, the Court declined to recognize prevailing law on the free speech rights of public employees established by the Supreme Court in *Pickering*, and recently re-affirmed by the 7th Circuit in *Delgado v. Jones*. The Court ruled that Ann Tierney was not engaging in free speech with the School District. The Court stated that Ann Tierney was obligated "to report the things that she did", to the school district, simply because she was a school district employee. However, the Court also dismissed Ann Tierney's claim of retaliation under *Title IX*, which specifically protects students and <u>employees</u> in public educational institutions from retaliation for reporting alleged sexual harassment. The Court ruled that *Title IX* did not cover Ann Tierney since she was not a *"participant"* in a *Title IX* program. The Plaintiffs <u>are not</u> re-alleging those Federal Claims for adjudication in this Complaint, but list the causes of action only to avoid any possibility that the tender of this Complaint has waived those Federal claims. However, all prior claims against the defendants were dismissed <u>without</u> prejudice.



violations and the operation of the Quincy High School Swim Team at Sheridan Swim Club. These individuals provided false and misleading information to the School District regarding the operation of the QHS swim program at Sheridan. At this point in time, Schnack held no official office at Sheridan Swim Club.

26. The School District knew the information from Schnack, Julie Anderson, and Powers was false and misleading, but was deliberately indifferent to the deception and did not pursue the matter. The School District turned a "blind eye" to Powers misconduct and to Sheridan's deception and breach of contract.

27. On or about December 21, 1998, Powers, Sheridan officials, and the School District targeted the Plaintiffs for retaliation for their free speech. Powers made defamatory, false, and misleading statements to student members of the Quincy High School Boys Swim Team. Powers mentioned "Bob Tierney" by name and made false statements regarding Mr. Tierney's actions and speech with the School District Officials. Powers also stated his intentions to continue to knowingly violate IHSA and School District policy and rules regarding operation of the Quincy High School Swim Program.

28. The parents of a member of the Quincy High School Boys swim team reported Powers' improper speech and misconduct to Powers' immediate superiors who were also senior School District Administrators. One of these parents who reported Powers' misconduct was also a teacher in the Quincy School District.

29. Again, the School District engaged in deliberate indifference and refused to take any action regarding Powers' misconduct. The School District turned a "blind eye" to Powers misconduct and improper operation of the high school swim program, and to the hostile, educational environment at Sheridan.

30. In January 1999, Defendant Schnack, colluded and conspired with Powers and others, in an attempt to cover-up continued IHSA violations involving the Quincy High School Boys swim team. Acting upon information from the School District, Schnack alerted Powers to a possible surprise visit from School District officials to a high school swim practice session at Sheridan Swim Club.

31. Shortly thereafter, Schnack and Sheridan began a campaign of harassment, retaliation, and intimidation of a Quincy High School student, while the student was in the workplace at Sheridan. The student had been a member of the Quincy High School Boys swim

14

team. He and his parents had also reported Powers' misconduct to School Administrators. This retaliation included negatively impacting the student's working conditions at Sheridan Swim Club.

32. This retaliation was also reported to the School District, and again the School District engaged in deliberate indifference and refused to take any action regarding Powers' misconduct or regarding Schnack/Sheridan's retaliation against a Quincy high school student for reporting the misconduct of a School District employee. The School District turned a "blind eye" to Powers misconduct and Sheridan's retaliation, and implemented a policy of deliberate indifference to reports of harassment and retaliation of school district students and employees by Sheridan officials, and to the hostile, educational environment at Sheridan.

33. During the 1998/99 school year, the School District aided and abetted Sheridan's campaign of retaliation and intimidation of the Plaintiffs, and of the other students and families who reported the misconduct of Powers, by providing confidential information to Sheridan, and engaging in deliberate indifference and turning a "blind eye" to the reports of Powers' misconduct, and to Sheridan's retaliation, breach of contract, and to the hostile, educational environment at Sheridan.

34. The School District, School Board President, James Citro, and School Board attorney, Dennis Gorman, individually and by joint action, aided and abetted Sheridan's misconduct, by improper overt and covert acts or omissions, and conspiracy.

35. Board President Citro, arrogated to himself and to Gorman, operational control and authority over the Quincy School District, especially regarding personnel issues. Gorman relinquished his solitary, insular role as school board attorney, and became the senior policy-making agent of the Quincy School Board, whose conduct and actions occurred under color of state law. Citro unilaterally designated school board attorney Gorman, as the de-facto superintendent of schools with direction and control authority over Dr. Anderson and other school district administrators. However, Gorman did not have any of the educational degrees or certificates required by State law, to act as a Superintendent of any Illinois Public School District.

36. Citro and Gorman, improperly and unlawfully removed school Superintendent Anderson, as the senior policy-making agent for the School District, and as the senior school official responsible for any investigation of Powers.



15

37. In February 1999, per the unilateral orders of Citro, Dr. Anderson was improperly and unlawfully removed from active involvement in any investigation or supervision of Powers and the Quincy High School swim program. Citro and Gorman specifically ordered Dr. Anderson to take no action regarding the Tierney's reports of Powers' misconduct. [6]

38. In February 1999, the Plaintiffs learned of the "massages" from a letter written by the parent of another girl who was also "massaged". On about February 26, 1999, the Tierneys, accompanied by another parent of a girl who was also "massaged", reported the massages to School Board members Citro, Kirlin, and to Deputy Superintendent, Nick Schildt ("Schildt"). At this meeting, Citro directed Schildt to conduct a "thorough and complete investigation" of Powers and the Quincy High School swim program. At the request of Schildt, both sets of parents agreed to make their daughters available for an interview.

39. On or about February 28, 1999, Schildt and School District employee, Teri Conboy ("Conboy") conducted interviews of two QHS female swimmers who had been "massaged" and their parents. Schildt and Conboy then prepared a confidential report *("Schildt/Report")*. The *Schildt Report* was then given to School Board President, Citro, and to attorney/acting school Superintendent, Dennis Gorman.

40. In retaliation against the Tierneys for reporting Powers misconduct, Citro unilaterally, arbitrarily, and unlawfully terminated the investigation of Powers. Citro improperly and unlawfully also removed Deputy School Superintendent Schildt, as the school official responsible for any investigation of Powers. Citro ordered Schildt to cease any further investigation of Powers, under the ruse that the Tierneys would not accept the results of any investigation of Powers. The investigation of Powers was dropped because of Citro's animosity and prejudicial attitude towards the Tierneys over the reporting of Powers misconduct.

41. School Board President Citro, and school attorney Gorman, obstructed the investigation of Powers and of the "massages". Citro unilaterally removed the two most senior school district officials from any involvement with an investigation of Powers. Citro vested authority for the direction and control of any investigation to Gorman, who in turn agreed to

---

[6] In May 1999, Dr. Anderson was terminated as Superintendent of the Quincy Public School District. He was paid $190,000 after agreeing to sign a confidentiality agreement, which prohibits him from making any public comments about the Quincy School Board "that could be considered negative". He subsequently left the Quincy area in June 1999.



suppress any investigation. In joint action with Citro, Gorman withheld reports and evidence of Powers' misconduct from other School Board members and from school district administrators. Citro and Gorman agreed to initiate a campaign to cover-up Powers misconduct, intimidate witnesses, and sweep the whole matter under the rug.

42. The School District and Gorman refused and/or failed to report the "massages" to the Illinois Department of Children and Family Services, were deliberately indifferent, and refused to conduct an investigation in the manner prescribed by written School District Policy, and by *Title IX*.[7] However, the School District and Gorman unlawfully disclosed the Tierney's' reporting of Powers' misconduct to Sheridan board members and CLUB members.

43. As part of a joint effort to suppress any investigation of Powers, Gorman divulged the contents of the confidential *Schildt Report* to Judge Chet Vahle. Gorman did not seek or obtain permission to release this information from the parents or students whose personal statements were contained in the report. These disclosures were a willful and wanton violation of 20 U.S.C. Section 1232g. *Family Educational and Privacy Rights Act* (FERPA), and *The Illinois School Student Records Act* 105 ILCS 10/1-10 et seq. Gorman and the School District were keenly aware of the fact that the *Schildt/Conboy* report was confidential and subject to (FERPA) restrictions, yet they willfully and wantonly breached these Federal & State Statutes, and violated the constitutionally protected rights of the Tierneys with the intent to cause damage and harm to the Plaintiffs. The District has asserted that the *Schildt Report* was subject to *FERPA* restrictions and also obtained a protective order in State Court.[8]

---

[7] Per the Federal Register Part VII, Department of Education, Office of Civil Rights: / Vol 62, No. 49 / March 13, 1997,

> Once a school has notice of possible sexual harassment of students – whether carried out by employees, other students, or third parties - <u>it should take immediate and appropriate steps to investigate</u> or otherwise determine what occurred and take steps reasonable calculated to end any harassment, eliminate a hostile environment if one has been created, and prevent harassment from occurring again...
> In all cases <u>the inquiry must be prompt, thorough, and impartial</u>....
> In all cases, <u>schools should make every effort to prevent public disclosure of the names</u> of all parties involved, except to the extent necessary to carry out an investigation.

[8] The School District refused to turn over the *Schildt Report* during Initial Disclosure in February 2000. The District claimed that the document was subjected to *FERPA* protection. In July 2002, the Quincy School District again acknowledged that the *Schildt Report* was a statutorily protected document. The District sought and obtained a protective order in State Court in order to protect the contents of the *Schildt Report* from release to anyone other than the parties and attorneys of record in this litigation.

17

44. Gorman unlawfully disclosed the *Schildt Report* to Judge Chet Vahle in Vahle's personal chambers at the 8th Circuit Courthouse, after Gorman obtained the *Schildt Report* from Schildt in early March 1999. Gorman did so as the de-facto school Superintendent, and policy-making agent of the School District acting under color of state law. [9]

45. Gorman unlawfully divulged the contents of the *Schildt Report* to Vahle in order to alert Vahle to the complaints from the parents and students about the events that occurred in Vahle's home, and in order to obtain Vahle's assistance, agreement, and support *(while acting with the power and prestige of a sitting Judge)* of Sheridan's and the School District's joint efforts to conceal the misconduct of Powers, and to violate the constitutionally protected rights of the Tierneys, by acts of defamation, retaliation, and intimidation of the Plaintiffs and others, who reported Powers' misconduct.

46. Shortly after the Tierneys reported the "massages" and Powers' misconduct, School District employee Kevin Polchowski confronted Bob Tierney at Sheridan facilities, and in retaliation for reporting the "massages", Polchowski threatened to physically batter and harm him [Tierney]. Polchowski was an employee of both the School District and Sheridan, acting within the course and scope of his employment and under color of state law.

47. Polchowski was employed by the School District as a substitute teacher and as the Quincy High School Asst. Swim coach under the direction, control, and authority of Quincy High School coach, Richard Powers. Sheridan Swim Club also employed Polchowski as the Sheridan Swim Team Asst. swim coach under the direction, control, and authority of Sheridan Swim Team coach, Richard Powers. Polchowski was also a mandated reporter subject to the provisions of *The Illinois Abused and Neglected Child Reporting Act,* 325 ILCS 5/1 et seq., and other ILCS Statutes.

48. Between March 3, and April 14, 1999, acting upon information provided to them by the School District and Gorman, Vahle colluded and conspired with Gorman and Defendants Schnack, Julie Anderson, Robert Meyers, and others, by engaging in an orchestrated, coordinated campaign of mailing letters to officials of the School District. The letters dealt with

---

[9] Chet Vahle is an Associate Judge in the 8th Judicial Circuit of the State of Illinois. Vahle is a past President of the Sheridan Swim team Booster Club, and as stated in his letter, Vahle is heavily involved in Sheridan Swim Team affairs. Based on information and belief, Vahle was not at home during the evening of November 13, 1998, and his daughter was not "massaged".

Powers' status as the Quincy High School Swim Team coach and conveyed false and misleading information.

49. The letters were sent in order to discredit, damage, and retaliate against the Tierney's and others, interfere with the Tierney's' right to petition the government, suppress the School District's investigation of Powers' misconduct, to intimidate other witnesses regarding Powers' misconduct, and to prevent any changes to the high school swim program or the coaching status of Powers.

50. In an attempt to discredit any reports of Powers' misconduct, the letters attacked the credibility and motives of any and all persons who had complained of Powers and Sheridan's misconduct. None of the letters specifically mentioned or denied any misconduct by Powers. They rebuked and criticized the people who reported any complaints about Powers. Many of the letters were from people who did not have children in Quincy High School. One letter was from the <u>grandparents</u> of a Sheridan swimmer who was only in the 7th grade.

51. Judge Vahle took part in this campaign and conspiracy and used the power and prestige of his judicial office by writing his letter on the letterhead of the Circuit Court of the Eighth Judicial Circuit of the State of Illinois and mailing the letter to (3) three School District Administrators.

52. The Vahle Letter states:

> "I write to offer my views on the current *status* of the Quincy High swim team and its coach, Rick Powers. . . . This letter is written from a partly personal, partly *professional* viewpoint." (Emphasis added)

53. The Vahle Letter further states:

> <u>"I would discourage anyone from attempting to change the program or the coach</u>......
> Frankly, this letter is written with knowledge on my part that a certain misguided individual has been making rumors and innuendoes about the coach and his program. I will not honor that individual's baffling efforts with a description or a response because I believe they fall in the same class of <u>paranoid misrepresentations and falsehoods</u> about the swim team program that the same individual communicated to my wife and me in years past." (Emphasis added)

54. The Vahle letter's reference to the "individual" as quoted in the previous paragraph was aimed at Bob Tierney and was understood by the recipients of the letter as Bob

19

