**E-FILED**
Wednesday, 15 December, 2004 03:24:44 PM
Clerk, U.S. District Court, ILCD

one day after becoming a Sheridan Board member, Schnack mailed a letter to Gorman, (Gorman was acting as the de-facto School District Superintendent per the instructions of School Board President, Citro- see ¶¶ 34-37).

*(A true and correct copy of Schnack's letter of March 29, 1999 is attached as Exhibit A-3)*

114.   In response to the reporting of Powers' misconduct with Meryl Tierney and other minor females, Schnack falsely stated in this letter of March 29, that Meryl Tierney was again swimming at Sheridan "under" the coaching of Powers. The letter was sent to discredit the Tierney's reporting of Powers misconduct with Meryl Tierney and other female swimmers, damage, and retaliate against the Tierney's, interfere with the Tierney's' right to petition the government, suppress the School District's investigation of Powers' misconduct, and to prevent any changes to the swim program or the coaching status of Powers. Schnack even offered "advantageous" benefits and incentives to the School District if the contracts of Powers and Sheridan could be renewed.

115.   Just prior to the April 14, 1999 Board meeting at Sheridan, Schnack colluded and conspired with Defendants Barney Bier and Bob Meyer to retaliate against the Tierneys. Bob Meyer agreed to make accusations against Plaintiff Bob Tierney, regarding the QHS Swim coach, Rick Powers, during his (Meyer's) monthly report to the Board on the operation of the Sheridan Swim Team. Barney Bier agreed to second Schnack's motion to retaliate against the Tierneys.

116.   On or about April 14, 1999, Defendant Schnack made a motion to *"suspend"* the Tierneys' membership in Sheridan, after Schnack engaged in a ten minute "diatribe" against Plaintiff Bob Tierney. Defendant Bier seconded the motion. The Sheridan Board approved the motion. This event occurred just 2 days after the Vahle letter was sent to the School District. The motion to *"suspend"* the Tierney's' membership was made after Defendant Robert Meyer (President of the Sheridan Swim Team) made the following comments:

> The manager's report was put on hold in order to hear the [Sheridan] swim team report from Bob Meyer. Bob reviewed the [Sheridan] swim team finance report and handed out copies to the board members. <u>Next Bob spoke about the problems associated with Mr. Tierney, including trying to get Rick Powers fired as the Quincy High swim coach. He spoke about Rick Powers and how valuable he [Powers] is to the Sheridan swim team and the importance of maintaining Rick Powers as the Quincy High swim coach.</u> (Emphasis added)



*(A true and correct replication of these Board minutes is attached hereto as Exhibit B)*

117.    The minutes of this Board meeting also reflect the following information about Schnack's *diatribe* and his actions at this Sheridan Board meeting, which consisted of the following: [18]

> "Under old business, there was a lengthy discussion about Bob Tierney and <u>the problems he has caused Sheridan swim club and swim team</u>. Drew [Schnack] made a motion to *suspend* Bob Tierney's membership to Sheridan swim club Barney [Bier] seconded the motion. The motion was passed unanimously." (Emphasis added)

118.    On or about April 15, 1999, the Sheridan Board and Sheridan mailed the Tierneys a letter ("Sheridan Expulsion Letter") notifying the Tierneys that:

a.    The Tierneys' membership was terminated effective immediately.
b.    The Tierneys would be considered trespassers if found on Sheridan property.
c.    The Tierneys' Sheridan Stock certificate was declared Null & Void.
d.    The Tierneys were banned from Sheridan property as a guest or for any function whatsoever.

The Sheridan Expulsion Letter gave no reason or explanation for the action taken by Sheridan and the Sheridan Board.

*(A true and correct copy of the Sheridan Expulsion Letter is attached hereto as Exhibit C)*

119.    The acts implemented by the Sheridan Board per its letter of April 15, 1999, were unlawful acts since there was no motion made or voted on, which authorized the action taken against the Tierneys.

120.    This Sheridan Board meeting was a textbook example of a Kangaroo Court and Star Chamber, and 2 attorneys (Schnack & Bier) orchestrated the entire canard. Schnack engaged in a ten-minute "diatribe" against Plaintiff Bob Tierney, and made false, fraudulent, and unsubstantiated allegations against the Plaintiffs to the Sheridan Board. Schnack cast the Tierneys in the shadow of false light, and failed to provide any evidence in support of his allegations. The Plaintiffs were not provided with any notice of the charges against them nor given any opportunity to respond.

---

[18] Per the testimony of Defendant Barney Bier during his deposition in May 2001, and during his testimony at a Hearing in State Court in July 2002, wherein Bier specifically referred to Schnack comments about Bob Tierney as a "diatribe".



121.    Some of these false allegations involved the Plaintiffs' free speech about issues and activities pertaining to students and employees participating in Athletic Programs of the Quincy Public School District. The Plaintiffs were involved in Athletic Programs of the Quincy School District since 1990 through the participation in those programs of Plaintiff Meryl Tierney and the other Tierney children. Two Sheridan board members have stated under oath that one of the reasons stated by Schnack for taking retaliatory action against the Tierney Family, was based on Schnack's allegation that Bob Tierney had met with Quincy School Superintendent Dr. Anderson and other school officials during the summer of 1997, to discuss the operation of the Quincy High School Swim Program (See ¶ #96)

122.    Schnack falsely accused Plaintiff Bob Tierney of interfering with his [Schnack's] attempts to have the School District utilized Sheridan facilities for the Quincy High School Swim Team, and of preventing his [Schnack] alleged attempts to obtain a donation of a "records board" for the Quincy High School Swim Team.  These false accusations did not involve violations of CLUB By-laws or Rules, but did concern the operation of a traditional public function and demonstrated Sheridan's pervasive entwinement and nexus in the control and operation of the Quincy High School Swim Team.

123.    Schnack breached his fiduciary duty and duty of good faith by fraudulently concealing from the Sheridan Board, the fact that he [Schnack] had made an unauthorized proposal to the School District in July 1997,and that he [Schnack] was representing Powers regarding the Tierney's complaints about Power's misconduct and the 'massages" involving Meryl Tierney. Schnack also failed to inform the Board that he was in the process of attempting to get the School District to renew the coaching contract of his client, Powers. Schnack made the motion to suspend the Tierney's' membership to Sheridan.  More importantly, by prior agreement and conspiracy, Adams County States' Attorney, Barney Bier, seconded the motion.

124.    At all relevant times, Sheridan was obligated to operate pursuant to its Constitution and By-laws ("Sheridan Bylaws"), as they were amended effective March 31, 1996. Article 7, Section 1 of the Sheridan Bylaws requires Sheridan "to carry out the provisions of these by-laws in good faith."

*(A true and correct copy of the Sheridan By-Laws is attached hereto as Exhibit D)*

125.    The Tierneys were shareholders in the CLUB, therefore per the By-laws, Sheridan and the Sheridan Board had an express duty to the Tierneys to comply with all of the terms and

42



conditions of the Sheridan Bylaws and Constitution. Sheridan and the Sheridan Board had a fiduciary duty to the Tierneys to comply with all the terms and conditions of the Sheridan By-laws and Constitution.

126.    Since at least 1996 the Sheridan Board has operated the CLUB in bad faith and breached their fiduciary duties by failing to establish an audit committee as mandated by Article 2, Section 2 of the By-laws, and by failing to maintain or audit the Corporation financial records as mandated by the by-laws. The Board has also breached the following Articles of the By-laws and CLUB Constitution:

a.    By-Laws- Section 1. b, Article 2, Sections 1-10; Article 5, Section 1,  2.a; Article 7, Section 1 & 2; Article 8; Article 11

b.    Constitution- Article 1, Section 2; Article 2, Section 1, Section 3; Article 3, Section 4; Article 4, Section 1, 2 & 3; Article 5, Section 6 & 7.

127.    The CLUB Constitution Sheridan states that shareholders have a financial interest in the assets of the CLUB. The Sheridan stock certificate, and Article V, Section 1 of the Sheridan Bylaws, states that a stock certificate "may be revoked for cause in accordance with such By-Laws *upon refund* of all sums paid to the corporation therefore." The Board of Directors committed conversion of the Tierney's' stock certificate without compensation. (Emphasis added)

128.    At no time did the Tierneys engage in any conduct that constituted a violation of the Constitution, Bylaws, or Rules of Sheridan. The Tierneys were members and shareholders in *good standing* prior to and on, April 14, 1999.

129.    Article 7, Section 2 of the Sheridan Bylaws requires that no member may be expelled or suspended except upon the affirmative vote of 5 directors, which action can only be taken for an infraction of the Sheridan Constitution, Bylaws, or Rules.

130.    According to the Board minutes, Sheridan Board member, Miller, was not present at this Board meeting. Therefore, there were only 6 Board members present. In addition, only 2 Board members were actually eligible to vote on the motion regarding the Tierney's membership.

131.    Sheridan Board Members, Schnack, Bier, Forbes, and Bearden had conflicts of interest and were ineligible to vote per ILCS Statutes governing Not-for-Profit, and/or For-profit Corporations.

132.    According to the Board minutes, Sheridan Board member, Forbes, resigned from the Sheridan Board immediately after voting on the Tierney motion because of a "conflict of interest". This self-acknowledged "conflict of interest" which prevented Forbes from serving as a Board member, existed prior to Forbes vote on the motion against the Tierneys, and even well before the Board meeting began.

133.    Forbes and Bearden were also school district employees and mandated reporters, subject to the provisions of *The Illinois Abused and Neglected Child Reporting Act,* 325 ILCS 5/1 et seq., as was Adams County States Attorney, Barney Bier.

134.    As mandated reporters and teachers and employees of the School District, the actions of Forbes and Bearden were committed within the course and scope of their employment and under color of state law.

135.    As of at least April 14, 1999, an illegally constituted Board of Directors has governed Sheridan Swim Club. According to the Board minutes, Schnack made a motion to have Julie Anderson serve on the Sheridan Board as a replacement for Forbes who resigned due to her self-acknowledged conflict-of-interest.

136.    Article 4, Section 2 of the Sheridan Constitution states: "No Director shall be elected to serve two (2) consecutive three-year terms, but may again serve after an absence from the Board of at least one year". (Emphasis added)

137.    Article 4, Section 1 of the Sheridan Constitution states: "The retiring President, if not elected a Director, shall become an ex-officio member of the Board for one year following such retirement." (Emphasis added)

138.    Julie Anderson had just completed a three (3) year term on the Sheridan Board of Directors and had just retired as Board President. Anderson was ineligible to *"serve"* as a Board member until March of 2000, per the Constitution and Bylaws of Sheridan Swim Club.

139.    At no time prior to their wrongful expulsion were the Tierneys notified by Sheridan of any allegations made against them, nor were the Tierneys given any notice of the proceeding against them, or had any opportunity to hear the charges against them, or any opportunity to defend themselves. Sheridan unlawfully appropriated the Tierney's stock certificate through conversion.

140.    Prior to their wrongful expulsion on approximately April 15, 1999, the Tierneys had been year-round members of Sheridan and stockholders for over 13 years.

44

141.    The Plaintiffs were wrongfully expelled and banned from Sheridan property after Meyer and Schnack made false allegations and misrepresentations regarding the Tierneys' conversations with School District officials about issues and activities concerning the athletic programs and employees of the Quincy Public School District.

142.    The Plaintiffs were wrongfully expelled and banished from Sheridan property in retaliation for engaging in free speech over issues of public concern involving students, employees, and athletic programs of the Quincy Public School District.

143.    All Sheridan Board members initially signed affidavits stating that they had personal knowledge that" Mr. and Mrs. Tierney" had reported Powers misconduct to the Quincy School Board.  However, during Hearings in State Court in June 2002, at least two (2) Sheridan Board members retracted some of their sworn statements reflected in these affidavits.

144.    Sheridan/Sheridan Board engaged in acts of retaliation and intimidation of the Tierneys in an attempt to obstruct and hinder the Plaintiffs from engaging in free speech, and to obstruct and hinder the Plaintiffs from petitioning the government for redress of grievances regarding a traditional public function.

145.    The Plaintiffs were wrongfully expelled from Sheridan in order to discredit them and cast them in the shadow of false light in the eyes of the School District, and to suppress any investigation of Powers' misconduct.

146.    The Plaintiffs were banished from Sheridan property under the criminal threat of "trespasser" in order to obstruct and hinder the Tierneys from witnessing further acts of Powers and Sheridan's misconduct regarding the operation of the Quincy High School swim program – a traditional public function.

147.    Sheridan engaged in State action when it banned the Plaintiffs from School District facilities and traditional public functions otherwise open to the public.  State law requires notice, fair hearing, and due process before such action.  Sheridan's action violated the constitutionally protected rights of the Tierneys guaranteed by the due process clauses of the Fourteenth Amendment regarding liberty and property interests.

148.    Only a School Board, or an agent acting with state actor authority under color of State law, can bar school district students, family members, and especially a school district employee from public school district athletic facilities and events that are otherwise open to the

public. And, only after due process and a fair hearing is provided to those persons. Per the *Illinois School Code* 105 ILCS 5/24-25) et seq.

149.    Sheridan and the Sheridan Board have harassed and intimidated other witnesses to Powers' misconduct, and other witnesses to the Federal litigation. These actions included negatively impacting the terms and conditions of employment of Sheridan employees who were students in the Quincy School District.

150.    The actions of the Sheridan Board and Defendant Robert Meyer were performed in their individual and official capacities and for their personal benefit and were conducted intentionally, maliciously, and with willful and wanton disregard for the rights of the Tierneys.

151.    Sheridan is liable for the actions of the individual Sheridan Board members, the actions of its employees, the actions of Defendant Meyer, and for the actions of Sheridan members who acted in conspiracy with, and/or at the direction of Sheridan Board member(s) or agents of the Sheridan Board.

**B.    Causes of Action Which Occurred After the Plaintiffs Filed A Lawsuit In Federal Court In June 1999 Against Sheridan, Powers, And The Quincy School District**

152.    After the Tierneys filed a lawsuit in Federal Court, the Plaintiffs again engaged in free speech before public sessions of the Quincy School Board on issues of public concern regarding the improper operation of the Quincy high school swim program. The Tierneys also petitioned several State agencies, including the IHSA, for redress of grievances. The Tierneys also engaged in free speech on issues of public concern with the Illinois High School Association (IHSA) and investigators from the Illinois Department (DCFS) of Children and Family Services. The Tierney's' free speech concerned possible violations of School District and Illinois High School Association rules, violations of student rights, sexual harassment and inappropriate sexual conduct involving minors, and other items, were all matters of public concern.

153.    After the Tierneys filed a lawsuit in Federal Court, Powers continued to violate IHSA and School District rules and regulations at the start of the 1999/00 school year. Powers was acting within the course and scope of his employment and under color of state law. The School District again turned a "blind eye" to Powers misconduct. The IHSA subsequently began an investigation of Powers and the Quincy High School Swim Program.

154.    After the Tierneys filed a lawsuit in Federal Court, the School District and Sheridan engaged in a coordinated, joint campaign to violate the constitutionally protected rights

46



of the Plaintiffs. Sheridan and the School District interfered with the Tierney's' rights and attempts to petition the government and the courts for redress of grievances, intimidated, retaliated, and harassed the Plaintiffs (and other witnesses) for filing a lawsuit in Federal Court, and for engaging in free speech on issues of public concern with several State agencies.

155.    Powers and Sheridan continued their campaign of retaliation against students and families who had also reported Powers misconduct. Again, the School District was deliberately indifferent to this misconduct and to the hostile, educational environment at Sheridan and the wrongful operation of a traditional public function.

156.    After the Tierneys filed a lawsuit in Federal Court, Sheridan and the Sheridan Board harassed and intimidated other witnesses to Powers' misconduct, and other witnesses in the Federal case. These actions included negatively impacting the terms and conditions of employment of Sheridan employees who were also students in the Quincy School District.

157.    After the Tierneys filed a lawsuit in Federal Court, the School District interfered with the Tierney's' rights and attempts to petition the government and the Courts for redress of grievances, and engaged in acts of retaliation and intimidation of the Plaintiffs, and others. These acts included successful efforts to divert and limit the IHSA investigation of the High School Swim Program. The School Board voted in public session to authorize legal action against the IHSA, and fatally afflicted the Plaintiffs' attempts to petition the government for redress of grievances.

158.    The District also disseminated false and misleading information regarding the IHSA investigation, to the press and at public school board meetings. In addition, school board President Citro, threatened to expel a fellow School District Board member from School Board meetings unless he (board member) "disassociated" himself from the Tierneys. This duly elected school board member had voted to terminate Powers coaching contract and had also engaged in free speech with an IHSA investigator.

159.    After the Tierneys filed a lawsuit in Federal Court, and engaged in free speech before the Quincy School Board and other State actors and agencies, Schnack made false and misleading statements for public consumption, regarding the Plaintiff's expulsion from Sheridan. Schnack's statements were quoted in a Hannibal, Mo. newspaper.

160.    Speaking in his dual capacities as Powers' attorney and a Sheridan Board member, Schnack also stated his intentions to orchestrate and direct Sheridan's campaign of

47



retaliation against the Hannibal, Mo. business community, because the Hannibal newspaper reported the filing of the lawsuit.

161.    Schnack's statements to the newspaper were made in order to discredit, humiliate, and retaliate against the Tierneys and others, cast the Tierneys in the shadow of false light, interfere with the Tierney's right to petition the government and the Courts, suppress any School District investigation of Powers' misconduct, and to intimidate other persons who had knowledge of Power's and Sheridan's misconduct.

162.    During the first week of November 1999, Sheridan Swim Club hosted a meeting between members of Sheridan Swim Club and several senior School District Administrators including Superintendent Dr. Joseph Bocke. During this unprecedented meeting, Bocke and the other school officials, acting under color of state law, unlawfully divulged confidential information from an internal School District/IHSA investigation involving personnel and students of Quincy High School. In retaliation against the plaintiffs, the Tierneys were identified as the person(s) who spoke with the IHSA investigator. This action was taken in furtherance of Sheridan's and the School District's joint campaign of harassment and retaliation of the Tierneys, and was a violation of the constitutionally protected rights of the Tierneys.

163.    These disclosures and discussions were a willful and wanton violation of 20 U.S.C. Section 1232g. *Family Educational and Privacy Rights Act* (FERPA), and *The Illinois School Student Records Act* 105 ILCS 10/1-10 et seq., and was perpetrated with the intent to cause damage and harm to the Plaintiffs.

164.    <u>Within a matter of days following this meeting at Sheridan,</u> the Plaintiffs began receiving obscene, harassing, anonymous phone calls, from regular phones as well as from cell phones. Brief references were made about the high school swim team program and obscene invectives were uttered and directed at the Plaintiffs. On some occasions, the Tierney children answered the phone calls. The Adams County Sheriff's Department attempted to investigate some of these phone calls after the Plaintiffs filed a report and requested an investigation.

165.    It was ultimately established that these harassing phone calls were from defendants in the Federal lawsuit, members and officials of Sheridan Swim Club, employees of the Quincy School District, and individuals associated with the Quincy High School Swim Program.



166.    After the Tierneys filed a lawsuit in Federal Court, and engaged in free speech with the Quincy School Board and other State actors and agencies, the Tierneys received a harassing, obscene telephone call, from Defendant Schnack, and Sheridan Swim Club members Doug & Debbie Olson. A brief reference was made to the high school swim team and obscene invectives were uttered and directed at the Plaintiffs. [19]

167.    On information and belief, Plaintiffs' allege that Schnack made an anonymous, obscene, harassing phone call to the Tierneys, using Debbie Olson's cell phone, with the knowledge, permission, and agreement of the Olsons. Doug Olson was acting within the course and scope of his apparent authority as an officer of the Sheridan Booster Club, and/or at the direction of Sheridan Board member, Schnack. Debbie Olson was acting within the course and scope of her employment with the Quincy School District and/or at the direction of Sheridan Board member, Schnack.

168.    Schnack and the Olsons conspired and colluded to violate the constitutionally protected rights of the Plaintiffs, to interfere with the Tierneys' rights and attempts to petition the government and the Courts, to intimidate, retaliate, and harass the Tierneys for filing a lawsuit in Federal Court, and for engaging in free speech on issues of public concern with several State agencies.

169.    On or about December 18, 1999, Defendant Schnack conspired and colluded with the Olsons to obstruct, hinder, and impede an investigation by the Adams County Sheriff's Department of the harassing phone calls directed toward the Tierney family by Defendant Schnack and the Olsons. [20]

---

[19]    Debbie Olson is a teacher in the Quincy School District and a mandated reporter, and subject to the same reporting obligations as Ann Tierney. Olson's daughter was also a member of the 1998 through 2001 Quincy High School Girls Swim Teams and the Sheridan Swim Team. Based on information and belief, Debbie Olson witnessed the "kissing" incident involving Powers and a member of the girls' high school swim team. Olson also had knowledge of the improper "massages". Olson's daughter was in the Vahle home during the improper "massages". Debbie Olson was the President of the Quincy High School Girls Swim Team Booster Club during the 1998/99 & 1999/2000 school years. Debbie Olson also became the President of the Sheridan Swim Team Booster club in May 2000 replacing Defendant Robert Meyer. Doug Olson was the Vice-President of the Sheridan Swim team booster Club. Doug Olson, along with Defendant Robert Meyer, subsequently became a member of the Sheridan Club Board in March 2001. Doug Olson was subsequently elevated to the Presidency of the Sheridan Club Board in April 2002.

[20] These obscene phone calls were criminal offenses according to Illinois Criminal Statute: The Harassing and Obscene Communications Act 720 ILCS 135/ et. seq.



170.    An Officer with the Adams County Sheriff's Dept. went to the Olson's home and questioned them about their knowledge of the phone call made to the Tierneys on the cell phone registered to Debbie Olson. The Olsons admitted that they were aware of the call and knew who the person was who made the phone call to the Tierneys. But the Olsons refused to divulge the name and told the Officer they wanted to call the person who made the phone call. The Officer allowed them to make a phone call.

171.    On information and belief, Plaintiffs' allege that Doug Olson called Defendant Schnack. After a conversation with Schnack, the Olsons agreed not to provide a name to the Officer. The Olsons then informed the Officer that they would not reveal the identity of the caller.

172.    The Officer warned the Olsons about the criminal consequences of obstructing justice and interfering with a criminal investigation, and warned that Olsons that both of them could be arrested for their involvement with the phone call, and for interfering with the investigation. The Olsons asked if they could make a phone call to an attorney.

173.    The Olsons called Sheridan Board member Schnack, and handed the phone to the Officer and identified the person on the phone as [Defendant] Schnack.

174.    Defendant Schnack immediately represented himself to the investigating Officer as the Olson's attorney. Schnack told the officer he had instructed the Olsons not to speak with the Officer. Schnack stated that the Olsons would contact the Officer later in the week and make arrangements to speak with him.

175.    Based on information and belief, Schnack and/or the Olsons subsequently contacted the Sheriff's department and informed them that the Olsons would not be providing any information.

176.    Schnack's misconduct, while acting in multiple capacities, gave rise to multiple conflicts of interests and misconduct as an attorney. Schnack was a Defendant in a Federal Lawsuit, a Sheridan Board member, and an attorney providing legal counsel to the Olsons and to swim coach Powers. Schnack was also a co-perpetrator of the obscene phone call made to the Tierneys on the Olson's cell phone, which was the subject of a criminal investigation by the Adams County Sheriff's Department.

177.    Schnack instructed the Olsons to interfere with, obstruct, and impede an investigation by constituted authorities of the State into a criminal incident in which he

50



(Schnack) was personally involved. Schnack violated the constitutionally protected rights of the Plaintiffs.

178.    Schnack instructed the Olsons to obstruct, hinder, and impede an investigation by constituted authorities of the State into the harassment and intimidation of the Plaintiffs in a Federal lawsuit and violated the constitutionally protected rights of the Plaintiffs.

179.    The Olsons agreed with Schnack's directives and refused to provide any further information to the Adams County Sheriff's Dept. The information withheld by the Olsons was crucial and essential to any investigation and/or judicial proceeding. Withholding this information fatally afflicted the Plaintiffs attempts to pursue civil and/or criminal action against the Olsons, Schnack, and Sheridan over these incidents. Doug Olson was acting within the scope of his apparent authority as an officer of the Sheridan Booster Club, and/or at the direction of Sheridan Board member, Schnack. Debbie Olson was acting within the course and scope of her employment with the Quincy School District and/or at the direction of Sheridan Board member, Schnack.

180.    Sheridan is liable for the actions of the individual Sheridan Board members, the actions of its employees, and the actions of Doug Olson. The actions of Sheridan Board member Schnack and the actions of Sheridan Booster Club officer, Doug Olson, were performed in their individual and official capacities, and for their personal benefit, and were conducted intentionally, maliciously, and with willful and wanton disregard for the constitutionally protected rights of the Tierneys. [21]

181.    The Adams County Sheriff's Department turned over all investigation reports of the harassing phone calls to the Adams County States' Attorney, Barney Bier. (Bier is also a Sheridan Swim Club board member and Board President).

182.    After the investigation reports were turned over to Defendant Bier, the Plaintiffs petitioned the Adams County States' Attorney [Bier] for redress of grievances, by sending a letter to Defendant Bier, wherein the Plaintiffs requested an investigation and prosecution of all parties

---

[21]  Sheridan's liability and responsibility for Doug Olson's conduct in joint action with Schnack, was acknowledged and ratified by the Sheridan Board when the Board agreed to pay the legal fees of Doug Olson after the Olsons were named as a defendant in the Plaintiffs' Federal Civil lawsuit. The School District's liability and responsibility for the conduct of Debbie Olson with Schnack was acknowledged and ratified by the School Board when the School District agreed to pay the legal fees of Debbie Olson and also rewarded her with extra duties and pay.



involved in the harassing, obscene calls made to the Plaintiffs. The Plaintiffs specifically requested a complete investigation and prosecution of all parties involved with the obscene, intimidating, harassing phone calls.

183.    On information and belief, Plaintiffs' allege that Defendant Bier, acting under color of state law as the Adams County States' Attorney reached an agreement with Schnack to violate the constitutionally protected rights of the Plaintiffs. Bier divulged to Defendant Schnack that he [Bier] would obstruct and hinder the investigation of the phone calls by removing crucial investigation reports of the harassing, obscene phone calls from the Sheriff's case file, and then forward the file to the State of Illinois Appellate Prosecutor's Office.

184.    Acting upon this information from Defendant Bier, Defendant Schnack, acting on behalf of Sheridan Swim Club, mailed a letter to each Quincy School Board member. Schnack's letter conveyed false and misleading statements concerning alleged investigations by various law enforcement agencies of individuals and incidents concerning the swim programs of Sheridan and Quincy High School.

185.    Defendant Schnack falsely asserted that the "Adams County States Attorney", the "Illinois State Police", and the "State of Illinois Appellate Prosecutors Office", and other agencies had conducted investigation and rendered conclusions.

186.    Schnack's letter conveyed false and misleading statements. Schnack's letter discredited, damaged, and retaliated against the Tierneys, cast the Tierneys in the shadow of false light, interfered with the Tierneys' rights and attempts to petition the government and the Courts, suppressed any investigation of the QHS swim program and of the harassing obscene phone calls, and intimidated other witnesses regarding Power's and Sheridan's misconduct.
*(A true and correct copy of Schnack's letter of Feb. 3, 2000, is attached hereto as Exhibit E)*

187.    Schnack's letter was rife with false and misleading statements concerning the operation of the Quincy High School Swim Program during the 1998/99 & 1999/2000 school years.

188.    Schnack's letter also conveyed his offer to provide Sheridan facilities and equipment free of charge to the School District in return for special considerations from the School District in the hiring of the next Quincy high school swim coach.

189.    Defendant Bier mailed the Sheriffs' investigation reports to the State of Illinois Appellate Prosecutor's Office after he [Bier] first removed all the criminal investigation reports



of the phone call involving Schnack and the Olsons, and the reports detailing Schnack and the Olson's conversations with the investigating Officer, and the subsequent obstruction of the investigation by Schnack and the Olsons. These missing reports comprised the bulk of the file and were crucial and essential to any investigation and/or judicial proceeding. After receiving the altered file from Bier, the Illinois Appellate Prosecutor's Office took no action.

190.    Sheridan Board member Bier, acting under of color of state law as the Adams County States' Attorney, conspired with Sheridan Board member Schnack to violate the constitutionally protected rights of the Plaintiffs, to interfere with the Tierney's' rights and attempts to petition the government, to further retaliate against the Tierneys for petitioning various State Actors for redress of grievances, for filing a lawsuit in federal court, and for engaging in free speech on issues of public concern with several State actors and agencies.

191.    Defendants, Bier and Schnack interfered with and/or prevented the Plaintiffs from petitioning the State for redress of grievances. Bier and Schnack's misconduct fatally afflicted the Plaintiffs attempts to pursue civil and/or criminal action against the Olsons, Schnack, and Sheridan over these incidents. Just one month later, in March of 2000, Defendant Bier was elevated to the position of President of the Sheridan Board of Directors.

192.    Defendants Bier and Schnack obstructed, hindered, and impeded an investigation by constituted authorities of the State of the harassing phone calls directed toward the Tierney family by Schnack and the Olsons. Bier and Schnack obstructed and impeded an investigation by constituted authorities of the State into the harassment and intimidation of the Plaintiffs in a Federal lawsuit.

193.    Defendant Bier unlawfully removed, altered, or otherwise concealed, evidence of the criminal conduct of Schnack and the Olson's from the Illinois Appellate Prosecutors Office.

194.    Bier's misconduct, while acting in multiple capacities, gave rise to multiple conflicts of interests and misconduct in office by a public official. Bier was a Defendant in a Federal Lawsuit (along with Schnack and Sheridan), a Sheridan Board member, and the Adams County States' Attorney. This misconduct by Defendant Barney Bier, acting under the color of state law, represents, at least, the abuse of public office by a public official in order to aid private parties in litigation, in which the Office of the Adams County States' Attorney has no interest or standing in view of Bier's self-acknowledged conflicts-of-interest. And again establishes a symbiotic relationship between Sheridan/Sheridan Board and State Actors.



195.    Defendant Bier engaged in willful and wanton misconduct as the Adams County States' Attorney under color of state law on behalf of Schnack, the Olsons, and Sheridan Swim Club. Bier engaged in renegade conduct far outside the legitimate course and scope of his employment duties. Bier obstructed a criminal investigation by engaging in acts that were clearly beyond his purview, discretion, and jurisdiction per his acknowledged conflicts-of-interest.

196.    No State or Federal law provides a cloak of immunity that allows a States Attorney "discretion" to violate the constitutionally protected rights of the Tierneys.

197.    The Tierneys informed the Quincy School Board of the Olsons involvement with the illegal phone calls and requested an investigation of the harassing, obscene phone calls. On information and belief, School Board President Koch, and school board attorney Gorman, told the other School Board members that the District did not have to take any action regarding the phone calls made to the Plaintiffs. The School District again turned a "blind eye" to acts of retaliation against the Tierneys, by Sheridan officials and school district employees. [22]

198.    After receiving reports of harassing, obscene phone calls, made to a School District Administrator by another School District employee, School Board President, Koch, school Board attorney, Gorman, and the School District again violated the constitutionally protected rights of the Plaintiffs, and retaliated against the Tierneys for petitioning the government and the Courts, violated *Title IX*, and engaged in deliberate indifference by refusing to investigate or take any action regarding the harassing, obscene phone calls.

199.    In breach of fiduciary duties and the duty of operation in good faith, the Sheridan Board voted to pay the legal fees of the Olsons. Ultimately, the School District paid for Debbie Olson's legal expenses in defending her against the same civil lawsuit, while Sheridan in turn, paid for Doug Olson's legal expenses. These actions further demonstrate the nexus and coordinated conspiracy between Sheridan and the School District. Per 105 ILCS 5/10-20.20 and 5/10-22.3, the School District should not have paid for Debbie Olson's legal expenses unless

---

[22] The Olsons **are not** named as individual defendants in this Complaint for their involvement with the phone calls and subsequent obstruction of the police investigation, since the Federal Court also refused to recognize the existence of any allegation or evidence which sufficiently established a genuine issue of material fact that the Olsons were state actors, and therefore dismissed the Olsons as defendants in the Federal litigation.

54



Debbie Olson was acting within the course and scope of her employment, or at the direction of the School Board.

200.   The District also rewarded Debbie Olson with extra professional duties, responsibilities, and compensation, while at the same time engaging in punitive, discriminatory action against Ann Tierney in the workplace, including but not limited to denying her career advancement, removing some professional duties, and reducing her compensation. (See ¶¶ 85-87)

201.   In furtherance of the School District's nexus with Sheridan, and in ratification of the campaign of retaliation against the Plaintiffs, and of the misconduct of school District employees and agents, the School District subsequently hired the next Sheridan Swim coach as the Quincy High School swim coach. Sheridan thus maintained operational control of the Quincy High School Swim Program.

202.   In July 1999, during a Hearing in Federal Court, Sheridan's attorney, Paul Bown, made oral representations to the Court. Bown stated that in the future Meryl Tierney would be allowed to participate in activities at Sheridan as a member of the Quincy High School and Sheridan Swim Teams. These representations mislead the Court in order to divert immediate judicial intervention.

203.   The Court accepted these representations without reservation, stating in a Court Order that Sheridan's attorney made the statement in his capacity as an "Officer of the Court". No evidence or testimony was submitted to substantiate or corroborate these representations. Nor did the Court inquire into the existence of any corroborating evidence to establish a foundation for Bown's representations.

204.   In breach of representations made by an Officer of the Court in Federal Court, Sheridan Swim Team officials subsequently terminated Meryl Tierney's membership on the Sheridan/USA Swimming Swim Team without notice, fair hearing, or due process. Meryl Tierney was barred from any participation in swimming activities as a member of the Sheridan Swim Team in order to further retaliate against the Plaintiffs for petitioning various State Actors for redress of grievances, for filing a lawsuit in federal court, and for engaging in free speech on issues of public concern. Defendant Meyer was still the President of the Sheridan Swim Team Booster Club at this time.



205.   In July 2000, Sheridan engaged in further acts of retaliation and intimidation when a Sheridan employee approached Plaintiff Bob Tierney at the edge of the Tierney property. In the presence of the Tierney children and other witnesses, and while acting on behalf of Sheridan Swim Club, the employee informed Mr. Tierney that no member of the Tierney family was allowed on any Sheridan property "for any function whatsoever" per orders from several Sheridan Board members. The employee stated that this ban included Meryl Tierney and all other Tierney family members.

206.   The Sheridan employee was acting within the course and scope of his employment, and/or at the direction of the Sheridan Board. The Sheridan employee referred to Sheridan's letter [April 15, 1999] sent to the Plaintiffs, and to his recent conversations with Sheridan Board member, Schnack, and Board President, Bier.

207.   Sheridan again engaged in State action when it reaffirmed and re-implemented Sheridan's banning of the Plaintiffs from School District facilities and functions otherwise open to the public. State law requires notice, fair hearing, and due process before such action. Sheridan's action violated the constitutionally protected rights of the Tierneys guaranteed by the due process clauses of the Fourteenth Amendment regarding liberty and property interests. This action was also a breach of representation made by an Officer of the Court in Federal Court.

208.   In furtherance of the Nexus with the School District and the conspiracy between Sheridan Board members and various CLUB members, the Sheridan Board has systematically recycled and selected certain Club members for membership on the Sheridan Board, who were entwined in Sheridan's campaign to establish and maintain operational control of the Quincy High School Swim Program. Some of these CLUB members were already defendants in the Federal lawsuit as a result of their participation in prior acts of misconduct directed against the Plaintiffs. In addition, these new Board members were subsequently elevated to positions as Sheridan Board officers thereby giving them control and direction authority over the Sheridan Board. The Sheridan Board selected these individuals in order to sustain Sheridan's campaign of retaliation against the Plaintiffs and to maintain the cover-up of the misconduct of the Sheridan Board.

209.   In March 2000, Defendant Bier was elevated to the position of President of the Sheridan Board and Defendant Patricia Crane was selected to become a Board member. In March 2001, Doug Olson and Robert Meyer, who were already defendants in the Federal



lawsuit, were selected for the only two open positions on the Sheridan Board of Directors. In March 2002, Barb Selvy and Robert Hultz were selected to become Sheridan Board members. On information and belief, in April 2002, the Sheridan Board immediately elevated Olson, Meyer, and Selvy to the positions of President, Vice-President, and Secretary (respectively) of the Sheridan Board of Directors. [23]

210.    During 2+ years of litigation between June 1999, and October 2001, Sheridan Swim Club only produced one (1) sheet of paper pursuant to Initial Disclosure, Request to Produce Documents at Depositions, and two (2) Motions to Compel Disclosure. This document was the Sheridan Board minutes from April 1999, which was produced at Initial Disclosure in March 2000. No other Board minutes or documents of any kind were ever produced by Sheridan, despite the fact that the Sheridan Board held numerous discussions from at least September 1998 through June 1999, regarding the QHS personal, student activities of Meryl Tierney, and regarding the Tierney's complaints to the Quincy School District about Powers misconduct. After the Federal lawsuit was filed, Defendants Schnack and Bier (who are also attorneys) assumed control and responsibility for Sheridan Corporate records and Board minutes from past years, and refused to produce these relevant Board minutes and records during the period of time that Sheridan was under Federal Court jurisdiction.

211.    In furtherance of a conspiracy between Sheridan Board members and various CLUB members, the Sheridan Board fraudulently operated the CLUB by misusing the facilities of the CLUB, and misappropriating the financial assets of the CLUB. Sheridan gave the School District free use of Sheridan facilities and free use the Sheridan Swim Team equipment, for all Quincy High School Swim Team activities, beginning with the 2000/2001 school year. The Sheridan Board also voted to pay the legal fees of the Olsons.

212.    This action was a breach of the Board's fiduciary duty and the duty of operation in good faith, and resulted in financial harm to Sheridan Swim Club, while aiding the personal self-interests of certain Board members and Sheridan Swim Team members.

---

[23] Barb Selvy is a past officer of the Sheridan Swim Team Booster Club. Both Selvy and Patricia Crane were heavily involved in Sheridan Swim Team and Quincy High School swim team activities when Richard Powers coached those swim teams. In addition, the Selvy family has kept in personal contact with Powers after Powers skipped the country in March 2000, in order to avoid testifying at his deposition in the Plaintiffs' Federal lawsuit. Robert Hultz is a former Sheridan Board member and board president who served from 1995-98. Hultz was Board President and was also entwined in Sheridan's campaign to enter into a "marriage" with the Quincy School District during the 1997-98 school year.



213.    Sheridan is liable for the actions of the Board, and the actions of individual Sheridan Board members, Schnack and Bier, the actions of Sheridan employees, and for the actions of CLUB members who acted in conspiracy with Board members. The actions of the Sheridan Board and Defendant Robert Meyer were performed in their individual and official capacities and for their personal benefit, and were conducted intentionally, maliciously, and with willful and wanton disregard for the rights of the Tierneys. These actions by Sheridan, Schnack, and the Sheridan Board also constituted breach of an expressed duty of good faith and breach of fiduciary duty resulting in damage and harm to the Plaintiffs.

C.    **Ratification by Sheridan/Sheridan Board of Wrongful Conduct Complained of in ¶¶ 152-212.**

214.    After the Tierneys filed a lawsuit in Federal Court, Sheridan and the Sheridan Board ratified the campaign of retaliation against the Tierneys, and the misconduct of Bier, Schnack, Meyer, and Doug and Debbie Olson, and others, by engaging in acts and omissions that are inconsistent with non-affirmation of the misconduct of the individual defendants and the wrongful actions and policy of the Sheridan Board. By these actions, Sheridan accepted responsibility for, and affirmed the acts of misconduct directed against the Tierneys by Schnack, Bier, Meyer, the Olsons, and others, which were performed on behalf of Sheridan and/or at the request, or direction of Sheridan Board member(s). These acts of ratification include but are not limited to the following:

a.    Aiding and abetting Powers' continued improper operation of the high school swim program at Sheridan at the beginning of the 1999-2000 school year prior to the IHSA intervention and investigation;

b.    Engaging in acts of retaliation, intimidation, and harassment directed against the Tierneys and others, by Sheridan Board members, Club members, and employees, after the Tierneys filed a Federal lawsuit, petitioned various State Actors for redress of grievances, and engaged in free speech on issues of public concern with various State actors;

c.    Reaffirming and sustaining the punitive actions taken the Tierneys by the actions of the Sheridan employee taken against the Tierneys in July 2000; (See ¶¶ 204-213)

d.    Elevating Defendant Bier to the position of President of the Sheridan Board in March 2000;

e.    Selecting Defendant Patricia Crane to be a Sheridan Board member in March 2000;

f.    Selecting Defendant Meyer to be a Sheridan Board member in March 2001;

g.    Selecting Defendant Doug Olson to be a Sheridan Board member in March 2001;

58

C975

h.  Agreeing to pay the legal fees of Club members, Doug and Debbie Olson *(resulting in financial harm to the Club);*
i.  Providing the Sheridan facilities and equipment free of charge to the School District*(resulting in financial harm to the Club)*;
j.  Elevating Doug Olson to the Presidency of the Sheridan Board in April 2002;
k.  Elevating Defendant Robert Meyer to the Vice-Presidency of the Sheridan Board in April 2002;
l.  Selecting Barb Selvy to be a Sheridan Board member and subsequently elevating her to the position of Secretary of the Board in April 2002;

## COUNT II

215.  The acts and omissions of Defendants Constitutes <u>Breach of Contract</u> and breach of the expressed duty of operation in Good Faith and Fair Dealing by violating numerous provisions of the CLUB Constitution and By-Laws, and by denying all Plaintiffs proper notice, fair hearing, and due process. Plaintiffs repeat and re-allege the allegations of paragraphs 104-151 & 210. For damages and relief sought, the Plaintiffs repeat and re-allege the allegations of paragraphs 244-250.

## COUNT III

216.  The acts and omissions of Defendant Sheridan Board constitute a <u>Breach of Fiduciary Duties</u>, by violating numerous provisions of the CLUB Constitution and By-Laws, and by denying all Plaintiffs proper notice, fair hearing, and due process. Plaintiffs repeat and re-allege the allegations of paragraphs 104-156, 160-161, 184-196, and 205-214. For damages and relief sought, the Plaintiffs repeat and re-allege the allegations of paragraphs 244-250.

## COUNT IV

217.  The acts and omissions of Defendants Sheridan and Sheridan Board constitute <u>Retaliatory Discharge</u>, proximately damaging Plaintiff Meryl Tierney in an amount to be specifically determined at trial. Plaintiffs repeat and re-allege the allegations of paragraphs 104-151. For damages and relief sought, the Plaintiffs repeat and re-allege the allegations of paragraphs 244-250.

## COUNT V

218.  The acts and omissions of Defendants Sheridan, Sheridan Board, Robert Meyer, constitutes <u>Tortuous Interference with Business Relations</u> between Plaintiff Ann Tierney's and her employer, the Quincy School District. Plaintiffs repeat and re-allege the allegations of

C 926