paragraphs 85-87, 104-156, 160-161, 184-196, and 205-214. For damages and relief sought, the Plaintiffs repeat and re-allege the allegations of paragraphs 244-250.

## COUNT VI

219. The acts and omissions of Defendants Board and Meyer constitutes <u>Conversion</u>. Plaintiffs repeat and re-allege the allegations of paragraphs 104-151. For damages and relief sought, the Plaintiffs repeat and re-allege the allegations of paragraphs 244-250.

## COUNT VII

220. The acts and omissions of Defendants Board and Meyer constitutes <u>Invasion of Privacy</u>. Plaintiffs repeat and re-allege the allegations of paragraphs 104-151, 152-199. For damages and relief sought, the Plaintiffs repeat and re-allege the allegations of paragraphs 244-250.

## COUNT VIII

221. The acts and omissions of Defendants Sheridan, Sheridan Board, and Meyer constitutes <u>False Light</u>. Plaintiffs repeat and re-allege the allegations of paragraphs 104-151, 152-163. For damages and relief sought, the Plaintiffs repeat and re-allege the allegations of paragraphs 244-250.

## COUNT IX

222. The acts and omissions of Defendants were willful and wanton, and constitutes <u>Intentional Infliction of Emotional Distress</u>. Plaintiffs repeat and re-allege the allegations of paragraphs 85-87, 104-214. For damages and relief sought, the Plaintiffs repeat and re-allege the allegations of paragraphs 244-250

## COUNT X

223. The acts and omissions of Defendants Sheridan, Schnack, Bier, and Sheridan Board constitute <u>Constructive Fraud</u>. Plaintiffs repeat and re-allege the allegations of paragraphs 104-156, 160-161, 184-196, and 205-214. For damages and relief sought, the Plaintiffs repeat and re-allege the allegations of paragraphs 244-250.

## COUNT XI

224. The acts and omissions of Defendants Sheridan, Schnack, Bier, and Sheridan Board constitute <u>Fraudulent Concealment</u>. Plaintiffs repeat and re-allege the allegations of paragraphs 104-214. For damages and relief sought, the Plaintiffs repeat and re-allege the allegations of paragraphs 244-250.

## COUNT XII

225. The acts and omissions of Defendants Sheridan, Schnack, and Bier constitutes <u>Intentional Spoliation of Evidence</u>. Plaintiffs repeat and re-allege the allegations of paragraphs 104–151, 181-196. For damages and relief sought, the Plaintiffs repeat and re-allege the allegations of paragraphs 242-248.

## COUNT XIII

226. The acts and omissions of Defendants Sheridan, Schnack, and Bier constitutes <u>Negligent Spoliation of Evidence</u>. Plaintiffs repeat and re-allege the allegations of paragraphs 104–151, 181-196. For damages and relief sought, the Plaintiffs repeat and re-allege the allegations of paragraphs 242-248.allegations of paragraphs 244-250.

## COUNT XIV

227. The acts and omissions of Defendants Sheridan, Sheridan Board, and Meyer constitutes violations of *The Illinois School Student Records Act* 105 ILCS 10/1-10 et seq., were willful and wanton, and were perpetrated with the intent to cause damage and harm to the Plaintiffs. Plaintiffs repeat and re-allege the allegations of paragraphs 104-196. For damages and relief sought, the Plaintiffs repeat and re-allege the allegations of paragraphs 244-250.

## COUNT XV

228. The acts and omission of Defendants constitutes violations of *The Illinois Abused and Neglected Child Reporting Act*, 325 ILCS 5/1 et seq, (1998) formerly Ill. Rev. Stat. Ch. 23, 2051 et seq. (1975) eff. July 1, 1975. Plaintiffs repeat and re-allege the allegations of paragraphs 104-151, 152-214. For damages and relief sought, the Plaintiffs repeat and re-allege the allegations of paragraphs 244-250.

## COUNT XVI

229. The acts and omission of Defendants constitutes violations of *The Illinois School Code* 105 ILCS 5/24-25) et seq. Plaintiffs repeat and re-allege the allegations of paragraphs 104-151, 204-207. For damages and relief sought, the Plaintiffs repeat and re-allege the allegations of paragraphs 244-250.

### XVI. FEDERAL CLAIMS

230. Plaintiffs repeat and re-allege the allegations of paragraphs 1-11 & 85-103 for all Federal Claims asserted herein.

C 928

1. **Statutes and Constitutional Provisions Involved**

231. At all times material, there was in full force and effect in the United States of America, a certain statute known as the Civil Rights Act of 1871, 42 U.S.C. § 1983 which provides:

> Section 1983
> Every person who under color of any statute, ordinance, regulation, custom or usage of any State or Territory or the District of Columbia subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other property proceeding for redress....

232. At all times material there was in full force and effect in the United States of America, certain provisions of the Constitution of the United States, namely the First and Fourteenth Amendments which provides:

> **Article IV**
> §2. Privileges and Immunities
> Section 2. The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States.
> **Amendment [I]**
> Congress shall make no law.... Abridging freedom of speech, or of the press, or of the right of people to peaceably assemble, and to petition their government for redress of grievances.
> **Amendment [XIV]**
> Section 1. ... nor shall any State deprive any person of life, liberty, or property without due process of law;

2. **Claims under 42 U.S.C. 1983**

233. Defendants Sheridan Board and Sheridan: Plaintiffs repeat and re-allege the allegations referred to in paragraph 230 for the Federal Claims asserted herein. The Complaint also states claims under 42 U.S.C. § 1983 for causes of action which occurred after the Tierneys filed a lawsuit in Federal Court after July 1, 1999 through the conduct alleged in ¶¶ 152-196, 199-214. Sheridan is liable to the Plaintiffs for the retaliation against the Plaintiffs by Sheridan Board members, officials, and members who acted in collusion with and/or at the direction of Sheridan Board members and/or policy-making agents of the Sheridan Board, and/or in collusion with others who were acting while under color of State law.



**Count I    Right of Access to the Courts without Interference or Retaliation**

234.    Plaintiffs repeat and re-allege the allegations referred to in paragraph 230 for the Federal Claims asserted herein. Defendants Sheridan, Sheridan Board, Schnack, Bier, and Meyer intentionally deprived and interfered with the Plaintiffs' right of access to the courts. One source of the right the right of access to the courts is found in the privilege and immunities of citizenship guaranteed by Article IV, Section 2 of the Constitution. A second source of the right of access to the courts is the procedural and substantive components of the guaranty of due process of law of the Fourteenth Amendment to be free from intentional retaliation by state actors as alleged in ¶¶ 152-196, 199-214, for Plaintiffs' filing of the action in Federal Court (¶ 80, Case No. 99-3149) against the Sheridan, Sheridan Board, Meyer, and others named as Defendants in the Complaint, and per the actions and free speech of the Plaintiffs as alleged in ¶¶ 152, 164, 182, 197, and others; proximately damaging each individual Plaintiff in an amount to be specifically determined at trial per ¶¶ 243-250.

**Count II    Right to Freedom of Speech and to Petition the Government for Redress of Grievances without Interference or Retaliation**

235.    Plaintiffs repeat and re-allege the allegations referred to in paragraph 230 for the Federal Claims asserted herein. Defendants Sheridan, Sheridan Board, Schnack, Bier, and Meyer intentionally deprived Plaintiffs of their rights to Freedom of speech guaranteed them as part of the First Amendment to be protected from retaliation by state actors by the acts of conspiracy and retaliation specifically alleged in ¶¶ 152-196, 199-214, for engaging in free speech on issues of public concern with several State Agencies after filing a lawsuit in Federal Court, and for Plaintiffs petitioning the Government for redress of grievances as alleged in ¶¶ 152, 164, 182, 197, and others; proximately damaging each individual Plaintiff in an amount to be specifically determined at trial per ¶¶ 243-250.

**Count III    Right of Association without Retaliation**

236.    Plaintiffs repeat and re-allege the allegations referred to in paragraph 230 for the Federal Claims asserted herein. Defendants Sheridan, Sheridan Board, Schnack, Bier, and Meyer intentionally deprived plaintiff Meryl Tierney of her right of association with her parents, Robert (Bob) Tierney and Ann Tierney, by acts of conspiracy and retaliation specifically alleged in ¶¶ 152-196, 199-214, for the speech of Robert Tierney and Ann Tierney on issues of public concern with several State Agencies after filing a lawsuit in Federal Court, and for their

C930

petitioning the Government for redress of grievances as alleged in ¶¶ 152, 164, 182, 197, and others; proximately damaging each individual Plaintiff in an amount to be specifically determined at trial per ¶¶ 243-250.

237. Plaintiffs repeat and re-allege the allegations referred to in paragraph 230 for the Federal Claims asserted herein. Defendants Sheridan, Sheridan Board, Schnack, Bier, and Meyer intentionally deprived plaintiffs Robert (Bob) Tierney and Ann Tierney of their right of association with their daughter, Meryl Tierney, by acts of conspiracy and retaliation specifically alleged in ¶¶ 152-196, 199-214, for the speech of Meryl Tierney on issues of public concern alleged in ¶¶ 152, 164, 182, 197, and others; proximately damaging each individual Plaintiff in an amount to be specifically determined at trial per ¶¶ 243-250.

238. Plaintiffs repeat and re-allege the allegations referred to in paragraph 230 for the Federal Claims asserted herein. Defendants Sheridan, Sheridan Board, Schnack, Bier, and Meyer intentionally deprived plaintiffs Robert (Bob) Tierney, Ann Tierney, and Meryl Tierney of their right of association with elected public officials (Quincy School Board member(s)), by acts of conspiracy and retaliation specifically alleged in ¶¶ 152-196, 199-214, for the speech of Robert Tierney, Ann Tierney, and Meryl Tierney on issues of public concern, for petitioning the government for redress of grievances, and for filing a lawsuit in federal court as alleged in ¶¶ 152, 164, 182, 197, and others; proximately damaging each individual Plaintiff in an amount to be specifically determined at trial per ¶¶ 243-250.

**Count IV    Right to Procedural Due Process**

239. Plaintiffs repeat and re-allege the allegations referred to in paragraph 230 for the Federal Claims asserted herein. The Complaint also states a claim under the Fourteenth Amendment's due process clause. Defendants Sheridan, Sheridan Board, Schnack, Bier, and Meyer intentionally deprived Plaintiffs of their rights to due process in protection of their property and liberty interests, per their [Defendants] actions specifically alleged in ¶¶ 152-196, 199-214, in retaliation for the Tierneys engaging in free speech on issues of public concern with several State Agencies, for filing a lawsuit in Federal Court, and for Plaintiffs petitioning the Government for redress of grievances as alleged in ¶¶ 152, 164, 182, 197, and others; proximately damaging each individual Plaintiff in an amount to be specifically determined at trial per ¶¶ 243-250.


C931

**Count V    Ratification by Sheridan/Sheridan Board of Wrongful Conduct and Actions of Sheridan Board Members, Meyers, Club Members, and Employees**

240.    <u>Defendants Sheridan and Sheridan Board</u>. Plaintiffs repeat and re-allege the allegations referred to in paragraph 230 for the Federal Claims asserted herein. The Complaint also states a claim of Ratification for causes of action, which occurred after July 1999. Sheridan and the Sheridan Board has engaged in acts and omissions, and sustained policies that are inconsistent with non-affirmation of the misconduct of the above named defendants and individuals, and the wrongful actions and policy of the Sheridan Board. By these actions, Sheridan accepted responsibility for, and affirmed the acts of misconduct directed against the Tierneys by Schnack, Bier, Meyer, the Olsons, and others, which were performed on behalf of Sheridan and/or at the request, or direction of Sheridan Board member(s). These acts include but are not limited to the following:

   a. Aiding and abetting Powers' continued improper operation of the high school swim program at Sheridan at the beginning of the 1999-2000 school year prior to the IHSA intervention and investigation;
   b. Engaging in acts of retaliation, intimidation, and harassment against the Tierneys and others, by Sheridan Board members, Club members, and employees, after the Tierneys filed a Federal lawsuit, petitioned various State Actors for redress of grievances, and engaged in free speech on issues of public concern with various State actors;
   c. Reaffirming and sustaining the punitive actions taken the Tierneys by the actions of the Sheridan employee taken against the Tierneys in July 2000; (See ¶¶ 215-217)
   d. Elevating Defendant Bier to the position of President of the Sheridan Board in March 2000;
   e. Selecting Defendant Patricia Crane to be a Sheridan Board member in March 2000;
   f. Selecting Defendant Meyer to be a Sheridan Board member in March 2001;
   g. Selecting Defendant Doug Olson to be a Sheridan Board member in March 2001;
   h. Paying the legal fees of Club member, Doug Olson *(resulting in financial harm to the Club)*;
   i. Providing the Sheridan facilities to the School District at no cost *(resulting in financial harm to the Club)*;
   j. Elevating Doug Olson to the Presidency of the Sheridan Board in April 2002;
   k. Elevating Defendant Robert Meyer to the Vice-Presidency of the Sheridan Board in April 2002;
   l. Selecting Barb Selvy to be a Sheridan Board member and subsequently elevating her to the position of Secretary of the Board in April 2002;

C932

constitutes ratification by Sheridan/Sheridan Board of the misconduct and actions detailed in ¶¶ 152-196, 199-214, and others; proximately damaging each individual Plaintiff in an amount to be specifically determined at trial per ¶¶ 243-250.

3. **Claims Under 42 U.S.C. § 1985(2 & 3)**

**Count VI**

241. Defendants Sheridan, Schnack, and Bier conspired to intentionally deprived the Plaintiffs of their right of access to the courts and to petition the Government for redress of grievances: Plaintiffs repeat and re-allege the allegations referred to in paragraph 230 for the Federal Claims asserted herein. A third source of the right of access of the courts asserted in the complaint is the statutory right of protection from retaliation extended to plaintiffs and witnesses in federal civil rights suits of 42 U.S.C. § 1985 (2). The complaint also states a claim for causes of action which occurred after filing a lawsuit in Federal Court for a private civil rights conspiracy actionable without state action under 42 U.S.C. §1985 (2). Private conspirators are directly liable under § 1985(2) for attempts to harass parties or witnesses in Federal litigation without the requirements of state action or class-based animus. <u>However, in the alternative, Defendant Barney Bier, is clearly a State Actor, acting under color of law in conspiracy and joint action with Sheridan Board members, thus making State Actors of Schnack, Sheridan, and Sheridan Board</u>. The Defendants conspired to retaliate against the Plaintiffs for petitioning various State Actors for redress of grievances and for filing a lawsuit in federal court through the conduct of the Plaintiffs alleged in ¶¶ 152-196, 199-214, and others. Schnack retaliated against, interfered with, and/or prevented the Plaintiffs from petitioning the State for redress of grievances. Schnack obstructed, hindered, and impeded an investigation by constituted authorities of the State of the harassing phone calls directed toward the Tierney family by Schnack and the Olsons through the conduct alleged in ¶¶ 164-196, 204-211. Bier and Schnack obstructed, hindered, and impeded an investigation by constituted authorities of the State into the harassment and intimidation of the Plaintiffs in a Federal lawsuit through the conduct alleged in ¶¶ 181-196, 204-212. Sheridan is liable to the Plaintiffs for the conspiracy and actions of its Board members, officials, and members who acted in collusion with and/or at the direction of Sheridan Board members, and/or policy-making agents of the Sheridan Board, and/or in collusion with others who were acting while under color of State law; proximately damaging each individual Plaintiff in an amount to be specifically determined at trial per ¶¶ 243-250.



a.  **42 U.S.C. §1985. Conspiracy to Interfere with Civil Rights.**

**(2) Obstructing justice; intimidating party, witness, or juror.**

If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified,....... or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;

**Count VII**

242. Defendants Sheridan, Schnack, and Bier conspired to intentionally deprived the Plaintiffs of their constitutionally protected rights and privileges: Plaintiffs repeat and re-allege the allegations referred to in paragraph 230 for the Federal Claims asserted herein. The complaint also states a claim for causes of action which occurred after filing a lawsuit in Federal Court for a private civil rights conspiracy actionable without state action under 42 U.S.C. §1985 (3) without the requirements of state action or class-based animus. Private conspirators are directly liable under § 1985(3) for conspiring for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws. However, in the alternative, Defendant Barney Bier, is clearly a State Actor, acting under color of law in conspiracy and joint action with Sheridan Board members, thus making State Actors of Schnack, Sheridan, and the Sheridan Board. Sheridan Board member Bier, acting under of color of state law as the Adams County States' Attorney, conspired with Sheridan Board member Schnack to retaliate against and interfere with the Tierney's' rights and attempts to petition the government and the courts per the Plaintiffs actions as alleged in ¶¶ 152, 164, 182, 197. Bier interfered with and/or prevented the Plaintiffs from petitioning the State for redress of grievances. Bier and Schnack obstructed, hindered, and impeded an investigation by constituted authorities of the State of the obscene, harassing phone calls directed toward the Tierney family by Schnack and the Olsons. Bier and



Schnack obstructed, hindered, and impeded an investigation by constituted authorities of the State into the harassment and intimidation of the Plaintiffs in a Federal lawsuit through the conduct alleged in ¶¶ 169-196, 204-214. Sheridan is liable to the Plaintiffs for the conspiracy and actions of its Board members, officials, and members who acted in collusion with and/or at the direction of Sheridan Board members and/or policy-making agents of the Sheridan Board, and/or in collusion with others who were acting while under color of State law; proximately damaging each individual Plaintiff in an amount to be specifically determined at trial per ¶¶ 244-250.

**b.    42 U.S.C. §1985. Conspiracy to Interfere with Civil Rights.**

**(3) Depriving persons of rights or privileges**

> If two or more persons in any State or Territory conspire......, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws;.... in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

**XVI    Damages and Relief Sought**

243.    Sheridan's retaliatory and wrongful expulsion of the Tierneys was wrenching to the entire family. Sheridan was a significant source of family recreational and social contact for the Plaintiffs, which is lost as a result of the termination and banishment from Sheridan property. In particular, the recreational lives of the Tierney children revolved around the Sheridan Swim club, as it was the center of their spring and summer neighborhood activities. Plaintiffs' residence is adjacent to Club property and directly behind the swimming pools.

244.    As a consequence of one or more of the foregoing wrongful acts and omissions of Defendants, Plaintiffs are now forced to observe Club members enjoying club benefits and facilities that Plaintiffs paid for and utilized since 1986. Plaintiff's youngest child, Case Tierney, was an 8-year-old child who has enjoyed the use of the Sheridan pools, pond, and expansive



grounds as the primary source of his summer activities since birth. The recreational lives of the Tierney children revolved around the Sheridan Swim club, as it was the center of their spring and summer neighborhood activities. Plaintiffs' residence is adjacent to Club property and directly behind the swimming pools. As a result of Defendants' intentionally wrongful and malicious conduct, Case Tierney, who is almost 12 years old, has been forced to watch from his backyard for the past 4 summers, as his neighborhood friends play in and enjoy the Sheridan pools and grounds. During the summer months, hardly a day goes by without Case asking when he can go to Sheridan. As a young boy, he has little comprehension of the adult world and his parents are unable to explain, not would never attempt to explain to him, the vindictiveness of Sheridan and its Board of Directors. These conditions impose irreparable hardship on the Plaintiffs as well as incalculable mental and emotional distress and harm to a totally innocent party to this litigation, who is currently suffering through his fourth summer of distress. These painful memories can never be erased; proximately damaging each individual Plaintiff in an amount to be specifically determined at trial.

245. As a consequence of one or more of the foregoing wrongful acts and omissions of Defendants, the Tierneys have been stigmatized by the wrongful actions of Sheridan and its Board. As the only family ever to have been expelled from Sheridan, the Tierneys are the focus of suspicions of wrongdoing. Ann Tierney was born and raised in Quincy and is well aware of how rumors circulate in the community. The ostracism from their family recreational and social life, and the stigma of expulsion, has cast a pall over the entire household.

246. As a consequence of one or more of the foregoing wrongful acts and omissions of Defendants, the Tierneys have been subjected to obscene, harassing, and retaliatory phone calls. During a criminal investigation, these phone calls were ultimately tracked to Sheridan officials, members, and a school district employee. Thus, the Plaintiffs have suffered public humiliation, embarrassment, retaliation, harassment, and intimidation, due to the implication of some kind of wrongdoing on their part for which they have not had an opportunity to respond, and have otherwise lost the benefits and incidents of their membership in Sheridan together with the monetary value of their purchase of a membership certificate, and have been wrongfully banned from Sheridan property, "for any function whatsoever", including activities otherwise open to the public at large, proximately damaging each individual Plaintiff in an amount to be specifically determined at trial.



WHEREFORE, the Plaintiffs seek relief in the form of:

1. A judgment reinstating the Tierney's Sheridan Family Membership and Stock certificate with all commensurate benefits, rights, and privileges thereof, and a judgment against Sheridan and the individual defendants for the 3 1/2 year long retaliation and harassment of the Tierney family.

2. Money damages for each individual plaintiff and jointly and severally against Defendants SHERIDAN SWIM CLUB, INC., ANDREW C. SCHNACK III, BARNEY BIER, JULIE ANDERSON, LISA BEARDEN, DAVID P. DANIELS, RODERICK P. MILLER, ROBERT MEYER, PATRICIA CRANE, LORI MILES, DOUG OLSON, BARB SELVY, ROBERT HULTZ, and TIMOTHI BETH, for damages in excess of $50,000, for each individual plaintiff, for punitive damages for each individual plaintiff in such amounts as a jury may determine in order to punish and deter Defendants from future abusive, unlawful conduct, for Plaintiffs' court costs and attorney's fees herein, per 105 ILCS 10/9 (c) et seq, and as the prevailing party in an action to vindicate civil rights under 42 U.S.C. §1988, and for such other relief as this court deems just and equitable.

PLAINTIFFS DEMAND A TRIAL BY JURY

| | |
|---|---|
| J. Robert Tierney, Pro Se | Ann S. Tierney, Pro Se |
| Signature redacted pursuant to | Signature redacted pursuant to |
| USDC-CDIL Adm.Proc. Rule II(I)(1)(f) | USDC-CDIL Adm.Proc. Rule II(I)(1)(f) |

Meryl A. Tierney, Pro Se
Signature redacted pursuant to
USDC-CDIL Adm.Proc. Rule II(I)(1)(f)

**PROOF OF SERVICE**

Service of the foregoing instrument was made by faxing a copy of same to the fax number of such attorneys of record of the parties to the above cause or, by hand delivering same in an envelope addressed to such attorney/parties at their business address as disclosed by the pleadings of record herein; or, by enclosing the same in an envelope addressed to same attorneys/parties, with postage thereon fully prepaid, addressed to the individuals set forth below and by depositing the same in the United States Mail from the Office on this 27 day of AUGUST 2002.

Signature redacted pursuant to
USDC-CDIL Adm.Proc. Rule II(I)(1)(f)

C.938

Jonathan Barnard
Attorney-at-Law
316 North Sixth Street
Quincy, IL 62301


Bob Tierney, Ann Tierney, Meryl Tierney
2517 Summer Creek
Quincy , IL 62305
217-223-4849

C939

**Illinois Compiled Statutes**

**Schools/Illinois School Student Records Act**

(105 ILCS 10/1)
Sec. 1. This Act shall be known and may be cited as the Illinois School Student Records Act.
(Source: P.A. 79-1108.)
(105 ILCS 10/2)

Sec. 2. As used in this Act,
(a)     "Student" means any person enrolled or previously enrolled in a school.
(d)     "School Student Record" means any writing or other recorded information concerning a student and by which a student may be individually identified, maintained by a school or at its direction or by an employee of a school, regardless of how or where the information is stored. The following shall not be deemed school student records under this Act: writings or other recorded information maintained by an employee of a school or other person at the direction of a school for his or her exclusive use; provided that all such writings and other recorded information are destroyed not later than the student's graduation or permanent withdrawal from the school; and provided further that no such records or recorded information may be released or disclosed to any person except a person designated by the school as a substitute unless they are first incorporated in a school student record and made subject to all of the provisions of this Act. School student records shall not include information maintained by law enforcement professionals working in the school.
(Source: P.A. 90-590, eff. 1-1-00.)

<u>(105 ILCS 10/9)</u>
Sec. 9.
(a)     Any person aggrieved by any violation of this Act may institute an action for injunctive relief in the Circuit Court of the County in which the violation has occurred or the Circuit Court of the County in which the school is located.
(b)     Any person injured by a willful or negligent violation of this Act may institute an action for damages in the Circuit Court of the County in which the violation has occurred or the Circuit Court of the County in which the school is located.
(c)     In the case of any successful action under paragraph (a) or (b) of this Section, any person or school found to have willfully or negligently violated any provision of this Act is liable to the plaintiff for the plaintiff's damages, the costs of the action and reasonable attorneys' fees, as determined by the Court.



**Illinois Department of Children and Family Services**

Section 300.10   Purpose
The purpose of this Part is to describe how the Department of Children and Family Services (Department) administers and provides child protective services through a State Central Register and local child protective service units.  This Part governs how child abuse and neglect is reported and how such reports are handled and investigated.
(Source:  Added at 11 Ill. Reg. 12619, effective July 20, 1987)

### 325 ILCS 5/4]

C)   Employers shall not discriminate in any manner against employees who make good faith reports of suspected child abuse or neglect or who act as witnesses or testify in an investigation or proceeding concerning a report of suspected child abuse or neglect. [325 ILCS 5/9.1]


C 941

Post-It® Fax Note  7671  Date 7/22/97  # of Pages 2
To Drew
Co./Dept.
Phone #
Fax # 234-8565  Fax #

Signature redacted pursuant to
USDC-CDIL Adm.Proc. Rule II(I)(1)(f)

**SWIMMING PROPOSAL**
July 16, 1997

On Tuesday July 15, 1997 Nick, Lee and I met with several "other" representatives of the Sheridan Swim club. I say "other" because we had met earlier with three other people from Sheridan. The first group made a proposal to Lee, Paul and I that we thought was a legitimate offer from the Board of the Club. The second group has told us that the first group did not have the authority to make any offer at all. Also, the second group was supportive of Ms. Pryor, whereas the first group was not. The second group did say there was some room for improvement in the training and conditioning, but that as far as teambuilding goes, Ms. Pryor was great. <u>The first group just wanted to take over the entire program and release Ms. Pryor.</u> After discussion with Nick and Lee, I am making the following recommendation.

1. The Boys and Girls Varsity Swimming Coach positions would be vacated after the 1997-98 seasons. Ms. Pryor would be encouraged to apply. The job listing would be sent across the Midwest with the hope of finding the best possible swimming coach available.

2. Ms. Pryor stays in the position for the 1997-98 swimming seasons.

3. Mr. Pappas, QHS Athletic Director, will spend time this summer trying to locate another pool in a nearby community. We may find ourselves needing a new place to hold meets if Sheridan refuses to cooperate and bars us from using their facility for our home meets. (approximately 8 per season).

4. Continue the partnership with the YMCA and use their facility for practices.

5. Form a five member selection committee to recruit, interview and recommend for hiring a new swimming coach for both boys and girls teams. The committee's recommendation would then go to the Superintendent for formal recommendation to the Board of Education.
   - One member – Lee Pappas, Athletic Director
   - Two members – selected by Paul Koscielski, Principal of QHS
   - One member – selected by President of the Board of Directors of Sheridan Swim Club
   - One member - selected by the Executive Director of the YMCA

6. Review with Ms. Pryor the newest trends in swimming training techniques and practices so that she has the latest information. This will help insure all our students have the best possible chance to excel.

7. Continue to use Ms. Terry Rodgers as the diving coach for both teams.

Lee Pappas 224-3711 / 221-2488    Exhibit A-1

# QUINCY PUBLIC SCHOOL DISTRICT #172

1444 Maine Street • Quincy, Illinois 62301 • Ph: 217.223.8700 • Fax: 217.228.7162

Dr. Michael Anderson, Superintendent

Robert Hultz                                                           July 17, 1997
126 N. 30th St.
Quincy, IL 63201

Dear Mr. Hultz:

I am writing to you, as I understand you are currently the President of the Board of Directors of the Sheridan Swim Club. Previous to this, I was invited to tour your facilities. I was able to do this on my own one afternoon, and received a thorough tour from Mr. Greg Howe. Needless to say, I am impressed. Quincy is fortunate to have such an outstanding facility dedicated to swimming.

I am aware that there has been some history between the school district and your club. Disputes have arisen regarding the High school coach and program and how they work with the coach and program at Sheridan. Being new to town and the position, I found that having two distinct points of view coming from the same organization to be confusing and puzzling. To help us in the communications between the two organizations, you have my promise that I will only deal with you as president of the organization or your designee, and hopefully this will help clarify any inconsistencies.

Enclosed you will find a copy of the proposal that was approved last night by the Board of Education. I am sending it to you so that you may see the direction we are heading. Of particular importance to you and your organization are numbers 3 and 5.

The third recommendation is there as a possibility. It was implied in the conversation with Mr. Schnaak, Ms. Anderson and Dr. Johnson that if Ms. Pryor was not released from her position that Sheridan Swim Club was not interested in being a partner with the high school and allowing us to use its facilities for our home meets. I understand this position and realize that you have a different customer base than I do. You must do what is in the best interest of all your members, not just those in the high school.

The fifth recommendation is an attempt to allow for the "swimming community" to have input into the hiring of the new coach.

We probably should discuss this matter. I await your call and hope that we can work together in the future for the benefit of those children served by both our organizations.

Signature redacted pursuant to
USDC-CDIL Adm.Proc. Rule II(I)(1)(f)


Dr. Michael Anderson
Superintendent

C943

Exhibit A-2

LAW OFFICES
## SCHNACK, SCHNACK & CASHMAN

ANDREW C. SCHNACK III
KENT R. SCHNACK
J. DEVIN CASHMAN

510 VERMONT STREET
QUINCY, ILLINOIS
62301-2902

TELEPHONE 217-224-4000
FAX 224-6565

March 29, 1999

File

Mr. Dennis Gorman
Attorney at Law
525 Jersey Street
Quincy, IL 62301

Dear Dennis:

I just thought you would like to know that as of Thursday, March 25, 1999, Meryl Tierney is now swimming with Sheridan Swim Team under Coach Rick Powers. I don't know what affect this would have on his previous complaints but would dearly love to get Rick's contract signed and get the contract signed between the school district and Sheridan. I have a couple of thoughts on that that I think would be advantageous to the school district, especially if we can get this done on a long term basis.

If you get a chance, give me a call.

Sincerely yours,

SCHNACK, SCHNACK & CASHMAN
Signature redacted pursuant to
USDC-CDIL Adm.Proc. Rule II(I)(1)(f)

By: Andrew C. Schnack, III

ACSIIIpjb

c944

Exhibit A-3

Sheridan Swim Club Board Meeting
April 14, 1999

The meeting was called to order at 6:15 by Phil. Present at this meeting were Phil, Julie, Drew, Vickie, Lisa, Barney, Dave and Bill.

Drew presented the treasurers report. Julie is looking into increasing the insurance coverage according to the total low due to last year's tornado. The treasurer's report was approved without objection on a motion from Vickie and a second from Barney.

The next item was the manager's report given by Bill. He filled the board members in on the progress of the 50-meter pool as well as other projects scheduled outside barring inclement weather.

The manager's report was put on hold in order to hear the swim team report from Bob Meyer. Bob reviewed the swim team finance report and handed out copies to the board members. Next Bob spoke about the problems associated with Mr. Tierney, including trying to get Rick Powers fired as the Quincy High swim coach. He spoke about Rick Powers and how valuable he is to the Sheridan swim team and the importance of maintaining Rick Powers as the Quincy High swim coach. Bob asked for permission to hang a "welcome" banner above the scoreboard during swim meets. No one objected.

Bill continued with his report. St. Francis and St. Dominic have requested passes to be auctioned off. Bill recommended giving each church four passes. Drew made a motion to accept bill's recommendation and Barney seconded it. Bill asked the board about giving a refund to a member who, due to health problems, will not be able to use the facilities this year. Bill is to check on how much she has paid and then give her a refund Bill questioned the board about the pool hours and how to staff the pools. It was determined that there will be a guard at each of the three main posts (minimum) at all times, including the 50 meter after 6 P.M. Bill asked permission to use the assistant swim coach, Kevin, 15 - 20 hrs. per week for various jobs. Next, there was some discussion about staffing the front desk. Bill is to take cm of hiring someone who is personable yet efficient in monitoring the rules of members and guests Bill asked if some of the board members would help with the interviewing of potential employees. Barney, Drew and Lisa agreed to help with interviews. Julie mentioned a policy manual, which should be available before hiring new staff. There was discussion on implementing a surcharge to non-members for use of the facility. Bill is to outline the specifics.

Under old business, there was a lengthy discussion about Bob Tierney and the problems he has caused Sheridan swim club and swim team. Drew made a motion to suspend Bob Tierney's membership to Sheridan swim club Barney seconded the motion. The motion was passed unanimously. Next was discussion about how the early morning swimmers could possibly continue their routine while maintaining insurance coverage for the club. No solution was found. Phil is to notify those people involved that they cannot continue unless the insurance company says otherwise. Julie is working with Cheryl Loatsch on what equipment to buy for the weight room. We are waiting for more information concerning the installation of an alarm system. Kiddie Korner day care requested we of the pool, same as past years, at $3 per person.

Vickie Forbes resigned due to conflict of interest. Her resignation was accepted on a motion from Barney and a second from Phil. Drew made a motion to replace Vickie with Julie for the remainder of her term (1-year), Lisa seconded the motion.

The May meeting will be held at 6 P.M. an Wednesday, May 12th.

Drew made a motion to adjourn, seconded by Phil.



Exhibit B

# SHERIDAN SWIM CLUB

PHONE (217) 224-1051

4000 SOUTH TWENTY FOURTH STREET, QUINCY, ILLINOIS 62301

April 15, 1999

Mr. & Mrs. Bob Tierney
#4 Laura Drive
Quincy, IL 62301

Dear Mr. & Mrs. Tierney:

After due consideration, the Board of Directors at Sheridan Swim Club has decided to terminate your membership effective immediately. As of this day your privileges with regard to Sheridan Swim Club will no longer exist. If you are found on Sheridan property you will be considered a trespasser. According to the By-laws your stock certificate is now null and void.

Please do not contact Bill Forbes or any other employees of Sheridan Swim Club concerning this issue as they have no authority to do anything about it and have been instructed by the Board not to engage in conversation with you about this. If you have any property at the Sheridan Swim club it can be picked up by simply making arrangements which are convenient for both you and manager, Bill Forbes. You are no longer to be on Sheridan property as a guest or for any function whatsoever. Your continued burning of debris on our property will also no longer be tolerated. Enclosed is your $100. check for dues.

Sheridan Swim Club
Board of Directors

C946

Exhibit C

# BY-LAWS

of

Sheridan Swim Club, Inc.    Quincy, Illinois

Date Effective: 3-31-96

Superseding any Previous By-Laws

**ARTICLE 1**    Directors

Section 1.   (a)  This section shall govern the nomination of Directors elected to terms beginning March 1973, and each annual election thereafter.

(b)  At a regular meeting of the Board of Directors, at least thirty days preceding the Annual election, the President shall appoint a Nominating Committee of three to nominate members for election of the Board of Directors. This Committee shall consist of three members of the Board of Directors whose terms of office do not expire at the immediate election. At least fifteen days before the election to the Nominating Committee shall post conspicuously in the CLUB building a copy of this section of the By-Laws, together with the names of the persons they nominate. Three percent of the voting members of the CLUB may be present in writing to the Nominating Committee not later than ten days before the Annual election the name of any Regular Member for nomination. Such names shall be posted immediately by the Nominating Committee. No person shall be eligible for election as Director unless his name shall thus have been submitted to, or nominated by said Nominating Committee.

(c)  Election of Directors shall be by affirmative vote of a majority of the members of the CLUB in attendance, as provided in Article 6,

1

C947

Exhibit D