**E-FILED**
Friday, 22 April, 2005  02:47:11 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| J. ROBERT TIERNEY, ANN S. TIERNEY CASE M. TIERNEY, by and through his Next Best Friend, J. ROBERT TIERNEY, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 04-3138 |
| | ) | Judge Jeanne E. Scott |
| SHERIDAN SWIM CLUB, INC., an Illinois Corporation, DOUG OLSON, ROBERT MEYER, and ROBERT HULTZ, Members of the Sheridan Swim Club, Inc. Board in their Individual And Official Capacities, ANDREW C. SCHNACK, III, BARNEY BIER, JON BARNARD, in their Individual Capacities,  DENNIS GORMAN, Attorney for The Quincy School District #172, a political subdivision of the State of Illinois, in his Individual and Official Capacities, | ) ) ) ) ) ) ) ) ) ) ) | Magistrate B. G. Cudmore |
| Defendants. | ) | |

### DEFENDANT BARNARD'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

Defendant, Jonathan H. Barnard, by his attorneys, Julie M. Koerner and Clifford G. Kosoff, moves to dismiss plaintiffs, J. Robert and Ann Tierney's, second amended complaint, pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6), and states as follows:

1.      On June 23, 2004, plaintiffs initially filed a complaint alleging various civil rights violations and state law claims against several defendants, including Jonathan Barnard.  (d/e 1).

2.      On July 7, 2004, plaintiffs filed an amended complaint.  (d/e 3).

3.      On January 27, 2005, plaintiffs filed a second amended complaint, which is the subject of this motion to dismiss.  (d/e 23).

4.     Plaintiffs purport to bring the following constitutional claims against this defendant, to wit: right to free speech (Count II), right of association (Count III), right of access to the courts (Count I), right to procedural due process (Count IV), and conspiracy claims under both 42 U.S.C. §1985(2) (Count VI) and §1985(3) (Count VII).  (d/e 23).

5.     Additionally, plaintiffs request that this Court take pendent jurisdiction over state law claims for conspiracy, intentional infliction of emotional distress, and intentional spoliation of evidence.  (d/e 23).

6.     Defendant maintains that plaintiffs purported constitutional claims are all subject to dismissal pursuant to Fed.R.Civ.P. 12(b)(6) and/or 12(b)(1).

7.     A Rule 12(b)(6) motion to dismiss tests whether the plaintiff has stated a claim for which relief can be granted.  _Davit v. Davit_, 2004 U.S. Dist LEXIS, 24533, 16-17 (2004).   Although the court accepts all well-pleaded facts in the complaint as true, the court is not required to accept as true legal conclusions or unsupported conclusions of fact or to ignore facts in complaint that undermine the plaintiff's claim.  _Id_.

8.     A Rule 12(b)(1) motion to dismiss provides a procedural vehicle to dismiss for lack of subject-matter jurisdiction, and the motion can present a facial or factual challenge to the court's jurisdiction.  _Davit v. Davit_, 2004 U.S. Dist LEXIS, 24533, 15 (2004).   When presented with a factual challenge, the court may look beyond beyond the jurisdictional allegations of the complaint and view other evidence submitted on the issue.  _Davit_, 2004 U.S. Dist LEXIS at 17 citing _Friend v. Ancilla Systems, Inc_., 68 F.Supp. 969, 971 (N.D.Ill, 1999).

9.     Barnard avers that this court lacks subject matter jurisdiction, pursuant to Rule 12(b)(1), in that plaintiffs' second amended complaint is subject to dismissal

through the application of *res judicata*, collateral estoppel, Rooker-Feldman, and
sovereign immunity.

10.    Alternatively, Barnard maintains that the plaintiffs' second amended
complaint is subject to dismissal for failure to state a claim for which relief can be
granted, pursuant to Rule 12(b)(6).

## Res Judicata

11.    Turning first to the application of *res judicata*, plaintiffs previously filed a
federal suit, pursuant to §1983 and §1985, which arise out of the same set of core facts as
the present litigation, in the Central District *Tierney, et. al., v. Powers, et. al.*, Docket No.
99-CV-3149.  Said prior litigation is a final judgment having gone up on appeal to the
Seventh Circuit, twice.[1]

12.    In addition to the prior federal suit, plaintiffs also filed and litigated a state
court suit, again arising out of the same core of operative facts and alleging the same
and/or similar causes of action as the prior federal litigation.  Said state suit was brought
in the Eighth Judicial Circuit Court of Adams County, Docket No. 2002 L 12, which also
went up on appeal to the Fourth District and said appeal was dismissed for failure to
prosecute on December 22, 2003.[2]

13.    *Res judicata* bars a subsequent suit where a final judgment on the merits
of a claim, or issue, has already been entered by a court of competent jurisdiction and the

---

[1] In ruling on a 12(b)(6) motion, a district court may take judicial notice of matters of public record without
converting the 12(b)(6) motion into a motion for summary judgment.  *Anderson v. Simon*, 217 F.3d 472,
474-75 (7th Cir., 2000).   Plaintiffs acknowledge and refer to the prior law suit in Count V, Section A,
Paragraph 41 of their second amended complaint.   Plaintiff, Ann Tierney, actually filed a second federal
suit, 01-3179, during the litigation of 99-3149, which suit was dismissed on January 14, 2002.

[2] A copy of the complaint filed in the Eighth Judicial Circuit was attached to plaintiffs' Amended
Complaint (d/e 3) filed July 7, 2004.  A copy of the Fourth Judicial Circuit Court order dismissing
plaintiffs' appeal was attached as Exhibit B to Barney Bier's motion to dismiss.

prior suit involves the same parties, or their privies, and there is an identify of the claims or issues. _Garcia v. Village of Mount Prospect_, 360 F.3d 630, 634 (n6) (7th Cir., 2004). See also, _Local S.E.I.U. Welfare Fund, et. al.,  v. Great Lakes Maintenance and Security Corp._, 55 Fed.Appx. 373, 374, 2002 U.S.App. LEXIS 27255 at 4 (7th Cir., 2002) ("In a broad sense, the term _res judicata_ encompasses the doctrines of both claim preclusion and issue preclusion.")

14.    _Res judicata_ also bars a subsequent claim, which was not brought in the prior proceeding, but should have been brought prior to the court entering a final judgment. _Id_.

15.    Defendant maintains that there exists an identity of this action with both the prior federal and state actions brought by the plaintiffs as evidenced by the litany of prior events recited in the body of the second amended complaint.  That the same or similar claims and issues plaintiffs seek to litigate in the present litigation were already litigated in the prior federal and state lawsuits, or should have been litigated in the prior proceedings, and a final judgment has been entered thereon.

16.    The core facts and issues from this present litigation still arise from the Tierneys expulsion from the Sheridan Swim Club in April of 1999, their efforts to gain reinstatement to Sheridan, and their efforts to obtain monetary judgments against various defendants for their party in an alleged conspiracy to keep the Tierneys out of Sheridan.

17.    With respect to the prior litigation, 99-3149, this Court made rulings on key issues that the Tierneys repeatedly raise here, including the following claims or issues, to wit:

a)    The Tierneys expulsion from the Sheridan Swim Club is a matter of private, not public concern and is not an activity protected by the First Amendment (Order October 22, 2003);

b)    Ann Tierney could not assert a claim for violating her right of association with her family, Robert and Meryl (Orders May 30, 2001, October 22, 2003);

c)    Plaintiffs §1983 claim of retaliation against prior defendants for conspiring to have the Tierneys expelled and refusing to act against a School District employee for harassing phone calls were all dismissed as not involving matters of public concern (Order October 23, 2003);

d)    The disputes about being excluded from Sheridan are matters of private concern (Order October 23, 2003);

e)    Court found no evidence that Gorman and Schnack conspired together to retaliate against the Tierneys for their complaints about Powers (Order, October 23, 2001, Page 18).

f)    the loss of a private swim club membership is not a deprivation of a federal right for §1983 purposes (Order, March 19, 2001, Page 28).

18.    Though Barnard was not a defendant in the prior federal or state suits, Barnard maintains that he is a privy of defendant Bier in that "a government and its officers are in privity for purposes of *res judicata*." <u>Simonsen v. Chicago Board of Education</u>, 115 Fed.Appx. 887, 889, 2004 U.S.App. LEXIS 22484 at 6 (7th Cir., 2004).

19.    In both plaintiffs' prior federal and state lawsuits, plaintiffs sued Barney Bier in his capacity as Adams County State's Attorney.   In the present action, plaintiffs have sued defendant Barnard in his capacity as an assistant state's attorney for Adams County and alleged that he engaged in conduct in said capacity.  As such, Barnard and Bier, as government officers, are in privity for purposes of *res judicata*.  Thus, plaintiffs' present suit as against Barnard is barred by the application of *res judicata*.

20.　　Additionally, the issues or claims that Robert Tierney present to this court for conduct or actions occurring "after June 24, 2002, were or should have been brought in the state court in which the proceedings were held.

21.　　On October 30, 2002, Robert Tierney filed a motion for sanctions and to compel the disclosure of documents, which motion is attached as _Exhibit A_ and incorporated herein this motion by reference.

22.　　That his motion specifically addressed the issues of failure to produce certain documents, specifically including Schnack's March 5, 1999 letter, the delay in production which the Tierneys now purportedly claim denied them of their right of access to the courts.[3]

23.　　That his motion also addressed the issue of the failure of defendants and a witness from appearing at the preliminary injunction hearing in the state case, Barnard's advise to defendants, his clients, and a witness, concerning their appearances at the hearing pursuant to Tierney's subpoenas, and the failure to produce other financial and business records of Sheridan.

24.　　Thus, plaintiffs brought all of these issues and claims before the Eighth Judicial Circuit Court, in which a final judgment has been entered, _res judicata_ applies and plaintiffs' second amended complaint must be dismissed.

---

[3] However, Barnard directs this court to Exhibit A, Plaintiff's Combined Motion for Sanctions for Bad Faith Non-Compliance with the Rules of Civil Procedure on Discovery, For Sanctions for Failure to Produce Documents as Ordered by the Court at a Preliminary Injunction Hearing, for an Injunction, For a Protective Order, and To Compel Discovery, Page 3, Paragraph 11, in which Tierney advised the court that he was not seeking sanctions against Barnard, because at the time he did not believe that Barnard knew of Schnack's March 5, 1999 letter.

**Collateral Estoppel**

25.     Alternatively, defendant avers that collateral estoppel bars plaintiffs'
present litigation.

26.     Collateral estoppel applies when an issue of ultimate fact has been
determined by a valid judgment, that issue cannot be again litigated between the same
parties in future litigation.   *Ashe v.  Swenson*, 397 U.S. 436, 443-444 (1970).  The prior
determination is an estoppel as to those same issues raised in a subsequent litigation, or
those issues which should have been raised in the prior litigation.  *Id*.

27.     Defendant incorporates the facts and arguments made with respect to
defendant's *res judicata* argument, specifically as to Paragraphs 17, 21, 22, and 23, here
in support of his argument on collateral estoppel.

28.     Plaintiffs' veiled attempt to limit their present §1983 and §1985 claims to
events which occurred "after June 23, 2002" does not save their suit from the
applicability of *res judicata* and collateral estoppel.

29.     As previously noted, the second amended complaint recites the litany of
plaintiffs' complaints and conduct of the defendants prior to June 23, 2002.  Additionally,
plaintiffs' continued attempt to have Sheridan Swim Club and its various board members
held to be state actors, when this court has already held otherwise, is evidence of
plaintiffs' continued attempt to litigate the same issues.

30.     More importantly, plaintiffs' request for relief remains the same,
specifically their family's reinstatement to the Sheridan Swim Club and monetary
damages.

31.     Moreover, on April 8, 2005, plaintiffs filed a "Petition for Relief from Judgment" in the state court litigation to "revive" that litigation and address defendant's conduct alleged to have occurred during those proceedings and after.  See, Exhibit B, Petition for Relief from Judgment, footnote 1, attached and incorporated herein this motion by reference.  Plaintiffs attached their second amended complaint in support of their petition for relief from judgment.

32.     Defendant submits that the filing of plaintiffs' petition for relief from judgment is an admission by the plaintiffs' that the claims and issues raised in plaintiffs' present federal litigation were or should have been raised in the state court litigation, hence, the filing of their current petition.

### Rooker-Feldman

33.     The plaintiffs' filing of their "Petition for Relief from Judgment" also supports a finding that plaintiffs' suit must be dismissed pursuant to the *Rooker-Feldman* doctrine.

34.     All of plaintiffs' present claims were actually brought (See, Exhibit A, "Motion for Sanctions") or should have been brought in the prior state court litigation, thus, this Court lacks subject matter jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(1).

35.     The *Rooker-Feldman* doctrine, which emerged from two Supreme Court cases, *Rooker v. Fidelity Trust Co*., 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), prohibits an inferior federal court from reviewing state court decisions.  *Crestview Village Apartments v. U.S. Department of Housing & Urban Development*, 383 F.3d 552, 555-56 (7th Cir., 2004).  "It is a jurisdictional doctrine premised upon the fact that, because federal district courts are

courts of original jurisdiction, lower federal courts are not authorized to review appeals from state court judgments…". *Crestview*, 383 F.3d at 556. The United States Supreme Court alone has appellate jurisdiction over the civil judgments of state courts. *Id*.

36.     In addition to the above bases as a bar to plaintiffs' present litigation, plaintiffs' action must also be dismissed for failing to state a claim upon which relief can be granted.

### Statute of Limitations

37.     To the extent that plaintiffs' second amended complaint still seeks relief from and compensation for acts occurring prior to June 23, 2002, then the statute of limitations bars plaintiffs' §1983 claims for conduct occurring prior to June 23, 2002. *Hildebrandt v. Illinois Department of Natural Resources*, 347 F.3d 1014, 1036 (7th Cir., 2003) (In Illinois, the statute of limitations for § 1983 actions, based on the statute of limitations for personal injury actions, is two years).

### Immunity

38.     To the extent that plaintiffs' constitutional claims against Barnard are made against him in his capacity as assistant state's attorney of Adams County, Barnard maintains that he is entitled to absolute prosecutorial immunity for actions taken in his official capacity, specifically as to his decision to initiate or forego criminal charges against defendant Schnack. *Imbler v. Pachtman*, 424 U.S. 409 (1976).

39.     A prosecutor's refusal or delay in charging an individual with a criminal offense is a prosecutorial decision afforded the same protection as the decision to initiate or continue criminal proceedings. See *Anderson v. Simon*, 217 F.3d 472, 475-76 (7th Cir., 2000).

40.    Even if this court were to find that Barnard acted maliciously, he is still
entitled to absolute prosecutorial immunity for those acts occurring within his capacity as
an Adams County assistant state's attorney.  *Henry v. Farmer City State Bank*, 808 F.2d
1228, 1238 (7th Cir., 1986).

41.    Thus, even if this court were to find that Barnard maliciously refused
criminal charges against Schnack or conspired with Bier to refuse to bring charges
against Schnack, he is still afforded the protection of absolute prosecutorial immunity.

42.    Moreover, even if Barnard obtained "new evidence" of Schnack's
harassing, obscene phone call to Robert Tierney in December of 1999 as a result of Doug
Olson's deposition in February of 2003, the statute of limitations for that offense, a
misdemeanor, ran in May of 2001, as the statute of limitations for a misdemeanor is only
eighteen (18) months.  720 ILCS 5/3-5(b).

43.    Alternatively, if the court finds that Barnard acted outside the scope of his
authority as an Adams County states attorney, as plaintiffs claim in their second amended
complaint (d/e 23, Par 102, "renegade conduct"), then Barnard is not a state actor and
plaintiffs' constitutional claims fail, and plaintiffs' suit must be dismissed.  See, *e.g*.,
*Pokalsky v. SEPTA*, 2002 U.S. Dist. LEXIS 16175, 9-10 (E.D.Penn., 2002) citing *Mark v.
Borough of Hatboro,* 51 F.3d 1137 (3rd Cir., 1993) ("a state employee who pursues purely
private motives and whose interaction with the victim is unconnected with the execution
of official duties does not act under color of law.")

44.    Should the court find that Barnard acted in an investigative capacity as
opposed to a prosecutorial capacity, then defendant avers that he is entitled to qualified
immunity for any of the acts made in his capacity as assistant state's attorney in that there

was no violation of a clearly established constitutional right of the plaintiffs. *Buckley v. Fitzsimmons*, 509 U.S. 259, 265 (1993).

## Conspiracy Claims

45.     Defendant further maintains that he is entitled to a dismissal of plaintiffs' conspiracy claims in their entirety for failure to state a claim as against Barnard.

46.     Much like plaintiffs' prior litigation in Tierney I, plaintiffs allegations of a conspiracy between the defendants in this lawsuit, as well as other individuals and entities who are not named in this litigation, are wholly conclusory. There are no allegations as to what constituted the alleged conspiratorial agreement between the parties.

47.     In order to establish §1983 liability through a conspiracy theory, plaintiff must demonstrate that (a) a private individual and a state official reached an understanding to deprive plaintiffs of their constitutional rights and (b) the private individual was a willful participant in that joint activity with the state or its agents. See, *Hanania v. Loren-Maltese*, 212 F.3d 353,. 356 (7th Cir., 2000) citing *Fries v. Helpper*, 146 F. 3d 452, 457 (7th Cir., 1998).

48.     Plaintiffs have failed to identify or plead facts to support an agreement or understanding between Barnard and a private individual or entity, to wit: Gorman, Schnack, or the Sheridan Swim Club, to deprive plaintiffs of their constitutional rights. They have only pled their conclusions regarding the alleged conspiracy. Such conclusions cannot be considered by this court in opposition to defendant's motion to dismiss.

49.     Additionally, plaintiffs' §1985(3) action (Count VII) must be dismissed for failure to plead or claim some racial, class based, invidiously discriminatory animus as required by _Griffin v. Breckenridge_, 403 U.S. 88, 102 (1971);  See also, _Feng. v. Sandrik_, 636 F. Supp. 77, 83 (N.D. Ill. 1986).

50.     The Seventh Circuit has explicitly held that § 1985(3) does not reach nonracial, political conspiracies.  _Allen v. City of Chicago_, 828 F. Supp. 543, 564, 1993 U.S. Dist LEXIS 9279 at 67-68 (N.D.Ill., 1993).

51.     Moreover, §1985(3) clearly does not protect First Amendment rights, as the plaintiffs' allege here.  _Feng_, 636 F.Supp at 84 (n6) citing _Afro-American Police League v. Fraternal Order of Police_, 553 F. Supp. 664, 673 (N.D.Ill.1982).

52.     The Supreme Court has also refused to construe the provisions of §1985(3) to reach conspiracies motivated by economic or commercial animus.  _Munson v. Friske_, 754 F.2d 683, 695 (7th Cir. 1985)(citing _United Brotherhood of Carpenters and Joiners v. Scott,_ 463 U.S. 825, 103 S.Ct. 3352, 3360, 77 L.Ed. 2d 1049 (1983).

53.     Plaintiffs failed to and cannot plead facts supporting a claim of racial or class based discriminatory animus, thus, their §1985(3) conspiracy claim fails.

54.     Not only is a racial or class based discriminatory animus required for §1985(3) claims, it is also required to be pled for a claim brought pursuant to part two of §1985(2) (Count VI), which applies to witnesses in state courts.  _Merrigan v. Affiliated Bankshares of Colorado, Inc._, 775 F. Supp 1408, 1411 1991 U.S.Dist. LEXIS 20607, 5 (Col. 1991); See also, _Bretz v. Kelman_, 773 F.2d 1026, 1029 (9th Cir., 1985).   Only part one of §1985(2) does not require pleading a racial or class based discriminatory animus,

because part one applies to witnesses in federal litigation and the federal courts have broader discretion in maintaining their own courts.  *Id*.

55.     Additionally, as to any of plaintiffs' conspiracy claims as between Barnard and Bier alone (d/e 23, Par. 97, 98), specifically with respect to appropriating records from Sheridan and in deciding not to bring criminal charges against Schnack, then such conspiracy claims are barred by the intra-corporate conspiracy doctrine, which as been adopted by the Seventh Circuit.  *Allen v. City of Chicago*, 828 F.Supp.543, 564 (N.D. Ill. 1993)(citing *Travis v. Gary Community Mental Health Center, Inc.*, 921 F.2d 108, 110-11 (7th Cir. 1990) (a corporation, including a government entity, cannot conspire with its own agents or employees).

56.     The intra-corporate conspiracy doctrine has been applied to actions brought under both Sections 1985 and 1983.  *Travis*, 921 F.2d at 110-111; *Doe v. Board of Education of Hononegah Comm. High School Dist. #207*, 833 F.Supp. 1366, 1382 (N.D. Ill. 1993).

## Procedural Due Process

57.     Plaintiffs' claim of a deprivation of procedural due process (Count IV) must also be dismissed for failure to state a deprivation of a constitutionally protected property interest or a deprivation of his liberty.

58.     Plaintiffs have no constitutional rights in the prosecutorial decision to decline or initiate criminal prosecutions.  *Anderson v. Simon*, 217 F.3d 472, 475-76 (7th Cir., 2000).

59.     As noted above, on March 19, 2001, this court held that the loss of a private swim club membership is not a deprivation of a federal right for §1983 purposes. (<u>See</u>, Order, March 19, 2001, Page 28).

60.     Plaintiffs have no constitutional property interest in the right to belong to a private club, nor have plaintiffs pled any contractual entitlement of a sufficient character to rise to the level of constitutional property.  <u>See</u>, <u>for example</u>, <u>Glatt v. Chicago Park District</u>, 87 F.3d 190, 192-193, 1996 U.S.App. LEXIS 14827, 5-7, (7th Cir., 1996) (the Constitution is trivialized when the concept of property is allowed to expand to a point in which men use it to lever petty disputes with local officials).

61.     As such, the alleged continuing conspiracy to deprive the Tierneys of a membership in the Sheridan Swim Club, in 2003 and 2004, is not the deprivation of a federal right for which §1983 applies, and plaintiffs' procedural due process claim must be dismissed.

## Right of Association

62.     Plaintiffs' claim of a deprivation of their right of association "with each other" (d/e 23, Count III, Par. 125(a)) fails to state a cause of action.

63.     This court has already held that Ann Tierney did not have a basis for claiming a loss of association from her family, as a result of prior free speech claims that she made in Tierney I.  (Order, May 30, 2001).

64.     The right of freedom of association grows out of the freedoms associated with the First Amendment, such as the right to free speech, worship, and to petition the government, thus the right also requires a showing of a matter of public concern.  <u>Nagle</u>

*v. Chicago School Reform Board of Trustees*, 2000 U.S. Dist. LEXIS 14075, 22-23
(N.D.Ill. 2000).

65.     As noted throughout this motion, plaintiffs claims and allegations do not
relate to a matter of public concern, thus, their claim of right to association must be
dismissed.

66.     Moreover, the plaintiffs and their minor son, Case, apparently reside
together.  The second amended complaint is devoid of purported conduct by defendant
Barnard that prohibits or prevents this family from living together under the same roof.
*C.f.*, *Moore v. City of East Cleveland, Ohio*, 431 U.S. 494 (1977) (municipality's housing
ordinance which prohibited grandmother from living with her grandson violated the 14th
Amendment and right of familial association).

### Right of Free Speech

67.     Plaintiffs' claim of a deprivation of their right to freedom of speech
(Count II) also fails to state a cause of action, in that any alleged speech is not on a matter
of public concern.  See, *Connick v. Myers*, 461 U.S. 138 (1983).

68.     Initially, defendant maintains that the second amended complaint fails to
identify with any specificity, such as the content, form, and context, the "free speech"
upon which the Tierneys' claim their rights have been violated.  See, *Connick*, at 147-
148.

69.     However, assuming that Robert Tierney's alleged free speech deprivation
involves his private conversations with an investigator with the Illinois Attorney
General's Office (d/e 23, Par. 104), to which he alludes in Paragraph 104, concerning the
conduct of defendants, Barnard and Bier, during the course of the Tierneys' state court

litigation and/or their failure to charge Schnack with perjury or other criminal charges, then such speech clearly is on a purely, private matter, in a non public forum.  See, *e.g*., *Connick*, at 148 ("to presume that all matters which transpire within a government office are of public concern would mean that virtually every remark – and certainly every criticism directed at a public official – would plant the seed of a constitutional case.")

70.     Clearly, the Tierneys' success in their state court litigation, their interest in Schnack's prosecution for criminal offenses allegedly committed against the Tierneys, and their reinstatement to the Sheridan Swim Club all involve matters of purely individual or private concern (the last claim, of course, has already been found by this court as a matter of private concern), motivated by an economic and/or personal vendetta on the part of the Tierneys.

71.     Thus, even if the conduct of Barnard amounted to retaliation, which it does not, plaintiffs' First Amendment claim fails in that Robert Tierney's speech was not constitutionally protected.  See, *e.g*., *McElroy v. Lopac*, 2005 U.S.App. LEXIS 5611, 7-8 (7th Cir., 2005) (inmate's speech concerning "lay-in" pay were a matter of purely individual economic importance and thus not protected activity under the First Amendment).

72.     Additionally, there is no showing by the plaintiffs that any free speech with the Illinois Attorney General's Office resulted in any harm or deprivation to them. According to their own complaint, this conversation or conversations took place after the hearings in June of 2002 and plaintiffs claim that Barnard had already chosen not to pursue criminal charges against Schnack.  The only alleged deprivation they could raise

would be the continued refusal to admit the Tierneys into Sheridan Swim Club, for which this court has already found that the Tierneys have no constitutional property right.

73.     If Mr. Tierney's conversations with the investigator of the Illinois Attorney General's office concerned the prior conduct of Richard Powers, then clearly this issue has been addressed in the prior litigations, and that clearly goes back to the applicability of *res judicata* and collateral estoppel.

## Right of Access

74.     With respect to plaintiffs' claim of a violation of their right of access to the courts, the multitude of lawsuits brought by the Tierneys would seem to rebut their claim by itself.

75.     Notwithstanding that fact, defendant maintains that the plaintiffs have not clearly articulated their alleged claim of violation of their right of access to the courts.

76.     In Paragraph 123 of the second amended complaint, their claim appears to be that defendant Barnard retaliated in response to the filing of the prior federal and state lawsuits and that such retaliation is an interference with plaintiffs' right of access to the courts.  Paragraph 123 also incorporates the factual claims in Paragraphs 93 through 118.

77.     With respect to Paragraphs 105, 106, 108-110, the Tierneys purport to claim that the denial of membership in the Sheridan Swim Club is in retaliation for filing prior federal and state lawsuits .  The Tierneys attempt to elevate this retaliation by pleading that their membership has been repeatedly denied, unless they withdraw all pending and forego future litigation against the Sheridan Swim Club and its board members.

17

78.     Notwithstanding the fact that the this court has already held that the Tierneys have no constitutionally protected right to belong to Sheridan, the Tierneys were expelled from Sheridan Swim Club, a private, club, in April of 1999, which occurred <u>prior</u> to the plaintiffs' filing any lawsuits and was the act which resulted in the Tierneys' numerous lawsuits.   As an event preceding the filing of their lawsuits, their expulsion cannot be a form of retaliation.

79.     To accept the argument that the denial of membership to Sheridan constitutes retaliation for their right of access to the courts, would result in a lawsuit from the Tierneys every year that a membership is denied to them

80.     Parties to a suit, civil or criminal, often condition settlement agreements or plea agreements on one party giving up the right to forego further legal proceedings or appellate review.  The Tierneys' claim that this presents a form of retaliation, or interference, is without merit.

81.     The second amended complaint also makes references to defendant interfering with witnesses and the failure to produce documents during the course of the state litigation, though said references are not specifically cited in Count I.

82.     The courts have found, in some instances, a constitutional right of access to evidence.  <u>See</u>, <u>United States v. Valenzuela-Bernal</u>, 458 U.S. 858, 867 (1982).  However, a violation of this guarantee can only be established upon a showing that the lost evidence would have been both favorable and material to the defense.  <u>Id</u>., at 873.

83.     The non-party witness that plaintiffs claim failed to appear for the hearing is not identified, nor is the substance of what his testimony would have been and how it would have been both favorable and material to plaintiffs' claim is not pled.  Nor is there

any indication that the plaintiffs availed themselves of all of their remedies to enforce their subpoena, such as a rule to show cause and/or the issuance of a body attachment, to compel the appearance of the witness.

84.    Neither are plaintiffs alleging that the identify of material witnesses or other key facts was withheld from them such that they did not realize their right to redress in the courts.  *C.f.*, <u>*Bell v. Milwaukee*</u>, 746 F.2d 1205, 1261 (7th Cir., 1984).

### **Individual State Law Claims**

85.    Plaintiffs purported state law claims are also subject to dismissal for various reasons.

86.    First, plaintiffs' state law claims are subject to a one (1) year statute of limitations as against Barnard, pursuant to 745 ILCS 10/8-101.  Plaintiffs' claims for conduct occurring prior to June 23, 2003 is barred by the statute of limitations.

87.    Plaintiffs' state court claims for spoliation of evidence, intentional infliction of emotional distress and conspiracy arise from conduct that occurred on June 24, 2002 or through the course of the state court litigation which terminated on April 16, 2003.

88.    Plaintiffs filed their initial complaint on June 23, 2004, which was more than one (1) year following any of the conduct which plaintiffs allege gave rise to their state claims.  Plaintiffs have not plead any viable state court action accruing on or after June 23, 2003, thus their state law claims are subject to dismissal.

89.    Third, this court lacks subject matter jurisdiction in that the Eleventh Amendment bars plaintiffs' state law claims against Barnard, a state official.

90.    Plaintiffs pled that Barnard was acting in his capacity as assistant state's attorney for Adams County.  Illinois law requires that any action brought against a state official for actions undertaken within the scope of their authority, be brought in the Illinois Court of Claims. 745 ILCS 5/1.  _Hampton v. City of Chicago_, 349 F.Supp.2[nd] 1075, 1078-1081 (N.D.Ill. 2004).

91.    Additionally, if this court strikes plaintiffs' federal claims, then defendant requests that this court not exercise supplemental jurisdiction over any viable state law claim.

**Punitive Damages**

92.    In the event that this Court fails to strike down the entirety of plaintiffs' second amended complaint as against defendant for any or all of the reasons stated in this motion, then Barnard maintains that plaintiffs' prayer for punitive damages must be stricken.

93.    The Supreme Court has held that punitive damages are not available against a municipal entity in a civil rights action pursuant to §1983.  _Newport v. Fact Concerts, Inc.,_ 453 U.S. 247, 270, 101 S. Ct. 2748, 69 L.Ed. 2d 616 (1981).

94.    Municipalities have similarly been held immune from punitive damages in claims pursuant to §1985.  _Burns v. Cineplex Odeon, Inc.,_ 1996 U.S. Dist. LEXIS 12886 (N.D. Ill. 1996).

95.    Additionally as to any viable state law claim, The Illinois Local Government Tort Immunity Act precludes the recovery of punitive damages against local public entities or their officials in claims brought pursuant to state law.  745 ILCS 10/2-

102; See, *Emery v. Northeast Illinois Regional Commuter Railroad Corp.*, 2003 U.S. Dist. LEXIS 16403 (N.D. Ill. 2003).

96.     In support of this motion to dismiss, defendant has filed a supporting memorandum of law.

Wherefore, defendant, Jonathan H. Barnard, respectfully requests that this Court dismiss plaintiffs' second amended complaint as against defendant in its entirety for the reasons stated hereinabove this motion to dismiss and supporting memorandum, or alternatively, dismiss the individual counts for which plaintiffs have failed to state a viable claim or for which this Court does not have subject matter jurisdiction, along with plaintiffs' prayer for punitive damages.

Respectfully Submitted,

DEFENDANT JONATHAN H. BARNARD, IN HIS INDIVIDUAL CAPACITY AS THE ADAMS COUNTY STATE'S ATTORNEY

By:  s/Julie M. Koerner
Julie M. Koerner Bar Number: 6204852
Attorney for Defendant-Barney Bier
O'Halloran, Kosoff, Geitner & Cook, P.C.
650 Dundee Road, Suite 475
Northbrook, Illinois 60062
Telephone: (847) 291-0200
Fax: (847) 291-9230
E-mail: jkoerner@okgc.com

Julie M. Koerner
O'Halloran, Kosoff, Geitner & Cook, P.C.
650 Dundee Road, Suite 475

Northbrook, IL 60062
Telephone: (847) 291-0200

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| J. ROBERT TIERNEY, et. al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 04-3138 |
| vi. | ) | |
| | ) | Judge Jeanne E. Scott |
| SHERIDAN SWIM CLUB, INC., et. al. | ) | Magistrate B. G. Cudmore |
| | ) | |
| Defendants. | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on April 22, 2005, I electronically filed the foregoing **Defendant Barnard's Motion to Dismiss Plaintiffs' Second Amended Complaint** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the attorney of record for the party and parties that are participants as follows:

J. Robert Tierney
Ann S. Tierney
2157 Summer Creek Drive
Quincy, IL 62305
217-223-4849
email: spg@insightbb.com

Paul Bown
Brown, Hay & Stephens, L.L.P.
205 S. Fifth Street, Suite 700
P.O. Box 2459
Springfield, IL 62705-2459
217-544-8491
217-544-9609
pbown@bhsloaw.com

Brett K. Gorman
Schmiedeskamp, Robertson, Neu & Mitchell
525 Jersey Street
P.O. Box 1069
Quincy, IL 62306-1069
217-223-3030
217-223-1005
bgorman@srnm.com

By: s/Julie M. Koerner
Julie M. Koerner Bar Number: 6204852
Attorney for Defendant-Barney Bier
O'Halloran, Kosoff, Geitner & Cook, P.C.
650 Dundee Road, Suite 475
Northbrook, Illinois 60062
Telephone: (847) 291-0200
Fax: (847) 291-9230
E-mail: jkoerner@okgc.com