**E-FILED**
Friday, 22 April, 2005  05:06:10 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| J. ROBERT TIERNEY, ANN S. TIERNEY, CASE M. TIERNEY, By And Through His Next Best Friend, J. ROBERT TIERNEY, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 04-3138 |
| SHERIDAN SWIM CLUB, INC., an Illinois corporation, ANDREW C. SCHNACK, III, in his Individual Capacity, DOUG OLSON, ROBERT MEYER, and ROBERT HULTZ Members of the Sheridan Swim Club Inc., Board in their Individual and Official Capacities, BARNEY BIER, Member of the Sheridan Board in His Individual and Official Capacities, and in his Individual Capacity as the Adams County State's Attorney, JON BARNARD, in his Individual Capacity as an Adams County Assistant State's Attorney, DENNIS GORMAN, Attorney for the Quincy School District #172, a political subdivision of the State of Illinois, in his Individual and Official Capacities, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
## PLAINTIFFS' SECOND AMENDED COMPLAINT

Defendant **DENNIS W. GORMAN**, by his attorneys, **SCHMIEDESKAMP, ROBERTSON, NEU & MITCHELL**, submits this memorandum in support of his motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## The Court Lacks Subject Matter Jurisdiction
## to Review the Judgment of a State Court

This action ("*Tierney V*") was commenced without an attorney by a complaint filed on June 23, 2004. The original complaint and the pending second amended complaint are the latest in an ongoing series of lawsuits filed in state and federal court dating back to 1999. The issues presented in the present lawsuit have been the subject of prior defense summary judgment rulings and dismissals and three appeals to the United States Court of Appeals for the Seventh Circuit.[1] The Plaintiffs have been sanctioned by both the District Court and the Seventh Circuit. On

---

[1] The prior proceedings and dispositions are summarized below:

a.  J. Robert Tierney, et al., v. Quincy School District No. 172, et al., Case No. 99-3149, filed in the United States District Court for the Central District of Illinois (*"Tierney I"*), Dismissal and summary judgment orders entered in favor of all Defendants, and affirmed in total by the Seventh Circuit. Tierney v. Vahle, 304 F.3d 734 (7th Cir. 2002) and Ann S. Tierney v. Quincy School District No. 172, No. 02-1403 and 04-1205, unpublished order dated February 22, 2005. Plaintiffs' former counsel was sanctioned by the Seventh Circuit for filing a frivolous appeal regarding claims against Defendant Debbie Olson. The District Court awarded attorney's fees pursuant to 42 U.S.C. § 1988(b) in favor of Debbie Olson, and also awarded fees to Quincy School District No. 172 ("QSD") under 28 U.S.C. § 1927.

b.  Ann S. Tierney v. Quincy School District No. 172, Case No. 01-3179, filed in the United States District Court for the Central District of Illinois (*"Tierney II"*). This case was dismissed as duplicative of *Tierney I*, and the dismissal order entered in favor of QSD was affirmed by the Seventh Circuit. Ann S. Tierney v. Quincy School District No. 172, No. 02-1403 and 04-1205, unpublished order dated February 22, 2005.

c.  Ann S. Tierney v. Quincy School District No. 172, Case No. 01-3380, filed in the United States District Court for the Central District of Illinois ("*Tierney III*"), (case dismissed as duplicative of *Tierney I*, on the court's own motion).

d.  J. Robert Tierney, et al. v. Sheridan Swim Club, Inc., et al., Case No. 02-L-12, filed in the Circuit Court for the Eighth Judicial Circuit, Adams County, Illinois ("*Tierney IV*"), (case dismissed by circuit court). Plaintiffs appealed the dismissal order to Illinois Fourth District Appellate Court, but then failed to file a brief, and the appellate court dismissed the appeal on its own motion. The circuit court's dismissal order and mandate of appellate court are attached as Exhibit A and Exhibit B, respectively.

2

July 1, 2004, Plaintiffs' former counsel filed a motion to withdraw with the Seventh Circuit upon learning of the filing of this *pro se* lawsuit.  See Exhibit C.

The court is well aware of the general history regarding these litigants, and their continuing harassment of Quincy School District No. 172 ("QSD"), the Sheridan Swim Club, and others.  This background is concisely summarized by the Seventh Circuit in its two opinions, which affirmed dispositions of all issues in favor of all Defendants.  Tierney v. Vahle, 304 F.3d 734 (7th Cir. 2002) and Ann S. Tierney, et al., v. Quincy School District No. 172, 02-1403 and 04-1205, dated February 22, 2005 (Exhibit D).  The Seventh Circuit has noted that Mr. Tierney is pursuing a "vendetta" against QSD,  Tierney v. Vahle, 304 F.3d at 742.

Dennis Gorman was joined as a Defendant in *Tierney I*, and subsequently dismissed by an order entered on March 19, 2001 (Case No. 99-3149, d/e 118).  The dismissal was affirmed by the Seventh Circuit on February 22, 2005, and after petitions for rehearing and rehearing *en banc* were denied, the Seventh Circuit issued its mandate on April 5, 2005.  (Case No. 99-3149, d/e 364).  The Plaintiffs alleged in *Tierney I*, as they do here, that Gorman engaged in a massive conspiracy in retaliation against them for exercising their First Amendment rights to free speech and to petition for redress of grievances.  In dismissing Gorman and members of the QSD school board on a Rule 12(b)(6) motion in *Tierney I*, the court concluded in part as follows: "It is not a violation of a person's constitutional rights to conduct an investigation that the complaining party requests, to disclose the allegations to others who may have knowledge of relevant facts, and then come to a conclusion other than what the complainant seeks." (*Tierney I*, Order dated March 19, 2001, at p. 9).

The present lawsuit (*Tierney V*), at its core, is nothing more then the latest retaliatory strike, seeking revenge against QSD (and once again, its lawyer) arising out of QSD's handling of the pre-

3

competition massages at issue in *Tierney I*. The filing of this lawsuit, as an attempt to end-run the prior rulings of this court and the Seventh Circuit, is itself sanctionable. The Plaintiffs seek to "win by losing" in simply keeping alive claims against the same general set of Defendants, despite their prior adverse results in *Tierney I, Tierney II, Tierney III,* and *Tierney IV*.[2]

On top of all the successive filings and repackaging of the same previously adjudicated claims, the Defendant has learned that after filing and service of the second amended complaint, the Plaintiffs, on April 8, 2005, actually repackaged *Tierney V* in a separate petition to re-open the Adams County state court proceeding. A copy of the petition is attached as Exhibit E.[3] This petition restates the allegations contained in the second amended complaint as grounds to reopen the Adams County state court lawsuit, and in so doing, conclusively establishes beyond any reasonable doubt or credible argument that the court has no subject matter jurisdiction over this *pro se* lawsuit under the Rooker-Feldman doctrine. See Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).

The Rooker-Feldman doctrine "precludes lower federal courts from exercising jurisdiction over claims that would require them to review a final judgment of a state court." Manley v. City of Chicago, 236 F.3d 392, 396 (7th Cir. 2001). The doctrine applies to claims actually raised in the state court, *and* to claims that are "inextricably intertwined" with the state court's determinations.

---

[2]The procedural history of the successive lawsuits and the tone of the allegations in *Tierney V* should leave little doubt that this new suit has been filed in retaliation for the adverse rulings in the prior cases. What is also clear is the Plaintiffs have adopted a strategy of achieving victory by simply keeping the claims alive in one form or another, causing the Defendants to incur the continuing expense of a defense.

[3]In resolving a motion to dismiss under Rule 12(b)(6), the District Court is entitled to take judicial notice of matters in the public record. Palay v. United States, 349 F.3d 418, 425 n.5 (7th Cir. 2003).

4

Manley, 236 F.3d at 396. The key to determining if Rooker-Feldman applies is "whether the district court is in essence being called upon to review the state-court decision." Manley, 236 F.3d at 396.

All of the conduct complained of in *Tierney V* occurred between June 2002 and October 2002, during the pendency of *Tierney I* and during the pendency of the Adams County state court litigation. The allegations contained in the second amended complaint against Defendant Dennis Gorman are lengthy and repetitive, but are limited to claims that he committed the following acts:

- Interfered with witnesses subpoenaed to testify in the state court proceeding (¶ 31);

- Provided representation to QSD and non-QSD employees in the state court proceeding (¶ 32, 47);

- Instructed witnesses to refuse to appear to testify in the state court proceeding (¶ 33, 48);

- Provided false and misleading testimony in the state court proceeding (¶ 34, 63, 64, 65);

- Failed to produce or disclose documents in the state court proceeding (¶ 35, 56, 62, 71);

- Interfered with the deposition of James Citro in the state court proceeding (¶ 36);

- Violated various rules of professional conduct in the state court proceeding (¶74(b)(i));

- Failed to report Attorney Schnack's alleged perjury in the state court proceeding (¶ 75(b)(j)); and

- Enlisted Judge Chet Vahle to prevent the depositions of Vahle and other material witnesses in the state court proceeding (¶ 76).

The obvious question arising from a reading of the Plaintiffs' second amended complaint is this: Why did the Plaintiffs not bring Defendant Gorman's conduct to the attention of the state court judge and seek appropriate relief in that proceeding? The answer to this question is simple and

surprising: They <u>did raise</u> their complaints with the state court. <u>See</u> "Plaintiff's Combined Motion for Sanctions for Bad Faith Non-Compliance with the Rules of Civil Procedure on Discovery, for Sanctions for Failure to Produce Documents as Ordered by the Court at a Preliminary Injunction Hearing, for an Injunction, for a Protective Order, and to Compel Discovery," filed in *Tierney IV* on October 30, 2002, attached as <u>Exhibit F</u>. The court denied the Plaintiffs' motion on April 16, 2003. <u>Exhibit A</u>. Plaintiffs' attempt to re-package these allegations into a separate and new federal lawsuit is prohibited by <u>Rooker-Feldman</u>, and the court should dismiss this cause for lack of jurisdiction under Rule 12(b)(1).

## Alternatively, the Plaintiffs Fail To State Claims Upon Which Relief Can Be Granted

The Plaintiffs' theory is that these actions "fatally afflicted" their state court lawsuit and caused the adverse judgment. However, the second amended complaint contains no allegation to establish <u>how</u> these actions caused the adverse result. This omission is telling given that the judgment entered against the Plaintiffs in the state court lawsuit was based upon motions filed by the Defendants under 735 ILCS 5/2-615 and 735 ILCS 5/2-619. None of the acts alleged against Defendant Gorman is connected in any way by the Plaintiffs to the basis for the state court's ruling. Further, the Plaintiffs gave up on their appeal. The appellate court dismissed the state court appeal based upon the Plaintiffs' failure to file a brief. Under these circumstances, the Plaintiffs cannot establish a causal connection between any conduct of the Defendant and the end result in the *Tierney IV* state court proceedings. Instead, the adverse result was ultimately caused by the Plaintiffs' failure to file a brief. This inescapable fact is fatal to *Tierney V*.

Beyond all of this, the Plaintiffs have failed to plead viable claims, and have stated no claim upon which the court can grant any relief.

6

Federal Claims

The Plaintiffs assert multiple theories under 42 U.S.C. § 1983 (Counts I, II, III, IV, and V) and § 1985 (Counts VI and VII). None of these counts states a claim upon which relief can be granted.[4]

To maintain a claim under §1983, Plaintiffs must demonstrate that their constitutionally protected rights were violated by a government official, acting under color of state law. Bennett v. Roberts, 295 F.3d 687, 699 (7th Cir. 2002). "Not every action by a state official or employee is to be deemed as occurring under color of state law. Action is taken under color of state law when it is 'made possible only because the wrongdoer is clothed with the authority of state law . . . .'" Hughes v. Meyer, 880 F.2d 967, 971 (7th Cir. 1989), quoting United States v. Classic, 313 U.S. 299, 326 (1941). There is nothing about any of the actions alleged in the Plaintiffs' second amended complaint against Defendant Gorman which were made possible only because he was "clothed with the authority of state law," and therefore, all of the Section 1983 claims fail as a whole. These claims also fail for the reasons separately analyzed below.

Count I    Right of Access to the Courts Without Interference or Retaliation

The court has previously determined that the multiple complaints and lawsuits filed by the Plaintiffs show that their allegations of interference with their right of access to the courts have no merit. (*Tierney I* Order dated March 19, 2001, at p. 32, footnote 4). Courts analyze an alleged violation of the First Amendment right to petition clause in the same way as any other violation of the right to free speech. See Gray v. Lacke, 885 F.2d 399, 412 (7th Cir. 1989). The Plaintiffs clearly

---

[4]In addition to the defects presented in this section, the §1983 and §1985 claims are also affirmatively barred by the applicable statutes of limitation. See discussion below at p. 20.

7

had access to the courts evidenced by filing repeated suits. Tanner v. Kerner, 385 F.2d 415, 415-16 (7th Cir. 1967).

Count II      Right of Freedom of Speech and to Petition the Government for Redress of Grievances without Interference or Retaliation

Plaintiffs claim the Defendants "intentionally deprived Plaintiffs of their rights to Freedom of Speech guaranteed them as part of the First Amendment to be protected from retaliation by state actors by the acts of conspiracy and retaliation, for engaging in free speech on issues of public concern with several State Agencies including the Illinois Attorney General's Office, after filing lawsuits in Federal and State Courts, and for Plaintiffs petitioning the Government for redress of grievances . . ." (¶124). Despite this grandiose allegation, Plaintiffs have no viable First Amendment claims.

Plaintiffs do not actually allege that they have been curtailed in their ability to speak freely or petition the government for redress of grievances. In fact, Plaintiffs fail to allege any specific speech they claim is protected. In addition, Plaintiffs concede in this allegation that they have actually petitioned the government for redress of grievances by contacting various state agencies, and have filed numerous lawsuits for redress of the "grievances" underlying this suit.

Moreover, for speech to be constitutionally protected, it must be about a matter of public interest or concern. Brookins v. Kolb, 900 F.2d 308, 313 (7th Cir. 1993). Speech is a matter of public concern if it relates "to any matter of political, social, or other concern to the community." Kuchenreuther v. City of Milwaukee, 221 F.3d 967, 973 (7th Cir. 2000). Although the allegation made in paragraph 124 of the complaint includes the term "public concern," the contents of the complaint indicate otherwise. As evidenced by the remaining allegations of the Plaintiffs' second

amended complaint and their damages claims, it is evident that there is no matter of public interest

or concern involved. Nothing in the Plaintiffs' lawsuit is of any concern to anyone in the community

but the Plaintiffs. This case stems only from the Plaintiffs' loss of their membership to the Sheridan

Swim Club and associated events personal to the Plaintiffs alone ---- matters about which the

community at large has no interest in.

Count III      Right of Association without Retaliation

Plaintiffs claim they were deprived of their constitutional right to freedom of association with

each other "by acts of conspiracy and retaliation for the speech of Robert Tierney." However, the

Plaintiffs to do not specify how they were prevented from associating. The right to association

encompasses two types of associations:  (1) the choice to engage in certain intimate human

relationships; and (2) the choice to associate for the purpose of engaging in protected First

Amendment activities. Roberts v. United States Jaycees, 468 U.S. 609, 617-18, 104 S.Ct. 3244

(1984). It is evident from the face of the complaint that the Plaintiffs are husband, wife, and son

(prior to dismissal of the Case Tierney claims) ---- a family residing in the same house near the

Sheridan Swim Club. Because the Plaintiffs all reside in the same house, it is clear that they do

"associate" with each other, and thus, the first type of association is not at issue here.

With respect to the second type of association, the Plaintiffs' claim cannot stand. The

Plaintiffs cannot claim they have been deprived of their right to associate for the purpose of

exercising their constitutional rights to free speech and redress of grievances, because those

underlying First Amendment claims are without merit. As stated above, Plaintiffs have been able

to petition the government and courts for redress of grievances, and because there is no issue of

public concern there can be no violation of the right to free speech. The right of association, like the

9

right to free speech, is not violated if the basis for the association is not of public concern. Klug v. Chicago School Reform Board of Trustees, 197 F.3d 853, 857 (7th Cir. 1999). This case stems only from the Plaintiffs' individual concerns over the revocation of a membership in the Sheridan Swim Club and events of interest only to the Plaintiffs, not the public at large.

Count IV    Right to Procedural Due Process

The Plaintiffs' conclusory claim that they were deprived "of their rights to due process in the protection of their property and liberty interests . . . " in retaliation for certain acts is insufficient to state a claim. The Fourteenth Amendment prevents the state from depriving parties of liberty or property without due process of law. Omosegbon v. Wells, 335 F.3d 668, 674 (7th Cir. 2003). As stated by the United States Supreme Court, "the range of interests protected by procedural due process is not infinite." Board of Regents of State Colleges v. Roth, 408 U.S. 564, 570, 92 S.Ct. 2701 (1972). To establish a protected property interest, Plaintiffs must point to some substantive state law creating the interest. Omosegbon, 335 F.3d at 674. The interest must not be merely *de minimus*, so the Plaintiffs must point to some provable pecuniary harm. Omosegbon, 335 F.3d at 674.

To have a property interest in a benefit (such as the Sheridan membership), there must more than a mere expectation of it. Plaintiffs must have a "legitimate claim of entitlement to it." Roth, 408 U.S. at 577. "Property" is "what is securely and durably yours under state . . . law, as distinct from what you hold subject to so many conditions as to make your interest meager, transitory, or uncertain." Lanna Overseas Shipping, Inc. v. City of Chicago, 1997 WL 587662 at *8, citing Reed v. Village of Shorewood, 704 F.2d 943, 948 (7th Cir. 1983). Such a "legitimate claim of entitlement" occurs "only when statutes or regulations . . . establish a framework of factual

10

conditions delimiting entitlements which are capable of being explored at a due process hearing."
Lanna Overseas Shipping, 1997 WL 587662 at *8, citing Edison v. Pierce, 745 F.2d 453, 459-60
(7th Cir. 1984). No such property interest has been alleged, nor can any such interest be claimed.
Plaintiffs have no constitutional property interest in the right to belong to a private club, and they
have not otherwise asserted any contractual entitlement of a sufficient character to rise to the level
of constitutional property. Glatt v. Chicago Park District, 87 F.3d 190, 192-193 (7th Cir. 1996).

With regard to a liberty interest, any alleged stigmatic harm (such as harm to one's good name
or reputation) must take concrete forms and extend beyond the party's interest in his or her own
reputation. Omosegbon, 335 F.3d at 675. In other words, there must be some evidence of public
disgrace. Omosegbon, 335 F.3d at 675. Here, the Plaintiffs allege ostracism from friends, damaged
social lives, and a "stigma from expulsion" from the Sheridan Swim Club which has "cast a pall over
the entire household." The claim that the Plaintiffs' social lives have been disrupted has nothing to
do with any liberty interest as liberty interests are defined for due process purposes. The Plaintiffs
have alleged no specific property or liberty interests at stake here, and without one or the other, there
is no procedural due process claim.

Count V        Ratification by Sheridan/Sheridan Board of Wrongful Conduct and Actions of
               Sheridan Board Members, Bier, and Olson, Club Member Schnack, and Others

Count V is not directed against Defendant Dennis Gorman, and otherwise fails to state any
claim upon which relief can be granted against this Defendant.

Counts VI and VII    Claims under 42 U.S.C. § 1985

A.    Plaintiffs Fail to State a Cause of Action Under 42 U.S.C. §1985(2).

Section 1985(2) provides that an individual obstructs justice

11

"If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified . . . ; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws."

In Count VI of their second amended complaint, the Plaintiffs claim Defendants violated 42 U.S.C. §1985(2) by conspiring to "intentionally deprive the Plaintiffs of their rights to access the courts and to petition the Government for redress of grievances." Plaintiffs assert that their claims under Section 1985(2) are viable without allegations of class-based animus. This claim fails as a matter of law. Williams v. St. Joseph Hospital, 629 F.2d 448, 451 (7th Cir. 1980).

In Williams, the court explicitly determined that conspiracy under Section 1985(2) "must aim at the deprivation of the equal enjoyment of rights secured by the law to all," and accordingly, requires a showing of some racial or otherwise class-based animus. Williams, 629 F.2d at 451. See also Vasquez v. Hernandez, 1992 WL 317195, *2 (N.D. Ill. 1992) (citing Seventh Circuit and United States Supreme Court).

"Section 1985(2) proscribes conspiracies aimed at depriving people of equal protection of the law. The phrase "equal protection" appears twice in the language of § 1985(2). In interpreting this language, the Supreme Court has required that the conspiracy . . . must aim at a deprivation of the equal enjoyment of rights secured by the law to all. Griffin v. Breckenridge, 403 U.S. 88, 102 (1971). *Thus, the rule has evolved that a successful §1985(2) claim requires the plaintiff to allege that "the defendants were motivated in their actions by racial or some other type of invidious, class-based discrimination.* Lowe v. Letsinger, 772 F.2d 308, 311 (7th Cir.1985), citing General Bldg. Contractors Ass'n v. Pennsylvania, 458 U.S. 375, 390-91 (1982)."

Vasquez v. Hernandez, 1992 WL 317195 at *2 (emphasis added). Because the Plaintiffs make no such allegations, and cannot make such allegations, their claim under Section 1985(2) must be dismissed.

B.     Plaintiffs Fail to State a Cause of Action Under 42 U.S.C. §1985(3).

In Count VII of their complaint, the Plaintiffs claim Defendants violated their rights to equal protection of the law by conspiring to "retaliate against and interfere with the Plaintiff's rights and attempts to petition the government and courts . . . destroy evidence and give false, misleading, and evasive testimony that was intended to obstruct the due course of justice and the judicial process," and prevented them from petitioning the State for redress of grievances. See Plaintiffs' second amended complaint, paragraph 129. Again, there is no allegation of class-based animus. Such an allegation must be made, or the Section 1985(3) claim must fail. See Munson v. Friske, 754 F.2d 683, 694-695, and n. 8 (7th Cir. 1985). The United States Supreme Court "added the animus requirement in order to give full effect to the language and purpose of the statute." Munson, 754 F.2d at 694 n. 8, citing Griffin v. Breckenridge, 403 U.S. 88, 102 (1971). Because Plaintiffs have made no allegation of any class-based animus, their claims under Section 1985(3) must also be dismissed.

C.     Plaintiffs Have Not Been Denied Access to the Courts.

In their Section 1985 claims, the Plaintiffs claim Defendants conspired to deny them access to the courts. Plaintiffs have filed numerous suits involving the same group of Defendants and in their complaint clearly outline the various lawsuits they have filed. This record of ongoing litigation between the parties demonstrates that any cause of action for access to the courts is without merit and most likely, frivolous. See Tanner v. Kerner, 385 F.2d 415, 415-16 (7th Cir. 1967) (finding

inmate's suit for denial of access to courts frivolous when inmate had filed numerous federal and state lawsuits).

State Claims

The court should also dismiss Plaintiffs' state law claims for failure to state a claim upon which relief can be granted.

Count VII    Civil Conspiracy

To state a cause of action in Illinois for civil conspiracy, Plaintiffs must allege an agreement between the alleged conspirators, that "one of the conspirators committed an overt act in furtherance of the conspiracy," *and* "that such act was tortious or unlawful in character." Adcock v. Brakegate, Ltd., 164 Ill.2d 54, 63, 645 N.E.2d 888 (1995). A cause of action for civil conspiracy exists only if there is both an agreement among conspirators *and* a tortious act. Adcock, 164 Ill.2d at 63. Conspiracy itself is not an independent tort; thus, merely characterizing various acts as a conspiracy is insufficient to state a cause of action for civil conspiracy. Indeck North American Power Fund v. Norweb, 316 Ill. App. 3d 416, 432, 735 N.E.2d 649 (1st Dist. 2000). "It is only where means are employed, or purposes are accomplished, which are themselves tortious, that the conspirators who have not acted but have promoted the act will be held liable." Adcock, 164 Ill.2d at 63. The tortious act must be intentional, not merely negligent, accidental, or inadvertent. Adcock, 164 Ill.2d at 64. The Plaintiffs must prove the Defendants "knowingly and voluntarily participate[d] in a common scheme to commit an unlawful act or a lawful act in an unlawful manner." McClure v. Owens Corning Fiberglas Corp., 188 Ill.2d 102, 133, 720 N.E.2d 242 (1999).

Plaintiffs allege that Defendant Gorman conspired to violate certain constitutional rights by giving false, misleading, and evasive testimony and failing to produce a letter. (¶¶61-65, 130). No

14

specific agreement or knowing and voluntary common scheme involving Defendant Gorman is alleged. In addition, the allegations made do not amount to an independent tort. It has long been the law in Illinois and the federal courts that witnesses are not subject to civil damages liability for giving perjured testimony. See Parks v. Nuef, 218 Ill. App. 3d 427, 429, 578 N.E.2d 282 (4th Dist. 1991); Briscoe v. LaHue, 460 U.S. 325, 103 S.Ct. 1108 (1983) (appeal from Illinois and Indiana District Courts); Jones v. Lincoln Electric Co., 188 F.3d 709, 740 (7th Cir. 1999). The rationale for this rule rests, in part, on preserving the integrity of the judicial process. If civil damages were allowed against witnesses, they might be discouraged from testifying at all and might be encouraged to "shade [] testimony in favor of the potential plaintiff, to magnify uncertainties, and thus to deprive the finder of fact of candid, objective, and undistorted evidence." Briscoe, 460 U.S. at 333. If witnesses could be sued, courts could also be faced with retrying every case. Parks, 218 Ill. App. 3d at 430, citing John Allan Co. v. Brandow, 59 Ill. App. 2d 328, 207 N.E.2d 339 (3d Dist. 1965).

In Briscoe, the court determined that there is no common law action against witnesses for damages arising from alleged perjury, and that 42 U.S.C. §1983 does not provide a civil damages remedy for alleged perjury against police officers or any other witnesses. Briscoe, 460 U.S. at 326. "Indeed, to hold a witness liable in money damages merely because he or she testified falsely at trial would violate the long-standing common law rule that parties and witnesses are immune from subsequent damages liability for their testimony in judicial proceedings." Jones, 188 F.3d at 740. Instead, the proper remedies include prosecution for perjury and seeking a new trial.

15

Count VIII    Intentional Infliction of Emotional Distress

To state a claim for intentional infliction of emotional distress under Illinois law, Plaintiffs must allege that (1) Defendants' conduct was extreme and outrageous; (2) Defendants intended to or knew there was a high probability that severe emotional distress would occur; and (3) Defendants' conduct actually caused the alleged severe emotional distress. Feltmeier v. Feltmeier, 207 Ill.2d 263, 269, 798 N.E.2d 75 (2003); Welsh v. Commonwealth Edison Co., 306 Ill. App. 3d 148, 153-54, 713 N.E.2d 679 (1st Dist. 1999). "Whether conduct is extreme or outrageous is judged on an objective standard. Liability does not, however, extend to mere insults, indignities, threats, annoyances, petty oppressions or trivialities." Welsh, 306 Ill. App. 3d at 154. For liability to attach, a defendant's conduct must be so "outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." Welsh, 306 Ill. App. 3d at 154.

> "The emotional distress must be *severe*. Although fright, horror, grief, shame, humiliation, worry, etc. may fall within the ambit of the term 'emotional distress,' the mental conditions alone are not actionable. 'The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it.'"

Welsh, 306 Ill. App. 3d at 155; see also Feltmeier, 207 Ill.2d at 276. It is not enough merely to allege emotional distress was "severe;" there must be facts alleged to support the severity of the distress suffered. Welsh, 306 Ill. App. 3d at 156.

The Tierneys supposedly suffer "on-going public humiliation, embarrassment, retaliation, harassment, and intimidation . . ." due to being banned from Sheridan Swim Club. (¶137). The Plaintiffs' entire claims of emotional distress allegedly result from the fact that they cannot socialize at Sheridan Swim Club anymore. There are no allegations of any medical or mental conditions resulting from the lack of socialization, just distress over the lack of their Sheridan Swim Club

16

membership. There is more to do in Quincy than swim at Sheridan Swim Club, and the Plaintiffs have, for years, made much more of the loss of their membership than any reasonable person would ---- any reasonable person would endure the loss of the membership by moving on to other social activities. There are no allegations of anything other than "mere insults, indignities, threats, annoyances, petty oppressions or trivialities," and no allegations of any conduct on the part of Defendants that is so "outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." The Plaintiffs have stated no claim upon which relief can be granted for intentional infliction of emotional distress.

Count IX      Intentional Spoliation of Evidence

Count IX is not directed against Defendant Dennis Gorman, and otherwise fails to state any claim upon which relief can be granted against this Defendant.

## Even if the Plaintiffs Could Plead Viable Claims, They Would Be Barred By Res Judicata and Collateral Estoppel

Under the doctrine of *res judicata*, a final judgment on the merits rendered by a court of competent jurisdiction acts as a bar to a subsequent suit between the parties involving the same cause of action. The bar extends not only to what was actually decided in the first action, but also to matters which could have been decided in that suit. 4901 Corp. v. Town of Cicero, 220 F.3d 522, 529 (7th Cir. 2000); Garcia v. Village of Mount Prospect, 360 F.3d 630, 639 (7th Cir. 2004). "For the doctrine of *res judicata* to apply, the following three requirements must be satisfied: (1) there was a final judgment on the merits rendered by a court of competent jurisdiction. (2) there is an identity of cause of action, and (3) there is an identity of parties or their privies." 4901 Corp., 220 F.3d at 529, quoting River Park, Inc. v. City of Highland Park, 184 Ill.2d 290, 302, 703 N.E.2d 883

17

(Ill. 1998); see also Garcia, 360 F.3d at 635. The purposes underlying the application of *res judicata* are to "enhance judicial economy by prohibiting repetitive litigation," and to "protect litigants from the burden of repetitive litigation." LaSalle National Bank of Chicago v. County of DuPage, 856 F.2d 925, 932 (7th Cir. 1988). It also fosters reliance on the results of litigation and comity between the federal and state courts. Wallace v. City of Chicago, 2004 WL 2452728 at *4 (N.D. Ill. 2004).

With respect to the second part of the *res judicata* test, the courts have adopted an analysis for determining whether causes of action are the same for purposes of *res judicata* known as the "transactional test." See Garcia, 360 F.3d at 637; 4901 Corp., 220 F.3d at 530-31. Under the transactional analysis, separate claims are considered the same cause of action for purposes of *res judicata* if they arise from a single group of operative facts, regardless of the number of theories asserted, the varying relief flowing from those theories, and any variations in evidence necessary to support those theories. Garcia, 360 F.3d at 637; 4901 Corp., 220 F.3d at 530-31.

All of the alleged conduct against Defendant Gorman relates back to the core operative facts surrounding QSD's handling of the pre-competition swim team massages initially raised by the Plaintiffs in *Tierney I,* and subsequently asserted in varying forms in *Tierney II, Tierney III,* and *Tierney IV.* Defendant Dennis Gorman was a Defendant in *Tierney I,* and *Tierney I* remained pending at the time of the alleged misconduct. The Plaintiffs made no attempt to bring any of these activities to the attention of the federal district court. Instead, the Plaintiffs attempted to hold these claims in reserve as security to form the basis for a future lawsuit in the event of adverse judgments in the federal and state court litigation. *Res judicata* bars the Plaintiffs from trying to bring a new lawsuit against Defendant Dennis Gorman.

18

In addition, the claim that Defendant Dennis Gorman was engaged in some vast conspiracy with Sheridan Swim Club and others has been already litigated and determined in *Tierney I*. This conspiracy issue is barred by collateral estoppel. Further, the notion that Gorman conspired to torpedo the Adams County state court lawsuit has been already litigated in *Tierney IV*. In contrast to *res judicata*, which bars relitigation of an entire claim, collateral estoppel bars relitigation of an issue of law or fact which was previously litigated and decided in a prior action. Garcia v. Village of Mount Prospect, 360 F.3d 630, 634 n. 6 (7th Cir. 2004). Collateral estoppel applies if (1) the issues decided in the prior action are identical to those presented in the current action; (2) there was a final judgment on the merits in the prior action; and (3) the party against whom collateral estoppel is asserted was either a party or in privity with a party in the prior action. Brokaw v. Weaver, 305 F.3d 660, 669 (7th Cir. 2002); Wallace v. City of Chicago, 2004 WL 2452728 at *4 (N.D. Ill. 2004). Collateral estoppel serves the purpose of "protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." Rockford Mutual Ins. Co. v. Amerisure Ins. Co., 925 F.2d 193, 198 (7th Cir. 1991). Federal courts should preclude issues already decided by state courts. Wallace, 2004 WL 2462728 at *4, citing Allen v. McCurry, 449 U.S. 90, 95-96, 101 S.Ct. 411 (1980).

This court previously determined in *Tierney I* that there was no evidence that QSD conspired with Sheridan to terminate the Tierneys' membership. (*Tierney I*, Order dated October 23, 2001, at p. 16). The court further expressly found "no evidence at all that [Dennis] Gorman directed or encouraged Schnack to terminate the Tierneys' membership at Sheridan." (*Tierney I*, Order dated October 23, 2001, at p. 17). The court also expressly found "no evidence that Gorman and Schnack conspired together to retaliate against the Tierneys for their complaints about Powers." (*Tierney I*,

19

Order dated October 23, 2001, at p. 17-18). Similarly, when the Plaintiffs tried, in the Adams

County case, to suggest that QSD and Gorman had conspired in bad faith with the Sheridan Swim

Club defendants to thwart their prosecution of the state court case, the state court judge rejected these

assertions.[5] Collateral estoppel precludes the Plaintiffs' attempts to dredge up the previously decided

issues to take another stab at the Defendants.

### Even if the Plaintiffs Could Plead Viable §1983 Claims,<br>They are Barred by the Statute of Limitations

The Plaintiffs attempt to "plead around" the two year statute of limitations applicable to the

Section 1983 claims. Hildebrandt v. Illinois Department of Natural Resources, 347 F.3d 1014, 1036

(7th Cir. 2003), (statute of limitations for action under 42 U.S.C. § 1983 is the two year limitations

period applicable to personal injury claims). They attempt to characterize the acts they attribute to

Defendant Gorman as beginning on June 23, 2002, when everyone knows from the entire history of

*Tierney I*, *Tierney II*, and *Tierney III* that there claims of conspiracy to interfere with their

constitutional rights dates back to 1999. To the extent the Plaintiffs' second amended complaint

seeks relief for conduct relating back to prior to June 24, 2002, the Section 1983 claims are barred.

### Even if the Plaintiffs Could Plead Viable §1985 Claims,<br>They are Barred by the Statute of Limitations

Counts VI and VII of the Plaintiffs' complaint seek damages for the alleged conspiracy of the

Defendants to violate the Plaintiffs' rights to access the courts and redress grievances, and other

constitutionally protected rights under Sections 1985(2) and (3). Pursuant to 42 U.S.C. §1986,

---

[5]See "Plaintiff's Combined Motion for Sanctions for Bad Faith Non-Compliance with the Rules of Civil Procedure on Discovery, for Sanctions for Failure to Produce Documents as Ordered by the Court at a Preliminary Injunction Hearing, for an Injunction, for a Protective Order, and to Compel Discovery," filed in *Tierney IV* on October 30, 2002, attached as Exhibit F. The court denied the Plaintiffs' motion on April 16, 2003. Exhibit A

claims brought under Section 1985 must be brought within one year of the date the cause of action accrued. 42 U.S.C. §1986. According to the Plaintiffs' complaint, the actions about which they complain occurred in 2002 (and some even as early as 1999). See Plaintiffs' second amended complaint at paragraphs 41-118 and specifically paragraphs 61, 63, 64, 73, 74, 74b, and 74c-77. Because the Plaintiffs' conspiracy claims accrued more than one year before this action was commenced, they cannot assert such an action against the Defendants under Section 1985. 42 U.S.C. §1986.

### Objection to Unauthorized Practice of Law

Under Illinois law, a person is privileged to appear in court on his own behalf, but he has no such privilege or authority to represent other persons unless he is admitted to the practice of law. 705 ILCS 205/1; Janiczek v. Dover Management Company, 134 Ill. App. 3d 543, 545, 481 N.E.2d 25 (1st Dist. 1985). See also Blue v. People of the State of Illinois, 223 Ill. App. 3d 594, 585 N.E.2d 625 (2d Dist. 1992). "The State requires minimum levels of education, training, and character before granting a license to practice law. The purpose of doing so is to protect the public from potential injury resulting from laypersons performing acts that require the training, knowledge, and responsibility of a licensed attorney." King v. First Capital Financial Services Corporation, (IL Supreme Court Nos. 97263, 97761, Slip Op., dated April 21, 2005. As the court explained in Janiczek, "Where it appears that one not licensed to practice law has instituted legal proceedings on the behalf of another in a court of record, such action should be dismissed, and if the action has proceeded to judgment, the judgment is void and will be reversed." Janiczek, 134 Ill. App. 3d at 545.

21

The record presently before the court establishes that Plaintiff J. Robert Tierney is engaged in the unauthorized practice of law by prosecuting this action on behalf of Plaintiffs Ann S. Tierney and previously for Case Tierney, a minor. As in the past lawsuits referenced in the pending second amended complaint, it is apparent that Plaintiff J. Robert Tierney has signed pleadings on behalf of Ann and Case. Although counsel for this Defendant has not participated in any of the proceedings in this action since it was filed in June 2004, we have reason to believe based upon past history that neither Ann nor Case attended any of the telephonic hearings, and at all times, Plaintiff J. Robert Tierney has held himself out as their attorney-representative. The issuance of an injunction is the proper remedy to protect against the unauthorized practice of law. Richard F. Mallen & Associates, Ltd. v. Myinjury.com Carpenter, 329 Ill. App. 3d 953, 955, 769 N.E.2d 74 (1st Dist. 2002). The court has a responsibility to protect the public (including these Plaintiffs) from being harmed by non-lawyers practicing law.

### Request for Relief

Wherefore, Defendant Dennis Gorman moves for the entry of an order dismissing this action against him its entirety pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), and for such other relief as the court deems appropriate.

s/_____ Brett K. Gorman _____
Brett K. Gorman, IL Bar #6210850
Attorney for Defendant Dennis W. Gorman
Schmiedeskamp, Robertson, Neu & Mitchell
525 Jersey Street, P. O. Box 1069
Quincy, IL 62306-1069
Telephone: (217) 223-3030
Facsimile: (217) 223-1005
E-mail: bgorman@srnm.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of April, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

J. Robert Tierney
Ann S. Tierney
spg@insightbb.com
jrtast1972@yahoo.com

Paul R. Bown
Brown Hay & Stephens
pbown@bhslaw.com

Clifford G. Kosoff
Julie M. Koerner
O'Halloran, Kosoff, Geitner & Cook PC
ckosoff@okgc.com
jkoerner@okgc.com

Matthew D. Bilinsky
Terence J. Corrigan
Illinois Attorney General
mbilinsky@atg.state.il.us
tcorrigan@atg.state.il.us

s/         Brett K. Gorman
Brett K. Gorman, IL Bar #6210850
Attorney for Defendant Dennis W. Gorman
Schmiedeskamp, Robertson, Neu & Mitchell
525 Jersey Street, P. O. Box 1069
Quincy, IL 62306-1069
Telephone: (217) 223-3030
Facsimile: (217) 223-1005
E-mail: bgorman@srnm.com