UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

FE-E-FILED
Friday, 22 April, 2005  05:07:45 PM
Clerk, U.S. District Court, ILCD

# United States Court of Appeals

For the Seventh Circuit
Chicago, Illinois 60604

Submitted October 25, 2004[*]
Decided February 22, 2005

Before

Hon. JOEL M. FLAUM, *Chief Judge*

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. RICHARD A. POSNER, *Circuit Judge*

Nos. 02-1403 & 04-1205

| | |
|---|---|
| ANN S. TIERNEY, et al.,<br>    *Plaintiffs-Appellants*,<br><br>v.<br><br>QUINCY SCHOOL DISTRICT NO.<br>172, a political subdivision of the State<br>of Illinois, et al.,<br>    *Defendants-Appellees*. | Appeals from the United States<br>District Court for the Central<br>District of Illinois<br><br>Nos. 01-3179 & 99-3149<br><br>Jeanne E. Scott,<br>*Judge*. |

EXHIBIT D

ORDER

These successive appeals are the latest chapter in a case with a convoluted procedural history involving four suits in the district court, a separate case in state court, and four appeals to this court. We previously affirmed the dismissal of a number of claims and defendants and also sanctioned the plaintiffs' former attorney. *See Tierney v. Vahle*, 304 F.3d 734 (7th Cir. 2002). In the present appeals, the Tierneys raise a number of arguments but most are either waived,

---

[*] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

irrelevant, or directly contrary to arguments they presented to the district court. We affirm in all respects.

## FACTS

The event that sparked this protracted litigation occurred in November 1998 when Richard Powers, the coach of the Quincy High School swim team and also an employee of the Sheridan Swim Club (where the high school team practiced), attended a team party the night before a meet. At that party, the plaintiffs allege that Powers gave massages to several girls on the team, including the Tierneys' then 16 year-old daughter Meryl. During this massage, Powers allegedly unhooked Meryl's bra and rubbed her back and legs up to the base of her buttocks. We note that these are merely allegations and we do not know whether they are true. Mr. and Mrs. Tierney, along with parents of some of the other girls on the swim team, complained to school officials about the incident. An assistant superintendent investigated the matter and prepared a report, which he shared with various people from both Sheridan and the school district. The precise findings of the investigation are not in the record, but the school district retained Powers as the swimming coach. Meryl did not participate in swimming the following year.

The plaintiffs allege that after they reported Powers's alleged misconduct, both Sheridan and the school district retaliated against them. Sheridan terminated the Tierneys' memberships in April 1999, claiming, among other things, that they were late in paying their membership dues. At the time of the alleged massage incident, Mrs. Tierney was (and apparently still is) employed as Dean at Quincy Junior High School. At the beginning of the 1999-2000 academic year, one of the school's two assistant principals was transferred to a different position within the school district. He was not replaced for budgetary reasons and the district asked Mrs. Tierney to assume some of his duties until the end of the school year. After the academic year ended the district eliminated the second assistant principal position and replaced it with a new position, Building Assistant. The district posted a flyer at the school that announced the new job and listed two contact people. Mrs. Tierney saw the notice shortly after it was posted; three weeks later she wrote a letter to the school's principal—not one of the two contact people—asking about the Building Assistant position. Her letter said nothing about wanting to apply for the job but instead asked for additional information and requested confirmation of her understanding that the new position would have a lower salary and different duties than her job as Dean. The principal, however, was on vacation at the time and never responded to Mrs. Tierney's letter. Nine days after Mrs. Tierney sent her letter—and one day after the principal returned from vacation—the school district hired Rick Owsley, the only person who had applied for the Building Assistant job.

In July 2000 Mrs. Tierney applied to be principal of another school within the district. She was interviewed, but another candidate was hired. In the letter Mrs. Tierney wrote to apply for the principal's position, she also asked to be considered a

candidate for "any other Administrative position within the Quincy School District that is now open or that becomes open in the next three months." The district, however, had a policy against accepting such blanket applications and so did not consider Mrs. Tierney a candidate for any other openings.

The Tierneys filed their first federal lawsuit (*Tierney I*) in June 1999 against the school district, Sheridan, and Powers, alleging that the massage and the swim club's termination of their memberships violated 42 U.S.C. § 1983 and Title IX, 20 U.S.C. § 1681 *et seq.* Sixteen months later, after several claims were dismissed, the plaintiffs retained attorney Richard Steagall and filed an amended complaint that added a battery claim against Powers and additional § 1983 claims against Sheridan (and its board members), the school district (and its board members and attorney), a state court judge, and other defendants. This complaint addressed Mrs. Tierney's employment for the first time, alleging that the school district's refusal to promote her was the result of retaliation for her and her family's complaints about Powers. The district court again dismissed several claims and sanctioned Steagall for making a frivolous claim against one defendant. Some of those dismissals were made final; we affirmed and also sanctioned Steagall for making a frivolous argument on appeal. *Tierney*, 304 F.3d at 740. While their first appeals were pending, the Tierneys filed a new lawsuit in state court that was eventually dismissed.

The district court next granted summary judgment to Sheridan and its board members, finding no evidence that they had conspired with the school district either to terminate the Tierneys' memberships or exclude Meryl from high school swimming events. The Tierneys did not appeal, but instead filed a new lawsuit (*Tierney II*), restating the same claims that the district court had previously dismissed. The district court dismissed that case in its entirety as duplicative of *Tierney I*. The plaintiffs then asked for leave to file a third amended complaint in *Tierney I* so they could add claims that the district's refusal to promote Mrs. Tierney was the result of sex and age discrimination and retaliation. One month later, while their motion to amend was pending, the Tierneys filed another new lawsuit (*Tierney III*) that advanced the same claims they requested to add in the third amended complaint. The district court permitted the Tierneys to amend their complaint to add three additional claims and a month later dismissed *Tierney III* as redundant. The Tierneys, however, disregarded the court's instructions and filed an amended complaint that added more than the three new claims allowed by the court. The district court struck the parts of it that exceeded the scope it had authorized, and again sanctioned attorney Steagall. The district court then granted summary judgment to the remaining defendants on all claims. Appeal No. 04-1205 is an appeal of the grant of summary judgment in *Tierney I*; Appeal No. 02-1403 is an appeal of the dismissal of *Tierney II*.

Attorney Steagall filed the Tierneys' opening brief in this court, but he later withdrew as counsel after the Tierneys filed yet another new lawsuit pro se in the

district court (*Tierney IV*). Steagall said in his motion to withdraw that *Tierney IV* (which repeats many of the same allegations discussed above) has created irreconcilable differences between him and his clients. The present appeals address: (1) the dismissal of Mrs. Tierney's claim that the school district retaliated against her by denying her the Building Assistant position after she reported the massage incident; (2) the grant of summary judgment on Mrs. Tierney's claim that the school district retaliated against her for filing suit; (3) the district court's refusal to consider the Tierneys' claim that the school district retaliated against them by providing its confidential report on the massage to Sheridan; and (4) the grant of summary judgment on Meryl Tierney's claim that she was banned from participating on the high school swim team as a result of her family's complaints.

## ANALYSIS

### A. First Amendment retaliation: reporting the massage incident

Mrs. Tierney first argues that the district court erred when it dismissed her claim that the school district retaliated against her by refusing to give her the Building Assistant position because she reported the massage incident. To prevail on a First Amendment retaliation claim, a public employee must first establish a prima facie case by showing that she engaged in constitutionally protected speech and that the speech was a substantial or motivating factor in the employer's adverse action against her. *Sullivan v. Ramirez*, 360 F.3d 692, 697 (7th Cir. 2004). An employee's speech is constitutionally protected if she speaks on a matter of public concern and her interest in speaking outweighs her employer's interest in providing effective and efficient services. *See Connick v. Myers*, 461 U.S. 138, 147-50 (1983); *Bonds v. Milwaukee County*, 207 F.3d 969, 979 (7th Cir. 2000). If the plaintiff establishes a prima facie case, the defendant must show that it would have treated the plaintiff the same even in the absence of the protected speech, *Sullivan*, 360 F.3d at 697, and the plaintiff must then show that the proffered reason is pretextual, *Vukadinovich v. Bd. of Sch. Trustees of N. Newton Sch. Corp.*, 278 F.3d 693, 699 (7th Cir. 2002). The district court found that Mrs. Tierney's claim faltered on the first prong of this test because Mrs. Tierney argued in her own pleadings that she, as a school official, was obligated by the Illinois Abused and Neglected Child Reporting Act, 325 ILCS 5/4, to report any suspicions of sexual misconduct by a school employee against a student.

The district court correctly realized that Mrs. Tierney's argument doomed her claim because a public employee who takes action solely for the purpose of carrying out her job duties does not engage in protected speech for First Amendment purposes. *See Gonzalez v. City of Chicago*, 239 F.3d 939, 941 (7th Cir. 2001); *Youker v. Schoenenberger*, 22 F.3d 163, 166-67 (7th Cir. 1994). Mrs. Tierney said in her memorandum opposing the defendants' motion to dismiss that she was "plainly" covered by the Illinois reporting act and emphasized that she could have been criminally liable if she had not reported Powers's alleged contact with Meryl.

Nos. 02-1403 & 04-1205                                                                 Page 5

Mrs. Tierney could have argued in the district court that she exercised discretion in the manner in which she reported her suspicions and that her speech thus addressed a matter of public concern, *see Delgado v. Jones*, 282 F.3d 511, 518-19 (7th Cir. 2002), but she did not do so. Realizing her earlier error, Mrs. Tierney now argues that she "had no routine employment duty to report on incidents involving high school faculty and students to the School District." But this position flatly contradicts the argument she made to the district court. Mrs. Tierney unequivocally argued that she was duty-bound to report the massage incident, and she thus pleaded herself out of court on this claim.

B. First Amendment retaliation: accessing the courts

1.      Grant of summary judgment

Mrs. Tierney next argues that the district court erred when it granted summary judgment on her claim that the school district[1] denied her the Building Assistant position because she filed suit. Although Mrs. Tierney claimed in the district court that she was denied other jobs as well, her brief addresses only the Building Assistant position. A claim that a public employer retaliated against an employee for filing a lawsuit implicates the First Amendment and involves the same analysis discussed above. *See Zorzi v. County of Putnam*, 30 F.3d 885, 896 (7th Cir. 1994). The district court found that Mrs. Tierney's claim failed because the lawsuit was not constitutionally protected speech. *See Vukadinovich*, 278 F.3d at 699. Mrs. Tierney, however, ignores this critical finding on appeal and instead argues that the district court erred by not finding that the school district's motives for hiring Owsley were pretextual. She has thus waived any argument that the lawsuit was constitutionally protected speech, and this is fatal to her claim. *See id.*

Even if Mrs. Tierney had argued that her speech was constitutionally protected, she offered no evidence to establish the second prong of a prima facie case, that her speech motivated the school district to take any adverse action against her. *See Smith v. Dunn*, 368 F.3d 705, 708 (7th Cir. 2004). Indeed, the only "adverse" action she addresses in her brief is the district's refusal to award her the Building Assistant position—a position that paid less than her job as Dean. It is also undisputed that Mrs. Tierney never even contacted the two people listed on the job posting to express interest in the position. All she did was send a letter to a different school official requesting additional information and giving no indication that she wanted to apply for the job. Even if Mrs. Tierney's speech was

---

[1] As discussed in the next subsection, the district court found that the school district could not be liable for any constitutional violation committed by its employees. Thus this subsection addresses the liability of the individual defendants rather than the district itself. But for simplicity's sake we refer to the individual school employees and board members as the "school district."

constitutionally protected, she fell well short of establishing that the lawsuit was a motivating factor in her not receiving the Building Assistant position.

2.    Liability of the school district as a final policymaker

Mrs. Tierney additionally argues that the district court erred when it granted summary judgment to the school district (as opposed to the individual defendants). This issue is irrelevant because Mrs. Tierney did not establish retaliation by any defendant. But in any event, the school district would be liable for a constitutional violation only if it had an unconstitutional policy or practice, or if the injury was caused by a person with final policy making authority. *Baskin v. City of Des Plaines*, 138 F.3d 701, 704-05 (7th Cir. 1998). Only the final possibility is relevant here, and the school board is the final policy maker for a school district. *Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1061 (7th Cir. 1998). But the defendants presented uncontradicted evidence that all the school board did was approve Owsley's hire without even learning the identities of any unsuccessful candidates for the position. Thus, even if Mrs. Tierney had established retaliation, only the individuals who violated her rights would be liable.

3.    Evidentiary rulings

Mrs. Tierney also challenges a number of evidentiary rulings, arguing that the district court should have considered three statements that she claims establish that the school district retaliated against her.

a.    Privileged nature of attorney Dennis Gorman's advice

The first statement that Mrs. Tierney claims should have been considered is school board member Howard Dewell's account of a conversation he had with the district's attorney. At some point in 1999, Dewell met with the school district's superintendent and its attorney, Dennis Gorman, to discuss Mrs. Tierney's lawsuit. Dewell suggested that the board promote Mrs. Tierney to assistant principal of the junior high school. According to Dewell, Gorman laughed and said that if Mrs. Tierney was promoted, she would ask for the superintendent's job next. Dewell later told Mr. Tierney about this conversation; attorney Steagall then met with Dewell and convinced him to sign an affidavit recounting Gorman's remark. The district court later granted the school district's motion to exclude the affidavit and related testimony Dewell gave at his deposition, and threatened to sanction Steagall if he tried to elicit any more privileged information from school board members.

Mrs. Tierney argues for the first time on appeal that the statement is not privileged because the school district, as a government entity, is not entitled to assert the attorney-client privilege. This argument was not presented to the district court and, accordingly, is waived. Mrs. Tierney also argues that the statement

Nos. 02-1403 & 04-1205                                                                                          Page 7

should not be considered privileged because it was not made in the course of a conversation about her lawsuit, and as such was not legal advice. *See United States v. Evans*, 113 F.3d 1457, 1463 (7th Cir. 1997) (privilege extends only to conversations where attorney is acting to provide legal advice). But this argument has no merit because, once again, it contradicts the position Mrs. Tierney took in the district court, where she asserted that "Dewell also talked *about the lawsuit* at a pre-board meeting with himself, the Superintendent of the School District, Joe Bocke, and the School District attorney, Dennis Gorman." Mrs. Tierney conceded in the district court that the conversation related to the lawsuit and cannot now assert a contrary argument.

### b.   Alleged statement by Superintendent Bocke

Mrs. Tierney next argues that the district court erred by refusing to consider Dewell's deposition testimony that school board member Bud Niekamp had told him that Superintendent Bocke had told Niekamp that "we won't hire her [Mrs. Tierney] or something like that." The Tierneys did not submit this statement with their response to the motion for summary judgment, but instead submitted it in a "motion to alter" the court's order excluding Dewell's other statement discussed above. That motion was submitted three months after the order that the plaintiffs purportedly wanted altered and one week after the summary judgment deadline. The district court refused to consider this statement for a number of reasons, including that it was not timely offered, was not presented as part of the Tierneys' response to the motion for summary judgment, and was inadmissible because the Tierneys provided no context for the statement and because it contained multiple levels of hearsay.

The district court properly refused to consider this statement. Putting to one side concerns about the hearsay nature of the statement—and hearsay statements are not competent evidence that may be used to oppose a motion for summary judgment, *see Haywood v. Lucent Techs., Inc.*, 323 F.3d 524, 533 (7th Cir. 2003)—the method in which the Tierneys submitted the statement was improper. The statement was not submitted until after the deadline to respond to the motion for summary judgment had passed and was not submitted with their response, as required by Local Rule 7.1(D)(2)(b)(4). The district court was entitled to enforce the local rules relating to submissions on summary judgment and did not abuse its discretion by refusing to consider the improperly submitted statement. *See Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004) (district court's enforcement of local rules reviewed for abuse of discretion); *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 921-22 (7th Cir. 1994) (upholding district court's strict enforcement of local rules on summary judgment).

   c.      Alleged statement by Alan Hoskins

Mrs. Tierney next argues that the district court should have considered a statement allegedly made by Alan Hoskins, the principal of the school where Mrs. Tierney worked. Hoskins allegedly told Mrs. Tierney that the lawsuit had ended any chances of promotion she might have. The district court refused to consider this statement because the plaintiffs failed to submit the relevant pages of Mrs. Tierney's deposition transcript and there was thus no evidentiary support for the statement. The Tierneys did not comply with Local Rule 7.1(D)(2), which requires that a response to a motion for summary judgment include supporting documentary evidence, and, again, the court was entitled to enforce the rule. *See Ammons*, 368 F.3d at 817. The Tierneys now also argue that the district court should have overlooked the violation because the defendants first moved to strike the statement as hearsay and only later noted the missing deposition pages when they filed their reply memorandum in support of their motion for summary judgment. But the decision to enforce the rule belongs to the district court, and the defendants' failure to object to the missing pages at the first possible opportunity did not preclude the court from requiring compliance by the Tierneys. *See Waldridge*, 24 F.3d at 923.

C. The Tierneys' retaliation claim for their expulsion from Sheridan Swim Club

The Tierneys next argue that the district court erred by striking from their third amended complaint a claim that the school district retaliated against them by disclosing the confidential report of its investigation into the massage incident to a member of Sheridan's board, allegedly to encourage the club to terminate the Tierneys' memberships for complaining. The district court struck this claim because it had granted the plaintiffs leave to add three specific claims in their third amended complaint, *see* Fed. R. Civ. P. 15(a), and this claim was one of several that exceeded the scope of the court's authorization.

The Tierneys' argument on this issue is unclear, but seems to be that the district court should have allowed them to add a new claim. But this argument fails because a district court has discretion to allow new claims in amended pleadings and abuses that discretion only if it denies leave without any justifying reason. *Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. United States*, 367 F.3d 650, 668 (7th Cir. 2004). Here, the district court struck the unauthorized claims (and sanctioned attorney Steagall) because of the case's "tortuous history" involving three years of shifting theories by the plaintiffs. Given the convoluted procedural history here, the district court acted well within its discretion. *See id.*

D. Meryl Tierney's § 1983 claim

The Tierneys next argue that their expulsion from Sheridan (allegedly as a result of a conspiracy between the club and the school district) barred Meryl from participating on the high school swim team. This argument fails for two reasons.

First, in July 1999 during a preliminary injunction hearing at which all of the plaintiffs were present, a lawyer for the swim club told the court that Meryl was free to use its facilities during any activities for either the high school team or its own swim team even though she, like the rest of her family, was otherwise barred from the club. But despite the lawyer's assurance Meryl never even attempted to attend a practice or a meet at the club or participate on either team. Additionally, Mr. and Mrs. Tierney admitted that they refused to allow Meryl to participate because Powers was the coach of both teams and they did not want him around their daughter. The Tierneys thus conceded that Meryl did not participate in swimming because of her parents' decision rather than because of any retaliatory action by any of the defendants.

E. Whether the dismissal of *Tierney II* should have been without prejudice

Lastly, the Tierneys argue that the district court should have made the dismissal of *Tierney II* without prejudice because they do not want that dismissal to act as res judicata on any of their remaining claims. This argument is irrelevant because the district court dismissed *Tierney II* as duplicative of matters it had already resolved in *Tierney I*. Thus any res judicata or collateral estoppel would result from the resolution of the claims in *Tierney I*, not their dismissal as repetitive in *Tierney II*.

AFFIRMED.