**E-FILED**
Friday, 22 April, 2005  05:08:29 PM
Clerk, U.S. District Court, ILCD

## In the Circuit Court of the Eighth Judicial Circuit

### Adams County, State of Illinois



J. ROBERT TIERNEY, et al )

        Plaintiffs, )

vs )   No.   02-L-12

         )  **JURY DEMAND**

SHERIDAN SWIM CLUB, INC., an Illinois )
Corporation, et al )

         )

        Defendants )

### PETITION FOR RELIEF FROM JUDGMENT

Now comes the Plaintiffs Robert Tierney and Ann Tierney, pro se, for purposes of the issues in this petition, and moves this court pursuant to 735 ILCS 5/2-1401, 5/13-215, and any other applicable Statute or Rule of Civil Procedure, for relief from the Court Order/Judgment entered on or about April 16, 2003, and in support thereof states the following:

1. On or about June 24, 1999, the Plaintiffs filed an action in this Court (99-3149) against Sheridan Swim Club and Sheridan Board Members (hereinafter referred to as "Sheridan"), Quincy School District #172 and various QSD employees, agents, and QSD Board members (hereinafter referred to as "QSD").

2. In February 2002, the Plaintiffs filed a Complaint in the Circuit Court of the Eighth Judicial Circuit Adams County, State of Illinois (2002-L-12).

3. This State Court Complaint only brought claims against Sheridan after the Federal Court declined further subject-matter jurisdiction for remaining Claims against Sheridan and related defendants.

4. Defendants Schnack and Bier retained their close friend, Adams County Assistant States Attorney, Jon Barnard, as the attorney-of-record for all of the defendants including Sheridan Swim Club, Inc., which is an Illinois Corporation.

5. In May 2002, and thereafter, evidentiary hearings pursuant to a Motion for Preliminary Injunction Hearings were held in State Court.

1

**EXHIBIT**

E

6.    That prior to, during, and after these hearings several of the Defendants, material witnesses, and the attorney for the Defendants, Jon Barnard, perpetrated a fraud upon the Court that involved numerous material issues of fact. [1]

7.    That this fraud involved perjury, subornation of perjury, and withholding and concealing the existence of documents ordered produced by the Court. *(Attached as Exhibit A for the Petition, is a true and correct copy of Federal Complaint 04-3138, which provides further background and evidence in support of the Petition for Relief. In particular, the Court should focus particular attention on the exhibits, which are attached to the Federal Complaint)*

8.    That this unlawful fraud fatally afflicted the Plaintiffs complaint and attempts to petition the Court.

9.    That Defendants attorney, Barnard withheld evidence of the fraud and other criminal acts, which were perpetrated by defendant/attorney, Andrew Schnack, and others.

10.    That attorneys Barnard, Bier, and Gorman collectively and unlawfully breeched numerous provision of Articles VII. Illinois Rules of Professional Conduct (for attorneys) including but not limited to Rules 1.7, 1.13, 1.16, 3.3, 3.4, 3.7, 3.8, 4.1, 4.4, 8.3 & 8.4.

11.    That attorney Barnard continued to unlawfully provide legal representation to Schnack and all the other defendants, including Sheridan Swim Club, Inc., during the pendency of this case.

12.    That pursuant to the Hearing on June 24, 2002, the Court had ordered the Sheridan defendants, Gorman, and the QSD, to produce numerous documents at the Hearing, including all documents/letters pertaining to the Plaintiffs' complaints to the QSD made prior to April 15, 1999, regarding the improper conduct of QHS Swim Coach, Richard Powers, which included the "massages" inflicted upon female Quincy High School students in November 1998.

---

[1]    Attached as Exhibit A to this Petition for Relief is a copy of Complaint 04-3138, which provides further background and evidence in support of this Petition for Relief. The Federal Complaint was filed in Federal Court Central District of Illinois partially in response to the causes of action, which occurred during and after the duration of this State Court action. This Petition for Relief is only brought in order to revive this State Court litigation, and not as causes of action to assert the new claims since those claims and others are now pending in Federal Court, and the Federal Court previously declined subject-matter jurisdiction over all the claims brought in this State Court action / 02-L-12.

13.    In February 1999, parents of QHS students had reported the "massages" to school officials. In response, QSD employees Nick Schildt and Terri Conboy conducted interviews of two QHS female swimmers who had been improperly "massaged" by Powers. Schildt and Conboy then prepared a confidential report (Schildt/Conboy report).

14.    This report was given to QSD attorney, Dennis Gorman, on or about March 1, 1999.

15.    QSD attorney, Dennis Gorman, unlawfully disclosed the Schildt/Conboy report to Schnack and Judge Chet Vahle shortly after March 1, 1999. [2]

16.    In response to the disclosure of this information in the Schildt Report, Schnack wrote letters on March 5, 1999, and March 29,1999, and sent them to Gorman. Judge Vahle wrote a letter on 8th Circuit judicial stationary, made false and defamatory statements, and sent the letter to 3 QSD officials who had supervisory responsibility over Powers.

17.    The March 5 letter from Schnack is dated just 5 days after the "massages" were reported to the Quincy School District during private privileged conversation protected by 20 U.S.C. Section 1232g. *Family Educational and Privacy Act* (FERPA), and The *Illinois School Student Records Act* 105 ILCS 10/1 et seq.

18.    Schnack's letter dated March 5, 1999 states the following:

" Dear Dennis:
As a close personal friend and attorney of Rick Powers, coach of the boys and girls swimming teams at Quincy High School, it has come to my attention that accusations are being made about improper contact with girl swimmers last fall. I have talked personally to Rick about this and he categorically denies it. I have also talked with Judge Chet and Barb Vahle about the alleged incident. The fact of the matter is that prior to the Western Big Six conference meet, a get together was held at the Vahle home. Chet and Barb Vahle were present. The suggestion was made that the girls receive rub downs to loosen up for the meet. This is done on a regular basis at every big meet I have ever attended and is common practice in swimming. At the suggestion of the Vahles, the team went downstairs and anyone who wanted a massage or rub down was given one. It was voluntary, it was totally in keeping with good swimming coaching practices and absolutely nothing was wrong with this. Apparently this is being used now to somehow attack Rick. As Rick's attorney, I have advised him that if these statements are being made, they could form the basis for a lawsuit. Rick has authorized me to request from you any documentation or complaints in writing that you or the school board has concerning this matter so that we can be properly

[2] Gorman and the QSD have admitted in Federal Court documents that the Schildt/Conboy report is subject to 20 U.S.C. Section 1232g. (FERPA) restrictions and protection.

3

informed and properly respond to it. Obviously, if this is untrue, I apologize for taking your time. If it is true, we consider it exceptionally serious and would like to get to the bottom of it." *(A true and correct copy of Schnack's letter of March 5, 1999, is attached hereto as Exhibit A-1.)*

19.    This *Smoking Gun* letter from Schnack to QSD attorney, Dennis Gorman dated March 5, 1999, had been unlawfully concealed from the Plaintiffs and the Federal Court during Central District Case 99-3149. [3]

    a.    Schnack's letter makes several categorically false statements concerning the events, circumstances, and propriety of these "massages".

    *b.*    According to sworn testimony by Gorman during State Court hearings, Judge Chet Vahle was <u>not</u> present in his home the evening of the "massages", and knew nothing about the "massages" until contacted by Dennis Gorman in March 1999.

    *c.*    Schnack's letter establishes the fact that Schnack and his "close personal friend", QHS swim coach Powers intended to pursue some kind of retaliatory response against those who reported the improper "massages".

    *d.*    Schnack's letter establishes the fact that Gorman and the QSD were well aware of the retaliatory intentions of Schnack and QHS coach Powers.

20.    Schnack's letter established the fact that Schnack received confidential information as a result of the unlawful acts of (Gorman) State Actors.

*21.*    Per the statements or other Illinois High School Swim coaches, and a professor of Kinesiology at the University of Illinois, who is an expert on aquatic massage therapy, the "massages" were considered at the very least to be "totally inappropriate", and had no therapeutic or pre-competition benefit. *(See Illinois State Police reports and the letter from Dr. Bell attached hereto as Exhibits C 1-3 of Exhibit A.)*

22.    At Initial Disclosure during the Federal Court litigation 99-3149, the QSD had produced numerous documents and letters from other parents and students, about the complaints about Powers' conduct, including Schnack's letter of <u>March 29, 2003</u>. [4]

---

[3] The District Court dismissed all federal claims against Schnack, Vahle, Gorman, and Powers after Initial Disclosure, but before any discovery was allowed, and these defendants were never deposed during the pendency of 99-3149.

[4] During 2 plus years of the Federal Court litigation between June 1999, and October 2001, Sheridan Swim Club only produced one (1) sheet of paper in response to Initial Disclosure and

23.    Schnack's letter of <u>March 29</u>, 1999, states the following:

"Dear Dennis:
I just thought you would like to know that as of Thursday, March 25, 1999, Meryl Tierney is now swimming with Sheridan Swim Team under Coach Rick Powers. I don't know what affect this would have on his previous complaints but would dearly love to get Rick's contract signed ad get the contract signed between the school district and Sheridan. I have a couple of thoughts on the that I think would be advantageous to the school district, especially if we can get this done on a long term basis. If you get a chance, give me a call."
*(A true and correct copy of Schnack's letter of March 29, 1999, is attached hereto as Exhibit A-2.)*

27.    Schnack's letter of March 29, 1999, was in fact a follow-up letter to his letter dated March 5, 1999.

  a.    This March 29 letter also contains several false and misleading statements concerning Meryl Tierney's swimming activities at Sheridan.

  b.    Schnack's statement that "Meryl Tierney is now swimming with the Sheridan Swim Team under coach Rick Powers" was and is categorically false.

  c.    The letter was disclosed by the QSD in order to discredit the Tierney's complaints about the "massages".

28.    During the hearing on June 24, 2002, Gorman gave false, misleading, and evasive testimony. Gorman testified under color of state law in his capacity as the attorney for the Quincy School District.

29.    Gorman provided false and misleading testimony on material issues regarding his disclosure of information from the Schildt report, and regarding his communications with Schnack and Vahle about the complaints against Powers.

30.    Following Gorman's testimony, and armed with the knowledge that Gorman and the QSD did not and would not produce Schnack's letter of March 5, 1999, Barnard called

---

several Motions to Compel Disclosure. This document was the Sheridan Board minutes from April 1999, which was produced at Initial Disclosure in March 2000. No other Board minutes or documents of any kind were ever produced by Sheridan, despite the fact that the Sheridan Board held numerous discussions at Board meetings from at least September 1998 through June 1999, about the student activities of Meryl Tierney in her capacity as a student at Quincy High School.

Defendant Schnack to the witness stand and unlawfully suborned false testimony on material issues.

31.    In response to Barnard's questions, Schnack repeatedly testified that he did not have any knowledge of any complaints about Powers and the "massages", at the time he (Schnack) made accusations against the Plaintiffs and initiated the retaliation against the Plaintiffs at the Sheridan Board meeting in <u>April 1999.</u>

32.    Schnack testified over a 2-day period and consistently repeated this false testimony in response to direct examination, cross-examination, and in response to direct questioning by the trial Judge regarding Schnack's knowledge of any complaints about the "massages" at the time of the Sheridan Board meeting in April 1999.

33.    Schnack also falsely testified that he had no knowledge of the *Schildt/Conboy* report until the State court hearings in June 2002.

34.    Defendant Bier also testified during these hearings and was present during Schnack's false testimony, but took no action regarding Schnack's perjury despite the fact that he was the Adams County State's Attorney.

35.    This false, misleading, and evasive testimony by Schnack and Gorman, coupled with their withholding of documents fatally afflicted the Plaintiffs attempts to petition the Courts for redress of grievances.

36.    On or about <u>October 17,</u> 2002, the Plaintiffs learned of the existence of Schnack's letter of <u>March 5, 1999.</u>

37.    The next day on <u>October 18,</u> 2002, in furtherance of a conspiracy between Gorman, the QSD, Schnack, and Sheridan; Gorman *tipped off* Barnard and Bier that the Plaintiffs had learned of the existence of Schnack's letter of March 5, 1999.

38.    On or about <u>October 18,</u> 2002, Bier contacted Norb Goetten, the Director of the Office of the State's Attorney Appellate Prosecutor, and reached an agreement with Norb Goetten, for the Appellate Prosecutor to *again* unlawfully take possession of the case files and evidence pertaining to *another* criminal offense (perjury) complaint against Schnack.

39.    After reaching this agreement with Goetten, Bier filed a Motion for the Appointment of a Special Prosecutor to investigate and prosecute a charge of perjury against Defendant/attorney Schnack, pursuant to 8th Circuit Court Case No. 2002-MR-98. *(A true and correct copy of this Motion and case file 2002-MR-98 is attached hereto as Exhibit B of Exhibit A)*

40.    Bier obtained a Court Order appointing the Office of the State's Attorney Appellate Prosecutor to investigate and prosecute a charge of perjury against Defendant Schnack. *(See Exhibit B-2.)*

41.    On or about <u>October 18,</u> 2002, Bier breeched the terms of the Court order, and secretly filed these court documents in a case file with the Adams County Circuit Clerk under 8th Circuit Court Case No. 2002-MR-98, with the intent to conceal existence of the case, and to obstruct the due course of justice and the judicial process. *(See Exhibit B.)*

42.    On or about <u>October 18,</u> 2002, Bier unlawfully instructed the Circuit Clerk to classify Case No. 2002-MR-98 as an "eavesdropping" or "wiretap" case in order to conceal the existence of the case file from public knowledge, and to obstruct the due course of justice and the judicial process. *(See Exhibit B-3.)*

43.    Bier subsequently and unlawfully ordered the Circuit Clerk to "impound" public records in an unlawful attempt to conceal the existence of Case No. 2002-MR-98, and to obstruct the due course of justice and the judicial process and deny any access to public records subject to disclosure per the Freedom of Information Act. *(See Exhibit B-4.)*

44.    The State's Attorney Appellate Prosecutor breeched provisions of 55 ILCS 5/3 *Counties Code State's Attorney*, and the terms of the Court Order of October 18, 2002, and accepted possession and control of the evidence pertaining to Schnack's perjury offense, took no action on the perjury offense, and *buried* the case file within the bowels of this State agency, along with the previous criminal offense complaints against Schnack, which Bier had also unlawfully placed under the control and possession of the Appellate Prosecutor. [5]

---

[5] This was the **third** criminal offense perpetrated by attorney Schnack between 1999 and 2002 against the Tierney family that Bier unlawfully 'buried' with the Office of the State's Attorney Appellate Prosecutor.  The Appellate Prosecutor unlawfully accepted control and possession of these previous criminal complaints and evidence, in breech of 55 ILCS 5/3 *Counties Code State's Attorney*.    The Appellate Prosecutor failed to take any action regarding any investigation or prosecution of Schnack's criminal offenses, and also turned a blind eye to Bier's concealment of police criminal offense reports relating to Schnack's criminal acts.

45.    Per the orders of Bier, Case No. 2002-MR-98 remained unlawfully concealed and impounded until November 2004, when judicial intervention by the Chief Judge of the 8th Judicial Circuit forced disclosure of the case file. *(See Exhibit B-5.)* [6]

46.    Barnard, Bier, and Gorman collectively and unlawfully breached numerous provision of Articles VII. Illinois Rules of Professional Conduct (for attorneys) including but not limited to Rules 1.7, 1.13, 1.16, 3.3, 3.4, 3.7, 3.8, 4.1, 4.4, 8.3 & 8.4.

47.    Barnard, Bier, and Gorman failed to report Schnack's perjury offense to the State Court, or any other Court, party, or regulatory agency.

48.    Barnard continued to unlawfully provide legal representation to Schnack, and all the other defendants, including Sheridan Swim Club, Inc., during the pendency of this case.

Wherefore, Plaintiffs respectfully request that this Petition be heard and fully vetted at an evidentiary hearing in order to consider further evidence and testimony regarding this petition. The Plaintiffs and the Court have clearly been the victims of numerous incidents of fraud upon the Court, which fatally prejudiced the Court and the due process rights of the Plaintiffs. Sufficient evidence and grounds exists in order for this Court to grant relief from the judgment/order of April 16, 2003, and set this case for trial on the merits.

Dated this __8__ day of April 2005.

## CERTIFICATION

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and current, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that they verily believes the same to be true.

Robert Tierney
Plaintiffs, pro se

Ann Tierney

---

[6] The Plaintiffs learned of the existence of 8th Judicial Circuit Case No. 2002-MR-98 in November 2004, and were forced to obtain the judicial intervention of 8th Circuit Chief Judge Brownfield in order to gain access to the Case file (See Exhibit B 1-6).

## PROOF OF SERVICE

Service of the foregoing instrument was made by faxing and sending a copy thereof, in a sealed envelope, postage thereon fully prepaid, addressed to all other Plaintiffs and Defendant's attorney of record; Jonathan Barnard 316 North Sixth Street, Quincy, IL 62301 by depositing the same in the United States Mail from the Office of the undersigned this __8 day_ of _April_ 2005.

Robert Tierney and Ann Tierney Plaintiffs
2517 Summer Creek
Quincy Il 62305
217-223-4849

9

# **AFFIDAVIT**

STATE OF ILLINOIS          }
                           } SS.
COUNTY OF ADAMS            }

I, J. Robert Tierney, being first duly sworn upon oath, states as follows:

1.    I am a resident of Quincy, Illinois, and reside with my wife and family.

2.    I prepared and have reviewed the Petition for Review in Case 02-L-12, which is attached to this affidavit.

3.    I certify that the statements set forth in the attached Petition for Relief are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

Subscribed and sworn to before me this _____8_____ day of April 2005

_____
Notary Public

```
"OFFICIAL SEAL"
SUSAN J. KATHMANN
Notary Public, State of Illinois
My Commission Expires 07/05/05
```

OAO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

_____ Central _____          District of:_____ Illinois _____

J. Robert Tierney, Ann S. Tierney
Case M. Tierney, By and Through His Next          **SUMMONS IN A CIVIL ACTION**
Best Friend, J. Robert Tierney
                        Plaintiffs

        V.                                        **CASE NUMBER: 04-3138**

SHERIDAN SWIM CLUB, INC., an Illinois corporation,
DOUG OLSON, ROBERT MEYER, and ROBERT HULTZ,
Members of the Sheridan Swim Club Inc., Board in their
Individual and Official Capacities, ANDREW C. SCHNACK, III,
BARNEY BIER, and JON BARNARD, in their Individual
Capacities, DENNIS GORMAN, Attorney for The Quincy
School District #172, a political subdivision of the
State of Illinois, in his Individual and Official Capacities

                        Defendants

TO:

   **JON BARNARD**
   **2116 Aldo Blvd. Quincy, IL 62301  - (Home)**
   **521 Vermont Street Quincy, IL 62301  - (Work)**

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFFS:

   **J. ROBERT TIERNEY & ANN S. TIERNEY**
   **2517 SUMMER CREEK**
   **QUINCY, IL 62305**

an answer to the complaint which is served on you with this summons, within Twenty (20) days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

_____          _____ 12/13/04 _____
CLERK                                                     DATE

_____
(By) DEPUTY CLERK                                Exhibit _A_

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| J. ROBERT TIERNEY, ANN S. TIERNEY, | ) | |
| CASE M. TIERNEY, By And Through His | ) | |
| Next Best Friend, J. ROBERT TIERNEY | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | No.04-3138 |
| | ) | **JURY DEMAND** |
| SHERIDAN SWIM CLUB, INC., an Illinois corporation, | ) | |
| DOUG OLSON, ROBERT MEYER, and ROBERT HULTZ, | ) | |
| Members of the Sheridan Swim Club Inc., Board in their | ) | |
| Individual and Official Capacities, ANDREW C. SCHNACK III, | ) | |
| BARNEY BIER, and JON BARNARD in their Individual | ) | |
| Capacities, DENNIS GORMAN, Attorney for The Quincy | ) | |
| School District 172, a political subdivision of the State of Illinois, | ) | |
| in his Individual and Official Capacities, | ) | |
| | ) | |
| Defendants | ) | |

**SECOND AMENDED COMPLAINT**

## COMPLAINT – TABLE OF CONTENTS

PAGE

I.      Jurisdiction and Venue                                                    1
II.     The Parties                                                              1
A.      The Plaintiffs                                                          1
B.      The Defendants                                                          2
C.      Other Parties                                                           3
III.    State Actor Status of Sheridan Swim Club                                3
IV.     Other Acts Which Establish The State Actor Status Of Sheridan           6
V.      Conduct and Occurances Complaint Of In This Complaint                   8
a.      Background and Protected Conduct                                        8
**VI.   FEDERAL CLAIMS**                                                        21
1.      Statutes and Constitutional Provisions Involved                         21
2.      Claims under 42 U.S.C. § 1983                                           22
Count I      Right of Access to the Courts without Interference or
             Retaliation                                                       22
Count II     Right to Freedom of Speech and to Petition the
             Government Redress of Grievances without Retaliation              22
Count III    Right of Association without Retaliation                          23
Count IV     Right to Procedural Due Process                                    23
Count V      Ratification by Sheridan Swim Club                                 23
3..     Claims under  42 U.S.C. § 1985 (2 & 3)                                  24
Count VI     42 USC §1985.  Conspiracy to Interfere with Civil Rights
             (2) Obstructing Justice; Intimidating Party, Witness, or Juror
             25
Count VII    42 USC §1985.  Conspiracy to Interfere with Civil Rights
             (3) Depriving Persons of Rights or Privileges
             26
**VI.          STATE COUNTS**
COUNT I      The Acts and Omissions of Defendants constitutes Civil
Conspiracy                                                                     27
COUNT II     The Acts and Omissions of Defendants were Willful and
Wanton, And Constitutes Intentional Infliction of Emotional
Distress                                                                       27
COUNT III    The acts and omissions of Defendants Sheridan, Bier, and
Barnard constitutes Intentional Spoliation of Evidence                         27

VII.    Damages and Relief Sought                                               28

## SECOND AMENDED COMPLAINT

Now come the Plaintiffs, J. Robert Tierney, Ann S. Tierney, and Case M. Tierney [1] by and through his next best friend, J. Robert Tierney, Pro Se, and complaining of the Defendants, SHERIDAN SWIM CLUB INC., ANDREW SCHNACK III, BARNEY BIER, DOUG OLSON, ROBER MEYER, ROBERT HULTZ, JON BARNARD, and DENNIS GORMAN, and for a claim for relief states:

**I.    Jurisdiction & Venue**

1.    Jurisdiction is founded under 28 U.S.C. §1343 © to hear plaintiff's claims under the Civil Rights Act of 1871, 42 U.S.C. §1983 & §1985.  Supplemental jurisdiction to hear the state claims is founded under 28 U.S.C. §1367 (a).

2.    Venue is founded under 28 U.S.C. §1391. The plaintiffs are residents of Adams County, Illinois, one of the counties comprising the Central District of Illinois.  28 U.S.C. §93 (b). The defendants are residents of Adams County and one is an Illinois Corporation located in Adams County Illinois.

3.    The occurrences complained of occurred on June 24, 2002 and thereafter in the City of Quincy, County of Adams, and State of Illinois.

**II.    The Parties**

**A.    The Plaintiffs**

4.  .    J. Robert ("Bob") Tierney, Ann S. Tierney, and Case M. Tierney, were at all relevant times residents of Adams County, Illinois and resided within the political boundaries of the Quincy School District #172. Case Tierney, born September 27, 1990, is one of the four children of Ann and Bob Tierney.  Ann Tierney is the senior Dean of Students at Quincy Junior High School.  Plaintiffs, and all family members, were at all relevant times stockholders and members in "good standing" of the Sheridan Swim Club, Inc., in Quincy, Illinois.  As a shareholder in the Sheridan Corporation, the Plaintiffs had a vested, financial interest in the operation, assets, and property of the Corporation/Club.  The Tierney family maintained continuous membership in the Sheridan Swim Club from 1986 until their wrongful expulsion on or about April 15, 1999.

**B.    The Defendants**

---

[1] In the interests of judicial economy, Plaintiff Case M. Tierney (a minor) is named as a Plaintiff, pending directions from the Court determining if Case Tierney can be a Pro Se Plaintiff, by and through his next friend and father, Robert Tierney.

5.    Sheridan Swim Club, Inc. ("Sheridan" or "CLUB") is a closely held, For-profit corporation, located in Adams County, Illinois, organized and obligated to be operated under the laws of the State of Illinois, including but not limited to *The Business Corporation Act of 1983* 805 ILCS 5/2A *et seq.* As an agent of a Public School District, Sheridan is obligated to comply with *The Illinois School Code* 105 ILCS 5/24-24) et seq., and *The Illinois School Student Records Act* 105 ILCS 10/1-10 et seq., and 20 U.S.C. Section 1232g. *Family Educational and Privacy Rights Act* (FERPA). As a "recreational facility" Sheridan is also obligated to comply with *The Illinois Abused and Neglected Child Reporting Act,* 325 ILCS 5/1 et seq (1998) formerly Ill. Rev. Stat. Ch. 23, 2051 et seq. (1975) eff. July 1, 1975. For purposes of this Complaint, Sheridan is a State Actor.

6.    Doug Olson ("Olson"), Robert Meyer ("Meyer"), and Robert Hultz ("Hultz") are past or present members of the Board of Directors of the Sheridan Swim Club, Inc. (hereinafter, collectively referred to as "Sheridan Board"). All are residents of Adams County, Illinois. Board members Olson and Meyer became Board members in March 2001. All Sheridan board members are sued in their individual and official capacities.

7.    Andrew C. (Drew) Schnack, III ("Schnack"), has alleged that he was the personal attorney of QHS/Sheridan Swim Coach, Richard Powers ("Powers"). Schnack was also Sheridan Board member from March 1999 until March 2002. Schnack's actions alleged herein were committed as a member of Sheridan Swim Club, acting at the direction of the Sheridan Board of Directors, and/or in collusion with, or at the direction of Dennis Gorman, an employee or agent of the Quincy School District, and in collusion with Bier and Barnard in their individual capacities as Adams County States Attorneys. Schnack is sued in his individual capacity

8.    Barney Bier ("Bier") is a resident of Adams County, Illinois, and at all times relevant herein was the Adams County States' Attorney. Bier was also a Sheridan Board member from March 1999 until March 2001. Bier again became a member of the Sheridan Swim Club Board of Directors in March 2004. Bier's actions alleged herein were committed under color of state law while aiding and abetting the misconduct of Andrew Schnack, Sheridan, and the Sheridan Board. The actions of Bier alleged herein were committed while Bier was acting under the authority of his office conferred by state law, but were plainly outside the legitimate course and scope of his employment duties and beyond his purview, discretion, and jurisdiction per his acknowledged conflicts-of-interest. Bier is sued in his individual capacities.

9.    Jon Barnard ("Barnard") is a resident of Adams County, Illinois, and, at all times relevant was a local attorney and long time Adams County Assistant State's Attorney, subject to the control and authority of Defendant, Barney Bier. Barnard is a political crony and protégé of Bier, and a friend and colleague of Schnack. Barnard's unlawful actions occurred under color of state law as an Adams County Assistant States' Attorney, or while acting in collusion with other defendants as the attorney for Sheridan Swim Club, Inc. Barnard committed unlawful acts while acting under the authority of his office conferred by state law, but were plainly outside the legitimate course and scope of his employment duties and beyond his purview, discretion, and jurisdiction per his acknowledged conflicts-of-interest. Barnard is sued in his individual capacities. [2]

10.    Dennis Gorman ("Gorman") was at all relevant times the attorney for the Quincy School District #172 and a resident of Adams County, Illinois. The actions of Gorman complained of here were committed under color of state law while acting as attorney for the School District. Gorman is sued in his individual and official capacities.

## C.    Other Non-Defendant Parties

11.    Chet W. Vahle ("Vahle") is an associate circuit judge of the Eighth Judicial Circuit. The acts alleged herein were committed while acting under the authority of his judicial office conferred by state law, but were plainly outside his judicial authority and without any basis of jurisdiction. Vahle is not named as a Defendant at this point in time.

12.    Quincy School District No. 172 ("School District or QSD")) is a public school district in Adams County, Illinois, organized under the provisions of the Illinois School Code (105 ILCS 5/1-1, et. seq.). The School District is an educational institution as that term is defined under 20 U.S.C. §1661©. It is a political subdivision of the State of Illinois, acting under color of state law. The board of directors of the school district has the power to sue and be sued in all courts and places where judicial proceedings are had. 105 ILCS 5/10-2 (2000). The School District is not named as a Defendant at this point in time.

## III.    State Actor Status of Sheridan Swim Club

---

[2] Defendant Barnard is now the newly elected Adams County States Attorney. He was elected in November 2004, with the help and public endorsement of Barney Bier, who did not run for re-election.

3

13.    There are five tests to determine if a nominally private party has engaged in State Action or is a State Actor. If any of the five tests are met, then a private party is considered a state actor.

14.    State action exists where there is a "symbiotic relationship" or "nexus" between the private actor and the State.

    a.    Sheridan is a State Actor due to the Symbiotic Relationship and Nexus between Sheridan Swim Club and the Quincy School District #172.

    b.    Sheridan is a State Actor due to the Symbiotic Relationship and Nexus between the Adams County States Attorney, Barney Bier, and Sheridan.

15.    The private party carries on a traditional public function.

    a.    Sheridan is a State Actor since it controls, operates, and carries on a traditional public function – the operation of the Quincy High School Swim Program.

16.    A private party's discriminatory conduct is aggravated in some unique way by the involvement of a governmental authority.

    a.    Sheridan's retaliation against the Plaintiffs is aggravated by the involvement of a governmental authority and/or State Actors including but not limited to:

        i.      The attorney for Quincy School District #172, Dennis Gorman

        ii.     The Adams County State's Attorney Office.

        iii.    The Adams County State's Attorney, Barney Bier.

        iv.     The Adams County Assistant State's Attorney, Jon Barnard.

        v.      The Illinois State's Attorney Appellate Prosecutor.

        vi.     The Adams County Sheriff's Department.

        vii.    Eighth Judicial Associate Circuit Judge, Chet Vahle.

        viii.   The Adams County Circuit Clerk.

17.    The State commands or encourages private discriminatory action.

    a.    State Actors Bier, Barnard, Gorman and the QSD commanded, encouraged, and were involved in the unlawful retaliatory, discriminatory action taken against the Plaintiffs.

18.    The State is entwined in the control and operation of the private actor or the private actor is entwined in the control and operation of a traditional public function.

    A.    Sheridan is entwined in the control and operation of a traditional public function – the Quincy High School Swim Team Program.

        I.      All QHS practices and home meets are conducted at Sheridan Swim Club.

        II.     Since 1998, the QSD has immediately hired every new Sheridan Swim Team coach (3) to also be the QHS swim team coach.

        III.    Just prior to the 2003/04 school year, Sheridan unilaterally installed the new Sheridan Swim Team coach as the QHS swim coach for the 2003/04 school year.

IV. Just prior to the 2003/04 school year, the QSD also hired the spouse of this swim coach as a full time teacher for the 2003/04 school year, despite the layoffs of many teachers, and without complying with the terms of the Collective Bargaining Agreement between the QSD and the Teachers Union.

19.    Description of Sheridan Swim Club and the Genesis of the Symbiotic Relationship between Sheridan and the Quincy School District.

a.    Sheridan Swim Club has an agency relationship with an Illinois public school district. As an agent of a Public School District, Sheridan is obligated to comply with the *Illinois School Code* 105 ILCS 5/24-24) et seq., and *The Illinois School Student Records Act* 105 ILCS 10/1-10 et seq., and 20 U.S.C. Section 1232g. *Family Educational and Privacy Rights Act* (FERPA). Sheridan Swim Club also meets the definition of a "recreational facility" according to the provision of *The Illinois Abused and Neglected Child Reporting Act,* 325 ILCS 5/1 et seq.

b.    Sheridan was originally incorporated as a Not-for-profit corporation, but according to Sheridan Board minutes, at some point in time prior to April 1999, Sheridan began operating and representing itself as a For-profit corporation. Sheridan has sold shares to CLUB members under the representation that Sheridan was a For-profit Corporation.

c.    Sheridan is tinged with public stature since any member of the public can join the Sheridan Swim Team and the Sheridan Swim Team Booster Club without becoming a member of the Club. Members of the public can also take swim lessons at Sheridan and utilize CLUB facilities without even joining Sheridan Swim Team or the Club. According to the Sheridan Club By-Laws, any member of the public can utilized the Club facilities for year-round or summertime use, without becoming a Shareholder in the Club. Only Shareholders can vote for Board members, yet Shareholders can maintain their voting rights without paying the yearly dues required of persons who actually utilize the facilities.

d.    Sheridan Swim Club is also tinged with public stature since it is the site of, and controls a, *traditional public functions,* otherwise open to the public (as a matter of law) for participants and spectators alike. Sheridan is also member of the River Country swim league comprised of area YMCA's and municipal park district pools.

e.    In most years, Sheridan is the host site for this swim league's conference championship meet, which is open to the public. For the past several years, Sheridan has hosted an international swim meet every summer, which is sanctioned by USA Swimming Inc. This swim meet is otherwise open to the public, and on occasion has foreign nationals in attendance. The foreign participants are not U.S. citizens.

f.    Sheridan is a member Club of Illinois Swimming Inc. and USA Swimming Inc. USA Swimming Inc. is the National Governing Body for swimming in the United States of America and is the organizational body behind the US Olympic Swim Team. USA Swimming Inc. has affiliated Local Swimming Committees (LCS) and member Clubs in all 50 states. Illinois Swimming Inc. is a Local Swimming Committee for USA

5

Swimming Inc.  Sheridan Swim Club is within the geographical boundaries of Illinois Swimming Inc.

g.    The Sheridan Swim Team is registered with, and pays dues to Illinois Swimming Inc., and USA Swimming Inc.  Members of the Sheridan Swim Team register with, and pay dues to Illinois Swimming Inc. and USA Swimming Inc. in order to compete as a Sheridan Swim team member in meets which are sanctioned by USA Swimming Inc. However, the swim team is an organization of the CLUB under the control of the Sheridan Board of Directors, which has the power to review the activities of the Swim Team.

h.    Two (2) School District employees and the Adams County State's Attorney have served as President of the Sheridan Board over the past 15 years.  Another School District employee has simultaneously served as President of the Sheridan Swim Team Booster Club and as President of the Quincy High School Swim Team Booster Club.  At least one Quincy School District employee has been on the Sheridan Board every year for the past 10 years.  In some years, 2 or more School District employees have been Sheridan Board members.

20.    The Plaintiffs maintained year-round membership status in Sheridan Swim Club since 1986 until their wrongful expulsion in 1999.  The Plaintiffs were also shareholders in this corporation with specific shareholder property rights such as notice, fair hearing.  These due process rights are further enhanced since Sheridan controls and operates a *traditional public function* whose activities and events are open to the public.

**IV.    Additional Acts Which Establish The State Actor Status Of Sheridan**

21.    Pursuant to the litigation in the 8th Circuit Court per Complaint 2002-L-12, between the Plaintiffs and Sheridan, Plaintiffs had subpoenas for witness appearance and document production, lawfully served on four (4) of the individual Sheridan defendants (parties), and a non-party witness.  Employees of the Adams County Sheriff's Department served these subpoenas.

22.    Prior to these Hearings, Defendants Bier and Barnard took possession of Sheridan Corporate Records and other documents and stored these documents in the Office of the Adams County State's Attorney.

23.    Since March 2001, including the entire period of the State Court litigation, Defendant Bier held no office or official capacity at Sheridan Swim Club, and had no right to possess, have access to, and/or control access to official Sheridan Corporate documents and records.

24.    Prior to the Hearing scheduled for June 2002, Defendant, Barney Bier, using the power and authority of his office, and acting under color of state law as the Adams County States

6

Attorney, contacted, and/or had his [Bier] Administrative Assistant, Cheryl Lewis, acting under color of State law, contact the Adams County Sheriff's Dept., in successful attempts to find out what individuals were being served with subpoenas by the Plaintiffs.

25.    In response to these contacts by Defendant Bier and Lewis, one or more employees of the Adams County Sheriff's Dept. (ACSD) acting within the course and scope of their employment and under color of state law, while in the process of serving subpoenas on the witnesses, also instructed one or more of the witnesses to contact Jon Barnard.

26.    Bier's misconduct, while acting in multiple capacities, gave rise to multiple conflicts of interests and misconduct in office by a public official.

27.    Bier was a Defendant in a Federal Lawsuit (along with Schnack and Sheridan), a Sheridan Board member, and the Adams County States' Attorney.

28.    This misconduct by Defendant Bier, acting under the color of state law, represents the abuse of public office by a public official in order to aid private parties in litigation, in which the Office of the Adams County States' Attorney has no interest or standing in view of Bier's acknowledged conflicts-of-interest as a defendant in that litigation.

29.    This conduct again establishes a symbiotic relationship between Sheridan/Sheridan Board and the aggravating involvement of State Actors.

30.    During the pendency of the State Court litigation, Defendant Barnard used the power and authority of his State Office to gain access to and obtain copies of the raw criminal offense reports from files in the Adams County Sheriff's Department, which pertained to the Plaintiffs complaints of obscene, harassing phone calls made by defendant Schnack.

31.    Gorman, acting under color of state law as attorney for the QSD, interfered with witnesses who were subpoenaed to appear as material witnesses during the hearings on June 24, 2002.

32.    Despite the fact that Gorman was subpoenaed and appeared to testify, his law firm allegedly provided legal representation to numerous material witnesses including persons who were employees of the QSD, as well as to witnesses who were not employees of the QSD. Based on belief and understanding, the QSD paid the legal fees of all these witnesses.

33.    Many of these witnesses failed to appear as required by subpoenas. One witness unlawfully refused to appear at the hearing on June 24, 2002, per instructions from Defendant Gorman.

7

34.    Gorman, acting under color of state law, provided false and misleading testimony on material issues regarding his disclosure of information from the Schildt report, and regarding his communications with Schnack and Vahle about the complaints against Powers.

35.    Gorman, acting under color of state law and pursuant to he hearings on June 24, 2002, failed to produce and/or disclose the existence of document(s) that were subject to disclosure.

36.    Gorman, acting under color of state law, and the QSD, unlawfully interfered with and prevented his deposition, and the depositions of former QSD School board member, James Citro. Both individuals had received subpoenas to appear for a deposition pursuant to Pursuant to the litigation in the 8th Circuit Court based on Complaint 2002-L-12, and both refused to appear.

37.    Gorman actions were intended to retaliate against the Plaintiffs, interfere with Plaintiffs access to the courts, and obstruct the judicial process and the due course of justice.

38.    The Defendants enlisted the aggravating involvement of State Actor, Judge Chet Vahle in order to prevent depositions.

39.    Judge Vahle engaged in the unlawful, unauthorized practice of law by filing a Motion in a pro se capacity in State Court in an attempt to prevent his deposition, as well as the deposition of another material witness. As part of this Motion, Vahle also improperly and falsely advised the Court of the applicability of res judicata regarding the pending Complaint.

40.    Circuit Court Judges in the State of Illinois are barred by Illinois Supreme Court Rules from engaging in the practice of law.

## V. The Conduct And Occurrences Complained Of In This Complaint

### A. Background and Protected Conduct

41.    On or about June 24, 1999, the Plaintiffs filed an action in this Court (99-3149) against Sheridan Swim Club and Sheridan Board Members (hereinafter referred to as "Sheridan"), Quincy School District #172 and various QSD employees, agents, and QSD Board members (hereinafter referred to as "QSD").

42.    In February 2002, the Plaintiffs filed a Complaint in the Circuit Court of the Eighth Judicial Circuit Adams County, State of Illinois (2002-L-12).

43.    This State Court Complaint only brought claims against Sheridan after the Federal Court declined further subject-matter jurisdiction for remaining Claims against Sheridan and related defendants.

8

44.    Schnack and Bier retained their close friend, Adams County Assistant States Attorney, Jon Barnard, as the attorney-of-record for all of the defendants.

45.    On June 24, 2002, and thereafter, hearings pursuant to a Motion for Preliminary Injunction Hearings were held in State Court.

46.    Neither the Quincy School District (QSD) or any employees or agents were named as defendants in this State Court litigation. However, QSD attorney, Dennis Gorman and several QSD employees were subpoenaed to testify at the hearings as material and/or rebuttal witnesses.

47.    Despite the fact that Gorman was subpoenaed to testify and did in fact testify, his law firm allegedly provided legal representation to numerous material witnesses including persons who were employees of the QSD as well as to witnesses who were not employees of the QSD. Based on belief and understanding, the QSD paid the legal fees of all these witnesses.

48.    Many of these witnesses failed to appear as required by subpoenas. One witness unlawfully refused to appear at the hearing on June 24, 2002, per instructions from Defendant Gorman.

49.    Pursuant to the Hearing on June 24, 2002, the Court had ordered the Sheridan defendants, Gorman, and the QSD, to produce at the Hearing, numerous documents including all documents/letters pertaining to the Plaintiffs' complaints to the QSD made prior to April 15, 1999, regarding the conduct of QHS Swim Coach, Richard Powers. [3]

50.    In February 1999, QSD employees Nick Schildt and Terri Conboy conducted interviews of two QHS female swimmers who had been improperly "massaged" by Powers. Schildt and Conboy then prepared a confidential report *(Schildt/Conboy report)*.

51.    This report was given to QSD attorney, Dennis Gorman, on or about March 1, 1999. [4]

---

[3] During 2 plus years of the Federal Court litigation between June 1999, and October 2001, Sheridan Swim Club only produced one (1) sheet of paper in response to; Initial Disclosure, A Request to Produce Documents at Depositions, and two (2) Motions to Compel Disclosure. This document was the Sheridan Board minutes from April 1999, which was produced at Initial Disclosure in March 2000. No other Board minutes or documents of any kind were ever produced by Sheridan, despite the fact that the Sheridan Board held numerous discussions at Board meetings from at least September 1998 through June 1999, about the private student activities of Meryl Tierney in her capacity as a student at Quincy High School, and about the Tierney's complaints to the Quincy School District about Powers improper operation of the QHS Swim Program.

[4] Gorman and the QSD have admitted in Federal Court documents that the *Schildt/Conboy* report is subject to 20 U.S.C. Section 1232g. (FERPA) restrictions and protection.

52.    QSD attorney, Dennis Gorman, unlawfully disclosed the *Schildt/Conboy* report to Schnack and Judge Chet Vahle shortly after March 1, 1999.

53.    In response to the disclosure of this information in the Schildt Report, Schnack wrote a letter to Gorman dated March 5, 1999.

54.    This letter from Schnack is dated just 5 days after the "massages" were reported to the Quincy School District during private privileged conversation protected by 20 U.S.C. Section 1232g, *Family Educational and Privacy Act* (FERPA), and The *Illinois School Student Records Act* 105 ILCS 10/1 et seq.

55.    Schnack's letter dated March 5, 1999 states the following:

"Dear Dennis:

As a close personal friend and attorney of Rick Powers, coach of the boys and girls swimming teams at Quincy High School, it has come to my attention that accusations are being made about improper contact with girl swimmers last fall. I have talked personally to Rick about this and he categorically denies it. I have also talked with Judge Chet and Barb Vahle concerning the alleged incident. The fact of the matter is that prior to the Western Big Six conference meet, a get together was held at the Vahle home. Chet and Barb Vahle were present. The suggestion was made that the girls receive rub downs to loosen up for the meet. This is done on a regular basis at every big meet I have ever attended and is common practice in swimming. At the suggestion of the Vahles, the team went downstairs and anyone who wanted a massage or rub down was given one. It was voluntary, it was totally in keeping with good swimming coaching practices and absolutely nothing was wrong with this. Apparently this is being used now to somehow attack Rick. As Rick's attorney, I have advised him that if these statements are being made, they could form the basis for a lawsuit. Rick has authorized me to request from you any documentation or complaints in writing that you or the school board has concerning this matter so that we can be properly informed and properly respond to it. Obviously, if this is untrue, I apologize for taking your time. If it is true, we consider it exceptionally serious and would like to get to the bottom of it."

*(A true and correct copy of Schnack's letter of March 5, 1999, is attached hereto as Exhibit A-1.)*

56.    This *Smoking Gun* letter from Schnack to QSD attorney, Dennis Gorman dated March 5, 1999, had been unlawfully concealed from the Plaintiffs and the Federal Court in Central District Case 99-3149.

a.    Schnack's letter makes several categorically false statements concerning the events, circumstances, and propriety of these "massages".

10

    b.  According to sworn testimony during State Court hearings, Judge Chet Vahle was *not* present in his home the evening of the "massages", and knew nothing about the "massages" until contacted by Dennis Gorman in March 1999.

    c.  Per the statements or other Illinois High School Swim coaches, and a professor of Kinesiology at the University of Illinois, the "massages" were considered at the very least "totally inappropriate", and had no therapeutic or pre-competition benefit. *(See Illinois State Police reports and letter from Dr. Bell attached hereto as Exhibits C 1-3)*

    d.  Schnack's letter also establishes the fact that Schnack and his "close personal friend", QHS swim coach Powers intended to pursue some kind of retaliatory response against those who reported the improper "massages".

    e.  Schnack's letter also establishes the fact that Gorman and the QSD were well aware of the retaliatory intentions of Schnack and QHS coach Powers.

*57.*    Schnack's letter established the fact that Schnack received confidential information as a result of the unlawful acts of (Gorman) State Actors.

*58.*    During the Federal Court litigation, the QSD had produced numerous documents and letters from other parents and students, about the complaints about Powers' conduct, <u>including</u> a letter from Schnack to Gorman dated <u>March 29, 2003</u>.

59.    Schnack's letter of <u>March 29</u>, 1999, states the following:

"Dear Dennis:

I just thought you would like to know that as of Thursday, March 25, 1999, Meryl Tierney is now swimming with Sheridan Swim Team under Coach Rick Powers. I don't know what affect this would have on his previous complaints but would dearly love to get Rick's contract signed ad get the contract signed between the school district and Sheridan. I have a couple of thoughts on the that I think would be advantageous to the school district, especially if we can get this done on a long term basis.

If you get a chance, give me a call."

*(A true and correct copy of Schnack's letter of March 29, 1999, is attached hereto as Exhibit A-2.)*

60.    Schnack's letter of March 29, 1999, was in fact a follow-up letter to his letter dated March 5, 1999.

    a.  This March 29, letter also contains several false and misleading statements concerning Meryl Tierney's swimming activities at Sheridan.

    b.   Schnack's statement that "Meryl Tierney is now swimming with the Sheridan Swim Team under coach Rick Powers" was and is categorically false. [5]

    c.   The letter was disclosed by the QSD in order to discredit the Tierneys' complaints about the "massages".

61.    In furtherance of a conspiracy between Schnack, Gorman/QSD, Bier, and Barnard, and pursuant to the hearings on June 24, 2002, and thereafter, these names Defendants (acting under color of state law), conspired;

    a.   to violate the constitutionally protected rights of the Plaintiffs,

    b.   to interfere with the Plaintiffs' rights and attempts to petition the government and the courts,

    c.   to retaliate against the Plaintiffs for petitioning various State Actors for redress of grievances, for filing a lawsuit in federal and state courts, and for engaging in free speech on issues of public concern,

    d.   to obstruct the due course of justice and the judicial process,

    e.   to obstruct, hinder, and prevent the investigation and prosecution of Schnack's criminal offenses, by constituted authorities of the State of Illinois.

by committing the unlawful acts as alleged in ¶¶'s 61 – 70.

62.    The defendants listed in ¶60 breached courts orders and failed to produce and/or disclose the existence of Schnack's letter of March 5, 1999, during the hearings on June 24, 2002, and thereafter.

63.    In furtherance of this conspiracy and pursuant to the hearings on June 24, 2002, and thereafter, the above named Defendants gave false, misleading, and evasive testimony on material issues.

64.    During the hearing on June 24, 2002, Gorman gave false, misleading, and evasive testimony. Gorman testified under color of state law in his capacity as the attorney for the Quincy School District.

65.    Gorman provided false and misleading testimony on material issues regarding his disclosure of information from the Schildt report, and regarding his communications with Schnack and Vahle about the complaints against Powers.

---

[5] Schnack's letters, and Judge Vahle's letter of April 12, 1999, written on official 8th Judicial Circuit stationary, established triable issues of fact regarding the retaliation against the Plaintiffs, and the unlawful and "aggravating involvement" of State Actors (Gorman/QSD, Judge Vahle, and QHS swim coach Powers) in this retaliation.