E-FILED
Friday, 22 April, 2005  05:09:17 PM
Clerk, U.S. District Court, ILCD

66.    Following Gorman's testimony, and armed with the knowledge that Gorman and the QSD did not and would not produce Schnack's letter of March 5, 1999, Barnard called Defendant Schnack to the witness stand and unlawfully suborned false testimony on material issues.

67.    In response to Barnard's questions, Schnack repeatedly testified that he did not have any knowledge of any complaints about Powers and the "massages", at the time he (Schnack) made accusations against the Plaintiffs and initiated the action against the Plaintiffs at the Sheridan Board meeting in <u>April 1999.</u>

68.    Schnack testified over a 2 day period and consistently repeated this false testimony in response to direct examination, cross-examination, and in response to direct questioning by the trial Judge regarding Schnack's knowledge of any complaints about the "massages" at the time of the Sheridan Board meeting in April 1999.

69.    Schnack also falsely testified that he had no knowledge of the *Schildt/Conboy* report until the State court hearings in June 2002.

70.    Defendant Bier also testified during these hearings and was present during Schnack's false testimony, but took no action.

71.    This false, misleading, and evasive testimony by Schnack and Gorman, coupled with their withholding of documents fatally afflicted the Plaintiffs attempts to petition the Courts for redress of grievances.

72.    On or about <u>October 17,</u> 2002, the Plaintiffs learned of the existence of Schnack's letter of March 5, 1999.

73.    The next day on <u>October 18,</u> 2002, in furtherance of a conspiracy between Gorman, the QSD, Schnack, and Sheridan, Gorman tipped off Barnard and Bier that the Plaintiffs had learned of the existence of Schnack's letter of March 5, 1999.

74.    On or about <u>October 18,</u> 2002, after learning that the Plaintiffs had discovered Schnack's letter of March 5, 1999, Defendants Bier, Barnard, and Gorman (acting under color of state law), conspired;

    a.    to violate the constitutionally protected rights of the Plaintiffs,

    b.    to interfere with the Plaintiffs' rights and attempts to petition the government and the courts,

    c.    to further retaliate against the Plaintiffs for petitioning various State Actors for redress of grievances, for filing a lawsuit in federal and state courts, and for engaging in free speech on issues of public concern,

   d.    to obstruct the due course of justice and the judicial process,

   e.    to obstruct, hinder, and prevent the investigation and prosecution of Schnack's criminal
         offenses, by constituted authorities of the State of Illinois.

74b.    In furtherance of this conspiracy, the defendants identified in ¶74 engaged in the following unlawful acts as alleged in ¶¶'s 73-82:

   a.    On or about October 18, 2002, Bier contacted Norb Goetten, the Director of the Office of the State's Attorney Appellate Prosecutor, and reached an agreement with Norb Goetten, for the Appellate Prosecutor to *again* unlawfully take possession of the case files and evidence pertaining to *another* criminal offense (perjury) complaint against Schnack.

   b.    After reaching this agreement with Goetten, Bier filed a Motion for the Appointment of a Special Prosecutor to investigate and prosecute a charge of perjury against Defendant/attorney Schnack, pursuant to 8th Circuit Court Case No. 2002-MR-98. *(A true and correct copy of this Motion and case file 2002-MR-98 is attached hereto as Exhibit B)*

   c.    Bier obtained a Court Order appointing the Office of the State's Attorney Appellate Prosecutor to investigate and prosecute a charge of perjury against Defendant Schnack. *(See Exhibit B-2.)*

   d.    On or about October 18, 2002, Bier breeched the terms of the Court order, and secretly filed these court documents in a case file with the Adams County Circuit Clerk under 8th Circuit Court Case No. 2002-MR-98, with the intent to conceal existence of the case, and to obstruct the due course of justice and the judicial process. *(See Exhibit B.)*

   e.    On or about October 18, 2002, Bier unlawfully instructed the Circuit Clerk to classify Case No. 2002-MR-98 as an "eavesdropping" or "wiretap" case in order to conceal the existence of the case file from public knowledge, and to obstruct the due course of justice and the judicial process. *(See Exhibit B-3.)*

   f.    Bier subsequently and unlawfully ordered the Circuit Clerk to "impound" Case No. 2002-MR-98, in an unlawful attempt to conceal its existence and to obstruct the due course of justice and the judicial process and deny any access to public records subject to disclosure per the Freedom of Information Act. *(See Exhibit B-4.)*

   g.    The State's Attorney Appellate Prosecutor breeched provisions of 55 ILCS 5/3 *Counties Code State's Attorney*, and the terms of the Court Order of October 18, 2002, and accepted possession and control of the evidence pertaining to Schnack's perjury offense, took no action on the perjury offense, and *buried* the case file within the bowels of this State agency, along with the previous criminal offense complaints against Schnack, which Bier had also unlawfully placed under the control and possession of the Appellate Prosecutor. [6]

---

[6] This was the **third** criminal offense perpetrated by attorney Schnack between 2000 and 2002 against the Tierney family that Bier unlawfully 'buried' with the Office of the State's Attorney Appellate Prosecutor. The Appellate Prosecutor unlawfully accepted control and possession of

h.  Per the orders of Bier, Case No. 2002-MR-98 remained unlawfully concealed and impounded until November 2004, when judicial intervention by the Chief Judge of the 8th Judicial Circuit forced disclosure of the case file. *(See Exhibit B-5.)* [7]

i.  Barnard, Bier, and Gorman collectively and unlawfully breeched numerous provision of Articles VII. Illinois Rules of Professional Conduct (for attorneys) including but not limited to Rules 1.7, 1.13, 1.16, 3.3, 3.4, 3.7, 3.8, 4.1, 4.4, 8.3 & 8.4.

j.  Barnard, Bier, and Gorman failed to report Schnack's perjury offense to the State Court, or any other Court, party, or regulatory agency.

k.  Barnard continued to unlawfully provide legal representation to Schnack and all the other defendants, including Sheridan Swim Club, Inc., during the pendency of 8th Circuit Court case 2002-L-12.

74c.  Shortly after obtaining Schnack's letter of March 5, 1999, the Plaintiffs obtained permission from the State Court to engage in discovery activities, and scheduled the taking of several depositions including the depositions of Judge Chet Vahle and Barb Vahle; and the production of documents.

75.  The Plaintiffs specifically requested the depositions of Judge Chet Vahle and Barb Vahle since Schnack made prominent mention of alleged conversations with them in the letter of March 5, 1999.

76.  In furtherance of a conspiracy, the Defendants enlisted the aid of Judge Chet Vahle in order to prevent the depositions of Judge Chet Vahle and another material witness.

77.  In furtherance of a conspiracy, Judge Vahle engaged in the unlawful, unauthorized practice of law, by filing a Motion in a pro se capacity in State Court in an attempt to prevent his deposition, as well as the deposition of another material witness, Barb Vahle. As part of this Motion, Vahle also improperly and falsely advised the Court of the applicability of *res judicata* regarding the pending Complaint. [8]

---

these previous criminal complaints and evidence, in breech of 55 ILCS 5/3 Counties Code State's Attorney.  The Appellate Prosecutor failed to take any action regarding any investigation or prosecution of Schnack's criminal offenses, and also turned a blind eye to Bier's concealment of police criminal offense reports relating to Schnack's criminal offenses.

[7] The Plaintiffs learned of the existence of 8th Judicial Circuit Case No. 2002-MR-98 in November 2004, and were forced to obtain the judicial intervention of 8th Circuit Chief Judge Brownfield in order to gain access to the Case file.

[8] Circuit Court Judges in the State of Illinois are barred by Illinois Supreme Court Rules from engaging in the practice of law.

78.    After the State Court denied Vahle's Motion, Barnard unlawfully obstructed, hindered, and prevented the depositions of the Vahles as well as the deposition of other material witnesses. Barnard told these witnesses not to appear for their depositions.

79.    In furtherance of a conspiracy, several critically important Sheridan corporate records were concealed and/or destroyed while in the custody of Bier and Barnard, including but not limited to Sheridan Board minutes from several Sheridan Board meetings.

80.    In furtherance of a conspiracy, Barnard, Bier, and Schnack approached Sheridan Board members, Defendants Olson, Meyer, and Hultz, to advise and encourage them to deny any attempts by the Plaintiffs or others, to obtain a Sheridan Youth Membership for Plaintiffs' 12 year old son, Case Tierney, unless the Plaintiffs agreed to drop all the lawsuits, and also agree not to pursue any other legal remedies over the new causes of action.

81.    Defendants Barnard, Bier, Olson, and Meyer conspired to withhold information from the other Sheridan Board members regarding the criminal (Perjury) offenses of Schnack.

82.    After learning that the Plaintiffs had become aware of Schnack's letter of March 5, 1999, and although the QSD was not a party in the State Court litigation, the QSD suddenly refused to engage in any further settlement discussions over the pending Federal litigation (99-3149), unless the Plaintiffs agreed to settle their State Court litigation against Sheridan, and also agree not to pursue any other legal remedies over the new causes of action.

83.    In February 2003, Defendant Doug Olson was deposed pursuant to the State Court Complaint, while in the presence of his attorney, Defendant Barnard.

84.    During this deposition, Olson testified that in January of 2003, he (Olson) disclosed to Adams County State's Attorney, Bier that Schnack had in fact used the Olson's cell phone to make an obscene, harassing phone call to the Plaintiffs home in December 1999.

85.    Olson testified that Schnack made the phone call while in a public place, and that Schnack's statements were overheard and witnessed by at least 5 other adult witnesses including Doug and Debbie Olson.

86.    Olson testified that Schnack made the obscence phone call during a conversation and comments by Schnack about the Federal lawsuit (99-3149) involving the Plaintiffs, Sheridan, and QHS swim coach, Powers.

87.    Olson further testified that he (Olson) made a phone call to Schnack when an Adams County Sheriff's Deputy came to the Olson's home in December 1999, pursuant to a criminal investigation of the harassing phone call made to the Plaintiffs.

88.    Olson also testified that it was Schnack who spoke on the phone with the Adams County Sheriff's Deputy. [9]

89.    According to the Deputy's report, Olson and his wife Debbie, refused to divulge the name of the person who made the phone call to the Plaintiffs, and that Schnack informed the Deputy that he (Schnack) was the Olson's attorney, and that he (Schnack) had instructed the Olsons not to provide any information to the Deputy concerning the phone call under investigation.

90.    In January 2000, the Sheriff's Department turned over all investigation reports of the harassing phone calls to the Adams County States' Attorney, Barney Bier. (Bier was also a Sheridan Swim Club board member and Board President at this time).

91.    After the investigation reports were turned over to Defendant Bier, the Plaintiffs petitioned the Adams County States' Attorney [Bier] for redress of grievances, by sending a letter to Defendant Bier, wherein the Plaintiffs requested an investigation and prosecution of all parties involved in the harassing, obscene calls made to the Plaintiffs.

92.    In furtherance of a conspiracy, to obstruct, hinder, and prevent any investigation or prosecution of Schnack's criminal offenses, Defendant Bier unilaterally and unlawfully transferred control and possession of these criminal offense complaints to the State's Attorney Appellate Prosecutor in breech of 55 ILCS 5/3 *Counties Code State's Attorney*.

93.    In furtherance of a conspiracy to obstruct, hinder, and prevent the investigation and prosecution of Schnack's criminal offenses, the Appellate Prosecutor agreed to unlawfully take possession and control of the case file and evidence, and take no further action.

94.    In furtherance of a conspiracy, Bier also unlawfully removed all pages of the criminal incident reports that described Schnack's criminal actions. These missing pages comprised the

---

[9] Paragraphs 90 – 95 are not listed as causes of action for claims against the Defendants in this complaint, but listed to provide background on this issue since it is an ongoing matter with State &/or Federal Law Enforcement Agencies. Other paragraphs in this complaint may also be listed to provide background or historical context for new causes of action for similar claims previously asserted.

bulk of the file and were crucial and essential to any investigation, prosecution, or other judicial proceeding.

95.   No State or Federal law provides a cloak of immunity that allows a States Attorney "discretion" to violate the constitutionally protected rights of the Tierneys, especially when the States Attorney has acknowledged that he has no discretionary jurisdiction over the matter.

96.   As a result of Olson's deposition of <u>February 2003</u>, both Bier and Barnard possessed new evidence of this criminal conduct of Schnack.

97.   Bier and Barnard, acting under of color of state law as the Adams County States' Attorney, again conspired:

    a.    to violate the constitutionally protected rights of the Plaintiffs,
    b.    to interfere with the Plaintiffs' rights and attempts to petition the government and the courts,
    c.    to further retaliate against the Plaintiffs for petitioning various State Actors for redress of grievances, for filing a lawsuit in federal and state courts, and for engaging in free speech on issues of public concern,
    d.    to obstruct the due course of justice and the judicial process,
    e.    to obstruct, hinder, and prevent the investigation and prosecution of Schnack's criminal offenses, by constituted authorities of the State of Illinois.
    f.    to obstruct, hinder, and prevent an investigation by constituted authorities of the State of the harassing phone calls directed toward the Tierney family by Schnack and the Olsons.
    g.    to obstruct, hinder, and prevent an investigation by constituted authorities of the State into the harassment and intimidation of the Plaintiffs in a Federal lawsuit.

98.   In furtherance of a conspiracy, Defendants Bier and Barnard unlawfully concealed this new evidence of the criminal conduct of Schnack, and failed to seek the appointment of a special prosecutor to investigate and prosecute these criminal offenses of Schnack, as required by 55 ILCS 5/3 *Counties Code State's Attorney.*

99.   Bier's misconduct, while acting in multiple capacities, gave rise to multiple conflicts of interests and misconduct in office by a public official.  Bier was a Defendant in a Federal Lawsuit (along with Schnack and Sheridan), a former Sheridan Board member, and the Adams County States' Attorney.

100.   This misconduct by Defendant Bier, acting under the color of state law, represents, at least, the abuse of public office by a public official in order to aid private parties in litigation, in which the Office of the Adams County States' Attorney has no interest or standing in view of Bier's self-acknowledged conflicts-of-interest.

101.    These actions of Bier and Barnard again establishes a symbiotic relationship between Sheridan/Sheridan Board and State Actors.

102.    Defendants Bier and Barnard engaged in willful and wanton misconduct as the Adams County States' Attorneys under color of state law on behalf of Schnack, and Sheridan Swim Club. Bier and Barnard engaged in renegade conduct far outside the legitimate course and scope of their employment duties.

103.    Bier and Barnard obstructed, hindered, and prevented criminal investigations and prosecution by engaging in acts that were clearly beyond their purview, discretion, and jurisdiction, and were in breach of 55 ILCS 5/3 *Counties Code State's Attorney*.

104.    In May 2003, and on subsequent occasions, Plaintiff Robert Tierney engaged in free speech on issues of public concern with an investigator with the Illinois Attorney General's Office, regarding the actions of Bier, Barnard, Schnack, and others.

105.    Bier, Barnard, and Schnack learned of this free speech and further conspired to retaliate against the Plaintiffs through the retaliatory actions of Sheridan Swim Club against the Tierney Family.

106.    In May and June of 2003, acting upon the instructions and encouragement of Schnack, Bier, and Barnard in furtherance of a conspiracy, the Sheridan Board denied without just cause or the due process provided for by Sheridan By-Laws and Constitution, all attempts by the Plaintiffs and others to obtain a Sheridan Youth membership for Case Tierney for the summer of 2003, unless the Plaintiffs agreed to drop all pending lawsuits and also agree not to pursue any other legal remedies over the new causes of action.

107.    In March 2004, with the assistance of Defendant Olson, Bier once again became a member of the Sheridan Swim Club Board of Directors, while Defendant Olson remained a board member in breach of Sheridan By-Laws and Constitution.

108.    Based on information and belief, at a Sheridan Board meeting on or about June 21, 2004, Bier and Olson concealed their conflicts of interest from some other Sheridan Board members, and once again urged the Sheridan Board to deny a Youth membership or any membership to the Tierneys unless the Plaintiffs agreed to drop all lawsuits, and also agree not to pursue any other legal remedies over the new causes of action.

109.    On or about June 21, 2004, the Sheridan Board once again denied without just cause or due process provided for by Sheridan By-Laws and Constitution, all attempts by the Plaintiffs and others to obtain a Sheridan Youth membership or any membership for the Tierneys.

110.    Defendants Sheridan/Sheridan Board, and Schnack, retaliated against the Plaintiffs for petitioning the Courts for redress of grievances, and for filing a lawsuit in State Court, violated the constitutionally protected rights of the Plaintiffs to petition the Courts for redress of grievances without interference.

111.    Defendants Schnack, Gorman, Bier, and Barnard conspired :

    a.    To intentionally destroy and/or withhold evidence,

    b.    To give false, misleading, and evasive testimony that was intended to obstruct the judicial process, and the due course of justice,

    c.    To fatally afflict the Plaintiff's attempt to petition the Courts for redress of grievances and for judicial intervention.

112.    No State or Federal law provides a cloak of immunity that allows these defendants "discretion" to violate the constitutionally protected rights of the Plaintiffs.

113.    Sheridan is liable for the actions of the individual Sheridan Board members, Olson, Meyers, and Bier (as of March 2004), the actions of its employees, and for the actions of CLUB members who acted in conspiracy with Board members.

114.    The actions of the Sheridan Board members were performed in their individual and official capacities and for their personal benefit, and were conducted intentionally, maliciously, and with willful and wanton disregard for the rights of the Tierneys.

115.    These actions by Sheridan and the Sheridan Board also constituted breach of an expressed duty of good faith and breach of fiduciary duty.

116.    These actions by Sheridan and the Sheridan Board also constituted violations of the constitutionally protected rights of the Plaintiff and have caused harm and damage to the Plaintiff and his family.

117.    Gorman acted in his individual and official capacity as the attorney for the QSD. Gorman's actions were conducted intentionally, maliciously, and with willful and wanton disregard for the rights of the Tierneys.

118.    These actions by Gorman also constituted violations of the constitutionally protected rights of the Plaintiff and have caused harm and damage to the Plaintiffs.

## VI.    FEDERAL CLAIMS

119.    Plaintiffs repeat and re-allege the allegations of paragraphs *1-118* for all Federal Claims asserted herein. These causes of action occurred on June 24, 2002, and thereafter.

### 1.    Statutes and Constitutional Provisions Involved

120.    At all times material, there was in full force and effect in the United States of America, a certain statute known as the Civil Rights Act of 1871, 42 U.S.C. § 1983 which provides:

**Section 1983**

> Every person who under color of any statute, ordinance, regulation, custom or usage of any State or Territory or the District of Columbia subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other property proceeding for redress....

121.    At all times material there was in full force and effect in the United States of America, certain provisions of the Constitution of the United States, namely the First and Fourteenth Amendments which provides:

**A.    Article IV**
§2.            Privileges and Immunities
Section 2.    The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States.
**B.    Amendment [I]**
Congress shall make no law.... Abridging freedom of speech, or of the press, or of the right of people to peaceably assemble, and to petition their government for redress of grievances.
**C.    Amendment [XIV]**
Section 1.      ... nor shall any State deprive any person of life, liberty, or property without due process of law;

## 2.    Claims under 42 U.S.C. 1983

122.    All Defendants:      Plaintiffs repeat and re-allege the allegations referred to in paragraph 119 for the Federal Claims asserted herein.

a.    The Complaint also states claims under 42 U.S.C. § 1983 for causes of action which occurred after the Tierneys filed a lawsuits in Federal and State Courts through the conduct alleged in ¶¶ 41-118.

b.    Defendants are liable to the Plaintiffs for the retaliation against the Plaintiffs by Sheridan Board members, officials, and members who acted in collusion with and/or at the direction of Sheridan Board members and/or policy-making agents of the

Sheridan Board, and/or in collusion with other Defendants who were acting while under color of State law.

## Count I   Right of Access to the Courts without Interference or Retaliation

123.   Plaintiffs repeat and re-allege the allegations referred to in paragraph 119 for the Federal Claims asserted herein.  Defendants intentionally deprived and interfered with the Plaintiffs' right of access to the courts.

   a.  One source of the right the right of access to the courts is found in the privilege and immunities of citizenship guaranteed by Article IV, Section 2 of the Constitution.

   b.  A second source of the right of access to the courts is the procedural and substantive components of the guaranty of due process of law of the Fourteenth Amendment to be free from intentional retaliation by state actors as alleged in response to the Plaintiffs' filing of the action in Federal and State Courts (Case No. 99-3149 and 02-L-12) against the Defendants in these Complaints, and per the actions and free speech of the Plaintiffs as alleged in ¶¶ 93-118; proximately damaging each individual Plaintiff in an amount to be specifically determined at trial per ¶¶ 133-139.

## Count II   Right to Freedom of Speech and to Petition the Government for Redress of Grievances without Interference or Retaliation

124.   Plaintiffs repeat and re-allege the allegations referred to in paragraph 119 for the Federal Claims asserted herein.

   a.  Defendants intentionally deprived Plaintiffs of their rights to Freedom of speech guaranteed them as part of the First Amendment to be protected from retaliation by state actors by the acts of conspiracy and retaliation, for engaging in free speech on issues of public concern with several State Agencies including the Illinois Attorney General's Office, after filing lawsuits in Federal and State Courts, and for Plaintiffs petitioning the Government for redress of grievances as alleged in ¶¶ 96-118 ; proximately damaging each individual Plaintiff in an amount to be specifically determined at trial per ¶¶ 133-139.

## Count III   Right of Association without Retaliation

125.   Plaintiffs repeat and re-allege the allegations referred to in paragraph 119 for the Federal Claims asserted herein.

   a. Defendants intentionally deprived plaintiffs Robert Tierney, Ann Tierney and Case Tierney of their right of association with each other, by acts of conspiracy and retaliation for the speech of Robert Tierney on issues of public concern with several State Agencies as alleged in ¶¶ 98-118, after filing a lawsuit in Federal and State Court, and for their petitioning the Government for redress of grievances; proximately damaging each individual Plaintiff in an amount to be specifically determined at trial per ¶¶ 130-136.

**Count IV**      **Right to Procedural Due Process**

126.    Plaintiffs repeat and re-allege the allegations referred to in paragraph 119 for the Federal Claims asserted herein.

  a.  The Complaint also states a claim under the Fourteenth Amendment's due process clause.
  b.  Defendants intentionally deprived Plaintiffs of their rights to due process in protection of their property and liberty interests, per their [Defendants] actions, in retaliation for the Tierneys engaging in free speech on issues of public concern with several State Agencies as alleged in ¶¶ 98-118, for filing a lawsuit in Federal and State Courts, and for Plaintiffs petitioning the Government for redress of grievances; proximately damaging each individual Plaintiff in an amount to be specifically determined at trial per ¶¶ 133-139.

**Count V**      **Ratification by Sheridan/Sheridan Board of Wrongful Conduct and Actions of Sheridan Board Members, Bier and Olson, Club Member Schnack, and others.**

127.    Defendants Sheridan and Sheridan Board. Plaintiffs repeat and re-allege the allegations referred to in paragraph 119 for the Federal Claims asserted herein. The Complaint also states a claim of Ratification for causes of action, which occurred on and after June 24, 2002. Sheridan and the Sheridan Board has engaged in acts and omissions, and implemented policies and practices that are inconsistent with non-affirmation of the misconduct of the above named defendants and individuals, and the wrongful actions and policy of the Sheridan Board. By these actions, Sheridan accepted responsibility for, and affirmed the acts of misconduct directed against the Tierneys by Schnack, Bier, Olsons, and others, which were performed on behalf of Sheridan and/or at the request, or direction of Sheridan Board member(s). These acts include but are not limited to the following:

  a.  Surrendering Corporate documents to the care and custody of Bier.
  b.  Denying a Sheridan Youth Membership to the Tierneys for the summer of 2003 at the urging of Schnack, Bier, and Barnard in order to retaliate, coerce, and intimidate the Plaintiffs to surrender claims and due process rights against Bier, Barnard, Schnack and others.
  c.  Selecting Bier as a Sheridan Board member in March 2004.
  d.  Allowing Olson to remain a Sheridan Board member after March 2004, in breech of Sheridan By-Laws and Constitution.
  e.  Allowing Bier and Olson to vote on matters pertaining to the Plaintiffs despite Bier and Olson's irreconcilable conflicts of interest.
  f.  Denying a Sheridan Youth Membership to the Tierneys for the summer of 2004 at the urging of Bier and Olson in order to retaliate, coerce, and intimidate the Plaintiffs to surrender claims and due process rights against Bier, Barnard, Schnack, and others.

constitutes ratification by Sheridan Swim Club Board of the misconduct and actions of the Sheridan Defendants; proximately damaging Plaintiff in an amount to be specifically determined at trial per ¶¶ 133-139.

## 3.   Claims Under 42 U.S.C. § 1985(2 & 3)

## Count VI

128.   Defendants conspired to intentionally deprive the Plaintiffs of their rights to access the courts and to petition the Government for redress of grievances: Plaintiff repeats and realleges the allegations referred to in paragraph 115.

  a. A third source of the right of access of the courts asserted in the complaint is the statutory right of protection from retaliation extended to plaintiffs and witnesses in federal civil rights suits of 42 U.S.C. § 1985 (2).
  b. The complaint also states a claim for causes of action, which occurred after filing a lawsuit in Federal & State Court for civil rights conspiracy actionable under 42 U.S.C. §1985 (2).
  c. Private conspirators are directly liable under § 1985(2) for attempts to harass or interfere with parties or witnesses in litigation without the requirements of state action or class-based animus.
  d. However, in the alternative, Defendants, Bier, Barnard, Gorman, and the Quincy School District are clearly State Actors, acting under color of state law in conspiracy and joint action with Schnack and Sheridan, thus making State Actors of Schnack, Sheridan, and the Sheridan Board.
  e. Schnack, Gorman, and Barnard conspired to withhold and/or destroy evidence and give false, misleading, and evasive testimony that was intended to and to obstruct the due course of justice and the judicial process, interfered with access to witnesses, conspired to intentionally deprived the Plaintiffs of the right of access to the courts and to petition the Government for redress of grievances after the filing of a law suit through the conduct alleged in ¶¶'s 41-82.
  f. Bier, Barnard, and Schnack obstructed, hindered, and impeded an investigation by constituted authorities of the State of the harassing phone calls directed toward the Tierney family by Schnack.
  g. Bier, Barnard, and Schnack obstructed, hindered, and impeded an investigation by constituted authorities of the State into the harassment and intimidation of the Plaintiffs in a Federal lawsuit through the conduct alleged in ¶¶'s 83-89, and 96-114.
  h. Gorman and the QSD obstructed the Plaintiffs access to evidence and witnesses during hearings and discovery in the State Court proceedings.
  i. Barnard and Gorman obstructed and denied the Plaintiffs access to witnesses during the discovery process.

Sheridan is liable to the Plaintiffs for the conspiracy and actions of its Board members, officials, and members who acted in collusion with and/or at the direction of Sheridan Board members, and/or policy-making agents of the Sheridan Board, and/or in collusion with others who were

acting while under color of State law; proximately damaging each individual Plaintiff in an amount to be specifically determined at trial per ¶¶ 133-139.

**A.**    **42 U.S.C. §1985. Conspiracy to Interfere with Civil Rights.**

**(2) Obstructing justice; intimidating party, witness, or juror.**

> If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified,....... or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;

## Count VII

129.    Defendants conspired to intentionally deprive the Plaintiffs of their constitutionally protected rights and privileges:  Plaintiff repeats and realleges the allegations referred to in paragraph 115 for the Federal Claims asserted herein.

a.  The complaint also states a claim for causes of action, which occurred after filing lawsuits in Federal and State Court for a civil rights conspiracy actionable under 42 U.S.C. §1985 (3).

b.  Conspirators are directly liable under § 1985(3) for conspiring for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws.

c.  The Defendants, acting under of color of state law, conspired together to retaliate against and interfere with the Plaintiff's rights and attempts to petition the government and the courts as alleged in ¶¶'s 41-89, and 96 -118. Schnack, Gorman, and Barnard conspired to withhold and/or destroy evidence and give false, misleading, and evasive testimony that was intended to and to obstruct the due course of justice and the judicial process.

d.  The Defendants interfered with and/or prevented the Plaintiff from petitioning the State for redress of grievances.

e.  Defendants obstructed, hindered, and impeded an investigation by constituted authorities of the State regarding the criminal acts of Schnack as alleged in ¶¶'s 64-89, and 96-118: proximately damaging Plaintiff in an amount to be specifically determined at trial per ¶¶ 133-139.

f. Defendant Bier and Barnard obstructed and impeded constituted authorities of the State, from carrying out their duties in a lawful manner as required by the provisions of a Court Order and ILCS.

Plaintiff repeats and realleges the allegations referred to in paragraph 119 and ¶¶'s 73- 89, and 96-118, for the Federal Claims asserted herein: proximately damaging Plaintiff in an amount to be specifically determined at trial per ¶¶ 133-139.

**B.    42 U.S.C. §1985. Conspiracy to Interfere with Civil Rights.**

**(3) Depriving persons of rights or privileges**

If two or more persons in any State or Territory conspire......, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws;.... in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

## VII.    STATE CLAIMS

## COUNT I

130.    The Acts and Omissions of the Defendants constitutes *Civil Conspiracy* between one or more Sheridan Board members, Barney Bier, Jon Barnard, Andrew Schnack, and Dennis Gorman. Plaintiffs repeat and re-allege the allegations of ¶¶'s 1-12, 41-89, and 96-118.   For damages and relief sought, the Plaintiffs repeat and re-alleges the allegations of paragraphs 133-139.

## COUNT II

131.    The Acts and Omissions of the Defendants were willful and wanton, and constitutes *Intentional Infliction of Emotional Distress*. Plaintiffs repeat and re-allege the allegations of ¶¶'s 1-12, 41-89, and 96-118 For damages and relief sought, the Plaintiffs repeat the and re-allege the allegations of paragraphs 133-139.

## COUNT III

132.    The Acts and Omissions of Defendants Sheridan, Bier and Barnard constitutes *Intentional Spoliation of Evidence*. Plaintiffs repeat and re-allege the allegations of ¶¶'s 1-12, 41-73 and 96-118. For damages and relief sought, the Plaintiffs repeat and re-allege the allegations of paragraphs 133-139.

## VIII    DAMAGES AND RELIEF SOUGHT

133.    Sheridan's retaliatory and wrongful expulsion of the Tierneys was wrenching to the entire family. Sheridan was a significant source of family recreational and social contact for the Plaintiffs, which is lost as a result of the termination and banishment from Sheridan property. In particular, the recreational lives of the Tierney children revolved around the Sheridan Swim club, as it was the center of their spring and summer neighborhood activities. Plaintiffs' residence is adjacent to Club property and directly behind the swimming pools.

134.    As a consequence of one or more of the foregoing wrongful acts and omissions of Defendants, Plaintiffs are now forced to observe Club members enjoying club benefits and facilities that Plaintiffs paid for and utilized since 1986. Plaintiff's youngest child, Case Tierney, was an 8-year-old child who has enjoyed the use of the Sheridan pools, pond, and expansive grounds as the primary source of his summer activities since birth. The recreational lives of the Tierney children revolved around the Sheridan Swim club, as it was the center of their spring and summer neighborhood activities. Plaintiffs' residence is adjacent to Club property and directly behind the swimming pools. As a result of Defendants' intentionally wrongful and malicious conduct, Case Tierney, who is almost 13 years old, has been forced to watch from his backyard for the past 5 summers, as his neighborhood friends play in and enjoy the Sheridan pools and grounds. During the summer months, hardly a day goes by without Case asking when he can go to Sheridan. As a young boy, he has little comprehension of the adult world and his parents are unable to explain, nor would ever attempt to explain to him, the unlawful conduct and vindictiveness of Sheridan and public officials. These conditions impose irreparable hardship on the Plaintiffs as well as incalculable mental and emotional distress and harm to a totally innocent party to this litigation, who is currently suffering through his sixth summer of distress. These painful memories can never be erased; proximately damaging each individual Plaintiff in an amount to be specifically determined at trial.

135. As a consequence of one or more of the foregoing wrongful acts and omissions of Defendants, the Tierneys have been denied a Sheridan Youth Membership without just cause or due process. Case Tierney has been held *hostage* by the Defendants unless he and his family surrender their constitutional rights to petition the Courts and the Government for redress of grievances and seek prosecution for criminal offenses committed against them. The Tierneys have been stigmatized by the wrongful acts of Sheridan, its Board and public officials as the only family ever to be denied a membership, and are the focus of suspicions of wrongdoing. The ostracism from his friends and the loss of a joyful, recreational, summer social life has inflicted severe emotional distress upon Case Tierney and his family.

136. As a consequence of one or more of the foregoing wrongful acts and omissions of Defendants, the Tierneys have been stigmatized by the wrongful actions of Sheridan, its Board, and public officials. As the only family ever to have been expelled from Sheridan and denied membership even for a child, the Tierneys are the focus of suspicions of wrongdoing. Ann Tierney was born and raised in Quincy and is well aware of how rumors circulate in the community. The ostracism from their family recreational and social life, and the stigma of expulsion, has cast a pall over the entire household.

137. As a consequence of one or more of the foregoing wrongful acts and omissions of Defendants, the Tierneys have been subjected to obscene, harassing, and retaliatory phone calls. During a criminal investigation, these phone calls were ultimately tracked to Sheridan officials, members, and a school district employee. Thus, the Plaintiffs have suffered on-going public humiliation, embarrassment, retaliation, harassment, and intimidation, due to the implication of some kind of wrongdoing on their part for which they have not had an opportunity to respond, and have otherwise lost the benefits and incidents of their membership in Sheridan together with the monetary value of their purchase of a membership certificate, and have been wrongfully banned from Sheridan property, "for any function whatsoever", including activities otherwise open to the public at large; proximately damaging each individual Plaintiff in an amount to be specifically determined at trial.

138. As a consequence of one of more of the foregoing acts and omissions of Defendants, Sheridan, Sheridan Board, and in concurrence with the symbiotic relationship, nexus and joint actions of the Quincy School District, plaintiff Ann Tierney, has suffered irreparable damage to her professional and personal reputation, personal and professional embarrassment, public

28

humiliation, extreme emotional distress, loss of Sheridan privileges with her children; proximately damaging each individual Plaintiff in an amount to be specifically determined at trial.

139.    As a consequence of one of more of the foregoing acts and omissions of Defendants, Sheridan, Sheridan Board, plaintiff Bob Tierney has suffered retaliation and harassment, damage to reputation, emotional distress, and loss of Sheridan privileges with his children; proximately damaging each individual Plaintiff in an amount to be specifically determined at trial.

WHEREFORE, the Plaintiffs seek relief in the form of:

1. A judgment against Sheridan and the individual defendants for their retaliation, harassment, and violation of the constitutionally protected rights of the Plaintiffs.

2. A Judgment ordering Sheridan to allow the Plaintiffs or anyone acting on their behalf, to obtain a Sheridan membership and Sheridan Stock Certificate on behalf of any Plaintiff.

3. Money damages for each individual plaintiff and jointly and severally against Defendants SHERIDAN SWIM CLUB, INC., ANDREW C. SCHNACK III, BARNEY BIER, DOUG OLSON, ROBERT MEYER, ROBERT HULTS, JON BARNARD, and DENNIS GORMAN, for damages in excess of $200,000, for each individual plaintiff, for punitive damages for each individual plaintiff in such amounts as a jury may determine in order to punish and deter Defendants from future abusive, unlawful conduct, for Plaintiffs' court costs and attorney's fees, per 105 ILCS 10/9 © et seq, and as the prevailing party in an action to vindicate civil rights under 42 U.S.C. §1988, and for such other relief as this court deems just and equitable.

## PLAINTIFFS DEMAND A TRIAL BY JURY

J. Robert Tierney, Pro Se                              Ann S. Tierney, Pro Se

Case M. Tierney, Pro Se    *Case Tierney (JRT)*

By and Through his Next

Best Friend, Robert Tierney

Robert Tierney, Ann Tierney, and Case Tierney

2517 Summer Creek

Quincy, IL 62305

217-223-4849

LAW OFFICES

SCHNACK, SCHNACK & CASHMAN

ANDREW C. SCHNACK III
KENT R. SCHNACK
J. DEVIN CASHMAN

510 VERMONT STREET

QUINCY, ILLINOIS

62301-2902

TELEPHONE 217-224-4000
FAX 224-8565

March 5, 1999

Mr. Dennis Gorman
Schmiedeskamp, Robertson, Neu & Mitchell
525 Jersey
Quincy IL 62301

Dear Dennis:

As a close personal friend and attorney for Rick Powers, coach of the boys and girls swimming team at Quincy High School, it has come to my attention that accusations are being made about improper contact with girl swimmers last fall. I have talked personally to Rick about this and he categorically denies it. I have also talked with Judge Chet and Barb Vahle concerning the alleged incident. The fact of the matter is that prior to the Western Big Six conference meet, a get together was held at the Vahle home. Chet and Barb Vahle were present, their family was present and in-laws were present. In addition, other parents of members of the girls' swim team were present. The suggestion was made that the girls receive rub downs to loosen up for the meet. This is done on a regular basis at every big meet I have ever attended and is common practice in swimming. At the suggestion of the Vahles, the team went downstairs and anyone who wanted a massage or rub down was given one. It was voluntary, it was totally in keeping with good swimming coaching practices and absolutely nothing was wrong with this. Apparently this is being used now to somehow attack Rick. As Rick's attorney, I have advised him that if these statements are being made, they could form the basis for a lawsuit. Rick has authorized me to request from you any documentation or complaints in writing that you or the schoolboard has concerning this matter so that we can be properly informed and properly respond to it. Obviously, if this is untrue, I apologize for taking your time. If it is true, we consider it exceptionally serious and would like to get to the bottom of it.

Sincerely yours,

Andrew C. Schnack, III

ACSIIIpkj

Exhibit A-1

LAW OFFICES

**SCHNACK, SCHNACK & CASHMAN**

ANDREW C. SCHNACK III
KENT R. SCHNACK
J. DEVIN CASHMAN

510 VERMONT STREET
QUINCY, ILLINOIS
62301-2902

TELEPHONE 217-224-4000
FAX 224-5565

March 29, 1999

*file*

Mr. Dennis Gorman
Attorney at Law
525 Jersey Street
Quincy, IL 62301

Dear Dennis:

I just thought you would like to know that as of Thursday, March 25, 1999, Meryl Tierney is now swimming with Sheridan Swim Team under Coach Rick Powers.   I don't know what affect this would have on his previous complaints but would dearly love to get Rick's contract signed and get the contract signed between the school district and Sheridan.   I have a couple of thoughts on that that I think would be advantageous to the school district, especially if we can get this done on a long term basis.

If you get a chance, give me a call.

Sincerely yours,

SCHNACK, SCHNACK & CASHMAN

By:  Andrew C. Schnack, III

ACSIIIpjb

**IN THE CIRCUIT COURT OF THE EIGHTH JUDICIAL CIRCUIT**
**ADAMS COUNTY, ILLINOIS**

FILED

OCT 1 8 2002

*Glen T. Schultz*
Clerk Circuit Court 8th Judicial Circuit
ILLINOIS, ADAMS CO.

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) No. 02 -MR- 98 |
| | ) | |
| ANDREW C. SCHNACK, III, | ) | |
| | ) | |
| Defendant. | ) | |

### MOTION FOR APPOINTMENT OF SPECIAL PROSECUTOR

Now comes Barney S. Bier, Adams County State's Attorney and moves this Court pursuant to 55 ILCS 5/3-9008 that the Court appoint a Special Prosecutor in the above matter and in support thereof states as follows:

1. I am State's Attorney for Adams County and have been so employed since June of 1995.

2. I am currently a defendant in a lawsuit now pending in Adams County in cause number 02-L-12 captioned J. Robert Tierney, et al vs. Sheridan Swim Club, et al.

3. Andrew C. Schnack, III, is also a defendant in that lawsuit.

4. In June of 2002 during the trial of a preliminary injunction filed by Robert Tierney, Andrew C. Schnack testified under oath before the Court in regard to issues involved in the lawsuit.

4. I anticipate that allegations may be made that his testimony was false.

5. Because your movant and Andrew C. Schnack, III, are co-defendants in the same lawsuit I believe I have a conflict of interest.

WHEREFORE, your movant, Barney S. Bier request that this Court enter an Order appointing a Special Prosecutor.

DATED: October **18**, 2002

Barney S. Bier

B-1

ADAMS CO COURT

PAGE 01/01

**IN THE CIRCUIT COURT OF THE EIGHTH JUDICIAL CIRCUIT**
**ADAMS COUNTY, ILLINOIS**

PEOPLE OF THE STATE OF ILLINOIS,  )
                                  )
              Plaintiff,           )
                                  )
       v.                         )  No. 02 - MR - 98
                                  )
ANDREW C. SCHNACK, III,           )
                                  )
              Defendant.          )

### ORDER FOR APPOINTMENT OF SPECIAL PROSECUTOR

This cause comes on for hearing on the motion of the state's attorney for the appointment of a special prosecutor, and the court have examined the motion, and being fully advised in the premises, FINDS pursuant to the provisions of 55 ILCS 5/3-9008 that the interests of justice require the appointment of a special prosecutor. The court further finds that the subject matter of this case involves the offense of ___PERJURY___

IT IS THEREFORE ORDERED

A. The Office of the State's Attorney Appellate Prosecutor is hereby appointed special prosecutor in this case. The Director of the Office shall designate an attorney or attorneys employed by the agency to serve as special prosecutor. Such attorney(s) shall file an oath of office with the clerk of this court upon designation by the Director.

B. The special prosecutor shall serve at the pleasure of the Illinois Attorney General, who may substitute his office as special prosecutor herein as provided by law.

C. The Office of the State's Attorney's Appellate Prosecutor shall forward a copy of this order to the Springfield office of the Attorney General within 5 days of receipt of this order.

Dated: _October 18th, 02_          Enter: _David V Slocum_
                                          JUDGE

IN THE CIRCUIT COURT OF THE EIGHT JUDICIAL CIRCUIT
ADAMS COUNTY, ILLINOIS

J. Robert Tierney, et all                      )
                                               )
            Plaintiffs,                        )        No. 02-L-12
                                               )
      v.                                       )
                                               )
Sheridan Swim Club, Barney Bier, et al,        )
                                               )
            Defendants,                        )
                                               )

## MOTION TO COMPEL RELEASE OF CASE RECORDS

Now comes Plaintiff Robert Tierney, and moves this Court pursuant to 735 ILCS 5/2-1401 and Freedom of Information Act, 5 ILCS 140/11 to order the above named Defendants to release all records pertaining to Case 2002-MR-98 (Motion For Appointment Of Special Prosecutor) and in support thereof states as follows:

1. That on or about October 18, 2002, Adams County State's Attorney Barney Bier allegedly filed this Motion.

2. This Motion requests the appointment of a special prosecutor to investigate the alleged perjury of attorney, Andrew Schnack, which occurred during hearings pursuant to 8th Circuit Court Case 2002-L-12.

3. That both Andrew Schnack and Barney Bier were defendants in that case.

4. Plaintiff Robert Tierney, is a named party (Plaintiff) in that lawsuit.

5. That on or about November 4, 2004, Plaintiff Robert Tierney appeared before Adams County Circuit Clerk, Glenn Hultz, and attempted to gain access to the case file.

6. That Glenn Hultz informed Mr. Tierney that on orders from Adams County State's Attorney Barney Bier's secretary "Cheryl", the case record was "impounded". (See Exhibit 1)

7. Mr. Hultz further stated that case 2002-MR-98 was coded as an "eavesdropping" case in order to conceal the existence of the case from public knowledge and access via an Internet search of public court records.

8. Mr. Hultz stated that the case was assigned to Judge Slocum.

WHEREFORE, Plaintiff Robert Tierney request that this Court schedule a hearing and/or enter an order compelling the immediate release of all documents in this case.

Dated November 4, 2004

                                        _Robert Tierney_

                                        Robert Tierney
                                        Plaintiff, Pro Se

Exhibit B-3

# CLERK OF THE CIRCUIT COURT
### EIGHTH JUDICIAL CIRCUIT, ADAMS COUNTY
### 521 VERMONT STREET
### QUINCY, ILLINOIS 62301

**GLEN F. HULTZ**
CLERK

PHONE: (217) 277-2000
FAX:    (217) 277-2116

November 4, 2004

Due to our file being impounded and the unavailability of the Judge involved, Mr. Tierney was denied access to case number 02-MR-98.

*Lori Geschwandner*

Lori Geschwandner
Adams County Circuit Clerk's Office

Exhibit B-4

Copy 1
Exhibit B-4

CIRCUIT COURT
EIGHTH JUDICIAL CIRCUIT
STATE OF ILLINOIS



CHAMBERS OF
THOMAS L. BROWNFIELD
CHIEF CIRCUIT JUDGE

ADAMS COUNTY COURTHOUSE
QUINCY, ILLINOIS 62301
(217) 277-2055
FAX (217) 277-2072
OR
MASON COUNTY COURTHOUSE
HAVANA, ILLINOIS 62644
(309) 543-3634
FAX (309) 543-4214

November 5, 2004



Mr. Glen Hultz
Circuit Clerk
Adams County Courthouse
Quincy, IL 62301

RE: Case No. 02-MR-98

Dear Glen:

Robert Tierney appeared in my office today with a copy of a motion to compel release of case records in hand, wishing to discuss such with me immediately.

I informed Mr. Tierney that I did not have the time to do so, would review the pleading and the file, and proceed accordingly.

In reviewing the file and discussing such with Judges Slocum and Schuering, I am unable to determine why the file would be impounded by your office. Possibly there is something I am not aware of, but I note that the "Order" which appointed a special prosecutor did not directed impoundment of the file, and I am not aware of any statute which would, therefore, allow such.

As a result, I see no reason why Mr. Tierney could not have access to the file and a copy of the pleadings. If you are aware of a reason for such, please let me know.

Sincerely,

THOMAS L. BROWNFIELD
Chief Judge

TLB/mw

Exhibit 16-5

10/21/02   PAGE      1

2002MR000098P 001
PEOPLE
VS
SCHNACK, ANDREW C III
------------------------------------------------------------------------------
 ENTERED   JDG CR  TEXT
                                                                CHANGED   USER
------------------------------------------------------------------------------
10/18/2002          Motion for Appointment of Special Prosecutor filed.    10/21/2002   LRG

Exhibit _B-6_

# UNIVERSITY OF ILLINOIS
## AT URBANA - CHAMPAIGN



Department of Kinesiology

Louise Freer Hall
906 South Goodwin Avenue
Urbana, IL. 61602

Athletic Training Education Programs
209 Freer Hall
(217) 333-7699
gwbell@uiuc.edu

May 5, 2003

Richard L. Steagall: JD
Nicoara & Steagall: Attorneys at Law
Commerce Bank Building
416 Main Street, Suite 815
Peoria, IL 61602-1103

Dear Mr. Steagall:                    RE: Tierney vs. Powers et al., Case 99-3149

Based on the materials you have provided, the excerpts of the transcripts, the activities that occurred for the Quincy High School swim team were totally inappropriate and absent of any therapeutic or pre-competition benefit. This response is based on the lack of appropriate support of the swimmer to maximize the relaxation benefits of the massage and the timing of the evening prior to competition rather than the day of competition and after a selected warm-up based on "priming the muscle" for the greatest benefit of therapeutic massage.

Please note the enclosed article written while I served as Secretary for the US Swimming Sports Medicine Society. My term was 1992-1996 and I served on the athletic trainers' trip list selection committee from 1984-1992.

Should I be able to provide additional information please contact me.

I remain,

Sincerely,

*Gerald W. Bell*

**Exhibit C-1**

Gerald W. Bell: EdD, ATC/L, PT, ACI, CIE, CIPNF
Coordinator Athletic Training Education

Gwb

Enclosure "Aquatic Sports Massage Therapy"

# ILLINOIS STATE POLICE
## INVESTIGATIVE REPORT

| File #: | Reporting/Incident Date(s): | Reporting Agent(s): | ID#: | | Dictated/LEAD #: |
|---|---|---|---|---|---|
| 00-1-0414 | 01/11/00 | S/A Jeff Jacobs #4622 | | | |

| Title: | Case Agent: ID# | Office: | Typed by: | Date: |
|---|---|---|---|---|
| RICHARD POWERS | Jacobs #4622 | D-20 | crm | 01/13/00 |

Purpose:

To document the phone conversation with DON CARLSON.

The purpose of this investigative report serves to document the phone conversation with DON CARLSON, girls swim coach at Naperville Central High School located in Naperville, Illinois. CARLSON advised that he has been coaching swimming for approximately eighteen years. His phone number is 630-420-6460.

On 01/11/00, I (S/A Jeff Jacobs #4622) contacted CARLSON. I asked CARLSON if he massaged the swimmers on his girls swim team. He advised that he does not massage the swimmers, but prior to sectional and state meets the boys swim coach, Mike Adams, would do rub downs ten to fifteen minutes before each event. This was voluntary on the part of the swimmers if they wanted it. He advised that it would be a quick rub down on a table on the swim deck. CARLSON added that rub downs were not practice during the regular season. When asked what the rub downs consisted of, he advised that the back, arms, shoulders, hamstrings, and calves would be the areas massaged.

I asked CARLSON what his thoughts were concerning the practice of massaging a swimmer eighteen hours prior to an event. He advised that he felt there was no physiological or therapeutic advantage to have the massage done that far in advance of the event.



Exhibit C-2

Dissemination:

This document contains neither recommendations nor conclusions of the Illinois State Police.
It and its contents are not to be disseminated outside your agency.

IL493-0117

ISP 4-3 (08/96)

# ILLINOIS STATE POLICE
## INVESTIGATIVE REPORT

| File #: | Reporting/Incident Date(s): | Reporting Agent(s): | ID#: | | Dictated/LEAD #: |
|---|---|---|---|---|---|
| 00-1-0414 | 01/11/00 | S/A Jeff Jacobs #4622 | | | |

| Title: | Case Agent: ID# | Office: | Typed by: | Date: |
|---|---|---|---|---|
| RICHARD POWERS | Jacobs #4622 | D-20 | crm | 01/12/00 |

**Purpose:**

To document the phone conversation with LARRY BAILY.

The purpose of this investigative report serves to document the phone conversation with LARRY BAILY. BAILY is the girls swim coach at Springfield Sacred Heart Griffin High School located in Springfield, Illinois. BAILY'S phone number is 217-789-2500 extension 4282.

On 01/11/00, I (S/A Jeff Jacobs #4622) contacted BAILY by telephone. BAILY advised me that he has been the girls swim coach for approximately four years. When asked if he massaged any of his swimmers during the swim season, he advised no. He advised that he has seen before the state meet some of the swimmers massage before and after being in and out of the water. BAILY advised that he does not know personally any coach that massages swimmers but has had heard of that practice. BAILY was asked what he thought of a swimmer being massaged eighteen hours before a meet. BAILY advised he thought that that practice would be inappropriate.

Exhibit  C-3

Dissemination:

This document contains neither recommendations nor conclusions of the Illinois State Police.
It and its contents are not to be disseminated outside your agency.

IL493-0117

ISP 4-3 (08/96)

Adams County, IL Case Search History



# Adams County, IL

Home | Cases  | Premium Services
Search | FAQ/Help

| Case | | Name | | Charge Text | | Search | ☐ Exact Match |

**2002L12 SHERIDAN SWIM CLUB**   Last Search | Information | Dispositions | History | Payments | Fines & Fees

| Date | Entry | | Judge |
|---|---|---|---|
| | Entry | | Judge |

Entered Under: SHERIDAN SWIM CLUB

| Date | Entry | Judge |
|---|---|---|
| 02/01/2002 | **Complaint filed on 02/01/2002 w/jury demand. All summons | |
| 02/01/2002 | issued to ACSD for service. $125.00 | |
| 02/06/2002 | Notice of filing corrected page of complaiant filed by | |
| 02/06/2002 | Robert Tierney. | |
| 02/13/2002 | Pltf.'s motion for leave of court to file Pltf.'s 1st amended | |
| 02/13/2002 | complant filed by Robert Tierney. | |
| 02/15/2002 | Motion calendar filed. | |
| 02/20/2002 | Summons served on Julie Anderson. 2/6/02 $ 16.00 | |
| 02/20/2002 | Summons served on Roderick Miller. 2/6/02 $ 16.00 | |
| 02/20/2002 | Summons served on Dave Daniels. 2/6/02 $ 16.00 | |
| 02/20/2002 | Summons served on Lisa Bearden. 2/7/02 $ 16.00 | |
| 02/20/2002 | Summons served on Robert Meyer. 2/7/02 $ 16.00 | |
| 02/20/2002 | Summons served on Patricia Crane. 2/6/02 $ 16.00 | |
| 02/20/2002 | Summons served on Barney Bier. 2/1/02 $ 16.00 | |
| 02/20/2002 | Summons served on Andrew Schnack. 2/4/02 $ 16.00 | |
| 02/22/2002 | Entry of appearance for Sheridan, Schnack, Anderson, Bier, | |
| 02/22/2002 | Bearden, Miller, Daniels & Crane filed by Jon Barnard. (JHB) $50.00 | |
| 02/25/2002 | Leave granted to all Pltf's. to file amended complaint by 3/4/02. | DKC |
| 02/25/2002 | Def's. to reply on or before 4/1/02. The undersigned hereby | DKC |
| 02/25/2002 | recuses himself & matter is referred to Chief Judg for reassignment | DKC |
| 02/25/2002 | to a judge outside 8th judicial. | DKC |
| 03/01/2002 | 1st amended complaint filed by Ptlf. R Tierney. | |
| 03/08/2002 | Motion for preliminary injunction filed by Pltf. | |
| 03/08/2002 | Motion for partial SJ filed by Pltf. | |
| 03/15/2002 | Motion to set for hearing filed by Pltf. | |
| 03/15/2002 | Notice of supplemental filing filed by Pltf. | |
| 03/26/2002 | It is ordered: Honorable Joe R Vespa to hear this case. | |
| 03/27/2002 | It is ordered: Honorable Joe R Vespa to hear this case. | |
| 04/01/2002 | Motion to dismiss filed by JHB. | |
| 04/05/2002 | Motion to set hearing filed by Pltf. | |
| 04/05/2002 | Motion to set for hearing filed by Pltf. | |
| 04/29/2002 | Pltf's. motion for leave to file 2nd amended complaint filed by | |
| 04/29/2002 | Pltf. | |
| 04/29/2002 | 2nd amended complaint filed by Pltf. | |
| 04/29/2002 | Motion for a TRO & order to show cause filed by Pltf. | |
| 04/29/2002 | Motion for partial SJ filed by Pltf. | |

Exhibit 

| | | |
|---|---|---|
| 03/06/2003 | Order filed. Over Pltff's objection, Def's are granted leave to file | JRV |
| 03/06/2003 | supplement to their Motion to Dismiss regarding the Statute of | JRV |
| 03/06/2003 | Limitations on or before 3/6/03. Pltff shall file a reply to the | JRV |
| 03/06/2003 | supplement by 3/20/03. Supplemental Oral Arguments on the Motion | JRV |
| 03/06/2003 | to Dismiss shall be heard on 3/27/03 @ 1:15pm via telephone conf call. | JRV |
| 03/06/2003 | All discovery on substantive issues, discovery regarding pending | JRV |
| 03/06/2003 | Motions for Sanctions and pending Motions regarding School District | JRV |
| 03/06/2003 | 172 are hereby stayed. The pareties are directed to send a courtesy | JRV |
| 03/06/2003 | copy of supplement to the Motion to Dismiaa and the reply to Judge | JRV |
| 03/06/2003 | Vespa in Peoria. | JRV |
| 03/06/2003 | Memorandum in Support of Supplement to Motion to Dismiss filed JHB. | |
| 03/06/2003 | Supplement to Motion to Dismiss filed by JHB. | |
| 03/20/2003 | Pltff's response to Def's supplement to motions to dismiss Pltff's | |
| 03/20/2003 | second & third amended complaints filed by JT. | |
| 03/24/2003 | Notice of hearing filed. Cause set for 3/37/03 @ 1:15pm. | |
| 03/25/2003 | Motion to strike filed by JT. | |
| 03/27/2003 | Exhibit Pltff 1-A-1 filed. (Affidavit W Anderson) | JRV |
| 03/27/2003 | Exhibit Def 1-A-1 filed. (folder A-E Olson phone call investigation) | JRV |
| →04/16/2003 | Order filed. Pltff's Motion to strike, as well as the Request to | JRV |
| →04/16/2003 | Present Testimony in Support is hereby denied. The Court hereby grants | JRV |
| →04/16/2003 | the Motion to Dismiss all Counts of the Third Amended Complaint of | JRV |
| →04/16/2003 | Pltff's, pursuant to section 2-615 & 2-619 of Ill Code of Civil | JRV |
| →04/16/2003 | procedure are dismissed w/prejudice at Pltff's costs. It is further | JRV |
| →04/16/2003 | ordered all other Motions pending are hereby denied. | JRV |
| 04/16/2003 | Letter to Judge Vespa from Pltff Robert Tierney filed. | JRV |
| 05/09/2003 | Notice of Appeal filed by Robert Tierney. | |
| 05/12/2003 | Notice of Appeal and Proof of service filed. | |
| 05/14/2003 | Letter from Appellate Court regarding docketing statement filed. | |
| 05/15/2003 | Proof of service filed. | |
| 05/22/2003 | Proof of service by Mail filed. (CIndy Waebel) | |
| 05/23/2003 | Notice of motion to extend time filed by Pltf. | |
| 05/23/2003 | Motion to extend time for filing docketing statement & request | |
| 05/23/2003 | preperation of the record on appeal filed by Pltf. | |
| 05/27/2003 | Proof of service filed. (Buffy Powell) | |
| 06/16/2003 | Letter from Appellate Court filed amending notice of Appeal. Pltffs | |
| 06/16/2003 | are only appealing the order of the Court which dismissed the current | |
| 06/16/2003 | (third) complaint. Gen No.: 4-03-0434 | |
| 06/18/2003 | Letter from Robert Tierney requesting preparation of Court records | |
| 06/18/2003 | for Appeal filed. | |
| 06/19/2003 | Letter from Appellate Court w/docketing order and appeal to be | |
| 06/19/2003 | sent by 7/17/03. | |
| 07/03/2003 | Motion for Order limiting the record on Appeal to specific pleadings | |
| 07/03/2003 | filed by Tierney. | |
| 07/09/2003 | Cause comes on for hearing on motion to limiting the record. The | JRV |
| 07/09/2003 | court finding that since the cause is before the appellate court | JRV |
| 07/09/2003 | no longer has jurisdiction & therefore declines to act. | JRV |

**Exhibit 5**