1   house prior to the meeting with the school board. Certainly I

2   talked with them about that.  They talked with me about it.

3       Q.      Would you please repeat the -- can Your Honor --

4   would you please ask the court reporter to repeat my question to

5   Mr. Schnack?

6       A.      I know what I heard in court yesterday. I know that

7   I talked with Rick Powers, Barb and Chet Vahle prior to the

8   meeting with the school district and again I think we've

9   established that was June 9.

10      Q.      Then based on those conversations what do you know

11  in regard to that question?

12      THE COURT:   Okay, we spent plenty of time on this subject.

13  What do you know?  We can be here for I assume for a while.

14      Q.      Prior to November 1998 did a coach ever give your

15  daughter a massage on the pool table the night before a swim

16  meet?

17      MR. BARNARD: Objection, relevance.

18      THE COURT:   Sustained.

19      Q.      Regarding the letter sent to the Tierneys in

20  response to the action taken at the April 14, 1999 board meeting

21  who wrote that letter?

22      A.      It was the board wrote the letter.  I brought a

23  proposed letter I believe and Barney made some suggestions.  I

24  think Julie or Phil or other people made suggestions and it was

                                                              43

1  -- that's how it came about.

2       Q.    So who wrote the letter?

3       A.    Who typed the letter?

4       Q.    Who wrote the letter?

5       THE COURT:   What's the relevance of who wrote the letter?

6       Q.    I believe we have testimony in the record about

7  Julie Anderson's, knowledge of this was trying to establish who

8  wrote the letter?

9       THE COURT:   I understand that was clear from -- your

10 question was?

11      Q.    Your Honor the letter wasn't signed by anybody?

12      THE COURT:   Before you interrupted my question what's the

13 relevance of who wrote the letter?

14      Q.    The letter wasn't signed.

15      THE COURT:   There is none I take it from your answer and

16 from my own conclusion.  So move on.  There is no relevance.

17      Q.    This goes to Sheridan's status as a corporation.

18 Isn't it a fact that Sheridan was originally incorporated as a

19 for profit corporation?

20      A.    I have no idea.

21      Q.    Isn't it a fact that atleast in April of 1999 they

22 were a for profit corporation?

23      A.    I have no idea.

24      Q.    Isn't it a fact that that issue was discussed at the

                                                            44

1  June Sheridan board meeting?

2      MR. BARNARD: Objection, relevance.

3      THE COURT:    Sustained.    I think we're getting beyond the

4  scope too.

5      Q.    Your Honor just for the record the relevance is that

6  they were identified as not for profit corporation in the suit

7  and there is going to be some amendment made on evidence I just

8  discovered.    That's why I asked the question.    It's not relevant

9  at this point in time.    I'll move on.    I need to move on then

10 Your Honor.

11     THE COURT:    Yes.

12     MR. TIERNEY: I have no further questions.

13     THE COURT:    Mr. Barnard have you any questions?

14     MR. BARNARD: I believe I have two or atleast two subjects.

15         REDIRECT EXAMINATION

16         BY MR. BARNARD:

17     Q.    First of all, you mentioned that your first

18 knowledge of this massage thing was from Chet and Barb Vahle

19 correct?

20     A.    I believe so yes.

21     Q.    Just so that we're clear on exactly or approximately

22 as best you can tell when that was.    That was you said within a

23 week or so of the June 1999 school board meeting at which they

24 called?

45

1    A.    No.   I think I said it would have been two to three

2  weeks at most before the June 9 meeting and they wanted us to

3  bring somebody to talk about that evening and Chet and Barb, it

4  was at their house and so I think I talked with one of the two

5  of them and Barb was the most upset about the allegations.

6    Q.    On cross examination Mr. Tierney asked you about

7  U.S.A. Swimming and massages and investigation?

8    A.    Yes.

9    Q.    By U.S.A. Swimming?

10    A.    Yes.

11    MR. TIERNEY: Objection Your Honor.  I did not ask that

12  question.  I asked him about his knowledge, if he was familiar

13  with U.S.A. guidelines on precompetition massages.

14    THE COURT:  Let him finish the question.

15    MR. BARNARD: My question to you is, are you aware that an

16  investigation was done by U.S.A. Swimming with regard to or in

17  response to the allegations made by Mr. Tierney that these

18  massages were inappropriate?

19    A.    Yes.

20    MR. TIERNEY: Objection, relevance.

21    MR. BARNARD: May I respond?

22    THE COURT:  I'm going to -- pursuant to the objection I'm

23  going to strike the preface to the question.  I'm going to allow

24  the question and the answer.

46

*The Law Offices Of*

# JONATHAN H. BARNARD

*316 North Sixth Street*
*Quincy, Illinois 62301*

*Telephone: 217-223-6000*
*Fax: 217-223-6072*

*E-mail: jhlaw@adams.net*
*F.E.I.N. 37-1336463*

October 18, 2002

**Sent Via Fax Transmission**

Mr. Robert Tierney
2517 Summer Creek
Quincy, IL 62301

RE:    Tierney v. Sheridan

Mr. Tierney:

I received the attached letter dated March 5, 1999, from Andrew C. Schnack, III to Dennis Gorman on today's date from the office of Schmiedeskamp, Robertson, Neu & Mitchell. In conjunction with the continuing duty of disclosure under the rules of discovery, I forward it to you at this time.

Should you have any questions, please let me know.

Sincerely,

*Jon*

Jonathan H. Barnard *msb*

JHB:msb

Enclosure

Exhibit 

*The Law Offices Of*

# JONATHAN H. BARNARD

*316 North Sixth Street*
*Quincy, Illinois  62301*

*Telephone: 217-223-6000*                                                         *E-mail: jhbarn@adams.net*
*Fax: 217-223-6072*

---

October 21, 2002

***Sent Via Fax Transmission***

Mr. Robert Tierney
2517 Summer Creek
Quincy, IL 62301

        RE:    Tierney v. Sheridan

Mr. Tierney:

        I received your Amended Notice regarding the hearing scheduled for Wednesday, October 23, 2002.  Unfortunately, I do have objections to the Amended Notice, particularly insofar as it requires the presence of four new individuals.  Those individuals are Andrew C. Schnack, III, Robert Meyer, Dave Daniels and Doug Olson.

        As I understand it, there are two Motions for "Sanctions" scheduled for hearing, both of which relate to my alleged failure to produce documents in my possession or that of my clients, interference with process, etc.

        I have made appropriate arrangements for Barney Bier, Julie Anderson and Bill Forbes to be present on Wednesday at the hearing on the Motions (at considerable inconvenience to them), although I must say that your purpose in requiring their presence is unclear at best.  However, the addition of Mr. Schnack, Mr. Meyer, Mr. Daniels and Mr. Olson is untimely and inappropriate.

        Mr. Tierney, these individuals have professional responsibilities, employers to whom they need to report, and schedules that have been filled long in advance.  I have not yet even had the opportunity to contact these individuals, and even if I were able to do so by the telephone conference this afternoon, they and any other individual in this litigation are entitled to reasonable notice so that appropriate arrangements can be made.  In other words, they are not required, even under the language of Rule 237, to drop everything they are doing at a moment's notice for your convenience.

        With the history of this litigation, I can certainly envision that the information I received and passed along to you on Friday, October 18, 2002, might be the subject of another series of Motions on your part, but for the life of me cannot see the relevance of that issue to the subject of your pending Motions.  Again, I may be missing something here and I suppose that we can sort this out with the judge this afternoon.

        However, I do want to put you on notice that I do object to the Amended Rule 237 Notice, insofar as it pertains to Mr. Meyer, Mr. Schnack, Mr. Daniels and Mr. Olson.

Exhibit *2 E*

Should you have any questions, please let me know.

Sincerely,

*Jon*

Jonathan H. Barnard *msb*

JHB:msb



Exhibit

# FELDMAN, WASSER, DRAPER & BENSON

ATTORNEYS AND COUNSELORS AT LAW

HOWARD W. FELDMAN
STANLEY N. WASSER
CARL R. DRAPER
FREDRIC BENSON
J. RANDALL COX

KELLI E. GORDON
MICHELLE L. BLACKBURN

THOMAS J. IMMEL,
OF COUNSEL

October 18, 2002

J. Robert Tierney
2517 Summer Creek
Quincy, IL 62301
Fax: 223-4849

RE:    Tierney v. Powers, et al.
       Our File No. 993877

Dear Bob:

I have looked through my files very carefully and do not find the March 5, 1999 letter you were inquiring about. This must not have been produced while I was representing you. Should you have any questions or need anything further, please do not hesitate to contact me.

Very truly yours,

Carl R. Draper

CRD:akd

Exhibit  G

1307 South Seventh Street  •  P.O. Box 2418  •  Springfield, Illinois 62705  •  217/544-3403

July 12, 2002

*Via Fax and U.S. Mail*

Jonathan Barnard
316 North Sixth Street
Quincy, IL 62301

      RE:    Tierney v. Sheridan Swim Club, Inc., et al
              Production of Documents

Dear Mr. Barnard,

      Pursuant to the Request for Production of Documents filed on June 6th and on June 11th, 2002, I contacted your office via a faxed letter on July 8, 2002, and requested that you contact me by the end of the day on July 8, 2002, regarding the time and place when I could review the requested documents and make copies. I received no reply to this request until your fax of June 9, 2002, a copy of which is attached. I agreed to the terms of your letter and agreed to meet with you at 10:00am on Friday, July 12, 2002, to review the documents. You also failed to file any objections to the Request for Production of Documents within the 28-day period allowed by law for you to produce the documents and/or file an objection.

      At 9:03 am on Friday, July 12, 2002, my wife received a phone call from you advising her that the requested documents were not available and attempts were being made to contact Bill Forbes. At 9:32 am on the same day, I returned your phone call. You also advised me that the documents were not available because one of your clients, Defendant Barney Bier, had been unable to contact Bill Forbes, an employee of Sheridan Swim Club to have him produce the documents. You requested that we postpone the production of documents until a later date. I informed you that solution was unacceptable and that your clients had made no good faith effort to produce the documents as agreed to by both parties. I further advised you that I would wait until 1:00 pm of the same day for you to produce the documents as previously agreed to.

      Therefore, pursuant to Illinois Supreme Court Rule 201 (k) General Discovery Provisions, **If** I do not hear from your office **and** the requested documents are not produced by 1:00pm today, I will assume that your clients will not provide the documents under the mutually agreed upon conditions, and I will file the appropriate Motions with the Court. I can be reached at 316-0836.

      Thank you for your attention to this matter.

                                    Sincerely,
                                    Bob Tierney

Exhibit *H*

Jul 12-02 11:22a    JON BARNARD    217 223 6072    p.1

*The Law Offices Of*

# JONATHAN H. BARNARD

*316 North Sixth Street*
*Quincy, Illinois 62301*

*Telephone: 217-223-6000*
*Fax: 217-223-6072*

*E-mail: jblaw@adams.net*
*A.C.I.U. 37-1336463*

July 12, 2002

Mr. Robert Tierney
2517 Summer Creek
Quincy, IL 62301

     RE:   Tierney v. Sheridan

Mr. Tierney:

     First, let me apologize for the confusion that caused me to call you earlier this morning to advise you that the documents that I had asked that my clients produce at my office in response to your discovery requests were not, in fact, delivered. As I indicated to you over the telephone, or should I say, attempted to indicate to you over the telephone, I had instructed one of my clients to contact the manager of Sheridan Swim Club to have those documents here and available for me to review and organize first thing this morning in order to facilitate your review of those records.

     For whatever reason, that message was evidently not delivered to Mr. Forbes when I made that request for delivery earlier this week. Again, I apologize for any inconvenience to you in that regard.

     More important, in order to reasonably accommodate your review of those documents, I can be available either at 10:00am on Wednesday, July 17, 2002, (five days from now), or 10:00am on Friday, July 19, 2002, (seven days from now), for your review of those records. Unfortunately, my schedule is such that I would not be available at 1:00pm this afternoon for your review of the documents, and in any event, it would not provide me the opportunity to review and organize the documents in order to expedite your review of them, given that they still haven't arrived as of this time. As you know, the records are voluminous and you will be allowed sufficient time to give you the reasonable opportunity to review them.

     I believe that the above proposal makes the best of an unfortunate situation, but I must add that I do not believe that a five or seven day delay in the arrangements that you and I had previously discussed and agreed upon is an unreasonable delay, particularly in the light of the fact that it has not yet even been determined which of your theories for recovery will advance. Rather than taking the position that you are not entitled to review the documents you had requested until such time as your theory or theories of recovery have been solidified (thereby giving some clarity to the parameters of relevance of the documents requested), I have made arrangements to have those documents available for your review, (but for the above described miscommunication between myself and my clients), because I believe that good faith compliance with the rules of discovery require me to do so.

Exhibit I

I want to personally assure you that neither I nor my clients are attempting to prevent your reasonable opportunity to review the documents you requested. When you have been in the practice of law for a number of years, you come to realize that events such as this unfortunately can and do happen, but again, in the big picture the inconvenience is not something that we can't work around if we make reasonable efforts to do so. Mr. Tierney, not every bump in the road that occurs in the discovery process is the result of some sinister plot against you. In short, while your ultimatum that the documents be produced by 1:00pm today seems to reflect that belief, the ultimatum is not necessary for us to resolve the problem.

Finally, while I do not appreciate you hanging up on me in the middle of my attempt to resolve your concerns, I would add that if in fact it is your intent to file a Motion for Sanctions, the reality of the situation is that by the time such Motion would normally be heard, the documents will have already been made available for your review and inspection, making the issue largely, if not completely, moot by that time. It is my hope that we can avoid needless appearances or hearings before the Court regarding discovery issues, particularly when those are the result simply of an innocent mistake in communication, as it has been my experience that courts are not fond of babysitting discovery disputes which are avoidable with reasonable efforts.

Accordingly, I respectfully request that you reconsider your position and contact me concerning one of the above alternative proposals for a time and date for your review of the documents.

Sincerely,

Jonathan H. Barnard

JHB:msb

P.S.    Attached is the list of policies that I normally require when client documents, particularly voluminous client documents, are inspected either at my office or at the office of the client. Should you have any questions regarding this procedure or any concerns regarding them, please let me know so that we can discuss those concerns.

Enclosure

Exhibit E-2

Interview Report
2-28-99
4:00 p.m.
Present:  Nick Schildt
           Jeri Conboy
           Bob Tierney
           Ann Tierney
           Meryl Tierney

Meryl states that the night before sectional swim meet, which was in the fall, the high school girls swim team, met for dinner at Christine Vahle's house. She states approximately 9 girls were present, as well as Coach Powers and Christine's mother. Meryl's mother and Mrs. Johnson were also there for a short time. The girls ate dinner, opened gifts from their secret swimmer, watched inspirational films for the Coach's other meets, then went downstairs to watch a movie. The coach and the swim team went downstairs.

Meryl states that a couple of days before this date, the coach talked about giving the team a massage at the dinner in order to loosen their muscles to help their swimming at sectionals. He suggested they bring lotion and wear shorts and a T-shirt to get a massage. Meryl states that the girls changed into their shorts and shirt before they went downstairs. According to Meryl, some girls watched the movie and others received a massage. A towel and pillow was place on the pool table for the massages and the girls laid on their stomachs. Meryl states that Andrea Hitt, Melissa Failor and herself received a massage. Meryl states that at first she felt hesitant about getting a massage but after the first girl did, then others decided to get one. She describes much laughing while the girls received a massage.

According to Meryl, Coach Powers massaged the back of her legs from her feet to her "butt - but not the butt." She states the coach asked her to undo her bra. She did so, pulling her T- shirt up to her shoulders and the coach massaged her back. She states she thinks she pulled her shirt down and then the coach massaged her arms. She states she was laying on her stomach during the massage and massage oil was used. She estimated that the massage lasted about 10 minutes. Meryl states that other girls were waiting for a massage but it was getting late. According to Meryl, no adults came downstairs during this time and no one expressed concern that an adult might come downstairs. All the girls, but one, went upstairs to shave their legs. One girl, she thinks Melissa Failor, stayed downstairs longer than the rest. Meryl states that the coach has never given her a massage prior to this night. She stated that last year at sectionals, the coach gave her a massage on deck. She states that some teams receive massages from their coach or trainers.

*Jeri A. Conboy, LCSW*

Jeri A. Conboy, LCSW

10-17-02
R. TIERNEY DEP.
EX. No. 59

Exhibit J

Interview Report
2-28-99
2:10 p.m.
Present:  Nick Schildt
          Jeri Conboy
          Steve Failor
          Jill Failor
          Melissa Failor

Melissa states that the night before the sectional swimming meet, which was sometime in the winter, the high school girls swim team went to dinner at Christine Vahle's house for dinner. Present were approximately 13 girls from the swim team, Coach Powers, Christine's mother and grandparents. Melissa states that they ate, watch a video for about 15 minutes from meets Mr. Powers coached in Europe and then the coach and team went downstairs to watch a movie.

Melissa reports that 4 girls received massages from the coach while they were downstairs. The girls were herself, Merle Tierney, Andrea Hitt and Missy Sibbing. Melissa states that Christine Vahle got a towel to put on the pool table where the girls laid on their stomach during the massage. According to Melissa, the coach had told them at a practice before this date to bring lotion so they could receive a massage. She states that the coach told them that a massage would help them swim better at the sectional meet.

Melissa states she had on shorts and a shirt. According to Melissa, the coach massaged the back of her legs from her feet to the bottom of her shorts; her arms from her wrists to her shoulders; and her lower back from her waist to the bottom of her bra. She states some of the girls took off or unfastened their bras but she did not see this occur because she was watching the movie. Melissa said the massage lasted between 5 and 10 minutes. Melissa states that no other adult came downstairs during this time and no one was concerned that an adult might come downstairs. She stated that other girls were waiting for a massage but it got late so they did not receive one. The girls went upstairs when Christine suggested they go upstairs to shave their legs. Melissa states that no other adult came downstairs while the coach and team were downstairs. She states that the coach has not given her a massage prior to this night and this was not part of the usual swimming routine. She states that on the way home she told Meryl Tierney that she did not feel good about the massage.

Jeri A. Conboy, LCSW
School Social Worker

Exhibit J-1

July 12, 2002

*Via Fax and U.S. Mail*

Jonathan Barnard
316 North Sixth Street
Quincy, IL 62301

RE:     Tierney v. Sheridan Swim Club, Inc., et al
         Production of Documents

Mr. Barnard:

I am in receipt of your Fax of July 12, 2002.

With all due respect and absent any personal rancor, I find your response to my earlier letter to be at the very least disingenuous, self-serving, and misleading. As you are well aware, we had previously agreed to meet today at your offices at 10:00am. You have known since June 6, 2002, that these documents needed to be produced. In addition, the vast majority of these documents were in your personal possession during the Hearings on June 24th & 25th, of last month. I consider receiving a phone call less than an hour before this prearranged meeting advising me that the documents are unavailable, to be far more than an "unfortunate situation", and is in fact premeditated, bad faith non-compliance with the Rules of Discovery.

In view of the documented history of your client's unlawful, dilatory, scorched-earth tactics represented by their failure to appear and produce at the recent hearings, interfering with the serving of subpoenas upon witnesses, and in view of other incidents regarding the production of subpoenaed documents, which are even now before the Court via a Motion For Sanctions, Injunction and Protective Order, I intend to also bring this issue, and others, to the Court's attention via the appropriate Filings, Motions, and Requests for Hearings in a timely and comprehensive manner.

Your reference to a "sinister plot" was very prescient considering this lawsuit involves the ongoing conspiracy between your clients, especially pertaining to the conduct of attorneys Bier and Schnack. And now we have the very same Mr. Bier failing to produce the request documents because of an alleged "miscommunication".

Furthermore, I terminated our phone conversation after patiently listening to you refuse to inform me of the nature of the conversations you allegedly had with your clients and others, regarding attempts to have the documents produced. I therefore politely advised you that your proposal was unacceptable due to the bad faith conduct of your clients, and I reiterated my position that the documents be made available for my review by 1:00pm today. I reasonably believed there was no further need to continue our conversation and was also pressed for time.

Since it is now your stated intention not to produce the documents today as previously agreed upon, pursuant to Illinois Supreme Court Rule 201 (k) General Discovery Provisions, I intend to file the appropriate Motions with the Court regarding the failure of your clients to comply with the Requests For The Production Of Documents. Furthermore, in lieu of your stated intentions to challenge the scope of the Request for Production of Documents, by bringing all these issues before the Court in a comprehensive and timely manner, it will in fact promote judicial economy and the interests of justice, hopefully penalized your clients, and therefore discourage any future dilatory conduct on their part.

Sincerely,

Robert Tierney

Exhibit K

IN THE CIRCUIT COURT OF THE EIGHTH JUDICIAL CIRCUIT

ADAMS COUNTY, ILLINOIS

| | | |
|---|---|---|
| JAMES R. TIERNEY, ANN S. TIERNEY and MERYL A. TIERNEY, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) ) | |
| SHERIDAN SWIM CLUB, an Illinois Corporation, ANDREW C. SCHNACK, III, JULIE ANDERSON, BARNEY BIER, RODERICK P. MILLER, DAVID P. DANIELS, LISA BEARDEN, LORI MILES, PATRICIA CRANE, DOUG OLSON, BARB SELVY, ROBERT HULTZ and TIMOTHI BETH, members of Sheridan Swim Club Board in their Official and Individual Capacities, and ROBERT MEYER, member of the Sheridan Swim Club Board and Former President of the Sheridan Booster Club, in his Official and Individual Capacity, | ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 02-L-12 |
| Defendants. | ) ) | |

**AFFIDAVIT**

State of ILLINOIS    )
                     )    SS
County of ADAMS      )

1.  I, Jonathan H. Barnard, having been first duly sworn, state that on or about Tuesday, July 9, 2002, arrangements were made by agreement for inspection of certain documents which were the subject of a Request for Production filed by Plaintiffs. Those documents, pursuant to the agreement, were to be produced at my offices at 316 North Sixth Street, Quincy, Illinois, at 10:00am, Friday, July 12, 2002.

2.  Upon arrival at my office at 8:30am on Friday, July 12, 2002, I learned that the documents had not been delivered to my office, at which point I attempted to contact Barney Bier, one of my clients, and Bill Forbes, the Manager at Sheridan Swim Club, to determine why the documents had not been delivered to my office. I learned that, through mis-communication, my client had believed that I was to have contacted Bill

Exhibit  C

Forbes to arrange for delivery of the documents to my office, when it had been my understanding that Barney Bier would make such arrangements. As a result, Bill Forbes was not contacted and the documents were not delivered.

3.      Not having reached Bill Forbes by 9:00am on Friday, July 12, 2002, to discuss and arrange for delivery of the documents, I contacted Plaintiff to advise him of the above problem. I apologized to Plaintiff for the mis-communication and attempted to discuss with Plaintiff reasonable alternative arrangements to make the documents available for his inspection. However, in the course of my attempts to discuss those alternative arrangements, Plaintiff advised me that the documents "will be produced at 1:00pm at your offices today (July 12, 2002) or I will file a Motion for Sanctions", at which time Plaintiff hung up on me before I could complete my discussions with him.

4.      Following the interrupted telephone conversation described above, I dictated and sent to Plaintiff a letter that same day, again suggesting reasonable alternative arrangements to solve the delay in production of the documents. I have not received any response from Plaintiff to the proposed alternative times and dates for inspection of the documents since July 12, 2002. On July 16, 2002, I sent another letter to Plaintiff advising him of the availability of the documents and again proposing alternative dates for inspection, and have received no response to that letter.

Further Affiant sayeth not.

_____
Jonathan H. Barnard

Subscribed and sworn to before me on ____July 17____, 2002.

_____
Notary Public

"OFFICIAL SEAL"
DREW T. ERWIN
Notary Public, State of Illinois
My Commission Expires 10/16/03

Exhibit ∠-2

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing instrument was served upon the attorneys of record of all parties to the above cause by faxing a copy of same to the fax number of such attorneys; or, by hand delivering same in an envelope addressed to such attorneys at their business addresses as disclosed by the pleadings of record herein; or, by enclosing the same in an envelope addressed to such attorneys at their business addresses as disclosed by the pleadings of record herein, with postage fully prepaid, and by depositing said envelope in a U.S. Post Office Mail Box in Quincy, Illinois, on July 17, 2002.

*Maria S. Baker*

Attorneys for Defendant:

JONATHAN H. BARNARD
316 North Sixth Street
Quincy, Illinois  62301
Telephone: 217-223-6000
Fax: 217-223-6072

Exhibit L-3

July 17, 2002

*Sent Via Fax Transmission & U.S. Mail*

The Honorable Joe R. Vespa
Peoria County Courthouse
324 Main Street
Peoria, IL. 61602-1363

   RE: Tierney v. Sheridan Swim Club et al., Adams County Number 2002-L-12
      Conference Call Scheduled for 11:30am, Friday, July 19, 2002, For Case
      Management Conference and Proposed Hearing on One or More Motions Pending
      Before the Court

Dear Judge Vespa:

  Pursuant to a phone conversation today with your court personnel, Carol, I am outlining in writing my understanding of the issues that will be addressed during the conference call scheduled for this Friday at 11:30 am, and further respectfully outlining the parameters under which I will be able to participate in this teleconference.

  By way of background, it is my understanding that there are numerous Motions that have been filed and are now pending before the Court. These include but may not be limited to the following:

1.  Plaintiff's Motion for Partial Summary Judgment.
2.  Defendants' Motion to Dismiss First Amended Complaint.
3.  Defendants' Motion to Amend Defendants' Response to Plaintiffs' Second Amended Complaint.
4.  Plaintiff's Motion for Expedited Production of Documents.
5.  Plaintiff's Motion for Sanctions, Injunction, and Protective Order.
6.  Plaintiff's Motion to Compel Discovery and for Sanctions for Bad faith, Non-Compliance with the Rules of Discovery.
7.  Various Motions by Plaintiff to Set for Hearing the above listed Motions.

  Based on my conversation with your court personnel, it is my understanding the Court wished to conduct a Case Management Hearing and a Hearing on one or more of the Motions regarding Discovery.

  A review of the history of this litigation confirms the 11th hour, dilatory, bad faith conduct of the Defendants regarding responding to Filings, responding to subpoenas and requests for the production of documents, and other incidents related to the appearance of witnesses and production of documents at prior Hearings. Furthermore, the Defendants' Response to Plaintiff's Motion to Compel Discovery and for Sanctions for Bad Faith, Non-Compliance with the Rules of Discovery, which was recently faxed to the Court and to the Plaintiff, is consistent with the

1

Exhibit *11*

Defendants prior deceptive representations to the Court. The Response by the Defendants is not only factually inaccurate, but only includes the letters from the Defendants and none of the letters from the Plaintiff, and therefore is deceptively favorable to the Defendants. Although the Defendants' Response does not accurately frame the issues of the dispute, it does provide evidence in support of the allegations against the Defendants of bad faith conduct and worse.

The Plaintiff anticipated such deceptive conduct by the Defendants, and therefore when he filed the Motion to Compel Discovery, the Plaintiff deliberately refrained from attaching all or any of the correspondence between the parties regarding this dispute. As such, now that the Defendants have shown their hand, the Plaintiff flatly disputes and rejects the veracity of the statements in the Response, and in the affidavit of Mr. Barnard. And since the Plaintiff disputes this Response by the Defendants, but has not had an opportunity to respond, and will respond at a Hearing and produce evidence, witnesses, and affidavits from 3rd parties in rebuttal of Defendants' Response, Exhibits, and perjurious affidavit, the Plaintiff respectfully declines to participate in any Hearings regarding this issue, either by phone or in closed Court chambers.

Hopefully the Court is cognizant of the fact that this dispute over the production of documents has now grown exponentially since the Court is now, or will soon be, faced with the issue of allegations of perjurious statements under oath by an Officer of the Court while providing legal representation on behalf of his clients.

The Plaintiff respectfully requires that all future Hearings be held in open court, which provides for the production of evidence, the examination of witnesses, and the recording of the arguments and testimony before the Court. The Plaintiff is well aware of the possibility that this will prolong this litigation and requires travel by the trial Judge, and is therefore making the Court aware of this situation so that he may plan his calendar accordingly.

However, in a good faith attempt to resolve as many disputed issues as possible without a Hearing, the Plaintiff agrees to withdraw item #4 - Plaintiff's Motion for Expedited Production of Documents, since this is probably a moot issue by now due to the time lapse. The Plaintiff further agrees to discuss the portion of item #6 - Plaintiff's Motion to Compel Discovery and for Sanctions for Bad faith, Non-Compliance with the Rules of Discovery, which only deals with the issue of compelling the Defendants to produce various documents. The Plaintiff requires that the remaining issue(s) of this Motion be addressed in open Court, along with the other Motions.

Finally, the Plaintiff also wishes to inform the Court that due to previously scheduled events, he [Plaintiff] will be unavailable for any Hearings or phone conferences from Monday, July 29, 2002, through and including Monday, August 19, 2002.

Thank you for your consideration.

Sincerely,

Robert Tierney, Plaintiff, Pro Se

2

Exhibit M-2

Enclosures:
All other Plaintiffs
Jonathan Barnard, attorney for Defendants

### PROOF OF SERVICE

Service of the foregoing instrument was made by sending
a copy thereof, in a sealed envelope, postage thereon
fully prepaid, addressed to Defendant's attorney of
record; Jonathan Barnard 316 North Sixth Street, Quincy,
IL 62301 by depositing the same in the United States
Mail from the Office of the undersigned this 17 day of
_____ July _____ 2002.

Bob Tierney, Ann Tierney, Meryl Tierney
2517 Summer Creek
Quincy , IL 62305
217-223-4849

3

Exhibit M-3

IN THE CIRCUIT COURT OF THE EIGHTH JUDICIAL CIRCUIT
ADAMS COUNTY, ILLINOIS

JAMES R. TIERNEY, ANN S. TIERNEY and MERYL A.　)
TIERNEY,　)
　)
Plaintiffs,　)
　)
vs.　)
　)
SHERIDAN SWIM CLUB, an Illinois Corporation,　)
ANDREW C. SCHNACK, III, JULIE ANDERSON,　)
BARNEY BIER, RODERICK P. MILLER, DAVID P.　)　No. 02-L-12
DANIELS, LISA BEARDEN, LORI MILES, PATRICIA　)
CRANE, DOUG OLSON, BARB SELVY, ROBERT　)
HULTZ and TIMOTHI BETH, members of Sheridan Swim　)
Club Board in their Official and Individual Capacities, and　)
ROBERT MEYER, member of the Sheridan Swim Club　)
Board and Former President of the Sheridan Booster Club,　)
in his Official and Individual Capacity,　)
　)
Defendants.　)

## AFFIDAVIT OF COMPLIANCE

State of ILLINOIS　)
　) SS
County of ADAMS　)

I, Jonathan H. Barnard, being first duly sworn, states that production of documents contained in Plaintiffs' Request for Production of Documents, with the exception of those to which an objection has been made, is complete in accordance with said request.

_Jonathan H. Barnard_
Jonathan H. Barnard

Subscribed and sworn to be me on _July 23_, 2002.

_Melinda Moore_
Notary Public

> OFFICIAL SEAL
> MELINDA MOORE
> NOTARY PUBLIC, STATE OF ILLINOIS
> MY COMMISSION EXPIRES: 12/02/02

Attorneys for Defendant:

JONATHAN H. BARNARD
316 North Sixth Street
Quincy, Illinois 62301
Telephone: 217-223-6000

**PROOF OF SERVICE**　Exhibit _N_

The undersigned certifies that a copy of the foregoing instrument was served upon the attorneys of record of all parties to the above cause by faxing a copy of same to the fax number of such attorneys; or, by hand delivering same in an envelope addressed to such attorneys at their business addresses as disclosed by the pleadings of record herein; or, by enclosing the same in an envelope addressed to such attorneys at their business addresses as disclosed by the pleadings of record herein, with postage fully prepaid, and by depositing said envelope in a U.S. Post Office Mail Box in Quincy, Illinois, on July 16, 2002.

July 25, 2002

*Via Fax and U.S. Mail*

Jonathan Barnard
316 North Sixth Street
Quincy, IL 62301

> RE:    Tierney v. Sheridan Swim Club, Inc., et al
>         Production of Documents

Dear Mr. Barnard;

Pursuant to the Request for Production of Documents filed on June 6th and on June 11th, 2002, and the Court Order of July 18, 2002, I reviewed documents at your office on July 23, 2002, at 10:00am.

The following documents were not produced and should have been produced per Judge Vespa's order. These missing documents include but are not limited to the following:

1.    The Sheridan Swim Club Board minutes for Board meetings from September 1998 through and including January 1999, and the Annual Shareholders meeting and the follow-up Board meeting from March 1999.
2.    The Sheridan Swim Team Board meeting minutes from September 1998 through June, September, November, and December of 1999.
3.    The Sheridan Swim Team Board meeting minutes for all months of 2000 except for February.
4.    The Sheridan Financial records of the Tierney's Sheridan membership.
      {I did obtain a comprehensive "Sheridan Swim Club Customer Aged Receivable" accounting report that was apparently produced in October 1998. A copy of the front page of this report is attached for your reference. Please produce or have Sue Voth at V & R accounting produce a similar comprehensive year-end (December) report for the years 1996,1997,1998, and 1999.}

As you know, the September 1998 – June 1999 is the critical time period for many of the events, which are the subject of the pending litigation. These documents were also subpoenaed for Hearings in Court in June 2002, and were not produced. During the inspection of the documents at your office, I found and obtained copies of Sheridan Board minutes for nearly all the months of 1995, 1996, 1997, and the first 8 months of 1998, as well as for most of the months in years 1999 & 2000. Nearly all the minutes for Sheridan Swim Team Board meetings during these prior years were also found. So it is self-evident that these missing documents should exist, and did exist at some point in time.

Furthermore, as an Illinois Corporation, Sheridan, the Sheridan Board, and Defendants Schnack and Bier in particular, have an expressed duty of good faith and a fiduciary duty to maintain, preserve, and control corporate records as a matter of law, as well as a duty of care under the law to preserve evidence. Both Schnack and Bier have had prior access to and

Exhibit _O_

control of these documents. Bier is also the Defendant who was allegedly responsible for the failure to have these documents produced on July 12, 2002.    As attorneys, Defendants Schnack and Bier are well aware of these obligations, especially considering the fact that the only document ever disclosed or produced by Sheridan during the Federal litigation was the lone Sheridan Board Minutes from April 1999.

Therefore, pursuant to Illinois Supreme Court Rule 201 (k) General Discovery Provisions, if I do not hear from your office **and** the requested documents are not produced by 4:00pm Friday, July 26, 2002, it is established prima facie that your clients will not provide the documents, and/or that these documents and other relevant evidence were fraudulently, destroyed, altered, or otherwise concealed. I will of course file the appropriate Motions and other Actions with the Court of appropriate venue and jurisdiction.

By way of information, as of 9:00am today, the Quincy School District also refused to appear and/or produce documents regarding this litigation, despite the issuance of a subpoena and a similar Request for Production of Documents, therefore the appropriate action will also be initiated against the District.

Thank you for your attention to this matter.  All communications regarding this issue needs to be in writing.  I will not discuss it over the phone, or in person without the presence of a neutral witness.

Sincerely,

Bob Tierney

2

Exhibit _O-2_

July 27, 2002

*Sent Via Fax Transmission & U.S. Mail*

The Honorable Joe R. Vespa
Peoria County Courthouse
324 Main Street
Peoria, IL. 61602-1363

RE:   Tierney v. Sheridan Swim Club et al., Adams County Number 2002-L-12
      Review of Case Management Conference Call on Friday, July 19, 2002, and other
      issues pending before the Court

Dear Judge Vespa:

Per your request made during the conference call of July 19, 2002, please find attached another copy of the Request for Production of Documents, which was partially reviewed during the conference hearing on Friday, July 19, 2002.

Also attached is another copy of the July 17, 2002, letter sent to you and to Mr. Barnard, which as your comments to me at the beginning of the conference indicated, you believed to be an ex-parte communication with the Court, and you therefore declined to read the letter in its entirety. This was not an ex-parte communication and I attempted to inform the Court of that fact. In addition, per "Himmel" I plan on filing a formal response with the Court to further address the issues raised in my letter of July 17, 2002.

Also attached are the recent letters between myself, Mr. Barnard, and Mr. Gorman, who is one of many attorneys for the Quincy School District #172, regarding my obstructed attempts to obtain documents in accordance with the Requests for the Production of Documents per the Rules of Discovery, and per your Order of July 19, 2002, a copy of which is attached.

This letter is also not an ex-parte communication. I am sending this communication to you and Mr. Barnard, so that the Court has ample advance notice of my intentions to file various Motions in response to the events of the past several weeks. Thus the Court can therefore plan the Court calendar accordingly, to address the various Motions now before the Courts, as well as those Motions that will be filed between now and August 30, 2002. It is my understanding that the logistics of this case necessitates more advanced planning for hearing dates. Therefore, I am informing the Court of these developments now, since both Mr. Barnard and I notified you that we would both be on vacation through approximately August 19, 2002, and the next hearing is not scheduled until August 30, 2002. As matters now stand, the hearing is scheduled to be a conference call of limited duration on just one (1) pending motion.

In view of recent events and the other pending motions, I respectfully request that the Court engage in some advance planning, and re-schedule the August 30 hearing for Adams County and/or identify some possible dates for future hearings in open court in Adams County.

1

Exhibit *P*

In conjunction with this request, the Plaintiff again renews his offer to travel to Peoria for hearings on the aforementioned issues.

Thank you for your consideration.

Sincerely,

Robert Tierney, One of the Plaintiffs

Enclosures:
All other Plaintiffs
Jonathan Barnard, attorney for Defendants

### PROOF OF SERVICE

Service of the foregoing instrument was made by sending a copy thereof, in a sealed envelope, postage thereon fully prepaid, addressed to Defendant's attorney of record; Jonathan Barnard 316 North Sixth Street, Quincy, IL 62301 by depositing the same in the United States Mail from the Office of the undersigned this 2l day of _____ July _____ 2002.

Bob Tierney, Ann Tierney, Meryl Tierney
2517 Summer Creek
Quincy , IL 62305
217-223-4849

2

Exhibit P-2

# AFFIDAVIT

STATE OF ILLINOIS          }
                           } SS.
COUNTY OF ADAMS            }

I, ANN S. TIERNEY, being first duly sworn upon oath depose and say that I am competent to testify and that, if called, could state in open Court on my own knowledge as follows:

1.    I reside with my husband J. Robert Tierney and family at 2517 Summer Creek Quincy, IL. 62305. We have maintained continuous residency here since, 1987. I am over the age of 21.

2.    On Friday, July 12, 2002, at approximately 9:03 a.m. I answered a phone call from Jonathan Barnard, as identified on our caller ID device. A male voice identified himself as "Jon Barnard" and asked if Bob Tierney was there. I replied that he [Bob Tierney] could not come to the phone at the moment.

3.    Mr. Barnard stated that he needed to talk with Bob because some documents were not available for review. Mr. Barnard went on to state that he was unable to contact Bill Forbes, and he wanted to talk with Bob about scheduling another time for Bob to review some documents.

4.    Several minutes later I told my husband about my conversation with Mr. Barnard.

5.    My husband said he was going to call Bill Forbes and find out what was going on.

6.    A short time later my husband placed a phone call to Bill Forbes and engaged in a short conversation with him.

7.    After the phone conversation with Bill Forbes, my husband told me that Forbes said he was home all morning and no one has called him during the morning. My husband also told me Bill Forbes said no one has contacted him about delivering any documents to Barnard.

8.    A short time later my husband place a phone call to Mr. Barnard. My husband asked my to listen to the conversation on another phone and I followed his

1

Exhibit Q

request.

9.    During this phone conversation, Mr. Barnard told my husband that Barney Bier was supposed to have contacted Bill Forbes several days ago and make arrangements for the documents to be delivered to Mr. Barnard's office.

10.    Mr. Barnard also told my husband that he [Barnard] had been unable to contact Bill Forbes that morning.

11.    Mr. Barnard refused to answer some questions my husband asked him about what attempts were made to get the documents.

12.    My husband then told Mr. Barnard that he [my husband] had reason to believe that the matter involved bad faith conduct, and that he would give Mr. Barnard until 1:00 p.m. that day to have the documents available for review.

13.    During this phone conversation, my husband never mentioned the phrase "Motion for Sanctions" or even mentioned the word "sanctions" at any time during the phone conversation.   Mr. Barnard used the word 'sanctions' during the conversation.

Further Affiant sayeth not.

_Ann S. Tierney_
Ann S. Tierney

Subscribed and sworn to before me this ___30___ day of _July_, 2002.

_Lois J. Knapp_
Notary Public

"OFFICIAL SEAL"
LOIS J. KNAPP
Notary Public, State of Illinois
My Commission Expires 12/02/03

Exhibit Q-2

*The Law Offices Of*
# JONATHAN H. BARNARD
*316 North Sixth Street*
*Quincy, Illinois 62301*

*lephone: 217-223-6000*
*ux: 217-223-6072*

*E-mail: jblaw@ada*
*F.E.I.N. 37-13*

October 1, 2002

Mr. Robert Tierney
2517 Summer Creek
Quincy, IL 62301

     RE:   Tierney v. Sheridan

Mr. Tierney:

     Enclosed is a letter that I received from V & R Accounting in response to my request that they produce any information in their possession regarding your dues payments to Sheridan Swim Club. In addition to the enclosed letter, I received some supporting documents from the accountant. However, that information contains payment records from a number of other members at Sheridan which I am reluctant to turn over, as it is my position, subject to Court Order, that the latter information is not relevant and / or privileged information regarding those other members.

     Should you want to bring that issue to the attention of Court, it is your right to do so.

     Sincerely,

     Jonathan H. Barnard

JHB:msb

Enclosure

Exhibit *R*

**V & R ACCOUNTING, INC**
130 NORTH 8TH
QUINCY IL  62301
217-222-6568
217-222-8671 (fax)
suevoth@adams.net

September 24, 2002

Mr. Jonathan Barnard
316 North Sixth Street
Quincy IL  62301

Dear Mr. Barnard:

We do not keep hard copies of invoices for Sheridan.  Unfortunately, the
program that I used to produce the invoices back in 1997-2000 is no longer
in use and I have switched accounting programs, so I am unable to
reproduce the actual invoices to the Tierneys.  However, I can copy the
accounting records showing the transactions involving their account.  The
history is as follows:

| | |
|---|---|
| As of 12-31-97 their balance due was | $518.00 |
| In January 1998 they were billed | $605.00 |
| For May 98 – Apr 99 annual dues | |
| Giving them a balance of | $873.00 |
| In March 1998 they paid | ($100.00) |
| Giving them a balance of | $773.00 |
| In June 1998 they paid | ($168.00) |
| In June 1998 they paid | ($332.00) |
| Giving them a balance of | $273.00 |
| In Dec. 1998 they paid | ($273.00) |
| Giving them a balance of | -0- |
| In January 1999 they were billed | $655.00 |
| For dues of May 99 – Apr 2000 plus 2 lockers | |

In April 1999 their account was written off
Giving them a zero balance.

**Exhibit** $R$-$2$

**V & R ACCOUNTING, INC**
**130 NORTH 8TH**
**QUINCY IL  62301**
**217-222-6568**
**217-222-8671 (fax)**
**suevoth@adams.net**

I hope this information is helpful.  If I can be of further assistance, please let me know.

Sincerely,

Sue Voth, EA

Exhibit R-3

TIEBOB

NAME: Tierney Bob + Ann
A-2 Fam. Ann.

NOTES: RENEWED AS A-2 PRESS/EMBERS/235 RATING

| DATE | NOTMS | FOL. | V | DEBITS | CREDITS | BALANCE |
|------|-------|------|---|--------|---------|---------|
| 5/16 | Guest Passes | 8270 | | 29 | 29 | |
| | RENE | | | | 605 | 605 |
| 7/16 | Guest Pass | 0513 | | 3 | | |
| 1/16 | A-2 Fam. Ann. | | | 535 | | 539 |
| | A-2 Ser. Chg. | | | 20 | | 559 |
| | Spec. A=Sw Fr. | | | 50 | | 609 |
| 1/9/96 | | 1204 1/13/97 | | 605 | 1000 | 7/3 |
| 3/30/97 | A-2 Fam. Ann. | | | 535 | | |
| | A-2 Ser. Chg. | | | 20 | | 818 |
| | Spec. A=Sw Fr. | | | 50 | | 818 |
| 3/28/11 | ROA | | | | 300 | 518 |
| 3/23/98 | ROA 97/98 Dues | | | 518 | 250 | 268 |
| 3/24/98 | ROA 97/98 Dues | | | 268 | 100 | 168 |
| 6/17/98 | ROA 97/98 Dues | | | 168 | 168 | 0 |
| 12/2/98 | A-2 Family Ann 98/99 Dues | | | 605 | 332 | 273 |
| 12/3/98 | ROA | | | 273 | 273 | 0 |
| 12/3/98 | '98 locker fees (2 lockers) | | | 50 | 50 | 50 |

Final Notice Mailed 12/10/98 for Disagreement

Exhibit S

IN THE NAME OF THE PEOPLE OF THE STATE OF ILLINOIS

IN THE CIRCUIT COURT OF THE EIGHTH JUDICIAL
CIRCUIT OF ILLINOIS, ADAMS COUNTY

J. Robert Tierney et al

v.

Sheridan Swim Club, Inc.,
et al

No. _2002-L-12_

**SUBPOENA**  _1444 Main St. Quincy_

TO: _Quincy School District #172 / Joseph Rocke_

YOU ARE COMMANDED to appear to testify before the Honorable _See attached instructions_

_____ in room _TBA_ _____ at the Adams County Courthouse, 521 Vermont Street,

Quincy, Illinois, on _July 25_ _____, 20_02_, at _9:00_ _____ A_. m.

YOU ARE COMMANDED ALSO to bring the following: _(See the Request For_
_production sent to you on July 10, 2002. You may produce_
in your possession or control. _The Documents & Avoid A personal Appearance_

YOUR FAILURE TO APPEAR IN RESPONSE TO THIS SUBPOENA WILL SUBJECT YOU TO PUNISHMENT FOR
CONTEMPT OF THIS COURT.

Name _Robert Tierney_        Witness, _July 13_ _____, 20_02_

Attorney for _____

Address _2513 Summer Court_        _____
                                    Clerk of Court.

City _Quincy, Il. 62301_        By _____
                                    Deputy

Telephone _217-223-4849_        _____

_____

I have served the within Writ, by reading the same to the within named _____

_____

this _____ day of _____ 20 _____ .

_____ Sheriff, A. C., Ill.

By _____ Deputy.

I cannot in my County find the within named _____

this _____ day of _____ 20 _____ .

| SHERIFF'S FEES | |
|---|---|
| Service of Subpoena $ _____ | |
| Returning Subpoena $ _____ | |
| _____ Miles' Travel $ _____ | |
| Total Amount $ _____ | |

_____ Sheriff, A. C., Ill.

By _____ Deputy.

Exhibit _I_

Sheriff, A. C., Ill.