simply be cautioned to remember the now generally discarded habit of using "res judicata" as an umbrella term covering both doctrines.[3]

The second source of confusion may arise from more recent efforts to replace the terms "res judicata" and "collateral estoppel" with labels that are more descriptive of what the underlying doctrines try to do. Thus, "res judicata" is sometimes described as "claim preclusion," and "collateral estoppel" may be called "issue preclusion."[4] Reception of these newer terms has been mixed over the past generation or so of judicial decisions, but enough cases use the terms so that a reader must be familiar with them. However, for purposes of reducing confusion in this section, the terms "res judicata" and "collateral estoppel" will be used exclusively.

These two areas are not the only sources of difficulty with terms that attach to the two doctrines. Case law developments in collateral estoppel, especially, have produced a few terms that will be discussed in greater detail below.

### § 2.20 Res Judicata—Elements

**Elements**

Before a court will apply res judicata to a claim, ordinarily three elements must be satisfied. First, there must have been prior litigation in which "identical" claims were raised, or at least could have been raised. Second, the parties in the second litigation must be "identical" in some manner to the parties in the original litigation. Third, there must have been a final judgment on the merits in the original litigation.[1]

As may already be obvious, these three seemingly straightforward requirements contain within them some important ambiguities, which will be examined in turn. Immediately before doing so, however, it would be useful to keep in mind an underlying feature of res judicata that is also a useful means of spotting potential res judicata issues. Res judicata may potentially apply to a case only in circumstances where that case bears some relationship to a prior lawsuit that has already been decided. In the absence of previous litigation, a court in a pending case would have no prior decision to which to refer. Thus, while the existence of prior litigation does not necessarily establish the existence of res judicata questions, the absence of prior litigation means there is no possibility of res judicata problems in a pending case.

---

**3.** *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 894 n. 1, 79 L.Ed.2d 56 (1984) (noting older practice of using res judicata as term describing both res judicata and collateral estoppel; also noting Court's more recent tendency to apply label of res judicata only to matters of claim preclusion).

**4.** *See, e.g., id.* (using "claim preclusion" in case addressing principals of res judicata, as means of distinguishing res judicata from collateral estoppel). *See also Baker v. General Motors Corp.*, 522 U.S. 222, 223 n. 5, 118 S.Ct. 657, 664, 139 L.Ed.2d 580 (1998).

**1.** *Cromwell v. County of Sac*, 94 U.S. (4 Otto) 351, 352–53, 24 L.Ed. 195 (1876), *cert. denied*, 435 U.S. 933, 98 S.Ct. 1508, 554 L.Ed.2d 530 (1978) (identifying elements to be satisfied in first action before res judicata will bar a subsequent lawsuit).

119

**"Identical Claims"; Same Transaction or Occurrence**

If the claims at issue in pending litigation bear no relationship to claims that were raised in prior litigation, the instant claims will not be barred by res judicata. For example, if a plaintiff now suing a defendant on a contract claim that arose six weeks ago had previously brought a lawsuit against the same defendant for an utterly unrelated claim that occurred a decade before the breach claim arose, the claims in the two cases would not be identical and res judicata would not be applied. However, if a plaintiff had two claims against a defendant arising out of the same event—and had previously sued on one claim, but not the other—there is a substantial possibility that the requirement for identical claims would be satisfied. Thus, if the defendant was a state police officer who allegedly beat and injured a citizen for motives arising from religious bias, the plaintiff might have at least two civil causes of actions against the police officer, such as: (1) a federal civil rights claim under 42 U.S.C.A. § 1983 (deprivation of a federal civil right by a person acting under color of state law); and (2) a state law claim of battery. If we assume that the plaintiff sued on the state battery claim in previous litigation, and then tried to sue on the federal claim in the pending litigation, it is likely that the requirement of "identical" claims between the two lawsuits would be satisfied.

It is important to note that the claims need not be literally identical to satisfy this requirement for res judicata. In the example above, the federal claim shares much in common with the state claim that was previously litigated, but to prevail on the merits of the federal claim the plaintiff would have to demonstrate additional evidence not necessary to win on the state lawsuit. For the state battery claim, the plaintiff would have to demonstrate only the elements of the common law tort of battery. However, for the federal cause of action, the plaintiff would also have to demonstrate that the defendant was acting under color of state law (*i.e.*, a police officer) and that there was some intent to violate the plaintiff's federal civil rights (religious discrimination). These elements would be additional to the requirements for common law battery, and in a particular case they might require proof that the plaintiff does not possess. In that sense, the two claims in the example are not literally "identical," because they rest on distinct theories of recovery.

Courts once struggled to develop rules to determine when two claims share enough in common to satisfy the requirement that the claims are "identical" for purposes of res judicata. However, many years ago most courts abandoned the notion that claims based on the same facts, but different theories of recovery, were insufficiently "identical" to satisfy this requirement. Today, most courts have accepted the proposition that two claims are "identical" if their "underlying facts are 'related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.' "[2] Put another way, the claim in the second suit is sufficiently "identical" to

---

2. *Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 90 (2d Cir.1997) (quoting Restatement (Second) of Judgments § 24(b) (1982)).

the claim that was or could have been litigated in the first suit if both claims share a common "nucleus of operative fact."[3] This language shares much in common with judicial commentary about the requirement in supplemental jurisdiction, 28 U.S.C.A. § 1367(a), for the "same case or controversy."[4] It is also related to the idea in Federal Rule of Civil Procedure 13(a) that counterclaims may be compulsory if they arise out of the same "transaction or occurrence" as the opposing party's claim.[5]

Applying this transactional test to the claims in the case involving the alleged beating inflicted by the police officer, most courts would almost certainly conclude that the state battery claims and the federal civil rights claim share enough common features to satisfy this requirement of "identical" claims for res judicata. The primary reason courts would likely reach that conclusion is that the two claims, though based on somewhat differing legal theories, arose from the same occurrence, at the same time, and would require substantially overlapping items of proof.[6]

At the same time, the transactional test for "identical" claims should not be pushed too far. If the transactions or events at issue took place at significantly different points in time, claims arising from those different times will generally not be treated as "identical."[7] Thus, in a circumstance where ship pilots had sued to recover fees owed by a shipping company under a state statute, the judgment in that case would not preclude subsequent claims for fees arising from voyages that had not yet taken place at the time of the first litigation.[8]

---

3. *Apparel Art Int'l, Inc. v. Amertex Enters., Ltd.*, 48 F.3d 576, 583 (1st Cir.1995) ("Under this approach, a cause of action is defined as a set of facts which can be characterized as a single transaction or a series of related transactions."). *See also, e.g., Lane v. Peterson*, 899 F.2d 737, 742 (8th Cir.1990), *cert. denied*, 498 U.S. 823, 111 S.Ct. 74, 112 L.Ed.2d 48 (1990) (standard for measuring same cause of action is whether both claims derive from "same nucleus of operative facts").

4. *See, e.g., United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) (developing the concept of "common nucleus of operative fact" in the context of judicial predecessor of supplemental jurisdiction).

5. Fed.R.Civ.P. 13(a). *See also, e.g.*, Fed. R.Civ.P. 15(c)(2) (permitting relation back of amended pleading if, inter alia, "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading"); Fed. R.Civ.P. 20(a) (permitting joinder of parties as plaintiffs if, inter alia, their claims arise from "the same transaction, occurrence, or series of transactions or occurrences").

6. *See, e.g., National Labor Relations Bd. v. United Technologies Corp.*, 706 F.2d 1254, 1260 (2d Cir.1983) (for res judicata, test is whether "same evidence is needed to support both claims, and [whether] the facts essential to the second were present in the first").

7. *See, e.g., Securities & Exchange Comm'n v. First Jersey Securities, Inc.*, 101 F.3d 1450, 1464 (2d Cir.1996), *cert. denied*, 522 U.S. 812, 118 S.Ct. 57, 139 L.Ed.2d 21 (1997) ("If the second litigation involved different transactions, and especially subsequent transactions, there generally is no claim preclusion;" presence of same parties or even overlapping facts need not be dispositive to prove "identical" claims).

8. *See, e.g., Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 91 (2d Cir.1997) ("While the subsequent voyages represent wrongs that are the 'same' in legal theory, they are not related in time, space, or origin to the wrongs litigated [earlier].").

**"Identical" Parties; Privity**

The second requirement for res judicata is that the parties in the second action must be identical to the parties in the first action, or in privity with parties in the first action. Thus, if two pedestrians walking along a sidewalk were injured by a motorist whose automobile went out of control and struck them, the outcome of a suit involving only the first pedestrian as a plaintiff would not be a bar to a second and independent suit by the second pedestrian. Even though the claims of both pedestrians arose from the same occurrence, the obvious difference between the parties would preclude application of res judicata.

For purposes of this second requirement for res judicata, parties who are literally the same persons or business entities are clearly "identical." The question that may arise, however, is whether persons who are different but who share a common interest may be treated as "identical." The issue raised here is a concept of privity of interest between two distinct individuals or business entities.

In general, there are several circumstances in which someone not literally a party to the first action may nevertheless be treated as in privity with a person or entity that was a party: (1) where the nonparty succeeded to the interest of a party, for example, by purchasing whatever interest the party may have had after completion of the first litigation; (2) where the nonparty, though technically not participating in the first suit, nevertheless controlled one party's litigation in that suit—where, for example, the nonparty is an insurance company for a party; (3) where the nonparty shares a property interest with the party;[9] (4) where the party and nonparty have an agent-principal relationship; or (5) where the party otherwise "adequately represented" the interest of the nonparty.[10]

These categories may superficially appear straightforward. However, it appears that privity is applied only after careful scrutiny of the nuances of particular cases, and perhaps not always with consistency. For example, where one entity holds a twenty percent interest in another entity's lawsuit, the two interests were deemed "completely identical" with one another and the entities were held to be in privity.[11] However, defendants sued individually may not be in privity with their employers.[12] A general rule is that while privity may in some circum-

---

9. *See, e.g., Hart v. Yamaha–Parts Distrib., Inc.,* 787 F.2d 1468, 1472 (11th Cir. 1986) (citing these examples). *See also, e.g., Nero v. Ferris,* 222 Va. 807, 813, 284 S.E.2d 828, 831 (1981) ("[P]rivity generally involves a party so identical in interest with another that he represents the same legal right [but making this determination requires] a careful examination into the circumstances of each case.").

10. *Howell Hydrocarbons, Inc. v. Adams,* 897 F.2d 183, 188 (5th Cir.1990).

11. *Virginia Surety Co. v. Northrop Grumman Corp.,* 144 F.3d 1243, 1247 (9th Cir.1998).

12. *See, e.g., Willner v. Budig,* 848 F.2d 1032, 1034 (10th Cir.1988) ("Res judicata does not bar [plaintiff's] claims against the defendants in their individual capacities because the defendants are not in privity with the University."); *Headley v. Bacon,* 828 F.2d 1272, 1277–79 (8th Cir.1987) (distinguishing privity between principal and agent from privity between a governmental entity and officials sued in their individual capacities).

stances substitute adequately for the requirement that the parties in both lawsuits be identical, there should be no assumption that a court will support an assertion of privity without a careful examination of the facts underlying the assertion.

It should be noted that in this requirement of identical parties (or privity), the doctrine of res judicata differs in an important respect from case law addressing the doctrine of collateral estoppel. As is discussed later in this analysis, courts do not invariably require that the parties be identical before applying collateral estoppel to issues in a case. However, this distinction comes with several important qualifications, which are addressed under the discussion of collateral estoppel.

**Final Judgment "On the Merits"**

The third and final prerequisite for application of res judicata is the requirement that the first litigation has proceeded to a final judgment on the merits of the case. When considering application of this prerequisite there are two points to keep in mind. First, not all judicial decisions are "final." Second, not all final judgments are based on the merits of the case.

It is generally well settled that when a trial judge enters judgment, so that the parties are now in a position to enforce or appeal the judgment, finality has been achieved and this element of res judicata has been satisfied.[13] By contrast, one apparently obvious example of litigation that does not constitute a final judgment arises when the parties settle their case. A settlement that does not involve action by the court does not constitute a judgment. The result may be different, however, if the parties seek to have their settlement entered by the court as a judgment or decree. Such action may convert a settlement into a final judgment, which therefore may qualify as res judicata for subsequent litigation.[14]

Res judicata also may not apply to situations in which a judge makes an important decision which is, nevertheless, less than a final judgment. For example, in a case in which plaintiffs seek certification of their lawsuit as a class action, denial of such certification may not necessarily be a final judgment, even though the reality of the situation is that denial of class status is often a punishing blow to the parties seeking certification.[15]

---

13. *Clay v. United States*, 537 U.S. 522, 123 S.Ct. 1072, 1076, 155 L.Ed.2d 88 (2032) ("[A] federal judgment becomes final for appellate review and claim preclusion purposes when the district court disassociates itself from the case, leaving nothing to be done at the court of first instance save execution of the judgment.").

14. *See, e.g., Richardson v. Alabama State Bd. of Educ.*, 935 F.2d 1240, 1244 (11th Cir.1991) ("We specifically have held that res judicata applies to Title VII consent decrees."). *But cf. Keith v. Aldridge*, 900 F.2d 736, 740 (4th Cir.1990), *cert. denied*, 498 U.S. 900, 111 S.Ct. 257, 112 L.Ed.2d 215 (1990) (where parties consent to resolution of one portion of a case but expressly reserve right to continue litigating other claims, res judicata will not block continuation of unresolved litigation).

15. *See, e.g., In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig.*, 134 F.3d 133, 146 (3d Cir. 1998) ("Denial of class certification is not a 'judgment' for the purposes of the Anti-Injunction Act while the underlying litiga-

§ 2.20    GENERAL CONCEPTS IN FEDERAL PRACTICE    Pt. II

For res judicata to apply, a judgment must also be on the merits of a case. Litigation that goes through to a jury verdict obviously meets this requirement. However, the applicability of res judicata to litigation terminated under, for example, a subsection of Federal Rule of Civil Procedure 12(b) may depend on both the particular subsection employed as well as the facts of a particular case. In general, cases dismissed for failure to state a claim for which relief may be granted—e.g., Rule 12(b)(6)—are judgments on the merits for purposes of res judicata.[16] By contrast, cases dismissed on jurisdictional grounds, such as Rule 12(b)(1) (lack of subject matter jurisdiction) have res judicata effect only to the extent that the jurisdictional issue is foreclosed. If the claimant subsequently files a second suit alleging a different theory of recovery, or files in a different, appropriate forum, the original dismissal will normally not block the second suit because the jurisdictional dismissal was not on the merits of the case.[17]

### § 2.21  Res Judicata—Scope

When it is applicable to a case, res judicata bars re-litigation of claims which have previously been litigated—or which could have been litigated in a prior lawsuit. This scope of res judicata differs significantly from the requirement for collateral estoppel, because collateral estoppel applies only to claims which were actually litigated—not claims that could have been litigated but were not.

When applied to claims that were not actually raised, but which could have been raised, the scope of res judicata is rather broad. Thus, where a police officer allegedly attacked and beat a citizen in circumstances that give rise to both a state battery claim and a federal civil rights claim, a plaintiff's decision to sue only on the state claim may preclude assertion of the federal claim at a later date. Provided that the federal claim and the state claim could have been raised concurrently in the court in which the plaintiff filed and provided that the other elements of res judicata are satisfied, the claim not raised would be barred because it could have been raised.[1] This corollary of res judicata

---

tion remains pending."). *But cf. In re Varat Enters., Inc.*, 81 F.3d 1310, 1315 (4th Cir.1996) (bankruptcy court's order confirming debtor's plan of reorganization "is treated as a final judgment with res judicata effect").

**16.** *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n. 3, 101 S.Ct. 2424, 2428 n. 3, 69 L.Ed.2d 103 (1981)(dismissal under Rule 12(b)(6) is final judgment for purposes of res judicata). *Cf., Manufacturers Hanover Trust Co. v. United States*, 399 U.S. 392, 481, 90 S.Ct. 2054, 2104, 26 L.Ed.2d 691 (1970) (failure to appeal adverse decision makes that decision a matter of res judicata).

**17.** *Semtek International Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 121 S.Ct. 1021, 149 L.Ed.2d 32 (2001) (judgment "on the merits" does not always trigger application of claim preclusion in subsequent lawsuit). *See, e.g., Costner v. URS Consultants, Inc.*, 153 F.3d 667, 673 (8th Cir.1998) (distinguishing between application of res judicata for jurisdictional issue in first case and inapplicability of res judicata to different theory of recovery, even where second suit arises from same facts as first claim).

**1.** *Cromwell v. County of Sac*, 94 U.S. (4 Otto) 351, 352-53, 24 L.Ed.195 (1876) (when applicable, res judicata bars claims actually raised and which might have been raised).

should strongly encourage attorneys to consider carefully all their potential theories of recovery in the first litigation.

By contrast, if a claim could not have been raised in the first lawsuit, assertion of that claim in later litigation is not barred by collateral estoppel. Thus, if the first court lacked jurisdiction to hear a particular kind of claim, that claim may be asserted later in a court of competent jurisdiction.[2] This circumstance may most commonly arise when a plaintiff has both a state cause of action and a federal claim which is within the exclusive subject matter jurisdiction of a federal court. If the plaintiff files first in a state court, the outcome of that case will not serve as a bar, under res judicata, to a subsequent filing on the federal claim in a federal court. However, if the plaintiff filed first in a federal district court which had jurisdiction (either diversity or supplemental jurisdiction) over the state claim, failure to file both claims at once would probably create a situation in which the unasserted claim will be barred in later litigation.

### § 2.22   Res Judicata—Counterclaims: Rule 13(a)

In the federal system, res judicata is not generally applied to potential counterclaims by defendants. Thus, when a defendant does not assert counterclaims, res judicata does not bar their assertion in subsequent litigation. However, the fact that the case law doctrine of res judicata is generally inapplicable to potential counterclaims in federal court does not mean defendants are free to raise or withhold all of their counterclaims. Instead, Federal Rule of Civil Procedure 13(a) provides that counterclaims deemed "compulsory" must be asserted.[1] Failure to do so usually results in judicial refusal to hear the claim in subsequent litigation.[2]

Some state court systems have no compulsory counterclaim rule comparable to Rule 13(a). In such states, the use of collateral estoppel to bar a claim that was not raised as a counterclaim in prior litigation may vary significantly from the federal practice.

### § 2.23   Res Judicata—Affirmative Defense: Rule 8(c)

In the federal system, res judicata is specifically listed within Federal Rule of Civil Procedure 8(c) as an affirmative defense. That means a defendant seeking to use res judicata to preclude a plaintiff's claim must affirmatively raise the defense. Subject to some important exceptions, failure to raise the defense means that it is waived.[1]

---

2. *Crossroads Cogeneration Corp. v. Orange & Rockland Utilities, Inc.*, 159 F.3d 129 (3d Cir.1998).

1. *See generally*, Fed.R.Civ.P. 13(a).

2. *See, e.g., New York Life Ins. Co. v. Deshotel*, 142 F.3d 873, 882 (5th Cir.1998) ("It is well settled that a failure to plead a compulsory counterclaim bars a party from bringing a later independent action on that claim.").

1. *See, e.g., McKinnon v. Kwong Wah Restaurant*, 83 F.3d 498, 505 (1st Cir.1996) ("To avoid waiver, a defendant must assert all affirmative defenses in the answer."). *But cf. Jakobsen v. Massachusetts Port Authority*, 520 F.2d 810, 813 (1st Cir.1975) (no waiver where failure to plead affirmative defense does not unfairly prejudice opposing party).

### § 2.24   Res Judicata—Relationship to Full Faith and Credit

Full faith and credit is a constitutional provision[1] controlling the circumstances when courts of one state must enforce the judicial decisions of another state. This constitutional provision relies on res judicata in the following manner. If the res judicata doctrine of the state in which a judgment was rendered would require other courts in that same state to treat the judgment as final and preclusive, full faith and credit will generally require the courts of other states to give the same effect to the judgement as would be given in the state that rendered the judgment. Analogous rules usually require federal courts to give similar deference to the final judgments of state courts of competent jurisdiction.[2]

### § 2.25   Collateral Estoppel—Elements

As will be explained in greater detail below, the requirements for the application of collateral estoppel (or "issue preclusion")[1] vary more significantly among the jurisdictions than does the application of res judicata. Nevertheless, there are several requirements for collateral estoppel that are applied fairly consistently throughout the United States. First, there must have been a prior litigation in which the identical issue was before the court.[2] Second, the issue must have been actually litigated in the first judicial proceeding.[3] Third, the issue must necessarily have been decided in a case in which a final judgment was entered.[4]

On the surface there is an apparent overlap between the requirements for collateral estoppel and the requirements, discussed earlier, for res judicata. However, while there is reason to recognize the two bodies of case law as related, the similarities can easily be overstated, with

---

1. U.S. Const. Art. IV § 1.

2. *Durfee v. Duke*, 375 U.S. 106, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963) (where Nebraska had considered, inter alia, jurisdictional issues and would treat the judgment as res judicata, federal district court in Missouri had duty under full faith and credit provisions to give the same effect to judgement as Nebraska would give it). *See also, e.g., Community Bank of Homestead v. Torcise*, 162 F.3d 1084 n. 5 (11th Cir.1998) ("Under the Full Faith and Credit Act, 28 U.S.C. § 1738 (1994), state court judgments are to be given the same preclusive effect in federal court that they would have in the state in which judgment was rendered.").

1. *See, e.g., Dodd v. Hood River County*, 136 F.3d 1219, 1224 (9th Cir.1998), *cert. denied*, 525 U.S. 923, 119 S.Ct. 278, 142 L.Ed.2d 229 (1998) (acknowledging that most courts still use "collateral estoppel" as appropriate term, but noting that the Ninth Circuit prefers to use "issue preclusion").

2. *See, e.g., United States v. Shanbaum*, 10 F.3d 305, 311 (5th Cir.1994) ("[T]he issue under consideration in a subsequent action must be identical to the issue litigated in a prior action.").

3. *Regions Hosp. v. Shalala*, 522 U.S. 448, 461, 118 S.Ct. 909, 918, 139 L.Ed.2d 895 (1998) ("Absent actual and adversarial litigation ... principles of issue preclusion do not hold fast.").

4. *Cf., Arizona v. California*, 530 U.S. 392, 120 S.Ct. 2304, 147 L.Ed.2d 374 (2000) ("[S]ettlements ordinarily occasion no issue preclusion ... unless it is clear ... that the parties intend their agreement to have such an effect."). *See, e.g., Murdock v. Ute Indian Tribe of Uintah and Ouray Reservation*, 975 F.2d 683, 687 (10th Cir.1992), *cert. denied*, 507 U.S. 1042, 113 S.Ct. 1879, 123 L.Ed.2d 497 (1993) (to apply collateral estoppel, "the prior action [must have] finally adjudicated on the merits").

| Pt. II | GENERAL CONCEPTS IN FEDERAL PRACTICE | § 2.25 |

resulting unfavorable consequences. As is explained immediately below, some of the superficial similarities actually conceal differences between res judicata and collateral estoppel that can affect the outcome of a particular case.

**Identical Issues**

The standard for determining whether, for purposes of applying collateral estoppel, an issue in a prior lawsuit is the same as an issue in pending litigation is very different from the standard for identical claims in matters of res judicata. As discussed earlier, most courts conclude that two claims are identical for purposes of res judicata if they arise from the same transaction or occurrence. By contrast, in determining whether two issues are identical, most courts require that the issues track each other more closely than that. However, once such a substantial amount of similarity is identified, it is unimportant whether claims in one case bear any significant relationship to claims in another case.[5]

**Actually, Vigorously Litigated**

The requirement in collateral estoppel for actual litigation of an issue in a prior proceeding differs in at least two important respects from the possibility under res judicata that claims which were not litigated, but which could have been litigated, may be barred in later litigation. First, it is settled that collateral estoppel will not bar litigation of any issue that was not actually raised in a prior proceeding, regardless of whether the issue could have been raised. For example, in a breach of contract suit, it is possible that a defendant would make a tactical decision not to raise questions about whether the contract was unenforceable for a failure of consideration. If the plaintiff sued to enforce another obligation on the contract that only became due after the first suit was resolved, collateral estoppel would not prevent the defendant from raising the consideration simply because it could have been (but was not) raised in the first litigation. An even simpler example would arise if, in the first suit, the defendant chose to default and not enter any defense. The plaintiff would thereby win, but when the second cause of action arose all issues about consideration would still be available for the defendant to raise.[6]

Similarly, for collateral estoppel to apply an issue must have been litigated with some vigor. Thus, if an issue was raised in a passing way but did not engage the attention of the litigants significantly, the issue may not be estopped in later litigation because it was not litigated vigorously. To permit collateral estoppel to apply to issues raised in such a casual manner, perhaps because their importance to subsequent litigation was not yet foreseen, would produce unfair surprise for litigants.[7] It

---

5. *United States v. Shanbaum*, 10 F.3d 305, 311 (5th Cir.1994) ("[U]nder issue preclusion, unlike claim preclusion, the subject matter of the later suit need not have any relationship to the subject matter of the prior suit.").

6. *Cromwell v. County of Sac*, 94 U.S. (4 Otto) 351, 356–57, 24 L.Ed. 195 (1876) (default judgments not eligible for collateral estoppel).

7. Id. at 356 ("Various considerations, other than the actual merits, may govern a party in bringing forward grounds of recov-

§ 2.25   GENERAL CONCEPTS IN FEDERAL PRACTICE                Pt. II

might also force needless complexity on the first litigation, as parties jockeyed to ensure that they would not be estopped collaterally in subsequent litigation.

**Necessarily Decided on the Merits**

This requirement has two parts, and courts sometimes treat them as distinct requirements. However, a decision to do so does not alter the analysis of this standard.

The first part of this requirement is that for collateral estoppel to apply, the issue decided in the first suit must have been decided in a way that is consistent with the judgment in the first suit. Thus, in the contract example used above, assume that the defendant was not found liable in the first suit because the plaintiff was found to have been in breach. If the jury also found that the consideration underlying the contract was good consideration, that finding would, in a literal sense, be unnecessary to the judgment that vindicated the defendant. Thus, if the same contract later gave rise to another cause of action not available at the time of the first lawsuit, the defendant would not be precluded from asserting lack of consideration as a defense. Keep in mind, of course, that permission to relitigate the issue does not mean the defendant will prevail on the consideration issue. Refusal to apply collateral estoppel does not, of itself, guarantee victory for anyone. Instead, it only provides that the issue will be fought over again.

Similarly, if a jury finds for a plaintiff without explaining which of two distinct grounds (or both) is the basis for the verdict, a defendant retains the right to challenge those same grounds if they arise as issues in subsequent litigation.[8] Conversely, if a jury expressly finds for a plaintiff on two distinct grounds, both of which were vigorously litigated and which were decided in the plaintiff's favor, both may be treated as eligible for collateral estoppel in subsequent lawsuits.[9]

The second part of this requirement is that collateral estoppel applies only to issues resolved in cases decided on the merits.[10] Often,

---

ery or defence in one action, which may not exist in another action upon a different demand, such as the smallness of the amount or the value of the property in controversy, the difficulty of obtaining the necessary evidence, the expense of the litigation, and his own situation at the time."). *But cf. Community Bank of Homestead v. Torcise*, 162 F.3d 1084 (11th Cir.1998) (observing that this requirement does not examine the quality or quantity of evidence or argument presented, only that fair opportunity to present the issue arose in a context where party understood potential adverse consequences).

**8.** *Cf., e.g., In re Caton*, 157 F.3d 1026, 1029 (5th Cir.1998), *cert. denied*, 526 U.S. 1068, 119 S.Ct. 1462, 143 L.Ed.2d 547 (1999) ("We only require that the record introduced have sufficient detail to allow the use of collateral estoppel.").

**9.** *But cf., National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 909–10 (6th Cir.2001), *cert. denied*, 534 U.S. 1156, 122 S.Ct. 1127, 151 L.Ed.2d 1019 (2002) (if prior decision involved resolution of two issues, either of which could have supported prior decision, prior judgment is not conclusive as to either issue standing alone; collecting substantial authority on both sides of question).

**10.** *Arizona v. California*, 530 U.S. 392, 120 S.Ct. 2304, 147 L.Ed.2d 374 (2000) (noting that while settlement entered by court as judgment can have res judicata effect, such a settlement normally does not have collateral estoppel effect).

128

this will mean that cases which were dismissed on, for example, jurisdictional grounds will not develop issues in ways that qualify for collateral estoppel in subsequent cases. However, if the issues for which collateral estoppel treatment is sought are the procedural issues on which the original case was actually decided, then the requirement that the prior judgment "on the merits" is satisfied, at least for the procedural issues.[11]

### § 2.26  Collateral Estoppel—Mutuality v. Nonmutual Estoppel

As discussed previously under the law of res judicata, there is a requirement that the parties in the second suit must be identical to (or in privity with) parties in the first suit before any claims may be precluded. At one time, a similar requirement of identical parties also applied to situations involving collateral estoppel. In the context of collateral estoppel, this requirement has been referred to as the "mutuality requirement,"[1] meaning that estoppel could not apply unless it applied mutually to all parties in a lawsuit. However, that requirement has experienced substantial erosion over the past half century. Today most jurisdictions (but not all)[2] have substantially abandoned this requirement.

The replacement for the mutuality requirement—the requirement that parties in the second suit be identical to or in privity with parties in the first suit—is an assessment of fairness that, when satisfied, is ground for permitting application of nonmutual collateral estoppel.

The terminology of this area of the law of collateral estoppel can be awkward and initially difficult to grasp. However, because courts tend to use the terms that have been created for this area, it is essential that they be understood before proceeding any further. First, to repeat, a "mutuality" requirement means merely that a court will not apply collateral estoppel unless the parties in the second action are identical to (or in privity with) the parties in the original case. Second, when a court says it follows an approach of "nonmutuality," the court merely means that it may not always impose a requirement that the parties in the second lawsuit be identical to the parties in the first suit. Thus, subject to the requirements discussed below, an application of "nonmutual"

---

11. See, e.g., *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 162 F.3d 724, 731 (2d Cir.1998), cert. denied, 526 U.S. 1146, 119 S.Ct. 2022, 143 L.Ed.2d 1033 (1999) ("[T]he service of process and personal jurisdiction issues were necessary to support the D.C. Circuit's final judgment—indeed, these issues were the subject of that judgment.").

1. See, e.g., *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971).

2. See, e.g., *State Farm Fire & Casualty Co. v. Mabry*, 255 Va. 286, 289, 497 S.E.2d 844, 846 (1998) (imposing requirement that parties in current litigation be identical with parties in prior litigation or in privity with such parties). It should also be noted that collateral estoppel may be invoked against the federal government when the United States is a party to litigation and the elements of collateral estoppel (including requirements of mutuality) are established. *United States v. Stauffer Chemical Co.*, 464 U.S. 165, 104 S.Ct. 575, 78 L.Ed.2d 388 (1984). However, it is also settled that nonmutual collateral estoppel may not be invoked against the federal government. *United States v. Mendoza*, 464 U.S. 154, 104 S.Ct. 568, 78 L.Ed.2d 379 (1984).

§ 2.26    GENERAL CONCEPTS IN FEDERAL PRACTICE    Pt. II

collateral estoppel means that the court found collateral estoppel appropriate even though the parties in both suits were not identical. Third, "defensive" nonmutual collateral estoppel means that the court is being asked to apply collateral estoppel in a circumstance where the defendant in the second lawsuit is trying to use nonmutual collateral estoppel defensively—as a shield—to ward off the plaintiff's attack. Fourth, "offensive" nonmutual collateral estoppel means that the court is being asked to apply collateral estoppel to prevent a defendant from raising an issue that was (allegedly) litigated in a prior lawsuit. Thus, the plaintiff is trying to use nonmutual collateral estoppel as a sword, to strike down a defense raised by a defendant. The distinction between defensive and offensive nonmutual collateral estoppel is important, because it is distinctly possible that the requirements for defensive nonmutual collateral estoppel might be less difficult to meet than the requirements for offensive nonmutual collateral estoppel.

**Defensive Nonmutual Collateral Estoppel**

Suppose a plaintiff sues a defendant for patent infringement. Suppose further that the essence of the defense is that the patent on which the plaintiff's claim is based is not a valid patent. If the defendant wins the case on that ground, the matter is obviously res judicata between the two parties. But if the plaintiff later files a second lawsuit, against a different defendant, asserting that the same patent was infringed, it is clear that the parties in the second suit are not identical with the parties in the first suit. Additionally, it will often be true that the defendant in the second suit will not be in privity with the defendant in the first suit. In those circumstances, if the mutuality requirement is imposed, the plaintiff will not be estopped from asserting (in the second suit) the validity of the patent that was found to be invalid in the first suit. This is inefficient for the courts, and also creates the possibility that a finding of a valid patent in the second suit will create an unacceptable situation for other parties trying to discern the validity of the patent. Thus, the majority of judicial systems facing such problems now permit a party in the position of the defendant in the second suit to assert the defense of collateral estoppel, provided only that the plaintiff had a full and fair opportunity to litigate the patent validity issue in the first lawsuit.[3]

**Offensive Nonmutual Collateral Estoppel**

A more problematic use of nonmutual collateral estoppel arises when a party seeks to use the rule as more than a defense to an action. In a well known case decided by the Supreme Court,[4] the defendants had previously been sued by the Securities and Exchange Commission for making false proxy statements. The Commission sought an injunction, and the defendants lost that lawsuit. Subsequently a class of shareholders sued the defendants on the same grounds and sought collateral estoppel for the previous court's finding that the proxy statements had

---

3. *See, e.g., Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971).

4. *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979).

Pt. II       **GENERAL CONCEPTS IN FEDERAL PRACTICE**       § 2.27

been false and misleading. In contrast to defensive nonmutual collateral estoppel, where collateral estoppel is used as a shield to ward off a subsequent claim by a plaintiff who had lost a prior lawsuit, this case was an attempt to use the defendants' prior loss as a sword with which to produce a second unfavorable result for those defendants.

The Supreme Court concluded that, at least sometimes, nonmutual collateral estoppel could be used offensively as well as defensively. However, for collateral estoppel to be applied offensively, the Court directed lower federal courts to examine all the circumstances of a case to ensure that application of collateral estoppel is fair. Specifically, the Court suggested that lower courts examine: (1) whether the plaintiff seeking offensive nonmutual collateral estoppel could have participated in the previous suit; (2) whether the defendant had a fair chance to litigate the issue with knowledge of the fact that the same issue might arise in subsequent litigation; (3) whether the judgment in the litigation for which collateral estoppel is sought was inconsistent with results in any litigation which had taken place still earlier;[5] and (4) whether, in the previous suit, procedural limitations had prevented the defendant from offering some evidence or otherwise defending himself in ways now open in the later litigation.[6]

**Nonmutuality and the United States**

Although the United States is as vulnerable as any party to the application of collateral estoppel when the requirement of mutuality is satisfied, it is settled that nonmutual collateral estoppel (defensive or offensive) may not be applied against the United States.[7]

### § 2.27 Collateral Estoppel—Application to Issues of Law and Fact

Older cases expressed doubt that collateral estoppel was applicable to issues of law as well as fact. While some jurisdictions may still follow

---

**5.** An example of how this situation could occur arises if one posits a one-car automobile accident in which three passengers in the car are injured. If the first passenger sues the driver and alleges that the driver was intoxicated at the time of the accident, the driver might win by introducing into evidence a police report showing that the driver was free of intoxicants. That finding, of course, would not bind the two passengers who had not yet sued. If the second passenger then sued, making the same allegation about intoxication, that passenger might win by demonstrating that the police test for intoxicants in the driver's blood was administered improperly. Thus, if the third passenger waited to sue until he/she was sufficiently healed to participate actively in a lawsuit, offensive nonmutual collateral estoppel might apply to the victory of the second passenger over the driver. Given the fact that the driver had both a prior victory and a prior defeat on the issue of intoxication, it might seem unfair to treat the issue as estopped against the driver in the third lawsuit. Thus, the Supreme Court's approach suggests that in such circumstances no party should be able to claim estoppel, and the parties in the third suit should relitigate the issue of intoxication again.

**6.** *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979).

**7.** *United States v. Mendoza,* 464 U.S. 154, 162, 104 S.Ct. 568, 573, 78 L.Ed.2d 379 (1984).

131

that rule, the clear trend in most circumstances is to apply collateral estoppel to issues of both law and fact.[1]

### § 2.28   Collateral Estoppel—Exceptions to Collateral Estoppel

Even in situations where all the requirements of collateral estoppel are satisfied, it is still possible that additional considerations may make application of estoppel unfair in a particular case. For example, as has already been discussed above, courts are reluctant to impose collateral estoppel in circumstances where the affected party might not reasonably have appreciated the risk of collateral estoppel in subsequent cases. Additionally, if the law or facts of a situation undergo material change between the first lawsuit and the second one, it might be unfair to impose collateral estoppel on issues decided in the first suit.[1]

### § 2.29   Collateral Estoppel—Affirmative Defense: Rule 8(c)

Collateral estoppel, like res judicata, is listed as an affirmative defense under Federal Rule of Civil Procedure 8(c).[1] In theory, affirmative defenses must be raised or waived.[2] However, if a party is seeking to apply nonmutual collateral estoppel offensively, so as to preclude a defendant from relitigating an issue previously decided, such use of collateral estoppel is obviously not a "defense" to a claim and therefore raises no issues that would be governed by Rule 8(c).

### § 2.30   Collateral Estoppel—Relationship to Full Faith and Credit

The command that courts of one jurisdiction must give full faith and credit[1] to the judgments of another jurisdiction applies to matters of collateral estoppel. Thus, if the courts of a jurisdiction where a case was decided would treat an issue in that case as controlled by collateral estoppel, other courts have a duty to give the issue the same status of

---

1. *Montana v. United States*, 440 U.S. 147, 162, 99 S.Ct. 970, 978, 59 L.Ed.2d 210 (1979) (normal rules of collateral estoppel apply to questions of law, provided that both lawsuits involve substantially related claims).

1. *Montana v. United States*, 440 U.S. 147, 159, 99 S.Ct. 970, 976, 59 L.Ed.2d 210 (1979) ("[C]hanges in facts essential to a judgment will render collateral estoppel inapplicable in a subsequent action raising the same issues."); *Commissioner v. Sunnen*, 333 U.S. 591, 601, 68 S.Ct. 715, 721, 92 L.Ed. 898 (1948) (collateral estoppel inapplicable where relevant law changed between first and second proceeding). *But cf. Hickerson v. City of New York*, 146 F.3d 99, 105 (2d Cir.1998), *cert. denied*, 525 U.S. 1067, 119 S.Ct. 795, 142 L.Ed.2d 658 (1999) (failure to offer evidence already available in first suit is not a defense to collateral estoppel in second suit).

1. See also *Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971).

2. *But cf., e.g., Petrocelli v. Daniel Woodhead Co.*, 993 F.2d 27, 29 n. 1 (3d Cir.1993) (affirmative defense not raised in original pleading is not waived if it can be properly raised under Rule 15, governing amendments to pleadings).

1. U.S. Const. Art. IV § 1. See also, 28 U.S.C.A. § 1738.

Pt. II        GENERAL CONCEPTS IN FEDERAL PRACTICE        § 2.30

collateral estoppel as would be accorded by the court that decided the case.[2]

2. See, e.g., Community Bank of Homestead v. Torcise, 162 F.3d 1084, 1087 n. 5 (11th Cir.1998) (noting obligation to use Florida standard for collateral estoppel because prior judgment was rendered in Florida).