**E-FILED**
Tuesday, 19 July, 2005  02:14:09 PM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| J. ROBERT TIERNEY, ANN S. TIERNEY, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | No.04-3138 |
| | ) | **JURY DEMAND** |
| SHERIDAN SWIM CLUB, INC., an Illinois corporation, | ) | |
| DOUG OLSON, ROBERT MEYER, and ROBERT HULTZ, | ) | |
| SARA BUCKMAN, JULIE SCHALLER, and CHARLOTTE | ) | |
| TOURNEAR, Members of the Sheridan Swim Club Inc., | ) | |
| Board in their Individual Capacities, ROBERT ADRIAN, | ) | |
| Member of the Sheridan Board in his official capacity, | ) | |
| ANDREW C. SCHNACK III, BARNEY BIER, and | ) | |
| JON BARNARD in their Individual Capacities, | ) | |
| DENNIS GORMAN, Attorney for The Quincy School District | ) | |
| 172, a political subdivision of the State of Illinois, in his Individual | ) | |
| and Official Capacities, | ) | |
| | ) | |
| Defendants | ) | |

**FIRST  SUPPLEMENTAL   TO  THE  SECOND  AMENDED  COMPLAINT**

### SUPPLEMENTAL COMPLAINT – TABLE OF CONTENTS

| | | PAGE |
|---|---|---|
| I. | Jurisdiction and Venue | 1 |
| II. | The Parties | 1 |
| A. | The Plaintiffs | 1 |
| B. | The Defendants | 2 |
| C. | Other Parties | 3 |
| III. | State Actor Status of Sheridan Swim Club | 3 |
| IV. | Other Acts Which Establish The State Actor Status Of Sheridan | 6 |
| V. | Conduct and Occurances Complaint Of In This Complaint | 8 |
| a. | Background and Protected Conduct | 8 |
| **VI** | **FEDERAL CLAIMS** | 21 |
| 1. | Statutes and Constitutional Provisions Involved | 21 |
| 2. | Claims under 42 U.S.C. § 1983 | 22 |
| Count I | Right of Access to the Courts without Interference or Retaliation | 22 |
| Count II | Right to Freedom of Speech and to Petition the Government Redress of Grievances without Retaliation | 22 |
| Count III | Right of Association without Retaliation | 23 |
| Count IV | Right to Procedural Due Process | 23 |
| Count V | Ratification by Sheridan Swim Club | 23 |
| 3.. | Claims under 42 U.S.C. § 1985 (2 & 3) | 24 |
| Count VI | 42 USC §1985. Conspiracy to Interfere with Civil Rights (2) Obstructing Justice; Intimidating Party, Witness, or Juror | 25 |
| Count VII | 42 USC §1985. Conspiracy to Interfere with Civil Rights (3) Depriving Persons of Rights or Privileges | 26 |
| **VII.** | **STATE COUNTS** | |
| COUNT I | The Acts and Omissions of Defendants constitutes Civil Conspiracy | 27 |
| COUNT II | The Acts and Omissions of Defendants were Willful and Wanton, And Constitutes Intentional Infliction of Emotional Distress | 27 |
| COUNT III | The acts and omissions of Defendants Sheridan, Bier, and Barnard constitutes Intentional Spoliation of Evidence | 27 |
| COUNT IV | The acts and omission of Defendants Sheridan, Buckman, Schaller, Tournear, and Adrian constitutes Breech of Contract | 27 |
| COUNT V | The acts and omissions of Defendants Buckman, Schaller, Tournear, and Adrian constitutes Breech of Fiduciary Duties | 27 |
| VII. | Damages and Relief Sought | 28 |

**FIRST SUPPLEMENTAL COMPLAINT TO THE SECOND AMENDED COMPLAINT**

Now come the Plaintiffs, J. Robert Tierney, Ann S. Tierney, Pro Se, and complaining of the Defendants, SHERIDAN SWIM CLUB INC., ANDREW SCHNACK III, BARNEY BIER, DOUG OLSON, ROBER MEYER, ROBERT HULTZ, *JULIE SCHALLER, SARA BUCKMAN, CHARLOTTE TOURNEAR, ROBERT ADRIAN,* JON BARNARD, and DENNIS GORMAN, and for a claim for relief states: [1]

**I.    Jurisdiction & Venue**

1.      Jurisdiction is founded under 28 U.S.C. §1343 © to hear plaintiff's claims under the Civil Rights Act of 1871, 42 U.S.C. §1983 & §1985.   Supplemental jurisdiction to hear the state claims is founded under 28 U.S.C. §1367 (a).

2.      Venue is founded under 28 U.S.C. §1391. The plaintiffs are residents of Adams County, Illinois, one of the counties comprising the Central District of Illinois.  28 U.S.C. §93 (b). The defendants are residents of Adams County and one is an Illinois Corporation located in Adams County Illinois.

3.      The occurrences complained of occurred on June 24, 2002 and thereafter in the City of Quincy, County of Adams, and State of Illinois.

**II.    The Parties**

**A.    The Plaintiffs**

4.      J. Robert ("Bob") Tierney, Ann S. Tierney, were at all relevant times residents of Adams County, Illinois and resided within the political boundaries of the Quincy School District #172. Ann Tierney is the senior Dean of Students at Quincy Junior High School.  Plaintiffs, and all family members, were at all relevant times stockholders and members in "good standing" of the Sheridan Swim Club, Inc., in Quincy, Illinois.  As a shareholder in the Sheridan Corporation, the Plaintiffs had a vested, financial interest in the operation, assets, and property of the Corporation/Club.  The Tierney family maintained continuous membership in the Sheridan Swim Club from 1986 until their wrongful expulsion on or about April 15, 1999.

**B.    The Defendants**

---

[1]  The Exhibits referred to in this Supplemental Complaint are attached by reference only and are attached to the Second Amended Complaint.  All new and/or relevant paragraphs in this Supplemental Complaint are emphasized by a shaded background and/or italic type.

5. Sheridan Swim Club, Inc. ("Sheridan" or "CLUB") is a closely held, For-profit corporation, located in Adams County, Illinois, organized and obligated to be operated under the laws of the State of Illinois, including but not limited to *The Business Corporation Act of 1983* 805 ILCS 5/2A *et seq.* As an agent of a Public School District, Sheridan is obligated to comply with *The Illinois School Code* 105 ILCS 5/24-24) et seq., and *The Illinois School Student Records Act* 105 ILCS 10/1-10 et seq., and 20 U.S.C. Section 1232g. *Family Educational and Privacy Rights Act* (FERPA). As a "recreational facility" Sheridan is also obligated to comply with *The Illinois Abused and Neglected Child Reporting Act,* 325 ILCS 5/1 et seq (1998) formerly Ill. Rev. Stat. Ch. 23, 2051 et seq. (1975) eff. July 1, 1975. For purposes of this Complaint, Sheridan is a State Actor.

6. Doug Olson ("Olson"), Robert Meyer ("Meyer"), Robert Hultz ("Hultz"), Julie Schaller ("Schaller"), Charlotte Tournear ("Tournear"), Sara Buckman ("Buckman"), and Robert Adrian("Adrian") are past or present members of the Board of Directors of the Sheridan Swim Club, Inc. (hereinafter, collectively referred to as "Sheridan Board"). All are residents of Adams County, Illinois. Board members Olson and Meyer became Board members in March 2001. All Sheridan board members are sued in their individual capacities except for Robert Adrian who is only sued in his official capacity.

7. Andrew C. (Drew) Schnack, III ("Schnack"), has alleged that he was the personal attorney of QHS/Sheridan Swim Coach, Richard Powers ("Powers"). Schnack was also Sheridan Board member from March 1999 until March 2002. Schnack's actions alleged herein were committed as a member of Sheridan Swim Club, acting at the direction of the Sheridan Board of Directors, and/or in collusion with, or at the direction of Dennis Gorman, an employee or agent of the Quincy School District, and in collusion with Bier and Barnard in their individual capacities as Adams County States Attorneys. Schnack is sued in his individual capacity

8. Barney Bier ("Bier") is a resident of Adams County, Illinois, and at all times relevant herein was the Adams County States' Attorney. Bier was also a Sheridan Board member from March 1999 until March 2001. Bier again became a member of the Sheridan Swim Club Board of Directors in March 2004. Bier's actions alleged herein were committed under color of state law while aiding and abetting the misconduct of Andrew Schnack, Sheridan, and the Sheridan Board. The actions of Bier alleged herein were committed while Bier was acting under the authority of his office conferred by state law, but were plainly outside the legitimate course and

scope of his employment duties and beyond his purview, discretion, and jurisdiction per his acknowledged conflicts-of-interest.  Bier is sued in his individual capacities.

9.      Jon Barnard ("Barnard") is a resident of Adams County, Illinois, and, at all times relevant was a local attorney and long time Adams County Assistant State's Attorney, subject to the control and authority of Defendant, Barney Bier.  Barnard is a political crony and protégé of Bier, and a friend and colleague of Schnack.  Barnard's unlawful actions occurred under color of state law as an Adams County Assistant States' Attorney, or while acting in collusion with other defendants as the attorney for Sheridan Swim Club, Inc.  Barnard committed unlawful acts while acting under the authority of his office conferred by state law, but were plainly outside the legitimate course and scope of his employment duties and beyond his purview, discretion, and jurisdiction per his acknowledged conflicts-of-interest.  Barnard is sued in his individual capacities. [2]

10.      Dennis Gorman ("Gorman") was at all relevant times the attorney for the Quincy School District #172 and a resident of Adams County, Illinois.  The actions of Gorman complained of here were committed under color of state law while acting as attorney for the School District. Gorman is sued in his individual and official capacities.

**C.      Other Non-Defendant Parties**

11.      Chet W. Vahle ("Vahle") is an associate circuit judge of the Eighth Judicial Circuit. The acts alleged herein were committed while acting under the authority of his judicial office conferred by state law, but were plainly outside his judicial authority and without any basis of jurisdiction.  Vahle is not named as a Defendant at this point in time.

12.      Quincy School District No. 172 ("School District or QSD")) is a public school district in Adams County, Illinois, organized under the provisions of the Illinois School Code (105 ILCS 5/1-1, et. seq.).  The School District is an educational institution as that term is defined under 20 U.S.C.  §1661©. It is a political subdivision of the State of Illinois, acting under color of state law.  The board of directors of the school district has the power to sue and be sued in all courts and places where judicial proceedings are had. 105 ILCS 5/10-2 (2000).  The School District is not named as a Defendant at this point in time.

---

[2] Defendant Barnard is now the newly elected Adams County States Attorney.  He was elected in November 2004, with the help and public endorsement of Barney Bier, who did not run for re-election.

### III.     State Actor Status of Sheridan Swim Club

13.     There are five tests to determine if a nominally private party has engaged in State Action or is a State Actor.  If any of the five tests are met, then a private party is considered a state actor.

14.     State action exists where there is a "symbiotic relationship" or "nexus" between the private actor and the State.

  a.     Sheridan is a State Actor due to the Symbiotic Relationship and Nexus between Sheridan Swim Club and the Quincy School District #172.
  b.     Sheridan is a State Actor due to the Symbiotic Relationship and Nexus between the Adams County States Attorney, Barney Bier, and Sheridan.

15.     The private party carries on a traditional public function.

  a.     Sheridan is a State Actor since it controls, operates, and carries on a traditional public function – the operation of the Quincy High School Swim Program.

16.     A private party's discriminatory conduct is aggravated in some unique way by the involvement of a governmental authority.

  a.     Sheridan's retaliation against the Plaintiffs is aggravated by the involvement of a governmental authority and/or State Actors including but not limited to:

    i.     The attorney for Quincy School District #172, Dennis Gorman
    ii.     The Adams County State's Attorney Office.
    iii.     The Adams County State's Attorney, Barney Bier.
    iv.     The Adams County Assistant State's Attorney, Jon Barnard.
    v.     The Illinois State's Attorney Appellate Prosecutor.
    vi.     The Adams County Sheriff's Department.
    vii.     Eighth Judicial Associate Circuit Judge, Chet Vahle.
    viii.     The Adams County Circuit Clerk.

17.     The State commands or encourages private discriminatory action.

  a.     State Actors Bier, Barnard, Gorman and the QSD commanded, encouraged, and were involved in the unlawful retaliatory, discriminatory action taken against the Plaintiffs.

18.     The State is entwined in the control and operation of the private actor or the private actor is entwined in the control and operation of a traditional public function.

  A.     Sheridan is entwined in the control and operation of a traditional public function – the Quincy High School Swim Team Program.

    i.     All QHS practices and home meets are conducted at Sheridan Swim Club.

4

ii.   Since 1998, the QSD has immediately hired every new Sheridan Swim Team coach (3) to also be the QHS swim team coach.

iii.  Just prior to the 2003/04 school year, Sheridan unilaterally installed the new Sheridan Swim Team coach as the QHS swim coach for the 2003/04 school year.

iv.   Just prior to the 2003/04 school year, the QSD also hired the spouse of this swim coach as a full time teacher for the 2003/04 school year, despite the layoffs of many teachers, and without complying with the terms of the Collective Bargaining Agreement between the QSD and the Teachers Union.

19.   Description of Sheridan Swim Club and the Genesis of the Symbiotic Relationship between Sheridan and the Quincy School District.

a.    Sheridan Swim Club has an agency relationship with an Illinois public school district.  As an agent of a Public School District, Sheridan is obligated to comply with the *Illinois School Code* 105 ILCS 5/24-24) et seq., and *The Illinois School Student Records Act* 105 ILCS 10/1-10 et seq., and 20 U.S.C. Section 1232g. *Family Educational and Privacy Rights Act* (FERPA).  Sheridan Swim Club also meets the definition of a "recreational facility" according to the provision of *The Illinois Abused and Neglected Child Reporting Act,* 325 ILCS 5/1 et seq.

b.    Sheridan was originally incorporated as a Not-for-profit corporation, but according to Sheridan Board minutes, at some point in time prior to April 1999, Sheridan began operating and representing itself as a For-profit corporation.  Sheridan has sold shares to CLUB members under the representation that Sheridan was a For-profit Corporation.

c.    *Sheridan is by policy and practice a municipal pool open to any and all.  Since 2002, Sheridan has indiscriminately solicited new members by advertising over the <u>public</u> airwaves, Internet, print media, and public roadside billboards, without asserting or stating any caveat or disclaimer regarding membership eligibility standards or restrictions.*

d.    *During the summer months of 2005 members of the public utialized the facilites of Sheridan almost on a daily basis.*

e.    Sheridan is also tinged with public stature since any member of the public can join the Sheridan Swim Team and the Sheridan Swim Team Booster Club without becoming a member of the Club.  Members of the public can also take swim lessons at Sheridan and utilize CLUB facilities without even joining Sheridan Swim Team or the Club.  According to the Sheridan Club By-Laws, any member of the public can utilized the Club facilities for year-round or summertime use, without becoming a Shareholder in the Club.  Only Shareholders can vote for Board members, yet Shareholders can maintain their voting rights without paying the yearly dues required of persons who actually utilize the facilities.

f.    Sheridan Swim Club is also tinged with public stature since it is the site of, and controls a, *traditional public functions,* otherwise open to the public (as a matter of law) for participants and spectators alike.  Sheridan is also member of the River Country swim league comprised of area YMCA's and municipal park district pools.

g.      Sheridan is a member Club of Illinois Swimming Inc. and USA Swimming Inc. USA Swimming Inc. is the National Governing Body for swimming in the United States of America and is the organizational body behind the US Olympic Swim Team.  USA Swimming Inc. has affiliated Local Swimming Committees (LCS) and member Clubs in all 50 states.  Illinois Swimming Inc. is a Local Swimming Committee for USA Swimming Inc.  Sheridan Swim Club is within the geographical boundaries of Illinois Swimming Inc.

h.      The Sheridan Swim Team is registered with, and pays dues to Illinois Swimming Inc., and USA Swimming Inc.  Members of the Sheridan Swim Team register with, and pay dues to Illinois Swimming Inc. and USA Swimming Inc. in order to compete as a Sheridan Swim team member in meets which are sanctioned by USA Swimming Inc. However, the swim team is an organization of the CLUB under the control of the Sheridan Board of Directors, which has the power to review the activities of the Swim Team.

i.      Two (2) School District employees and the Adams County State's Attorney have served as President of the Sheridan Board over the past 15 years.  Another School District employee has simultaneously served as President of the Sheridan Swim Team Booster Club and as President of the Quincy High School Swim Team Booster Club.  At least one Quincy School District employee has been on the Sheridan Board every year for the past 10 years.  In some years, 2 or more School District employees have been Sheridan Board members.

20.    The Plaintiffs maintained year-round membership status in Sheridan Swim Club since 1986 until their wrongful expulsion in 1999.  The Plaintiffs were also shareholders in this corporation with specific shareholder property rights such as notice, fair hearing.  These due process rights are further enhanced since Sheridan controls and operates a *traditional public function* whose activities and events are open to the public.

**IV.    Additional Acts Which Establish The State Actor Status Of Sheridan**

21.    Pursuant to the litigation in the 8th Circuit Court per Complaint 2002-L-12, between the Plaintiffs and Sheridan, Plaintiffs had subpoenas for witness appearance and document production, lawfully served on four (4) of the individual Sheridan defendants (parties), and a non-party witness.  Employees of the Adams County Sheriff's Department served these subpoenas.

22.    Prior to these Hearings, Defendants Bier and Barnard took possession of Sheridan Corporate Records and other documents and stored these documents in the Office of the Adams County State's Attorney.

23.    Since March 2001, including the entire period of the State Court litigation, Defendant Bier held no office or official capacity at Sheridan Swim Club, and had no right to possess, have access to, and/or control access to official Sheridan Corporate documents and records.

24.    Prior to the Hearing scheduled for June 2002, Defendant, Barney Bier, using the power and authority of his office, and acting under color of state law as the Adams County States Attorney, contacted, and/or had his [Bier] Administrative Assistant, Cheryl Lewis, acting under color of State law, contact the Adams County Sheriff's Dept., in successful attempts to find out what individuals were being served with subpoenas by the Plaintiffs.

25.    In response to these contacts by Defendant Bier and Lewis, one or more employees of the Adams County Sheriff's Dept. (ACSD) acting within the course and scope of their employment and under color of state law, while in the process of serving subpoenas on the witnesses, also instructed one or more of the witnesses to contact Jon Barnard.

26.    Bier's misconduct, while acting in multiple capacities, gave rise to multiple conflicts of interests and misconduct in office by a public official.

27.    Bier was a Defendant in a Federal Lawsuit (along with Schnack and Sheridan), a Sheridan Board member, and the Adams County States' Attorney.

28.    This misconduct by Defendant Bier, acting under the color of state law, represents the abuse of public office by a public official in order to aid private parties in litigation, in which the Office of the Adams County States' Attorney has no interest or standing in view of Bier's acknowledged conflicts-of-interest as a defendant in that litigation.

29.    This conduct again establishes a symbiotic relationship between Sheridan/Sheridan Board and the aggravating involvement of State Actors.

30.    During the pendency of the State Court litigation, Defendant Barnard used the power and authority of his State Office to gain access to and obtain copies of the raw criminal offense reports from files in the Adams County Sheriff's Department, which pertained to the Plaintiffs complaints of obscene, harassing phone calls made by defendant Schnack.

31.    Gorman, acting under color of state law as attorney for the QSD, interfered with witnesses who were subpoenaed to appear as material witnesses during the hearings on June 24, 2002.

32.    Despite the fact that Gorman was subpoenaed and appeared to testify, his law firm allegedly provided legal representation to numerous material witnesses including persons who

were employees of the QSD, as well as to witnesses who were not employees of the QSD. Based on belief and understanding, the QSD paid the legal fees of all these witnesses.

33.   Many of these witnesses failed to appear as required by subpoenas.  One witness unlawfully refused to appear at the hearing on June 24, 2002, per instructions from Defendant Gorman.

34.   Gorman, acting under color of state law, provided false and misleading testimony on material issues regarding his disclosure of information from the Schildt report, and regarding his communications with Schnack and Vahle about the complaints against Powers.

35.   Gorman, acting under color of state law and pursuant to he hearings on June 24, 2002, failed to produce and/or disclose the existence of document(s) that were subject to disclosure.

36.   Gorman, acting under color of state law, and the QSD, unlawfully interfered with and prevented his deposition, and the depositions of former QSD School board member, James Citro.  Both individuals had received subpoenas to appear for a deposition pursuant to Pursuant to the litigation in the 8th Circuit Court based on Complaint 2002-L-12, and both refused to appear.

37.   Gorman actions were intended to retaliate against the Plaintiffs, interfere with Plaintiffs access to the courts, and obstruct the judicial process and the due course of justice.

38.   The Defendants enlisted the aggravating involvement of State Actor, Judge Chet Vahle in order to prevent depositions.

39.   Judge Vahle engaged in the unlawful, unauthorized practice of law by filing a Motion in a pro se capacity in State Court in an attempt to prevent his deposition, as well as the deposition of another material witness.  As part of this Motion, Vahle also improperly and falsely advised the Court of the applicability of res judicata regarding the pending Complaint.

40.   Circuit Court Judges in the State of Illinois are barred by Illinois Supreme Court Rules from engaging in the practice of law.

**V.  The Conduct And Occurrences Complained Of In This Complaint**

   **A.  Background and Protected Conduct**

41.   On or about June 24, 1999, the Plaintiffs filed an action in this Court (99-3149) against Sheridan Swim Club and Sheridan Board Members (hereinafter referred to as "Sheridan"), Quincy School District #172 and various QSD employees, agents, and QSD Board members (hereinafter referred to as "QSD").

42.    In February 2002, the Plaintiffs filed a Complaint in the Circuit Court of the Eighth Judicial Circuit Adams County, State of Illinois (2002-L-12).

43.    This State Court Complaint only brought claims against Sheridan after the Federal Court declined further subject-matter jurisdiction for remaining Claims against Sheridan and related defendants.

44.    Schnack and Bier retained their close friend, Adams County Assistant States Attorney, Jon Barnard, as the attorney-of-record for all of the defendants.

45.    On June 24, 2002, and thereafter, hearings pursuant to a Motion for Preliminary Injunction Hearings were held in State Court.

46.    Neither the Quincy School District (QSD) or any employees or agents were named as defendants in this State Court litigation.  However, QSD attorney, Dennis Gorman and several QSD employees were subpoenaed to testify at the hearings as material and/or rebuttal witnesses.

47.    Despite the fact that Gorman was subpoenaed to testify and did in fact testify, his law firm allegedly provided legal representation to numerous material witnesses including persons who were employees of the QSD as well as to witnesses who were not employees of the QSD. Based on belief and understanding, the QSD paid the legal fees of all these witnesses.

48.    Many of these witnesses failed to appear as required by subpoenas.  One witness unlawfully refused to appear at the hearing on June 24, 2002, per instructions from Defendant Gorman.

49.    Pursuant to the Hearing on June 24, 2002, the Court had ordered the Sheridan defendants, Gorman, and the QSD, to produce numerous documents at the Hearing, including all documents/letters pertaining to the Plaintiffs' complaints to the QSD made prior to April 15, 1999, regarding the improper conduct of QHS Swim Coach, Richard Powers.

50.    In February 1999, parents of QHS students had reported the "massages" to school officials.  In response, QSD employees Nick Schildt and Terri Conboy conducted interviews of two QHS female swimmers who had been improperly "massaged" by Powers.  Schildt and Conboy then prepared a confidential report (Schildt/Conboy report).

51.    This report was given to QSD attorney, Dennis Gorman, on or about March 1, 1999.

*52.*    QSD attorney, Dennis Gorman, unlawfully disclosed the Schildt/Conboy report to Schnack and Judge Chet Vahle shortly after <u>March 1, 1999</u>. [3]

53.    In response to the disclosure of this information in the Schildt Report, Schnack wrote letters on <u>March 5, 1999</u>, and <u>March 29,1999</u>, and sent them to Gorman.  Judge Vahle wrote a letter on 8th Circuit judicial stationary, made false and defamatory statements, and sent the letter to 3 QSD officials who had supervisory responsibility over Powers.

54.    The March 5 letter from Schnack is dated just 5 days after the "massages" were reported to the Quincy School District during private privileged conversation protected by 20 U.S.C. Section 1232g. *Family Educational and Privacy Act* (FERPA), and The *Illinois School Student Records Act* 105 ILCS 10/1 et seq.

55.    Schnack's letter dated <u>March 5</u>, 1999 states the following:

" Dear Dennis:

As a close personal friend and attorney of Rick Powers, coach of the boys and girls swimming teams at Quincy High School, it has come to my attention that accusations are being made about improper contact with girl swimmers last fall.  I have talked personally to Rick about this and he categorically denies it.  I have also talked with Judge Chet and Barb Vahle concerning the alleged incident.  The fact of the matter is that prior to the Western Big Six conference meet, a get together was held at the Vahle home.  Chet and Barb Vahle were present.  The suggestion was made that the girls receive rub downs to loosen up for the meet.  This is done on a regular basis at every big meet I have ever attended and is common practice in swimming.  At the suggestion of the Vahles, the team went downstairs and anyone who wanted a massage or rub down was given one.  It was voluntary, it was totally in keeping with good swimming coaching practices and absolutely nothing was wrong with this.  Apparently this is being used now to somehow attack Rick.  As Rick's attorney, I have advised him that if these statements are being made, they could form the basis for a lawsuit.  Rick has authorized me to request from you any documentation or complaints in writing that you or the school board has concerning this matter so that we can be properly informed and properly respond to it.  Obviously, if this is untrue, I apologize for taking your time.  If it is true, we consider it exceptionally serious and would like to get to the bottom of it."   *(A true and correct copy of Schnack's letter of March 5, 1999, is attached hereto as Exhibit A-1.)*

---

[3] Gorman and the QSD have admitted in Federal Court documents that the Schildt/Conboy report is subject to 20 U.S.C. Section 1232g. (FERPA) restrictions and protection.

56.     This *Smoking Gun* letter from Schnack to QSD attorney, Dennis Gorman dated March 5, 1999, had been unlawfully concealed from the Plaintiffs and the Federal Court during Central District Case 99-3149. [4]

57.     Schnack's letter makes several categorically false statements concerning the events, circumstances, and propriety of these "massages".

    a. According to sworn testimony by Gorman during State Court hearings, Judge Chet Vahle was <u>*not*</u> present in his home the evening of the "massages", and knew nothing about the "massages" until contacted by Dennis Gorman in March 1999.

    b. Schnack's letter establishes the fact that Schnack and his "close personal friend", QHS swim coach Powers intended to pursue some kind of retaliatory response against those who reported the improper "massages".

    *c.* Schnack's letter establishes the fact that Gorman and the QSD were well aware of the retaliatory intentions of Schnack and QHS coach Powers.

    *d.* Schnack's letter established the fact that Schnack received confidential information as a result of the unlawful acts of (Gorman) State Actors.

    e. Per the statements or other Illinois High School Swim coaches, and a professor of Kinesiology at the University of Illinois, who is an expert on aquatic massage therapy, the "massages" were considered at the very least to be "totally inappropriate", and had no therapeutic or pre-competition benefit. *(See Illinois State Police reports and the letter from Dr. Bell attached hereto as Exhibits C 1-3)*

*58.*     At Initial Disclosure during the Federal Court litigation 99-3149, the QSD had produced numerous documents and letters from other parents and students, about the complaints about Powers' conduct, including Schnack's letter of <u>March 29, 2003</u>. [5]

59.     Schnack's letter of <u>March 29</u>, 1999, states the following:

    "Dear Dennis:

---

[4] The District Court dismissed all federal claims against Schnack, Vahle, Gorman, and Powers after Initial Disclosure, but before any discovery was allowed, and these defendants were never deposed during the pendency of 99-3149. These letters and incidents established triable issues of fact regarding the "aggravating involvement" by State Actors (Gorman/QSD, Judge Vahle, and QHS swim coach Powers), in the retaliation against the Plaintiffs.

[5] During 2 plus years of the Federal Court litigation between June 1999, and October 2001, Sheridan Swim Club only produced one (1) sheet of paper in response to Initial Disclosure and several Motions to Compel Disclosure. This document was the Sheridan Board minutes from April 1999, which was produced at Initial Disclosure in March 2000. No other Board minutes or documents of any kind were ever produced by Sheridan, despite the fact that the Sheridan Board held numerous discussions at Board meetings from at least September 1998 through June 1999, about the student activities of Meryl Tierney in her capacity as a student at Quincy High School.

I just thought you would like to know that as of Thursday, March 25, 1999, Meryl Tierney is now swimming with Sheridan Swim Team under Coach Rick Powers. I don't know what affect this would have on his previous complaints but would dearly love to get Rick's contract signed ad get the contract signed between the school district and Sheridan. I have a couple of thoughts on the that I think would be advantageous to the school district, especially if we can get this done on a long term basis. If you get a chance, give me a call."

*(A true and correct copy of Schnack's letter of March 29, 1999, is attached hereto as Exhibit A-2.)*

60.    This March 29, letter also contains several false and misleading statements concerning Meryl Tierney's swimming activities at Sheridan.

    a.   Schnack's statement that "Meryl Tierney is now swimming with the Sheridan Swim Team under coach Rick Powers" was and is categorically false.

    b.   Schnack's letter of March 29, 1999, was in fact a follow-up letter to his letter dated March 5, 1999.

61.    In furtherance of a conspiracy between Schnack, Gorman/QSD, Bier, and Barnard, and pursuant to the hearings on June 24, 2002, and thereafter, these names Defendants (acting under color of state law), conspired;

    a.   to violate the constitutionally protected rights of the Plaintiffs,
    b.   to interfere with the Plaintiffs' rights and attempts to petition the government and the courts,
    c.   to retaliate against the Plaintiffs for petitioning various State Actors for redress of grievances, for filing a lawsuit in federal and state courts, and for engaging in free speech on issues of public concern,
    d.   to obstruct the due course of justice and the judicial process,
    e.   to obstruct, hinder, and prevent the investigation and prosecution of Schnack's criminal offenses, by constituted authorities of the State of Illinois.

by committing the unlawful acts as alleged in ¶¶'s 61 – 70.

62.    The defendants listed in ¶61 breached Courts orders and <u>again</u> failed to produce and/or disclose the existence of Schnack's letter of <u>March 5, 1999</u>, during the hearings on June 24, 2002, and thereafter.

63.    In furtherance of this conspiracy and pursuant to the hearings on June 24, 2002, and thereafter, the above named Defendants gave false, misleading, and evasive testimony on material issues.

12

64.    During the hearing on June 24, 2002, Gorman gave false, misleading, and evasive testimony. Gorman testified under color of state law in his capacity as the attorney for the Quincy School District.

65.    Gorman provided false and misleading testimony on material issues regarding his disclosure of information from the Schildt report, and regarding his communications with Schnack and Vahle about the complaints against Powers.

66.    Following Gorman's testimony, and armed with the knowledge that Gorman and the QSD did not and would not produce Schnack's letter of March 5, 1999, Barnard called Defendant Schnack to the witness stand and unlawfully suborned false testimony on material issues.

67.    In response to Barnard's questions, Schnack repeatedly testified that he did not have any knowledge of any complaints about Powers and the "massages", at the time he (Schnack) made accusations against the Plaintiffs and initiated the retaliation against the Plaintiffs at the Sheridan Board meeting in April 1999.

68.    Schnack testified over a 2 day period and consistently repeated this false testimony in response to direct examination, cross-examination, and in response to direct questioning by the trial Judge regarding Schnack's knowledge of any complaints about the "massages" at the time of the Sheridan Board meeting in April 1999.

69.    Schnack also falsely testified that he had no knowledge of the *Schildt/Conboy* report until the State court hearings in June 2002.

70.    Defendant Bier also testified during these hearings and was present during Schnack's false testimony, but took no action regarding Schnack's perjury.

71.    This false, misleading, and evasive testimony by Schnack and Gorman, coupled with their withholding of documents fatally afflicted the Plaintiffs attempts to petition the Courts for redress of grievances.

72.    On or about October 17, 2002, the Plaintiffs learned of the existence of Schnack's letter of March 5, 1999.

73.    The next day on October 18, 2002, in furtherance of a conspiracy between Gorman, the QSD, Schnack, and Sheridan; Gorman *tipped off* Barnard and Bier that the Plaintiffs had learned of the existence of Schnack's letter of March 5, 1999.

13

74.　　On or about <u>October 18,</u> 2002, after learning that the Plaintiffs had discovered Schnack's letter of March 5, 1999, Defendants Bier, Barnard, and Gorman (acting under color of state law), conspired;

    a.　　to violate the constitutionally protected rights of the Plaintiffs,

    b.　　to interfere with the Plaintiffs' rights and attempts to petition the government and the courts,

    c.　　to further retaliate against the Plaintiffs for petitioning various State Actors for redress of grievances, for filing a lawsuit in federal and state courts, and for engaging in free speech on issues of public concern,

    d.　　to obstruct the due course of justice and the judicial process,

    e.　　to obstruct, hinder, and prevent the investigation and prosecution of Schnack's criminal offenses, by constituted authorities of the State of Illinois.

74b.　　In furtherance of this conspiracy, the defendants identified in ¶74 engaged in the following unlawful acts as alleged in ¶¶'s 73-82:

    a.　　On or about <u>October 18,</u> 2002, Bier contacted Norb Goetten, the Director of the Office of the State's Attorney Appellate Prosecutor, and reached an agreement with Norb Goetten, for the Appellate Prosecutor to *again* unlawfully take possession of the case files and evidence pertaining to *another* criminal offense (perjury) complaint against Schnack.

    b.　　After reaching this agreement with Goetten, Bier filed a Motion for the Appointment of a Special Prosecutor to investigate and prosecute a charge of perjury against Defendant/attorney Schnack, pursuant to 8th Circuit Court Case No. 2002-MR-98. *(A true and correct copy of this Motion and case file 2002-MR-98 is attached hereto as Exhibit B)*

    c.　　Bier obtained a Court Order appointing the Office of the State's Attorney Appellate Prosecutor to investigate and prosecute a charge of perjury against Defendant Schnack. *(See Exhibit B-2.)*

    d.　　On or about <u>October 18,</u> 2002, Bier breached the terms of the Court order, and secretly filed these court documents in a case file with the Adams County Circuit Clerk under 8th Circuit Court Case No. 2002-MR-98, with the intent to conceal existence of the case, and to obstruct the due course of justice and the judicial process. *(See Exhibit B.)*

    e.　　On or about <u>October 18,</u> 2002, Bier unlawfully instructed the Circuit Clerk to classify Case No. 2002-MR-98 as an "eavesdropping" or "wiretap" case in order to conceal the existence of the case file from public knowledge, and to obstruct the due course of justice and the judicial process.  *(See Exhibit B-3.)*

    f.　　Bier subsequently and unlawfully ordered the Circuit Clerk to "impound" public records in an unlawful attempt to conceal the existence of Case No. 2002-MR-98, and to obstruct the due course of justice and the judicial process and deny any access to public records subject to disclosure per the Freedom of Information Act. *(See Exhibit B-4.)*

14

g.  The State's Attorney Appellate Prosecutor breached provisions of 55 ILCS 5/3 *Counties Code State's Attorney*, and the terms of the Court Order of October 18, 2002, and accepted possession and control of the evidence pertaining to Schnack's perjury offense, took no action on the perjury offense, and *buried* the case file within the bowels of this State agency, along with the previous criminal offense complaints against Schnack, which Bier had also unlawfully placed under the control and possession of the Appellate Prosecutor. [6]

h.  Per the orders of Bier, Case No. 2002-MR-98 remained unlawfully concealed and impounded until November 2004, when judicial intervention by the Chief Judge of the 8th Judicial Circuit forced disclosure of the case file. *(See Exhibit B-5.)* [7]

i.  Barnard, Bier, and Gorman collectively and unlawfully breeched numerous provision of Articles VII. Illinois Rules of Professional Conduct (for attorneys) including but not limited to Rules 1.7, 1.13, 1.16, 3.3, 3.4, 3.7, 3.8, 4.1, 4.4, 8.3 & 8.4.

j.  Barnard, Bier, and Gorman failed to report Schnack's perjury offense to the State Court, or any other Court, party, or regulatory agency.

k.  During the pendency of 8th Circuit Court case 2002-L-12, Barnard continued to unlawfully provide legal representation to Schnack, <u>and</u> all the other defendants, including Sheridan Swim Club, Inc.

74c.  Shortly after obtaining Schnack's letter of March 5, 1999, the Plaintiffs obtained permission from the State Court to engage in discovery activities, and scheduled the taking of several depositions including the depositions of Judge Chet Vahle and Barb Vahle.

75.  The Plaintiffs specifically requested the depositions of Judge Chet Vahle and Barb Vahle since Schnack made prominent mention of alleged conversations with the Vahles in the letter of March 5, 1999.

76.  In furtherance of a conspiracy, the Defendants enlisted the aid of Judge Chet Vahle in order to prevent the depositions of Judge Chet Vahle and another material witness.

---

[6] This was the <u>third</u> criminal offense perpetrated by attorney Schnack between 1999 and 2002 against the Tierney family that Bier unlawfully 'buried' with the Office of the State's Attorney Appellate Prosecutor.  The Appellate Prosecutor unlawfully accepted control and possession of these previous criminal complaints and evidence, in breech of 55 ILCS 5/3 *Counties Code State's Attorney*.  The Appellate Prosecutor failed to take any action regarding any investigation or prosecution of Schnack's criminal offenses, and also turned a blind eye to Bier's concealment of police criminal offense reports relating to Schnack's criminal acts.

[7] The Plaintiffs learned of the existence of 8th Judicial Circuit Case No. 2002-MR-98 in November 2004, and were forced to obtain the judicial intervention of 8th Circuit Chief Judge Brownfield in order to gain access to the Case file (See Exhibit B 1-6).

77.    In furtherance of a conspiracy, Judge Vahle engaged in the unlawful, unauthorized practice of law, by filing a Motion in a pro se capacity in State Court in an attempt to prevent his deposition, as well as the deposition of another material witness, Barb Vahle.  As part of this Motion, Vahle also improperly and falsely advised the Court of the applicability of *res judicata* regarding the pending State Court Complaint.  [8]

78.    After the State Court denied Vahle's Motion, Barnard unlawfully obstructed, hindered, and prevented the depositions of the Vahles as well as the deposition of other material witnesses. Barnard told these witnesses not to appear for their depositions.

79.    In furtherance of a conspiracy, several critically important Sheridan corporate records were concealed and/or destroyed while in the custody of Bier and Barnard, including but not limited to Sheridan Board minutes from several Sheridan Board meetings.

80.    In furtherance of a conspiracy, Barnard, Bier, and Schnack approached Sheridan Board members, Defendants Olson, Meyer, and Hultz, to advise and encourage them to deny any attempts by the Plaintiffs or others, to obtain a Sheridan Youth Membership for Plaintiffs' 12 year old son, Case Tierney, unless the Plaintiffs agreed to drop all the lawsuits, and also agree not to pursue any other legal remedies over the new causes of action.

81.    Defendants Barnard, Bier, Olson, and Meyer conspired to withhold information from the other Sheridan Board members regarding the criminal (Perjury) offenses of Schnack.

82.    After learning that the Plaintiffs had become aware of Schnack's letter of March 5, 1999, and although the QSD was not a party in the State Court litigation, the QSD suddenly refused to engage in any further settlement discussions over the pending Federal litigation (99-3149), unless the Plaintiffs agreed to settle their State Court litigation against Sheridan, and also agree not to pursue any other legal remedies over the new causes of action.

83.    In February 2003, Defendant Doug Olson was deposed pursuant to the State Court Complaint, while in the presence of his attorney, Defendant Barnard.

84.    During this deposition, Olson testified that in January of 2003, he (Olson) disclosed to Adams County State's Attorney, Bier that Schnack had in fact used the Olson's cell phone to make an obscene, harassing phone call to the Plaintiffs home in December 1999.

---

[8] Circuit Court Judges in the State of Illinois are barred by Illinois Supreme Court Rules from engaging in the practice of law.

16

85.    Olson testified that Schnack made the phone call while in a public place, and that Schnack's statements were overheard and witnessed by at least 5 other adult witnesses including Doug and Debbie Olson.

86.    Olson testified that Schnack made the obscene phone call during a conversation and comments by Schnack about the Federal lawsuit (99-3149) involving the Plaintiffs, Sheridan, and QHS swim coach, Powers.

87.    Olson further testified that he (Olson) made a phone call to Schnack when an Adams County Sheriff's Deputy came to the Olson's home in December 1999, pursuant to a criminal investigation of the harassing phone call made to the Plaintiffs.

88.    Olson also testified that it was Schnack who spoke on the phone with the Adams County Sheriff's Deputy. [9]

89.    According to the Deputy's report, Olson and his wife Debbie, refused to divulge the name of the person who made the phone call to the Plaintiffs, and that Schnack informed the Deputy that he (Schnack) was the Olson's attorney, and that he (Schnack) had instructed the Olsons not to provide any information to the Deputy concerning the phone call under investigation.

90.    In January 2000, the Sheriff's Department turned over all investigation reports of the harassing phone calls to the Adams County States' Attorney, Barney Bier. (Bier was also a Sheridan Swim Club board member and Board President at this time).

91.    After the investigation reports were turned over to Defendant Bier in December 1999, the Plaintiffs petitioned the Adams County States' Attorney [Bier] for redress of grievances, by sending a letter to Defendant Bier, wherein the Plaintiffs requested an investigation and prosecution of all parties involved in the harassing, obscene calls made to the Plaintiffs.

92.    In furtherance of a conspiracy, to obstruct, hinder, and prevent any investigation or prosecution of Schnack's criminal offenses, Defendant Bier unilaterally and unlawfully transferred control and possession of these criminal offense complaints to the State's Attorney Appellate Prosecutor in breech of 55 ILCS 5/3 *Counties Code State's Attorney*.

---

[9] Paragraphs 50-60 and 90–95 are not listed as causes of action for claims against the Defendants in this complaint, but listed to provide background on this issue since it is an ongoing matter with State &/or Federal Law Enforcement Agencies.  Other paragraphs in this complaint may also be listed to provide background or historical context <u>for new causes of action</u> for similar claims previously asserted.

93.    In furtherance of a conspiracy to obstruct, hinder, and prevent the investigation and prosecution of Schnack's criminal offenses, the Appellate Prosecutor agreed to unlawfully take possession and control of the case file and evidence, and take no further action.

94.    In furtherance of a conspiracy, Bier also unlawfully removed all pages of the criminal incident reports that described Schnack's criminal actions.  These missing pages comprised the bulk of the file and were crucial and essential to any investigation, prosecution, or other judicial proceeding.

95.    No State or Federal law provides a cloak of immunity that allows Bier "discretion" to violate the constitutionally protected rights of the Tierneys, especially when Bier had acknowledged that he had no discretionary jurisdiction over the matter.

96.    As a result of Olson's deposition of <u>February 2003</u>, both Bier and Barnard possessed new evidence of this criminal conduct of Schnack.

97.    Bier and Barnard, acting under of color of state law, again conspired:

    a.   to violate the constitutionally protected rights of the Plaintiffs,
    b.   to interfere with the Plaintiffs' rights and attempts to petition the government and the courts,
    c.   to further retaliate against the Plaintiffs for petitioning various State Actors for redress of grievances, for filing a lawsuit in federal and state courts, and for engaging in free speech on issues of public concern,
    d.   to obstruct the due course of justice and the judicial process,
    e.   to obstruct, hinder, and prevent the investigation and prosecution of Schnack's criminal offenses, by constituted authorities of the State of Illinois.
    f.   to obstruct, hinder, and prevent an investigation by constituted authorities of the State of the harassing phone calls directed toward the Tierney family by Schnack and the Olsons.
    g.   to obstruct, hinder, and prevent an investigation by constituted authorities of the State into the harassment and intimidation of the Plaintiffs in a Federal lawsuit.

*98.*    In furtherance of a conspiracy, Defendants Bier and Barnard unlawfully concealed this new evidence (Olson deposition) of the criminal conduct of Schnack, and failed to seek the appointment of a special prosecutor to investigate and prosecute these criminal offenses of Schnack, as required by 55 ILCS 5/3 *Counties Code State's Attorney.*

99.    Bier's misconduct, gave rise to multiple conflicts of interests and misconduct in office by a public official.  Bier was a Defendant in a Federal Lawsuit (along with Schnack and Sheridan), a former Sheridan Board member, and the Adams County States' Attorney.

100.    This misconduct by Defendant Bier, acting under the color of state law, represents, at least, the abuse of public office by a public official in order to aid private parties in litigation, in which the Office of the Adams County States' Attorney has no interest or standing in view of Bier's self-acknowledged conflicts-of-interest.

101.    These actions of Bier and Barnard again establishes a symbiotic relationship between Sheridan/Sheridan Board and State Actors.

102.    Defendants Bier and Barnard engaged in willful and wanton misconduct under color of state law on behalf of Schnack, and Sheridan Swim Club.  Bier and Barnard engaged in renegade conduct far outside the legitimate course and scope of their employment duties.

103.    Bier and Barnard obstructed, hindered, and prevented criminal investigations and prosecution by engaging in acts that were clearly beyond their purview, discretion, and jurisdiction, and were in breech of 55 ILCS 5/3 *Counties Code State's Attorney.*

104.    In May 2003, and on subsequent occasions, Plaintiff Robert Tierney engaged in free speech on issues of public concern with an investigator with the Illinois Attorney General's Office, regarding the actions of Bier, Barnard, Schnack, and others.

105.    Bier, Barnard, and Schnack learned of this free speech and further conspired to retaliate against the Plaintiffs through the retaliatory actions of Sheridan Swim Club against the Tierney Family.

106.    In May and June of 2003, the Sheridan Board, acting in furtherance of a conspiracy and upon the instructions and encouragement of Bier, Barnard, and Schnack, and without just cause or the due process provided for by Sheridan By-Laws and Constitution, denied all attempts by the Plaintiffs and others to obtain a Sheridan Youth membership for Case Tierney for the summer of 2003, unless the Plaintiffs agreed to drop all pending lawsuits and also agree not to pursue any other legal remedies over the new causes of action.

107.    In March 2004, with the assistance of Defendant Olson, Bier once again became a member of the Sheridan Swim Club Board of Directors, while Defendant Olson remained a board member in breech of Sheridan By-Laws and Constitution.

108.    Based on information and belief, at a Sheridan Board meeting on or about June 21, 2004, Bier and Olson concealed their conflicts of interest from some other Sheridan Board members, and once again urged the Sheridan Board to deny a Youth membership or any membership to the

19

Tierneys, unless the Plaintiffs agreed to drop all lawsuits, and also agree not to pursue any other legal remedies over the new causes of action.

109.    On or about June 21, 2004, the Sheridan Board acting again without just cause or due process provided for by Sheridan By-Laws and Constitution, denied all attempts by the Plaintiffs and others to obtain a Sheridan Youth membership or any membership for the Tierneys.

*109b.   In March 2005, Defendant Bier became President of the Sheridan Board of Directors, despite his irreconcilable conflicts of interests and in breech of his fiduciary duties to Sheridan Swim Club, Inc.*

    *a.    In May 2005, Plaintiffs applied for a Sheridan Membership.*

    *b.    On or about June 16, 2005, the Plaintiffs were informed by Sheridan Board member, Robert Adrian that a Sheridan Youth Membership was approved for the Plaintiffs.*

    *c.    On or about June 20, 2005, the Plaintiffs' son Case Tierney, utilized the facilities of Sheridan Swim Club per the Plaintiffs' Sheridan Youth Membership.*

    *d.    On or about June 21, 2005, the Sheridan Board acting again without just cause or due process provided for by Sheridan By-Laws and Constitution, terminated the Plaintiffs' Sheridan Membership.*

    *e.    On or about June 22, 2005, the Plaintiffs were informed by Sheridan Board member Robert Adrian that the Youth Membership was terminated.*

    *f.    On or about July 1, 2005, the Plaintiffs were informed by Sheridan Board member, Robert Adrian, that all lawsuits against Sheridan Swim Club and all past and present Sheridan Board members, had to be dropped if the Plaintiffs wanted a Sheridan Membership.*

    *g.    Defendant Bier breached his fiduciary duties, and participated in all discussions and Board votes regarding the Tierney's membership status, and provided false and misleading information to other Sheridan Board members in retaliation against the Plaintiffs.*

    *h.    Defendant Bier was joined in this retaliatory action by Defendants and Sheridan Board members, Adrian, Buckman, Schaller, and Tournear.*

*110*.    Defendants Sheridan/Sheridan Board, and Schnack, retaliated against the Plaintiffs for petitioning the Courts for redress of grievances, and for filing a lawsuit in State Court, violated

the constitutionally protected rights of the Plaintiffs to petition the Courts for redress of grievances without interference.

111.   Defendants Schnack, Gorman, Bier, and Barnard conspired:

   a.   To intentionally destroy and/or withhold evidence,
   b.   To give false, misleading, and evasive testimony that was intended to obstruct the judicial process, and the due course of justice,
   c.   To fatally afflict the Plaintiff's attempt to petition the Courts for redress of grievances and for judicial intervention.

112.   No State or Federal law provides a cloak of immunity that allows these defendants "discretion" to violate the constitutionally protected rights of the Plaintiffs.

113.   Sheridan is liable for the actions of the individual Sheridan Board members, Olson, Meyers, and Bier (as of March 2004), the actions of its employees, and for the actions of CLUB members who acted in conspiracy with Board members.

114.   The actions of the Sheridan Board members were performed in their individual and official capacities and for their personal benefit, and were conducted intentionally, maliciously, and with willful and wanton disregard for the rights of the Tierneys.

115.   These actions by Sheridan and the Sheridan Board also constituted breach of an expressed duty of good faith and breach of fiduciary duty.

116.   These actions by Sheridan and the Sheridan Board also constituted violations of the constitutionally protected rights of the Plaintiffs and have caused harm and damage to the Plaintiffs.

117.   Gorman acted in his individual and official capacity as the attorney for the QSD. Gorman's actions were conducted intentionally, maliciously, and with willful and wanton disregard for the rights of the Tierneys.

118.   These actions by Gorman also constituted violations of the constitutionally protected rights of the Plaintiff and have caused harm and damage to the Plaintiffs.

## VI.    FEDERAL CLAIMS

119.    Plaintiffs repeat and re-allege the allegations of paragraphs 1-118 for all Federal Claims asserted herein.  These causes of action occurred on June 24, 2002, and thereafter.

### 1.    Statutes and Constitutional Provisions Involved

120.    At all times material, there was in full force and effect in the United States of America, a certain statute known as the Civil Rights Act of 1871, 42 U.S.C. § 1983 which provides:

**Section 1983**

Every person who under color of any statute, ordinance, regulation, custom or usage of any State or Territory or the District of Columbia subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other property proceeding for redress….

121.    At all times material there was in full force and effect in the United States of America, certain provisions of the Constitution of the United States, namely the First and Fourteenth Amendments which provides:

**A.    Article IV**
§2.            Privileges and Immunities
Section 2.    The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States.
**B.    Amendment [I]**
Congress shall make no law…. Abridging freedom of speech, or of the press, or of the right of people to peaceably assemble, and to petition their government for redress of grievances.
**C.    Amendment [XIV]**
Section 1.        … nor shall any State deprive any person of life, liberty, or property without due process of law;

## 2.    Claims under 42 U.S.C. 1983

122.    All Defendants:        Plaintiffs repeat and re-allege the allegations referred to in paragraph 119 for the Federal Claims asserted herein.

a.    The Complaint also states claims under 42 U.S.C. § 1983 for causes of action which occurred after the Tierneys filed a lawsuits in Federal and State Courts through the conduct alleged in ¶¶ 41-118.

b.    Defendants are liable to the Plaintiffs for the retaliation against the Plaintiffs by Sheridan Board members, officials, and members who acted in collusion with and/or at the direction of Sheridan Board members and/or policy-making agents of the Sheridan Board, and/or in collusion with other Defendants who were acting while under color of State law.

22

**Count I          Right of Access to the Courts without Interference or Retaliation**

123.    Plaintiffs repeat and re-allege the allegations referred to in paragraph 119 for the Federal Claims asserted herein.  Defendants intentionally deprived and interfered with the Plaintiffs' right of access to the courts.

  a.    One source of the right the right of access to the courts is found in the privilege and immunities of citizenship guaranteed by Article IV, Section 2 of the Constitution.
  b.    A second source of the right of access to the courts is the procedural and substantive components of the guaranty of due process of law of the Fourteenth Amendment to be free from intentional retaliation by state actors as alleged in response to the Plaintiffs' filing of the action in Federal and State Courts (Case No. 99-3149 and 02-L-12) against the Defendants in these Complaints, and per the actions and free speech of the Plaintiffs as alleged in ¶¶ 96-118;
  c.    proximately damaging each individual Plaintiff in an amount to be specifically determined at trial per ¶¶ 135-141.

**Count II          Right to Freedom of Speech and to Petition the Government for Redress of Grievances without Interference or Retaliation**

124.    Plaintiffs repeat and re-allege the allegations referred to in paragraph 119 for the Federal Claims asserted herein.

  a.    Defendants intentionally deprived Plaintiffs of their rights to Freedom of speech guaranteed them as part of the First Amendment to be protected from retaliation by state actors by the acts of conspiracy and retaliation, for engaging in free speech on issues of public concern with several State Agencies including the Illinois Attorney General's Office, after filing lawsuits in Federal and State Courts, and for Plaintiffs petitioning the Government for redress of grievances as alleged in ¶¶ 96-118 ;
  b.    proximately damaging each individual Plaintiff in an amount to be specifically determined at trial per ¶¶ 135-141.

**Count III          Right of Association without Retaliation**

125.    Plaintiffs repeat and re-allege the allegations referred to in paragraph 119 for the Federal Claims asserted herein.

  a.    Defendants intentionally deprived plaintiffs Robert Tierney, Ann Tierney and Case Tierney of their right of association with each other, by acts of conspiracy and retaliation for the speech of Robert Tierney on issues of public concern with several State Agencies as alleged in ¶¶ 98-118, after filing a lawsuit in Federal and State Court, and for their petitioning the Government for redress of grievances;
  b.    proximately damaging each individual Plaintiff in an amount to be specifically determined at trial per ¶¶ 135-141.

23

**Count IV**       **Right to Procedural Due Process**

126.    Plaintiffs repeat and re-allege the allegations referred to in paragraph 119 for the Federal

Claims asserted herein.

   a.   The Complaint also states a claim under the Fourteenth Amendment's due process
        clause.
   b.   Defendants intentionally deprived Plaintiffs of their rights to due process in protection
        of their property and liberty interests, per their [Defendants] actions, in retaliation for
        the Tierneys engaging in free speech on issues of public concern with several State
        Agencies as alleged in ¶¶ 98-118, for filing a lawsuit in Federal and State Courts, and
        for Plaintiffs petitioning the Government for redress of grievances;
   c.   proximately damaging each individual Plaintiff in an amount to be specifically
        determined at trial per ¶¶ 135-141.

**Count V**        **Ratification by Sheridan/Sheridan Board of Wrongful Conduct and Actions
of Sheridan Board Members, Bier and Olson, Club Member Schnack, and others.**

127.    Defendants Sheridan and Sheridan Board. Plaintiffs repeat and re-allege the allegations

referred to in paragraph 119 for the Federal Claims asserted herein.  The Complaint also states a

claim of Ratification for causes of action, which occurred on and after June 24, 2002.  Sheridan

and the Sheridan Board has engaged in acts and omissions, and implemented policies and

practices that are inconsistent with non-affirmation of the misconduct of the above named

defendants and individuals, and the wrongful actions and policy of the Sheridan Board.  By these

actions, Sheridan accepted responsibility for, and affirmed the acts of misconduct directed

against the Tierneys by Schnack, Bier, Olsons, and others, which were performed on behalf of

Sheridan and/or at the request, or direction of Sheridan Board member(s).  These acts include but

are not limited to the following:

   a.   Surrendering Corporate documents to the care and custody of Bier.
   b.   Denying a Sheridan Youth Membership to the Tierneys for the summer of 2003 at the
        urging of Schnack, Bier, and Barnard in order to retaliate, coerce, and intimidate the
        Plaintiffs to surrender claims and due process rights against Bier, Barnard, Schnack
        and others.
   c.   Selecting Bier as a Sheridan Board member in March 2004.
   d.   Allowing Olson to remain a Sheridan Board member after March 2004, in breech of
        Sheridan By-Laws and Constitution.
   e.   Allowing Bier and Olson to vote on matters pertaining to the Plaintiffs despite Bier
        and Olson's irreconcilable conflicts of interest.
   f.   Denying a Sheridan Youth Membership to the Tierneys for the summer of 2004 at the
        urging of Bier and Olson in order to retaliate, coerce, and intimidate the Plaintiffs to
        surrender claims and due process rights against Bier, Barnard, Schnack, and others.

24

g. *Terminating the Plaintiffs Sheridan Youth Membership for the summer of 2005 at the urging of Bier, Buckman, Schaller, and Tournear in order to retaliate, coerce, and intimidate the Plaintiffs to surrender claims and due process rights against Bier, Barnard, Schnack, and others.*

constitutes ratification by Sheridan Swim Club Board of the misconduct and actions of the Sheridan Defendants; proximately damaging Plaintiff in an amount to be specifically determined at trial per ¶¶ 135-141.

**3.     Claims Under 42 U.S.C. § 1985(2 & 3)**

**Count VI**

128.    Defendants conspired to intentionally deprive the Plaintiffs of their rights to access the courts and to petition the Government for redress of grievances: Plaintiff repeats and realleges the allegations referred to in paragraph 118.  A third source of the right of access of the courts asserted in the complaint is the statutory right of protection from retaliation extended to plaintiffs and witnesses in federal civil rights suits of 42 U.S.C. § 1985 (2).  The complaint also states a claim for causes of action, which occurred after filing a lawsuit in Federal & State Court for civil rights conspiracy actionable under 42 U.S.C. §1985 (2).

a.   Private conspirators are directly liable under § 1985(2) for attempts to harass or interfere with parties or witnesses in litigation without the requirements of state action or class-based animus.

b.   However, in the alternative, Defendants, Bier, Barnard, Gorman, and the Quincy School District are clearly State Actors, acting under color of state law in conspiracy and joint action with Schnack and Sheridan, thus making State Actors of Schnack, Sheridan, and the Sheridan Board.

c.   Schnack, Gorman, and Barnard conspired to withhold and/or destroy evidence and give false, misleading, and evasive testimony that was intended to and to obstruct the due course of justice and the judicial process, interfered with access to witnesses, conspired to intentionally deprived the Plaintiffs of the right of access to the courts and to petition the Government for redress of grievances after the filing of a law suit through the conduct alleged in ¶¶'s 41-82.

d.   Bier, Barnard, and Schnack obstructed, hindered, and impeded an investigation by constituted authorities of the State of the harassing phone calls directed toward the Tierney family by Schnack.

e.   Bier, Barnard, and Schnack obstructed, hindered, and impeded an investigation by constituted authorities of the State into the harassment and intimidation of the Plaintiffs in a Federal lawsuit through the conduct alleged in ¶¶'s 83-89, and 96-114.

f.   Gorman and the QSD obstructed the Plaintiffs access to evidence and witnesses during hearings and discovery in the State Court proceedings.

g.   Barnard and Gorman obstructed and denied the Plaintiffs access to witnesses during the discovery process.

25

Sheridan is liable to the Plaintiffs for the conspiracy and actions of its Board members, officials, and members who acted in collusion with and/or at the direction of Sheridan Board members, and/or policy-making agents of the Sheridan Board, and/or in collusion with others who were acting while under color of State law; proximately damaging each individual Plaintiff in an amount to be specifically determined at trial per ¶¶ 135-141.

**A.    42 U.S.C. §1985.  Conspiracy to Interfere with Civil Rights.**

**(2) Obstructing justice; intimidating party, witness, or juror.**

> If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified,……. or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;

**Count VII**

129.    Defendants conspired to intentionally deprive the Plaintiffs of their constitutionally protected rights and privileges:  Plaintiff repeats and realleges the allegations referred to in paragraph 119 for the Federal Claims asserted herein.  The complaint also states a claim for causes of action, which occurred after filing lawsuits in Federal and State Court for a civil rights conspiracy actionable under 42 U.S.C. §1985 (3).

a.    The Defendants, acting under of color of state law, conspired together to retaliate against and interfere with the Plaintiff's rights and attempts to petition the government and the courts as alleged in ¶¶'s 41-89, and 96-118.

b.    Schnack, Gorman, and Barnard conspired to withhold and/or destroy evidence and give false, misleading, and evasive testimony that was intended to and to obstruct the due course of justice and the judicial process.

c.    The Defendants interfered with and/or prevented the Plaintiff from petitioning the State for redress of grievances.

d.    Defendants obstructed, hindered, and impeded an investigation by constituted authorities of the State regarding the criminal acts of Schnack as alleged in ¶¶'s 64-89, and 96-118:

e.    Defendant Bier and Barnard obstructed and impeded constituted authorities of the State, from carrying out their duties in a lawful manner as required by the provisions of a Court Order and 55 ILCS 5/3 *Counties Code State's Attorney.*

Plaintiff repeats and realleges the allegations referred to in paragraph 119 and ¶¶s 73-89, and 96-118, for the Federal Claims asserted herein: proximately damaging Plaintiff in an amount to be specifically determined at trial per ¶¶s 135-141.

B.    **42 U.S.C. §1985.  Conspiracy to Interfere with Civil Rights.**

   **(3) Depriving persons of rights or privileges**

> If two or more persons in any State or Territory conspire……, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws;…. in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

## VII.    STATE CLAIMS

### COUNT I

130.    The Acts and Omissions of the Defendants constitutes *Civil Conspiracy* between one or more Sheridan Board members, Barney Bier, Jon Barnard, Andrew Schnack, and Dennis Gorman. Plaintiffs repeat and re-allege the allegations of ¶¶'s 1-12, 41-89, and 96-118.    For damages and relief sought, the Plaintiffs repeat and re-alleges the allegations of paragraphs 135-141.

### COUNT II

131.    The Acts and Omissions of the Defendants were willful and wanton, and constitutes *Intentional Infliction of Emotional Distress*.  Plaintiffs repeat and re-allege the allegations of ¶¶'s 1-12, 41-89, and 96-118 for damages and relief sought, the Plaintiffs repeat the and re-allege the allegations of paragraphs 135-141.

### COUNT III

132.    The Acts and Omissions of Defendants Sheridan, Bier and Barnard constitutes *Intentional Spoliation of Evidence*.  Plaintiffs repeat and re-allege the allegations of ¶¶'s 1-12,

41-73 and 96-118.   For damages and relief sought, the Plaintiffs repeat and re-allege the allegations of paragraphs 135-141.

*Count IV.*

*133.The Acts and Omissions of Defendants Sheridan, Buckman, Schaller, Tournear, and Adrian constitutes Breech of Contract.  Plaintiffs repeat and re-allege the allegations of ¶¶ 1-12, 41-73, and 96-118.  For damages and relief sought, the Plaintiffs repeat and re-allege the allegations of ¶ 135-141.*

*Count V.*

*134.    The Acts and Omissions of Defendants Buckman, Schaller, Tournear, and Adrian constitutes Breech of Fiduciary Duty. Plaintiffs repeat and re-allege the allegations of ¶¶ 1-12, 41-73, and 96-118.  For damages and relief sought, the Plaintiffs repeat and re-allege the allegations of ¶ 135-141.*


## VIII    DAMAGES AND RELIEF SOUGHT

135.    As a consequence of one or more of the foregoing wrongful acts and omissions of Defendants, the Plaintiff's have suffered retaliation, intimidation, and extreme emotional distress as a result of the denial of their constitutionally protected rights and privileges as a result of the unlawful and *criminal* acts of Officers of the Court and State Actors.  The Tierneys have been stigmatized and harmed by the wrongful actions of Officers of the Court including State Actors, public officials, Sheridan, its Board; proximately damaging each individual Plaintiff in an amount to be specifically determined at trial.

136.    As a consequence of one or more of the foregoing wrongful acts and omissions of Defendants, the Plaintiffs have suffered on-going public humiliation, embarrassment, retaliation, harassment, and intimidation, due to the implication of some kind of wrongdoing on their part for which they have not had an opportunity to respond. One or more of the defendants including Sheridan officials, members, and a QSD employee has subjected the Tierneys to obscene, harassing, and retaliatory phone calls.  The Defendants unlawfully obstructed any investigation and prosecution of these criminal acts; proximately damaging each individual Plaintiff in an amount to be specifically determined at trial.

137.    As a consequence of one of more of the foregoing acts and omissions of Defendants, Sheridan, Sheridan Board, and in concurrence with the symbiotic relationship, nexus and joint actions of Gorman and the Quincy School District, plaintiff Ann Tierney, has suffered irreparable damage to her professional and personal reputation and career, loss of income, personal and professional embarrassment, public humiliation, extreme emotional distress, and loss of Sheridan privileges with her family. Ann Tierney was born and raised in Quincy and is well aware of how rumors circulate in the community; proximately damaging each individual Plaintiff in an amount to be specifically determined at trial.

138.    As a consequence of one or more of the foregoing wrongful acts and omissions of Defendants. Plaintiffs continued to be unlawfully banned from Sheridan property, "for any function whatsoever", including activities otherwise open to the public at large.  The Tierneys are the focus of suspicions of wrongdoing as the only family ever to have been expelled from Sheridan and denied membership even for a child. The ostracism from their family recreational and social life, and the stigma of expulsion, has cast a pall over the entire household.  Sheridan was a significant source of family recreational and social contact for the Plaintiffs, which is lost as a result of the termination and banishment from Sheridan property.   In particular, the recreational lives of the Tierney children revolved around the Sheridan Swim club, as it was the center of their spring and summer neighborhood activities.  Plaintiffs' residence is adjacent to Club property and directly behind the swimming pools. Plaintiffs are now forced to observe Club members enjoying club benefits and facilities that Plaintiffs paid for and utilized since 1986; proximately damaging each individual Plaintiff in an amount to be specifically determined at trial.

139.    As a consequence of one or more of the foregoing wrongful acts and omissions of Defendants, the Tierneys have been denied a Sheridan Youth Membership or Family Membership without just cause or due process.  The Defendants have held Case Tierney hostage in unlawful attempts to force the Tierney family to surrender their constitutional rights to petition the Courts and the Government for redress of grievances, and seek prosecution for criminal offenses committed against them.  The ostracism from his friends and the loss of a joyful, recreational, summer social life has inflicted severe emotional distress upon Case Tierney and his family; proximately damaging each individual Plaintiff in an amount to be specifically determined at trial.

140.    Plaintiff's youngest child, Case Tierney, was an 8-year-old child who has enjoyed the use of the Sheridan pools, pond, and expansive grounds as the primary source of his summer activities since birth.  As a result of Defendants' intentionally wrongful and malicious conduct, Case Tierney has been forced to watch from his backyard for the past 6 summers, as his neighborhood friends play in and enjoy the Sheridan pools and grounds.  During the summer months, hardly a day goes by without Case asking when he can go to Sheridan.  As a young boy, he has little comprehension of the adult world and his parents are unable to explain, nor would ever attempt to explain to him, the unlawful conduct and vindictiveness of Sheridan and public officials. These conditions impose irreparable hardship on the Plaintiffs as well as incalculable mental and emotional distress and harm to a totally innocent child.  These painful memories can never be erased; proximately damaging each individual Plaintiff in an amount to be specifically determined at trial.

141.    As a consequence of one of more of the foregoing acts and omissions of Defendants, Sheridan, Sheridan Board, plaintiff Bob Tierney has suffered retaliation, harassment, damage to reputation, emotional distress, and loss of Sheridan privileges with his family; proximately damaging each individual Plaintiff in an amount to be specifically determined at trial.

WHEREFORE, the Plaintiffs seek relief in the form of:

1.    A judgment against Sheridan Swim Club Inc., and the individual defendants for their retaliation, harassment, and violation of the constitutionally protected rights of the Plaintiffs.

2.    A Judgment ordering Sheridan to allow the Plaintiffs or anyone acting on their behalf, to obtain a Sheridan membership and Sheridan Stock Certificate on behalf of any Plaintiff.

3.    Money damages for each individual plaintiff and jointly and severally against Defendants SHERIDAN SWIM CLUB, INC., ANDREW C. SCHNACK III, BARNEY BIER, DOUG OLSON, ROBERT MEYER, ROBERT HULTS, SARA BUCKMAN, JULIE SCHALLER, CHARLOTTE TOURNEAR, JON BARNARD, and DENNIS GORMAN, for damages in excess of $200,000 for each individual plaintiff, for punitive damages for each individual plaintiff in such amounts as a jury may determine in order to punish and deter Defendants from future abusive, unlawful conduct, for Plaintiffs' court costs and attorney's fees, per 105 ILCS 10/9 © et seq, and as the prevailing party in an action to vindicate civil rights under 42 U.S.C. §1988, and for such other relief as this court deems just and equitable.

**PLAINTIFFS DEMAND A TRIAL BY JURY**
Dated July 18, 2005

_J. Robert Tierney, Pro Se_                    _Ann S. Tierney, Pro Se_

**PROOF OF SERVICE**

Service of the foregoing instrument was made by sending this document as a PDF attachment to an e-mail to the following CM/ECF participants, or faxing a copy of same to the fax number of such attorneys of record of the parties to the above cause or, by hand delivering same in an envelope addressed to such attorney/parties at their business address as disclosed by the pleadings of record herein; or, by enclosing the same in an envelope addressed to same attorneys/parties, with postage thereon fully prepaid, addressed to the individuals set forth below and by depositing the same in the United States Mail from the Office on this  19  day of _____ July,  2005 .

Julie Koerner & Clifford Kosoff
O'Halloran, Kosoff, Geitner & Cook
650 Dundee Road Suite 475
Northbrook, Illinois 60062
E-mail:jkoerner@okge.com

Paul Bown
Brown, Hay & Stephens, LLP
205 South Fifth Street, Suite 700
P.O. Box 2459
Springfield, IL 62705
Fax: 217-5449609

Brett K. Gorman
Schmiedeskamp, Robertson
525 Jersey Street
P.O. Box 1069
Quincy, IL 62306-1069
Fax:  217-223-1005

Robert Tierney
Ann Tierney
2517 Summer Creek]
Quincy, IL 62305
217-223-4849
E-Mail spg@insightbb.com