UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| J. ROBERT TIERNEY and ANN S. TIERNEY, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | No.04-3138 |
| | ) | **JURY DEMAND** |
| SHERIDAN SWIM CLUB, INC., an Illinois corporation, | ) | |
| DOUG OLSON, ROBERT MEYER, and ROBERT HULTZ, | ) | |
| Members of the Sheridan Swim Club Inc., Board in their | ) | |
| Individual and Official Capacities, ANDREW C. SCHNACK III, | ) | |
| BARNEY BIER, and JON BARNARD in their Individual | ) | |
| Capacities, DENNIS GORMAN, Attorney for The Quincy | ) | |
| School District 172, a political subdivision of the State of Illinois, | ) | |
| in his Individual and Official Capacities, | ) | |
| Defendants | ) | |

## PLAINTIFFS' CORRECTED RESPONSE TO DEFENDANT GORMAN'S MOTION FOR ATTORNEY FEES

Now comes the Plaintiffs J. Robert Tierney and Ann S. Tierney, pro se, and for Plaintiffs Corrected Response To Motion For Attorney Fees Of Defendant Gorman, state:

<u>Defendant/Attorney Gorman's Failure To Avail Himself Of The Rule 11 Procedure Warrants Denial Of His Motion.</u>

"Fee shifting provisions in the civil rights laws are asymmetric.  Prevailing plaintiffs recover their fees routinely, while defendants recover only if the plaintiffs' claims are frivolous." *Monroe v. Children's Home Association of Illinois,* 128 F.3d 591, 594 (7th Cir. 1997). *Hughes v. Rowe,* 449 U.S. 5, 14, 101 S. Ct. 173 (1980)  (Section 1988).  An award of attorney's fees against a losing plaintiff in a civil rights action is an extreme sanction and must be limited to truly egregious cases of misconduct." *Jones v. Continental Corp.,* 789 F.3d 1225, 1230 (6th Cir. 1986).

Defendant Gorman had numerous opportunities and remedies to obtain dismissal of the claims against him without incurring the attorney fees he is now claiming.  Gorman is an attorney who was allegedly represented by his son, who is also a member of Gorman's law firm.  If Gorman truly believed plaintiffs' second amended complaint was without factual support,

Rule 11 © provided him with a remedy. Gorman himself or his son, could have prepared a Rule 11 Motion detailing the reasons why he believed the claims against him were without factual support and serve this Motion 21 days before the filing of the Second Amended Complaint under the safe harbor provisions of Rule 11 ©. That would have given Plaintiffs a chance to evaluate the claim(s) further based upon the information supplied in the motion. The safe harbor provisions of Rule 11 are mandatory. *Corley v. Rosewood Care Center, Inc, of Peoria,* 142 F.3d 1041, 1058 (7th Cir. 1998) citing Johnson v. Waddell & Reed, Inc., 74 F.3d 147 (7th Cir. 1996); *Hadges v. Yonkers Racing Corp.* 48 F.3d 1320, 1238-29 (2nd Cir. 1995).

The courts have rejected attempts of litigants to resurrect attorney's fees under other provisions when Rule 11's safe harbor provisions have been ignored. Corley, 142 F.3d at 1059; Aerotech, Inc. f. Estes, 110 F3d 1523, 1528 (10th Cir. 1997). Rule 11 (b) (2) proscribes claims that are frivolous and allegations that lack evidentiary support.

This suit was filed in **June 2004**, and an amended complaint was filed within 2 weeks. Defendant Gorman was aware *of* the filing of the suit even though he was not served with complaint. Gorman/Quincy School District made mention of this suit in briefs filed with the Appellate Court pertaining to Case 99-3149. The Plaintiffs waited until October 2004, to attempt service by waiver of summons.

Despite Gorman's knowledge of and possession of the Initial Complaint and the First Amended Complaint, Gorman took no action in compliance with Rule 11 even though Gorman was aware of Rule 11 issues *(See page 1 of billing records/entry date of 3/3/2005-"Review of Rule 11 Sanctions issue…)*

The standard for Section 1988 awards of attorney fees to defendants is identical, "frivolous, unreasonable, or groundless." Defendant Gorman makes no such claim in his Motion, but cites previous litigation (99-3149) that was **based** on Gorman's acts and causes of action that occurred in **1999.** The causes of action in this case stem from ***incidents*** that occurred on and after June 2002 during the pendency of litigation in State Court in which <u>neither Gorman or the QSD were parties!</u>.

If anyone should be sanctioned, it is Gorman! Gorman is attempting to hoodwink and mislead the Court with the false assertion that these claims against Gorman were litigated before. Per page 6 of Gorman's Memorandum" *"In addition, an award of fees should be entered since issues raised in **this lawsuit** were raised, and dismissed, in both Tierney I and Tierney IV.*

*Specifically, the claims that Gorman conspired with Sheridan Swim Club and others was litigated in Tierney I. The claim that Gorman conspired to torpedo the Adams County State court lawsuit was litigated in Tierney IV."*

In point of fact, this Complaint (04-3138) was labeled as *Tierney IV* in briefs filed by the Quincy School District during the appeal of 99-3149, even though this litigation is not, and could not be part, of the case record for 99-3149, since that Case (99-3149), was noticed for appeal almost 6 months before 04-3138 was even filed!! For purposes of ease of recognition, this complaint is in fact *Tierney IV* and involves claims based on causes of action, which occurred **3 years** after Case 99-3149 was filed!

As factually outlined in the Second Amended Complaint, the Plaintiffs brought suit in State Court against other defendants, *not Gorman or the Quincy School District!* This state court litigation occurred only after this (Federal) Court declined subject-matter jurisdiction over the remaining claims in 99-3149. At no time was Gorman or the School District a party in the state court litigation. However, Gorman and the Quincy School District had an attorney present at nearly every hearing and/or status conference.

Gorman Engaged In Dilatory, Vexatious Actions In An Attempt To Avoid Responding To The Amended Complaint(s),

Gorman filed several frivolous motions that were rejected by the Court. *(See docket entries from June 2004, through March 2005 and Gorman's billing record entries on page 1 & 2.)* From June 2004 through March 2005, Gorman engage in numerous dilatory tactics, logging over 18 hours of attorney **billing hours**, in a vain attempt to avoid filing an answer or responsive pleading to the Second Amended Complaint. In addition, while twice refusing to accept service of the Amended complaints, Gorman was consulting with the attorneys for other parties *(See billing record entries for 1/4/05).* The Court need only review pages 1 & 2 of the billing records attached to Gorman's Motion, for a factual account of Gorman's dilatory actions. In addition, a review of the billing record reveals that Gorman simply "churned" the billing hours with research and "conferences" on issues and claims which did not pertain to allegations against Gorman (res judicata, collateral estoppel, etc). Needless to say, the Court rejected all of Gorman's stalling tactics and ordered a responsive pleading. The Court even pointed out to the Plaintiffs that they could recover the costs of service by summons since the Defendants refused Waiver of Service. The Plaintiffs did not attempt to recover these costs.

<u>The Claims Against Gorman Were Not Frivolous And Were Factually Supported.</u>

The Claims against Gorman in this case were not frivolous and were factually supported. Furthermore, and most telling, Gorman does not even attempt to assert in his Motion or Memorandum that the claims were frivolous or factually unsupported. The claims against Gorman stem from his actions after June 2002, acting in his official capacity as the attorney for the Quincy School District #172, which clearly makes Gorman a state actor! The claims against Gorman in Federal case 99-3149 aroused from actions, which occurred three (3) years earlier! Gorman falsely asserts that this "action was legally baseless, vexatious, and designed to harass this defendant." Yet, Gorman cannot cite a single example and/or paragraphs from the 50 or more, which make specific reference to claims against Gorman.

The allegations and factual supporting information pertaining to claims against Defendant Gorman per the Second Amended Complaint, are as follows;

10.     Dennis **Gorman** ("Gorman") was at all relevant times the attorney for the Quincy School District #172 and a resident of Adams County, Illinois. The actions of **Gorman** complained of here were committed under <u>color of state law while</u> acting as attorney for the School District. **Gorman** is sued in his individual and official capacities.

**III.     State Actor Status of Sheridan Swim Club**

13.     There are five tests to determine if a nominally private party has engaged in State Action or is a State Actor. If any of the five tests are met, then a private party is considered a state actor.

14.     State action exists where there is a "symbiotic relationship" or "nexus" between the private actor and the State.

     a. Sheridan is a State Actor due to the Symbiotic Relationship and Nexus between Sheridan Swim Club and the **Quincy School District #172.**
     b. Sheridan is a State Actor due to the Symbiotic Relationship and Nexus between the Adams County States Attorney, Barney Bier, and Sheridan.

16.     A private party's discriminatory conduct is aggravated in some unique way by the involvement of a governmental authority.

     a.     Sheridan's retaliation against the Plaintiffs is aggravated by the involvement of a governmental authority and/or State Actors including but not limited to:

        i.     The attorney for Quincy School District #172, Dennis **Gorman**
        ii.    The Adams County State's Attorney Office.
        iii.   The Adams County State's Attorney, Barney Bier.
        iv.    The Adams County Assistant State's Attorney, Jon Barnard
        v.     The Illinois State's Attorney Appellate Prosecutor.

4

   vi. The Adams County Sheriff's Department.
   vii. Eighth Judicial Associate Circuit Judge, Chet Vahle.
   viii. The Adams County Circuit Clerk.

17. The State commands or encourages private discriminatory action.

 a. State Actors Bier, Barnard, **Gorman** and the QSD commanded, encouraged, and were involved in the unlawful retaliatory, discriminatory action taken against the Plaintiffs.

### IV. Additional Acts Which Establish The State Actor Status Of Sheridan

21. Pursuant to the litigation in the 8th Circuit Court per Complaint 2002-L-12, between the Plaintiffs and Sheridan, Plaintiffs had subpoenas for witness appearance and document production, lawfully served on four (4) of the individual Sheridan defendants (parties), and a non-party witness. Employees of the Adams County Sheriff's Department served these subpoenas.

31. **Gorman**, acting under color of state law as attorney for the QSD, interfered with witnesses who were subpoenaed to appear as material witnesses during the hearings on June 24, 2002.

32. Despite the fact that **Gorman** was subpoenaed and appeared to testify, his law firm allegedly provided legal representation to numerous material witnesses including persons who were employees of the QSD, as well as to witnesses who were not employees of the QSD. Based on belief and understanding, the QSD paid the legal fees of all these witnesses.

33. Many of these witnesses failed to appear as required by subpoenas. One witness unlawfully refused to appear at the hearing on June 24, 2002, per instructions from Defendant **Gorman**.

34. **Gorman**, acting under color of state law, provided false and misleading testimony on material issues regarding his disclosure of information from the Schildt report, and regarding his communications with Schnack and Vahle about the complaints against Powers.

35. **Gorman**, acting under color of state law and pursuant to he hearings on June 24, 2002, failed to produce and/or disclose the existence of document(s) that were subject to disclosure.

36. **Gorman**, acting under color of state law, and the QSD, unlawfully interfered with and prevented his deposition, and the depositions of former QSD School board member, James Citro. Both individuals had received subpoenas to appear for a deposition pursuant to Pursuant to the litigation in the 8th Circuit Court based on Complaint 2002-L-12, and both refused to appear.

37.     **Gorman** actions were intended to retaliate against the Plaintiffs, interfere with Plaintiffs access to the courts, and obstruct the judicial process and the due course of justice.

V.      **The Conduct And Occurrences Complained Of In This Complaint**

A.      **Background and Protected Conduct**

41.     On or about June 24, 1999, the Plaintiffs filed an action in this Court (99-3149) against Sheridan Swim Club and Sheridan Board Members (hereinafter referred to as "Sheridan"), Quincy School District #172 and various QSD employees, agents, and QSD Board members (hereinafter referred to as "QSD").

42.     In February 2002, the Plaintiffs filed a Complaint in the Circuit Court of the Eighth Judicial Circuit Adams County, State of Illinois (2002-L-12).

43.     This State Court Complaint only brought claims against Sheridan after the Federal Court declined further subject-matter jurisdiction for remaining Claims against Sheridan and related defendants.

44.     Schnack and Bier retained their close friend, Adams County Assistant States Attorney, Jon Barnard, as the attorney-of-record for all of the defendants.

45.     On June 24, 2002, and thereafter, hearings pursuant to a Motion for Preliminary Injunction Hearings were held in State Court.

46.     Neither the Quincy School District (QSD) or any employees or agents were named as defendants in this State Court litigation. However, QSD attorney, Dennis **Gorman** and several QSD employees were subpoenaed to testify at the hearings as material and/or rebuttal witnesses.

47.     Despite the fact that **Gorman** was subpoenaed to testify and did in fact testify, his law firm allegedly provided legal representation to numerous material witnesses including persons who were employees of the QSD as well as to witnesses who were not employees of the QSD. Based on belief and understanding, the QSD paid the legal fees of all these witnesses.

48.     Many of these witnesses failed to appear as required by subpoenas. One witness unlawfully refused to appear at the hearing on June 24, 2002, per instructions from Defendant **Gorman**.

49.     Pursuant to the Hearing on June 24, 2002, the Court had ordered the Sheridan defendants, **Gorman**, and the QSD, to produce numerous documents at the Hearing, including all documents/letters pertaining to the Plaintiffs' complaints to the QSD made prior to April 15, 1999, regarding the improper conduct of QHS Swim Coach, Richard Powers.

50.  In February 1999, parents of QHS students had reported the "massages" to school officials. In response, QSD employees Nick Schildt and Terri Conboy conducted interviews of two QHS female swimmers who had been improperly "massaged" by Powers. Schildt and Conboy then prepared a confidential report (Schildt/Conboy report).

51.  This report was given to QSD attorney, Dennis **Gorman**, on or about March 1, 1999.

52.  QSD attorney, Dennis **Gorman**, unlawfully disclosed the Schildt/Conboy report to Schnack and Judge Chet Vahle shortly after <u>March 1, 1999</u>. [1]

53.  In response to the disclosure of this information in the Schildt Report, Schnack wrote letters on <u>March 5, 1999</u>, and <u>March 29,1999</u>, and sent them to **Gorman**. Judge Vahle wrote a letter on 8th Circuit judicial stationary, made false and defamatory statements, and sent the letter to 3 QSD officials who had supervisory responsibility over Powers.

54.  The March 5 letter from Schnack is dated just 5 days after the "massages" were reported to the Quincy School District during private privileged conversation protected by 20 U.S.C. Section 1232g. *Family Educational and Privacy Act* (FERPA), and The *Illinois School Student Records Act* 105 ILCS 10/1 et seq.

55.  Schnack's letter dated <u>March 5</u>, 1999 states the following:

> " Dear Dennis:
> As a close personal friend and attorney of Rick Powers, coach of the boys and girls swimming teams at Quincy High School, it has come to my attention that accusations are being made about improper contact with girl swimmers last fall. I have talked personally to Rick about this and he categorically denies it. I have also talked with Judge Chet and Barb Vahle concerning the alleged incident. The fact of the matter is that prior to the Western Big Six conference meet, a get together was held at the Vahle home. Chet and Barb Vahle were present. The suggestion was made that the girls receive rub downs to loosen up for the meet. This is done on a regular basis at every big meet I have ever attended and is common practice in swimming. At the suggestion of the Vahles, the team went downstairs and anyone who wanted a massage or rub down was given one. It was voluntary, it was totally in keeping with good swimming coaching practices and absolutely nothing was wrong with this. Apparently this is being used now to somehow attack Rick. As Rick's attorney, I have advised him that if these statements are being made, they could form the basis for a lawsuit. Rick has authorized me to request from you any documentation or complaints in writing that you or the school board has concerning this matter so that we can be properly informed and properly respond to it. Obviously, if this is untrue, I apologize for taking

---

[1] Gorman and the QSD have admitted in Federal Court documents that the Schildt/Conboy report is subject to 20 U.S.C. Section 1232g. (FERPA) restrictions and protection.

7

your time.  If it is true, we consider it exceptionally serious and would like to get to the bottom of it."    *(A true and correct copy of Schnack's letter of March 5, 1999, is attached hereto as Exhibit A-1.)*

56.     This *Smoking Gun* letter from Schnack to QSD attorney, Dennis **Gorman** dated March 5, 1999, had been unlawfully concealed from the Plaintiffs and the Federal Court during Central District Case 99-3149.  [2]

57.     Schnack's letter makes several categorically false statements concerning the events, circumstances, and propriety of these "massages".

   a. According to sworn testimony by **Gorman** during State Court hearings, Judge Chet Vahle was *not* present in his home the evening of the "massages", and knew nothing about the "massages" until contacted by Dennis **Gorman** in March 1999.
   b. Schnack's letter establishes the fact that Schnack and his "close personal friend", QHS swim coach Powers intended to pursue some kind of retaliatory response against those who reported the improper "massages".
   c. Schnack's letter establishes the fact that **Gorman** and the QSD were well aware of the retaliatory intentions of Schnack and QHS coach Powers.
   d. Schnack's letter established the fact that Schnack received confidential information as a result of the unlawful acts of (**Gorman**) State Actors.
   e. Per the statements or other Illinois High School Swim coaches, and a professor of Kinesiology at the University of Illinois, who is an expert on aquatic massage therapy, the "massages" were considered at the very least to be "totally inappropriate", and had no therapeutic or pre-competition benefit.  *(See Illinois State Police reports and the letter from Dr. Bell attached hereto as Exhibits C 1-3)*

58.     At Initial Disclosure during the Federal Court litigation 99-3149, the QSD had produced numerous documents and letters from other parents and students, about the complaints about Powers' conduct, including Schnack's letter of <u>March 29, 2003</u>.  [3]

---

[2] The District Court dismissed all federal claims against Schnack, Vahle, Gorman, and Powers after Initial Disclosure, but before any discovery was allowed, and these defendants were never deposed during the pendency of 99-3149.  These letters and incidents established triable issues of fact regarding the "aggravating involvement" by State Actors (Gorman/QSD, Judge Vahle, and QHS swim coach Powers), in the retaliation against the Plaintiffs.

[3] During 2 plus years of the Federal Court litigation between June 1999, and October 2001, Sheridan Swim Club only produced one (1) sheet of paper in response to Initial Disclosure and several Motions to Compel Disclosure.  This document was the Sheridan Board minutes from April 1999, which was produced at Initial Disclosure in March 2000.  No other Board minutes or documents of any kind were ever produced by Sheridan, despite the fact that the Sheridan Board held numerous discussions at Board meetings from at least September 1998 through June 1999, about the student activities of Meryl Tierney in her capacity as a student at Quincy High School.

59.  Schnack's letter of March 29, 1999, states the following:

"Dear Dennis:
I just thought you would like to know that as of Thursday, March 25, 1999, Meryl Tierney is now swimming with Sheridan Swim Team under Coach Rick Powers. I don't know what affect this would have on his previous complaints but would dearly love to get Rick's contract signed ad get the contract signed between the school district and Sheridan. I have a couple of thoughts on the that I think would be advantageous to the school district, especially if we can get this done on a long term basis. If you get a chance, give me a call."

*(A true and correct copy of Schnack's letter of March 29, 1999, is attached hereto as Exhibit A-2.)*

60.  This March 29, letter also contains several false and misleading statements concerning Meryl Tierney's swimming activities at Sheridan.

   a.  Schnack's statement that "Meryl Tierney is now swimming with the Sheridan Swim Team under coach Rick Powers" was and is categorically false.
   b.  Schnack's letter of March 29, 1999, was in fact a follow-up letter to his letter dated March 5, 1999.

61.  In furtherance of a conspiracy between Schnack, **Gorman**/QSD, Bier, and Barnard, and pursuant to the hearings on June 24, 2002, and thereafter, these names Defendants (acting under color of state law), conspired;

   a.  to violate the constitutionally protected rights of the Plaintiffs,
   b.  to interfere with the Plaintiffs' rights and attempts to petition the government and the courts,
   c.  to retaliate against the Plaintiffs for petitioning various State Actors for redress of grievances, for filing a lawsuit in federal and state courts, and for engaging in free speech on issues of public concern,
   d.  to obstruct the due course of justice and the judicial process,
   e.  to obstruct, hinder, and prevent the investigation and prosecution of Schnack's criminal offenses, by constituted authorities of the State of Illinois.

by committing the unlawful acts as alleged in ¶¶'s 61 – 70.

62.  The defendants listed in ¶61 breeched Courts orders and again failed to produce and/or disclose the existence of Schnack's letter of March 5, 1999, during the hearings on June 24, 2002, and thereafter.

63.  In furtherance of this conspiracy and pursuant to the hearings on June 24, 2002, and thereafter, the above named Defendants gave false, misleading, and evasive testimony on material issues.

64. During the hearing on June 24, 2002, **Gorman** gave false, misleading, and evasive testimony. **Gorman** testified under color of state law in his capacity as the attorney for the Quincy School District.

65. **Gorman** provided false and misleading testimony on material issues regarding his disclosure of information from the Schildt report, and regarding his communications with Schnack and Vahle about the complaints against Powers.

66. Following **Gorman**'s testimony, and armed with the knowledge that **Gorman** and the QSD did not and would not produce Schnack's letter of March 5, 1999, Barnard called Defendant Schnack to the witness stand and unlawfully suborned false testimony on material issues.

67. In response to Barnard's questions, Schnack repeatedly testified that he did not have any knowledge of any complaints about Powers and the "massages", at the time he (Schnack) made accusations against the Plaintiffs and initiated the retaliation against the Plaintiffs at the Sheridan Board meeting in April 1999.

68. Schnack testified over a 2 day period and consistently repeated this false testimony in response to direct examination, cross-examination, and in response to direct questioning by the trial Judge regarding Schnack's knowledge of any complaints about the "massages" at the time of the Sheridan Board meeting in April 1999.

69. Schnack also falsely testified that he had no knowledge of the *Schildt/Conboy* report until the State court hearings in June 2002.

71. This false, misleading, and evasive testimony by Schnack and **Gorman**, coupled with their withholding of documents fatally afflicted the Plaintiffs attempts to petition the Courts for redress of grievances.

72. On or about October 17, 2002, the Plaintiffs learned of the existence of Schnack's letter of March 5, 1999.

73. The next day on October 18, 2002, in furtherance of a conspiracy between **Gorman**, the QSD, Schnack, and Sheridan; **Gorman** *tipped off* Barnard and Bier that the Plaintiffs had learned of the existence of Schnack's letter of March 5, 1999.

74. On or about October 18, 2002, after learning that the Plaintiffs had discovered Schnack's letter of March 5, 1999, Defendants Bier, Barnard, and **Gorman** (acting under color of state law), conspired;

10

- a. to violate the constitutionally protected rights of the Plaintiffs,
- b. to interfere with the Plaintiffs' rights and attempts to petition the government and the courts,
- c. to further retaliate against the Plaintiffs for petitioning various State Actors for redress of grievances, for filing a lawsuit in federal and state courts, and for engaging in free speech on issues of public concern,
- d. to obstruct the due course of justice and the judicial process,
- e. to obstruct, hinder, and prevent the investigation and prosecution of Schnack's criminal offenses, by constituted authorities of the State of Illinois.

74b. In furtherance of this conspiracy, the defendants identified in ¶74 engaged in the following unlawful acts as alleged in ¶¶'s 73-82:

- a. On or about <u>October 18,</u> 2002, Bier contacted Norb Goetten, the Director of the Office of the State's Attorney Appellate Prosecutor, and reached an agreement with Norb Goetten, for the Appellate Prosecutor to *again* unlawfully take possession of the case files and evidence pertaining to *another* criminal offense (perjury) complaint against Schnack.
- b. After reaching this agreement with Goetten, Bier filed a Motion for the Appointment of a Special Prosecutor to investigate and prosecute a charge of perjury against Defendant/attorney Schnack, pursuant to 8th Circuit Court Case No. 2002-MR-98. *(A true and correct copy of this Motion and case file 2002-MR-98 is attached hereto as Exhibit B)*
- c. Bier obtained a Court Order appointing the Office of the State's Attorney Appellate Prosecutor to investigate and prosecute a charge of perjury against Defendant Schnack. *(See Exhibit B-2.)*
- d. On or about <u>October 18,</u> 2002, Bier breeched the terms of the Court order, and secretly filed these court documents in a case file with the Adams County Circuit Clerk under 8th Circuit Court Case No. 2002-MR-98, with the intent to conceal existence of the case, and to obstruct the due course of justice and the judicial process. *(See Exhibit B.)*
- e. On or about <u>October 18,</u> 2002, Bier unlawfully instructed the Circuit Clerk to classify Case No. 2002-MR-98 as an "eavesdropping" or "wiretap" case in order to conceal the existence of the case file from public knowledge, and to obstruct the due course of justice and the judicial process. *(See Exhibit B-3.)*
- f. Bier subsequently and unlawfully ordered the Circuit Clerk to "impound" public records in an unlawful attempt to conceal the existence of Case No. 2002-MR-98, and to obstruct the due course of justice and the judicial process and deny any access to public records subject to disclosure per the Freedom of Information Act. *(See Exhibit B-4.)*
- g. The State's Attorney Appellate Prosecutor breached provisions of 55 ILCS 5/3 *Counties Code State's Attorney*, and the terms of the Court Order of October 18, 2002, and accepted possession and control of the evidence pertaining to Schnack's perjury offense, took no action on the perjury offense, and *buried* the case file within the bowels of this State agency, along with the previous criminal offense complaints

  against Schnack, which Bier had also unlawfully placed under the control and possession of the Appellate Prosecutor. [4]

 h. Per the orders of Bier, Case No. 2002-MR-98 remained unlawfully concealed and impounded until November 2004, when judicial intervention by the Chief Judge of the 8th Judicial Circuit forced disclosure of the case file. *(See Exhibit B-5.)* [5]

 i. Barnard, Bier, and **Gorman** collectively and unlawfully breeched numerous provision of Articles VII. Illinois Rules of Professional Conduct (for attorneys) including but not limited to Rules 1.7, 1.13, 1.16, 3.3, 3.4, 3.7, 3.8, 4.1, 4.4, 8.3 & 8.4.

 j. Barnard, Bier, and **Gorman** failed to report Schnack's perjury offense to the State Court, or any other Court, party, or regulatory agency.

 k. During the pendency of 8th Circuit Court case 2002-L-12, Barnard continued to unlawfully provide legal representation to Schnack, <u>and</u> all the other defendants, including Sheridan Swim Club, Inc.

82. After learning that the Plaintiffs had become aware of Schnack's letter of March 5, 1999, and although the QSD was not a party in the State Court litigation, the QSD suddenly refused to engage in any further settlement discussions over the pending Federal litigation (99-3149), unless the Plaintiffs agreed to settle their State Court litigation against Sheridan, <u>and also agree not to pursue any other legal remedies over the new causes of action.</u>

117. **Gorman** acted in his individual and official capacity as the attorney for the QSD. **Gorman**'s actions were conducted intentionally, maliciously, and with willful and wanton disregard for the rights of the Tierneys.

118. These actions by **Gorman** also constituted violations of the constitutionally protected rights of the Plaintiff and have caused harm and damage to the Plaintiffs.

<u>The Allegations Of The Complaint Provided Sufficient Factual Support To Establish That Gorman Committed Unlawful Acts As A State Actor.</u>

---

[4] This was the <u>third</u> criminal offense perpetrated by attorney Schnack between 1999 and 2002 against the Tierney family that Bier unlawfully 'buried' with the Office of the State's Attorney Appellate Prosecutor. The Appellate Prosecutor unlawfully accepted control and possession of these previous criminal complaints and evidence, in breech of 55 ILCS 5/3 *Counties Code State's Attorney*. The Appellate Prosecutor failed to take any action regarding any investigation or prosecution of Schnack's criminal offenses, and also turned a blind eye to Bier's concealment of police criminal offense reports relating to Schnack's criminal acts.

[5] The Plaintiffs learned of the existence of 8th Judicial Circuit Case No. 2002-MR-98 in November 2004, and were forced to obtain the judicial intervention of 8th Circuit Chief Judge Brownfield in order to gain access to the Case file (See Exhibit B 1-6).

Since Gorman was clearly a state actor representing the alleged interests of the Quincy School District, but he was never a party in the State Court litigation, the Plaintiffs were under no obligation to bring *Federal* claims against Gorman by way of an amended or supplemental complaint in the State Court litigation. Moreover, unlawful acts, which occur subsequent to the filing of litigation, do not have to be brought in that action. The District Court's assertion that the Plaintiff was somehow obligated per *Estate of Smith v. Marasco* to bring claims against Gorman in the State Court litigation is in direct conflict with Federal Rule 15.

Per Order of 8/11/05, pg. 12, the Court stated *"The action is available only for pre-filing conduct because, once the case is filed, the trial Court presiding over the matter can redress improper conduct during the course of the litigation."* However, the Plaintiffs could find nothing in *Estate of Smith v. Marasco* which deals with the issue of new federal claims against someone <u>who was not</u> a party in the initial (State Court) litigation.

Per Fed. Rules of Civil Procedure 15 (d) Party's Discretion: Supplemental Pleadings are optional. Thus, if a party acquires a claim as a result of facts arising after the original pleading was filed, and the requirements of Rule 15(d) are satisfied, <u>there is an opportunity but not a duty</u> to file a supplemental claim. See *Lundquist v. Rice Memorial Hospital*, 238 F.3d 975, 977 (8th Cir. 2001) "decision not to file supplemental claim in later separate proceedings; doctrine of res judicata does not apply." See *Albrecht v. Long Island Railroad*, 134 F.R.D. 40, 41 (E.D.N.Y.1991) "rejecting Rule 15(d) motion because new assertions of unrelated claims may confuse trier of fact." See *Planned Parenthood of Southern Arizona v. Neely*, 130 F.3d 400, 402 (9th Cir. 1997) " supplemental pleading **cannot be used** to introduce new and distinct claim."

<u>Plaintiffs Complaint Must Be Judged On The Liberal Standards Of Notice Pleadings, Which Are Particularly Applicable To Pro Se Litigants</u>.

Courts are particularly cautious while inspecting pleadings prepared by plaintiffs who lack counsel and are proceeding *pro se*. Often in artful, and rarely composed to the standard expected of practicing attorneys, pro se pleadings are viewed with considerable liberality and are held to less stringent standards than those expected of pleadings drafted by lawyers. See *Antonelli v. Sheahaan,* 81 Fd 1422, 1427 (7th Cir. 1996). Federal Rules expressly reject any distinction between "evidence", "facts", or "conclusions" in pleadings. *United States v. Employing Plasterers Ass'n,* 347 U.S. 186, 74 S. Ct. 452 (1954). There is no heightened pleading standard for civil rights cases. *Leatherman v. Tarrant County Narcotics Unit*, 507 U.S.

163, 164, 113 S. Ct. 1160 (1983; McCormick v. City of Chicago, 230 F.3d 319 323 (7th Cir. 2000). "Plaintiff need not allege all or any of the facts logically entailed by the claim…"

<u>The Allegations Were Sufficient To Form A Reasonable Belief Of Gorman's Liability Under 42 U.S.C. 1983 & 1985</u>

The Court failed to reconcile, analyze, or even recognize the claims against Gorman in the Court Order of August 11, 2005. Nor could Gorman cite a single word or sentence from this Court Order, which specifically addressed the claims against Gorman. Despite the fact that approximately 50 paragraphs sufficiently allege and provided supporting facts directly attributable to the unlawful acts of Defendant Gorman, the Court order of August 11, 2005, contains no mention, recognition, analysis, or attempt by the Court to mitigate or reconcile any act or claim involving Gorman's <u>unlawful conspiratorial actions</u>.

The Court simply ignored any and all allegations and supporting facts of the conspiracy between "state actor" Gorman and other Defendants. Even though the Court Order recognized that Gorman was acting in his official "state actor" capacity, "The Defendants and *QSD* were required to produce documents in connection with the Hearing" *(See pg 7 of Order of August 11, 2005)* The Court simply ignored all allegations specifically relating to Gorman's actions. Namely his refusal to produce the "Smoking Gun" letter of **March 5, 1999,** written by Schnack to Gorman.

If there was no conspiracy between Gorman and Schnack, why didn't Gorman or Schnack produce the "Letter"? According to the Court's "analysis", the letter was basically harmless. (Per the Court Order pg. 13) *"Moreover, all the Letter tends to prove is that Gorman disclosed the contents of the Report to Schnack in early March 1999."* Obviously, defendant/attorneys Gorman and Schnack, as well as the Plaintiffs, believed that the "Letter" proved far more than that!

Schnack is an experienced, criminal, defense attorney, who is well aware of the consequences of perjury by an attorney. Yet, he brazenly and repeatedly lied about his knowledge of the Tierney complaints about the "massages", even in response to direct questioning be the trial Judge. A triable issue of fact does exist that Schnack gave false testimony only with the knowledge and understanding that Gorman *did not, and would never*, produce the "Letter".

If the "Letter" was so harmless, why did Gorman tip off Barnard and Bier the day after the Tierney uncovered the "Letter"? All of these facts raised triable issues of fact for a jury to resolve or at least at summary judgment *after fact-finding inquiries!* The Court Order "analysis" failed to address or reconcile any of these issues.

If the failure to produce the "Letter", the perjury of Schnack, the unlawful impoundment and concealment of the Perjury charge Case record is so harmless and merit less, why did Judge Brownfield go out of his way to point out that the impoundment was unlawful? Why did another 8th Circuit Judge advise the Plaintiffs to File a Petition for Relief from Judgment (based upon fraud upon the Court by Officers of the Court) in the State Court litigation? All of these issues were triable questions of fact for a jury to reconcile.

The Court order of August 11, 2005, only made passing reference to the conspiracy between the [other] defendants *"(2) conspiring with Bier, Barnard, Schnack and others to deny Case Tierney a youth member...." (Order/Page 16).* But makes no mention of the allegations of conspiracy between Gorman and other *defendants*. What happened to the allegation(s) that Gorman conspired with Schnack to {successfully} withhold the "Letter" in both the Federal and State Court litigation? (See¶¶ 16,17,61-66 of the 2nd Amnd Complaint.). Why did the Court fail to analyze the allegation that Gorman tipped off Defendant Barnard that the Plaintiffs had discovered the existence of the "Letter". Why did Gorman tip off Barnard since neither Gorman or the QSD were parties in the State Court litigation, and none of the State Court defendants were parties in the then pending Federal litigation?

If there was no conspiracy between Gorman/QSD and Schnack, Bier, and Barnard, why did the Quincy School District suddenly drop all settlement discussions unless the Tierney drop the State Court action against the Sheridan Defendants **only after** the "Letter" was uncovered by the Plaintiffs? The QSD was never a party in the State Court litigation! As with many other allegations, none of these issues were recognized or reconciled in the Order dismissing the Complaint.

The Court order dismissing all the claims consistently misapprehended, misconstrued, or simply ignored many of the allegations and facts that are stated in the Second Amended Complaint and dismissed the Complaint without any comment or "analysis" on these allegations. For example, the Court misapprehended and misconstrued the facts and issues pertaining to Bier's unlawful impoundment, and unlawful concealment from public knowledge or access, of

Case No. 02-MR-98. This case record pertained to the Perjury charges against Defendant/attorney Schnack, who was the prime instigator of the retaliation and false accusations against the Plaintiffs, which was at issue in the State Court litigation. The file was impounded in **October 2002** and remained impounded and concealed until **November 2004**. The State Court litigation was dismissed in **April 2003**. The Case file clearly contained relevant, material information vital to the State Court litigation. The Plaintiffs sufficiently alleged these facts in ¶¶ 74 & 74b, and the Court ignored the allegation.

Per the allegations in the Second Amended complaint:

74.  On or about October 18, 2002, after learning that the Plaintiffs had discovered Schnack's letter of March 5, 1999, Defendants Bier, Barnard, and **Gorman** (acting under color of state law), conspired;

   f.  to violate the constitutionally protected rights of the Plaintiffs,
   g.  to interfere with the Plaintiffs' rights and attempts to petition the government and the Courts,
   h.  to further retaliate against the Plaintiffs for petitioning various State Actors for redress of grievances, for filing a lawsuit in federal and state Courts, and for engaging in free speech on issues of public concern,
   i.  to obstruct the due course of justice and the judicial process,
   j.  to obstruct, hinder, and prevent the investigation and prosecution of Schnack's criminal offenses, by constituted authorities of the State of Illinois.

74b.  In furtherance of this conspiracy, the defendants identified in ¶74 engaged in the following unlawful acts as alleged in ¶¶'s 73-82:

   c.  On or about October 18, 2002, Bier contacted Norb Goetten, the Director of the Office of the State's Attorney Appellate Prosecutor, and reached an agreement with Norb Goetten, for the Appellate Prosecutor to *again* unlawfully take possession of the case files and evidence pertaining to *another* criminal offense (perjury) complaint against Schnack.
   d.  After reaching this agreement with Goetten, Bier filed a Motion for the Appointment of a Special Prosecutor to investigate and prosecute a charge of perjury against Defendant/attorney Schnack, pursuant to 8th Circuit Court Case No. 2002-MR-98. *(A true and correct copy of this Motion and case file 2002-MR-98 is attached hereto as Exhibit B)*
   l.  Bier obtained a Court Order appointing the Office of the State's Attorney Appellate Prosecutor to investigate and prosecute a charge of perjury against Defendant Schnack. *(See Exhibit B-2.)*
   m.  On or about October 18, 2002, Bier breeched the terms of the Court order, and secretly filed these court documents in a case file with the Adams County Circuit Clerk under 8th Circuit Court Case No. 2002-MR-98, with the intent to conceal existence of the case, and to obstruct the due course of justice and the judicial process. *(See Exhibit B.)*

  n.  On or about <u>October 18,</u> 2002, Bier unlawfully instructed the Circuit Clerk to classify Case No. 2002-MR-98 as an "eavesdropping" or "wiretap" case in order to conceal the existence of the case file from public knowledge, and to obstruct the due course of justice and the judicial process. *(See Exhibit B-3.)*

  o.  Bier subsequently and unlawfully ordered the Circuit Clerk to "impound" public records in an unlawful attempt to conceal the existence of Case No. 2002-MR-98, and to obstruct the due course of justice and the judicial process and deny any access to public records subject to disclosure per the Freedom of Information Act. *(See Exhibit B-4.)*

  This "blind eye" judicial analysis also included ignoring the undisputed fact that defendant Bier claimed that his actions were those of a State Actor and initially obtained the legal services of the **Illinois Attorney General**, who filed a Motion to Dismiss the claims against Bier, but later withdrew as Bier's attorney. If Bier was not a State actor, how can Bier even assert "prosecutorial immunity" in his Motion to Dismiss. Furthermore, Chief Judge Brownfield stated in his letter that he knew of no statute that would have permitted {Bier} to direct the Adams County Circuit Clerk to impound the case record, especially without a Court Order. This judicial statement by Judge Brownfield created, at least in the minds of the Plaintiffs, the belief that Bier committed unlawful acts as a state actor. The Court also ignored the fact that *Gorman*, Bier, and Barnard were all obligated, as attorneys, to report defendant/attorney Schnack's perjury/fraud to the trial judge during the State Court action. They all failed to do so, as clearly stated in paragraph 74b(i) of the Second Amended Complaint.

  The Court also incorrectly concluded that Barnard and Bier were not acting as state actors when they advise Sheridan to deny membership to the Tierneys unless they promised to drop all litigation and any future litigation. The Court failed to recognize and/or reconcile the fact that <u>only</u> Bier and Barnard had first hand knowledge of the ***unlawfully concealed*** perjury charges against Schnack, and in fact, at the very least, were witnesses to Schnack's perjury. Barnard was also still an Adams County Assistant State's Attorney and clearly had a conflict of interest. Barnard also should have recused himself in the civil action as either the attorney for Schnack, or as the attorney for the Sheridan Swim Club Inc., since Schnack's perjury offenses harmed and/or conflicted with the corporate interests of the Club.

  Bier should have played no role in giving advice to Sheridan since he had personally filed the perjury charges against Schnack <u>in his capacity as the Adams County State's Attorney</u>, and ***unlawfully*** hid the case file from public knowledge or access. It was clearly blatantly unlawful

17

for these 2 (State's) attorneys to advise Sheridan to deny a membership unless the Tierney's dropped all present and future claims against Schnack.

These conclusions by the Court blatantly flout the notion of intellectual integrity and "blind justice". The Plaintiffs could list example after example of these judicial misapprehensions and misconstructions, but finally and sadly realized that their claims, allegation and arguments have fallen on biased ears, and the Plaintiffs have absolutely no chance of justice in this District Court. So further examples of judicial errors are pointless. If this case is truly representative of how our legal system really works, God help this country.

Defendant Gorman obviously also realizes this fact and is attempting to inflict further monetary injury to the Plaintiffs upon the insult of a gross miscarriage of justice. Plaintiff Ann Tierney's long and heretofore *progressively* successful career in the Quincy School District is destroyed. She has already suffered the loss of over $100,000 in lost earnings, and will continue to accrue annual earning losses in excess of $25,000, simply because she and her husband, *joined other parents and citizens*, and "reported the things that she [Ann Tierney] was obligated to report" according this Court's ruling in Case 99-3149.

Now comes this blatant attempt by QSD attorney Gorman to intimidate the Plaintiffs from pursuing the State Claims in State Court, which is now the only recourse left to the Plaintiffs.

Wherefore, the plaintiffs respectfully prays this honorable Court deny completely Defendant/attorney Gorman's Motion for Attorney Fees, and for any other relief the Court deems appropriate.


Dated December 19, 2005,


Respectfully submitted,

By: s/ J. Robert Tierney
J. Robert Tierney, Plaintiff, Pro se
By: s/Ann S. Tierney, Plaintiff, Pro se

PROOF OF SERVICE

Service of the foregoing instrument was made by sending this document as a PDF attachment to an e-mail to the following CM/ECF participants, or faxing a copy of same to the fax number of such attorneys of record of the parties to the above cause or, by hand delivering same in an envelope addressed to such attorney/parties at their business address as disclosed by the pleadings of record herein; or, by enclosing the same in an envelope addressed to same attorneys/parties, with postage thereon fully prepaid, addressed to the individuals set forth below and by depositing the same in the United States Mail from the Office on this __19__ day of __December, 2005__.

Brett K. Gorman
Schmiedeskamp, Robertson
525 Jersey Street
P.O. Box 1069
Quincy, IL 62306-1069
Fax: 217-223-1005